**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

CRAIG TELKE, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO,
WALTER TIMOSHENKO,
LFP BROADCASTING, LLC and
FLYNT BROADCAST, INC.,

      Defendants.

---

**PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF THE**
**FEDERAL SECURITIES LAWS AND BREACH OF FIDUCIARY DUTY**

---

Plaintiff, Craig Telke ("Plaintiff") by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

1.      Plaintiff brings this class action on behalf of the public stockholders of New Frontier Media, Inc. ("New Frontier" or the "Company") against New Frontier's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties arising out of their attempt to sell the Company to LFP Broadcasting, LLC ("LFP Broadcasting") by means of an unfair process and for an unfair price.  Additionally, Plaintiff individually brings a claim against Defendants for their violations of Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act").

2.      New Frontier is a leader in transactional television as well as general motion picture entertainment.  The Company delivers transactional adult-themed pay-per-view networks to cable and satellite operators across the United States. Additionally, the Company is a leading provider of content to video-on-demand platforms on cable and satellite.

3.      On October 15, 2012, LFP Broadcasting and the Company announced a definitive agreement under which LFP Broadcasting, through its wholly owned subsidiary Flynt Broadcast, Inc. ("Merger Sub"),  commenced a tender offer to acquire all of the outstanding shares of New Frontier for $2.02 per share in cash along with one contingent right per share to receive a contingent cash payment of up to six additional cents per share depending upon the extent to which New Frontier's available cash balance at the closing of the tender offer exceeds $11,514,000 (the "Proposed Transaction"). The Proposed Transaction is valued at approximately $33 million. The tender offer is set to expire at 12:00 midnight, New York City time, on Tuesday, November 27, 2012.

4.      The Board has breached, and continues to breach its fiduciary duties by agreeing to the Proposed Transaction for grossly inadequate consideration.  As described in more detail below, the consideration shareholders will receive is inadequate and undervalues the Company.

5.      The Proposed Transaction comes at the heels of what was a tumultuous sales process for the Company.  During the past seven months the Company has received unsolicited buyout offers, a proxy contest, litigation and the removal of its Chief Executive Officer and Chairman of the Board, Michael Weiner ("Weiner"). After Weiner's removal, Alan Isaacman ("Isaacman") was appointed to the role of Chairman of the Board.  Isaacman is also the Chairman of the Special Committee charged with reviewing the Company's strategic alternatives.

6.      LFP Broadcasting operates as a subsidiary of LFP, Inc. ("LFP"), the flagship of the adult entertainment empire owned by Larry Flynt ("Flynt"). Isaacman has a long-time relationship with Flynt, stemming back to 1988 when Isaacman represented Flynt in the Supreme Court case between Flynt's Hustler Magazine and Jerry Falwell.  As such, it is unsurprising that Isaacman's ascension to a leadership position within the Company was concurrent with the sales process sharply favoring Flynt, and ending in a deal with the Flynt-controlled LFP Broadcasting.

7.       In addition, on October 29, 2012, New Frontier filed a 14D-9 Recommendation Statement (the "Recommendation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Registration Statement fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision as to whether to tender their shares in the tender offer.

8.     Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company. Specifically, pursuant to the merger agreement dated October 15, 2012 (the "Merger Agreement"), defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirors or even in continuing discussions and negotiations with potential acquirers; (ii) a provision that provides LFP Broadcasting with 3 days to match any competing proposal in the event one is made; and (iii) a provision that requires the Company to pay LFP Broadcasting a termination fee of $1 million in order to enter into a transaction with a superior bidder. These provisions substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of New Frontier.

9.     The Individual Defendants have breached their fiduciary duties of loyalty, due care, independence, good faith and fair dealing, and New Frontier, LFP Broadcasting and Merger Sub have aided and abetted such breaches by New Frontier's officers and directors. Plaintiff seeks to enjoin the Proposed Transaction unless and/or until defendants cure their breaches of fiduciary duty.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Section 14(d) and 14(e) of the Exchange Act.  This court also has pendent jurisdiction over state law claims pursuant to 28 U.S.C. §1367.

11.     This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

12.     Venue is proper in this district because: (i) the conduct at issue took place and had an effect in this district; (ii) New Frontier is incorporated in, and maintains its principal place of business in this district; (iii) one or more of the defendants either resides in or maintains executive offices in this district; (iv) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein occurred in this district; and (v) defendants have received substantial compensation in this district by doing business here and engaging in numerous activities that had an effect in this district.

## PARTIES

13.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of New Frontier.

14.     New Frontier is a corporation organized and existing under the laws of the State of Colorado.  It maintains its principal executive offices at 6000 Spine Road, Suite 100, Boulder, CO 80301.

15.     Defendant Isaacman has been the Chairman of the Board of the Company since September 2012, and a director of the Company since 1999.  Isaacman is also the Chairman of the Special Committee.

16.     Defendant Melissa Hubbard ("Hubbard") has been a director of the Company since 2002.  Hubbard is also a member of the Special Committee.

17.     Defendant Hiram J. Woo ("Woo") has been a director of the Company since 2001.  Woo is also a member of the Special Committee.

18.     Defendant Walter Timoshenko ("Timoshenko") has been a director of the Company since 2007.  Timoshenko is also a member of the Special Committee.

19.     Defendants referenced in ¶¶ 15 through 18 are collectively referred to as Individual Defendants and/or the Board.

20.     Defendant LFP Broadcasting is a Delaware corporation with its headquarters located at 8484 Wilshire Boulevard, Suite 900, Beverly Hills, CA 90211. LFP Broadcasting offers adult entertainment through HUSTLER TV, which is available through cable, satellite, telcos, and hotel/motel television providers as a video-on-demand or pay-per-view television network.  Hustler TV programming includes the adult films in release, from adult studios.  The company was incorporated in 2004 and is based in Beverly Hills, California.  LFP Broadcasting LLC operates as a subsidiary of LFP.

21.     Defendant Merger Sub is a Colorado corporation wholly owned by LFP Broadcasting that was created for the purposes of effectuating the Proposed Transaction.

**THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES**

22.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public shareholders of New Frontier and owe them, as well as the Company, a duty of care, loyalty, good faith, candor, and independence.

23.     Under Colorado law, where the directors of a publicly traded corporation undertake a transaction that will result in either a change in corporate control or a break-up of the

corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders and, if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To comply with their fiduciary duties, the Individual Defendants may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)     adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(d)     will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public shareholders.

24.     In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

(a)     participating in any transaction where the Individual Defendants' loyalties are divided;

(b)     participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

25.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary

duties, including their duties of care, loyalty, good faith, candor, and independence owed to plaintiff and other public shareholders of New Frontier.

26.     Defendants also owe the Company's stockholders a duty of candor, which includes the disclosure of all material facts concerning the Proposed Transaction and, particularly, the fairness of the price offered for the stockholders' equity interest. Defendants are knowingly or recklessly breaching their fiduciary duties of candor by failing to disclose all material information concerning the Proposed Transaction, and/or aiding and abetting other Defendants' breaches.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings his breach of fiduciary duty claims asserted in this action as a class action pursuant to Rule of Civil Procedure 23 on behalf of all persons and/or entities that own New Frontier common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Merger Agreement, as of October 12, 2012, the Company has 16,264,213 shares of common stock outstanding. All members of the Class may be identified from records maintained by New Frontier or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

29.     Questions of law and fact are common to the Class, including, *inter alia*, the following:

(i)     Whether the Individual Defendants breached their fiduciary duties of undivided loyalty, independence, and due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(ii)    Whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonably under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(iii)   Whether the Individual Defendants misrepresented and omitted material facts in violation of their fiduciary duties owed by them to Plaintiff and the other members of the Class;

(iv)    Whether the Individual Defendants breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Transaction, including the duties of good faith, diligence, honesty and fair dealing;

(v)     Whether the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(vi)     Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated;

(vii)    Whether New Frontier, LFP Broadcasting, and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(viii)   Whether the Class is entitled to injunctive relief or damages as a result of defendants' wrongful conduct.

30.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

31.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

32.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

### FURTHER SUBSTANTIVE ALLEGATIONS

**A.     Company Background**

33.     New Frontier is a leader in transactional television as well as general motion picture entertainment. The Company delivers transactional adult-themed pay-per-view networks to cable and satellite operators across the United States.  Additionally, the Company is a leading provider of content to video-on-demand platforms on cable and satellite.

34.     Like many companies, New Frontier suffered in the economic downturn of 2008. This effect lingered for quite some time, with the Company's stock hitting a low of $1.03 per share at the end of 2011.  New Frontier stock began to recover in 2012 however, climbing back to $1.19 per share by the beginning of March 2012.

35.     This recovery did not go unnoticed.  By the end of March 2012, the Company had received two unsolicited acquisition proposals, discussed in more detail below, from Longkloof Limited ("Longkloof"), New Frontier's largest shareholder owning approximately 15.7% of the Company's outstanding shares; and Manwin Holding SARL ("Manwin"), both seeking to purchase the Company as it began to resurge.

**B.     The Board Enters Into The Proposed Transaction for an Unfair Price Pursuant to a Flawed and Inadequate Process**

36.     On October 15, 2012, the Company announced that it had entered into a merger agreement with LFP Broadcasting pursuant to which LFP Broadcasting, through Merger Sub, has commenced a tender offer to acquire all of the outstanding shares of New Frontier for $2.02 per share in cash along with one contingent right per share to receive a contingent cash payment of up to six additional cents per share depending upon the extent to which New Frontier's available cash balance at the closing of the tender offer exceeds $11,514,000.  The tender offer is set to expire at 12:00 midnight, New York City time, on Tuesday, November 27, 2012.

37.     The Proposed Transaction consideration is inadequate and significantly undervalues the Company.  LFP Broadcasting is seeking to acquire the Company at the most opportune time, at a time when the Company is on the cusp of resurgence.

38.     The *Premiums Paid Analysis* performed by the Company's financial advisor, Avondale Partners LLP ("Avondale"), implied ranges of equity value per share with high-ends of

$3.67, $3.58, $4.37, $3.07, $3.25, and $3.65—all significantly higher than the Proposed Transaction consideration.

39.     Further, according to Yahoo Finance, at least one Wall Street analyst had a price target of $4.00 per share before the Proposed Transaction was announced.

40.     In addition, the Proposed Transaction consideration fails to adequately compensate New Frontier's shareholders for the significant synergies created by the merger. The Proposed Transaction is a strategic merger for LFP Broadcasting: As stated in an October 15, 2012, The Denver Post article:

> Such a deal could make waves in the adult entertainment industry, said Don Parret, executive director of publishing for industry trade publication XBIZ. 'The move to combine these two established adult entertainment brands is certainly a blockbuster move, one that would potentially establish a worldwide market leader for video-on-demand and pay-per-view sales of adult content . . .'

41.     Michael H. Klein, President of LFP further stated "We are always on the lookout for ways to grow the company. . . .   Adding New Frontier to the mix just expands our broadcasting."

42.     Despite the significant synergies inherent in the transaction for LFP Broadcasting, however, the Board failed to secure a fair price for the Company, either for the intrinsic value of its assets or the value of the Company's assets to LFP Broadcasting.

### C.     The Tumultuous and Flawed Sales Process

43.     The Proposed Transaction is the result of a lengthy and flawed sales process, in which the Board and Special Committee, led by Isaacman, favored LFP Broadcasting to the detriment of other potential purchasers.

44.     The Company had unsuccessfully courted acquisition proposals from LFP Broadcasting long before the sales process began in the summer of 2010, and resumed discussions again in the summer of 2011.  LFP Broadcasting is controlled by Flynt, with whom Isaacman has a longstanding relationship, most notably serving as Flynt's attorney in the 1988 Supreme Court case between Flynt's Hustler Magazine and Jerry Falwell.  The Recommendation Statement makes no mention of any other party being solicited or considered during 2010 and 2011.

45.     The interest of Longkloof in acquiring the Company in January, 2012, sparked a turbulent sales process.

46.     On January 30, 2012, Adam Rothstein ("Rothstein"), acting on behalf of Longkloof, indicated that an investment group led by Longkloof was interested in pursuing an acquisition of New Frontier.  On February 7, 2012, Longkloof indicated its continuing interest in an acquisition and its intent to possibly seek to change the Board composition at the next annual shareholder meeting.

47.     Upon receiving the indication of interest, the Board formed the Special Committee led by Isaacman, to consider Longkloof's indication, as well as consider strategic alternatives for the Company.  At this time, the committee also consisted of Hubbard, Woo, Timoshenko and David M. Nicholas ("Nicholas"), a director for the majority of the sales process.

48.     On March 9, 2012, Longkloof submitted an indication of interest to acquire the Company for $1.35 per share in cash.  Conflict between Longkloof and the Board developed

rapidly in negotiations, and by the end of March, Longkloof began to threaten to use its position as a substantial shareholder of the Company to commence a proxy contest.

49.     On March 22, 2012 Manwin submitted an indication of interest to acquire the Company for $1.50 per share in cash.  Also in late March, LFP Broadcasting contacted Weiner to express interest in a potential transaction with the Company. On April 16, 2012, LFP Broadcasting verbally expressed to Avondale that it was interested in acquiring the Company for $1.60 per share in cash.

50.      On April 23, 2012, the Special Committee was reduced to Isaacman, Hubbard and Timoshenko, removing Woo and Nicholas in order to make the committee a "more appropriate and manageable size."

51.     After receiving bids from Longkloof, Manwin and LFP Broadcasting, which were publicly announced, on May 3, 2012, the Special Committee determined to conduct a "mini auction" in which Avondale, the Company's financial advisor in the Proposed Transaction, would contact a select group of strategic and private equity buyers to solicit interest in an acquisition of New Frontier.

52.     Although the Recommendation Statement asserts that Avondale contacted over 20 potential buyers after being authorized by the Special Committee on May 8, 2012 to contact potential acquirers, it provides no information regarding any discussions that took place between the Company and Avondale and these parties.

53.     On May 31, 2012 the Company filed a lawsuit against Longkloof, accusing Longkloof of attempting to bypass the Special Committee's sales process and coerce the Board into giving it preferential treatment.  Longkloof then filed counterclaims on June 11, 2012,

alleging among other things, that the Board breached its fiduciary duties with respect to its actions in response to Longkloof's unsolicited offer to acquire the Company.

54.     On July 6, 2012, the Special Committee was again restructured, with Woo reclaiming his place on the committee, and Nicholas being the only original member of the committee to remain removed.

55.     On July 11, 2012 the Company entered into a settlement agreement with Longkloof in which Longkloof agreed to pursue a sale of the Company only through a consensual acquisition.

56.     On August 22, 2012, the Special Committee concluded that it believed Longkloof and LFP Broadcasting to be the "only viable bidders with which to continue to pursue a transaction." From this point forward, however, it became strikingly clear that the only party the Isaacman-led Special Committee was interested in transacting with was LFP Broadcasting.

57.     In September, the Company terminated then CEO and Chairman of the Board Weiner's employment, accusing him of being allies with Longkloof. Shortly after, Nicholas, who had already been targeted as the only independent director kept from serving on the Special Committee, was removed from the Board for the same cause. The Recommendation Statement declines to reveal the cause of either man's departure from the Company.

58.     In an October 8, 2012 letter to the Board, Nicholas lambasted the Board's actions both with regard to him and Weiner, as well as to Longkloof:

> I disagree with your continuous attempts to portray yourselves as saviors of the company for filing the Longkloof lawsuit and to cast my opposition to the lawsuit as an expression of favoritism towards Longkloof. A board that was interested in maximizing shareholder value would not have wasted hundreds of thousands of dollars to sue a bona-fide (acquirer) and instead would have attempted to negotiate with them to raise their offer price. My intent has always been to obtain

the best and highest price for the company -- whether from Longkloof or otherwise.

59.     With Weiner and Nicholas gone from the Company, the Board and Special Committee, now both chaired by Isaacman, steered the sales process towards a deal with LFP Broadcasting. Instead of negotiating in the best interest of the Company's shareholders, the Board brought the tumultuous and flawed sales process to a close by agreeing to the Proposed Transaction with Isaacman's long-time associate Flynt on October 15, 2012.

### D.     The Preclusive Deal Protection Devices

60.     In addition, as part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

61.     Section 6.04 of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by LFP Broadcasting. Section 6.04(a) demands that the Company terminate any and all prior or on-going discussions with other potential acquirers.

62.     Pursuant to section 6.04(d) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Company must notify LFP Broadcasting of the bidder's identity and the terms of the bidder's offer.  Thereafter, § 6.04(d) demands that should the Board determine to enter into a superior competing proposal, it must grant LFP Broadcasting 3 days in which the Company must negotiate in good faith with LFP Broadcasting (if LFP Broadcasting so desires) and allow LFP Broadcasting to amend the terms of the Merger Agreement to make a counter-offer so that the superior proposal is no longer superior. In other words, the Merger Agreement gives LFP Broadcasting access to any rival bidder's information and allows LFP

Broadcasting a free right to top any superior offer simply by matching it.  Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor LFP Broadcasting and piggy-back upon the due diligence of the foreclosed second bidder.

63.     The Merger Agreement also provides that a termination fee of $1 million must be paid to LFP Broadcasting by New Frontier if the Company decides to pursue the competing offer, thereby essentially requiring that the competing bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

64.     LFP Broadcasting is also the beneficiary of a "Top-Up" provision that ensures that LFP Broadcasting gains the shares necessary to effectuate a short-form merger.  Pursuant to the Merger Agreement, if LFP Broadcasting receives 90% of the shares outstanding through its tender offer, it can effect a short-form merger. In the event LFP Broadcasting fails to acquire the 90% required, the Merger Agreement also contains a "Top-Up" provision that grants LFP Broadcasting an option to purchase additional shares from the Company in order to reach the 90% threshold required to effectuate a short-form merger.

65.     Ultimately, these preclusive deal protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

**E.     The Materially False and Misleading Recommendation Statement**

66.     On October 29, 2012 the Company filed the Recommendation Statement with the SEC in connection with the Proposed Transaction.   The Recommendation Statement fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision as to whether to tender their shares in the tender offer.

67.     The Recommendation Statement, which recommends that New Frontier shareholders tender their shares in the Proposed Transaction, contains numerous material omissions and misstatements, in contravention of the Board's duty of candor and full disclosure and in violation of Sections 14(d)(4) and 14(e) of the Exchange Act.

68.     The Recommendation Statement fails to disclose: the reason for which the Company provided two separate sets of financial projections to Avondale; the reason for which prospective bidders were given a third set of financial projections on May 16, 2012, and; whether Avondale also was given the third set of financial projections.

69.     The Recommendation Statement fails to disclose the assumptions underlying all three of management's financial forecasts, as well as the free cash flows forecasted by management for fiscal years 2013 through 2017 for Management I Forecast and Management II Forecast.

70.     The Recommendation Statement fails to disclose various material aspects of the sales process, including:

(a)     The reason for which Weiner contacted LFP Broadcasting on July 8, 2010, inquiring as to whether LFP Broadcasting would have an interest in a potential transaction with

the Company, whether he was acting under the direction of the Board at this time, and whether the Company reached out to any other parties at this time to gauge interest in a potential transaction;

(b)　　The circumstances surrounding the Company's discussions with LFP Broadcasting in July 2011, including but not limited to, who initiated these discussions, and for what purpose;

(c)　　Information regarding the Special Committee's sales process described as being in its early stages on February 22, 2012, including whether the Special Committee had identified and contacted any potential bidders at this stage;

(d)　　The reason for which on February 29, 2012 and March 1, 2012 Nicholas informed Longkloof's Adam Rothstein that he could not speak with him until "events are settled;"

(e)　　The reason for which Longkloof wished to replace all members of the Board other than Weiner and Nicholas;

(f)　　Information regarding Weiner's "personal relationship and personal business dealings" with Rothstein;

(g)　　The "various qualifications" the Special Committee was seeking for an investment banking firm, as discussed on March 26, 2012, as well as the reason for which the Special Committee decided to retain Avondale as its financial advisor on March 30, 2012;

(h)　　The strategic alternatives evaluated by Avondale, from April 3, 2012 until the signing of the Merger Agreement;

(i)     Whether Avondale received the list of "all parties that over the past year had expressed an interest in some type of a strategic transaction or business combination with the Company" it requested from the Company on April 9, 2012, and if so, how many parties the list contained, how many of those parties were ultimately asked to participate in the sales process, and the criteria used to determine which parties to solicit interest from;

(j)     Information regarding the communications Avondale had engaged in with interested parties discussed by Avondale and the Special Committee on April 9, 2012;

(k)     The reason for which Avondale believed on April 9, 2012, that "none of the in-bound calls from private equity firms were from parties with any serious and/or credible interest in pursuing an acquisition of the Company," as well as the criteria Avondale used to determine credible interest;

(l)     The reason for which, on May 3, 2012, the Special Committee believed that only a "relatively small number of financial buyers" would be interested in an acquisition of the Company;

(m)     The number of potential buyers solicited by Avondale during the sales process, who was responsible for the selection of these potential buyers, the criteria used in the selection of these buyers,  and the content of any discussions and negotiations held between the Company and Avondale, and any of these potential buyers;

(n)     Who initiated contact between the Company and Bidder C and Bidder D, as well as the content of any negotiations between the Company and Avondale, and these bidders;

(o)     The next steps discussed with regards to the Company's evaluation of strategic alternatives, specifically with respect to possible bidders, on July 6, 2012, as well as how many possible bidders were under consideration by the Special Committee at this point;

(p)      The reasons for which Nicholas and Weiner indicated that they were not in favor of the re-addition of Woo onto the Special Committee on July 6, 2012;

(q)     The reason for which the Special Committee viewed LFP Broadcasting and Longkloof as the only viable bidders on August 22, 2012;

(r)     The reason for which Weiner's employment was terminated on September 15, 2012, and Isaacman was selected to succeed Weiner as Chairman of the Board, and;

(s)     The reasons for which Nicholas tendered his resignation as a director of the Company on September 29, 2012, and Weiner tendered his resignation as a director of the Company on October 10, 2102.

71.     The Recommendation Statement also fails to disclose various material aspects of Avondale's financial analyses.  In particular, the Recommendation Statement fails to disclose:

(a)     With respect to the *Discounted Cash Flow Analysis*: the projected cash flows utilized in the analysis; the definition of cash flow utilized in the analysis; the reason for which Avondale utilized Management I and Management II Forecasts in the analysis, but declined to utilize Management III Forecast; the method by which the ranges of terminal value multiples and discount rates were determined, and; the conclusions of the analysis;

(b)     With respect to the *Precedent Transactions Analysis*: The criteria used to select the transactions utilized in the analysis, the LTM EBIT multiples observed for each transaction utilized in the analysis, and; the conclusions of the analysis;

(c)     With respect to the *Comparable Company Analysis*: the criteria used to select the companies utilized in the analysis, and; the multiples observed for each company utilized in the analysis;

(d)     With respect to the *Premiums Paid Analysis*:  The transactions utilized in the analysis as well as the criteria used to select these transactions, and the dates on which these transactions occurred; the reason for which Avondale excluded transactions involving financial institutions and real estate investment trusts (REITs), and; the premiums observed for each transaction utilized in the analysis.

72.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## ADDITIONAL SCIENTER ALLEGATIONS

73.     The Individual Defendants knew that the Recommendation Statement issued or disseminated in the name of the Company was materially false and misleading, knew that such statements in the Recommendation Statement would be issued or disseminated to the Company's shareholders, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements in the Recommendation Statement as primary violations of the federal securities laws. The Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding New Frontier and the Proposed Transaction, their control over, and/or receipt and/or modification of New Frontier's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning New Frontier, participated in the dissemination of the materially misleading Proxy.

74.     The Individual Defendants knew or recklessly disregarded the materially false and misleading nature of the information they caused to be disseminated to New Frontier's shareholders.  The Individual Defendants also knew or recklessly disregarded that their failure to disclose material information concerning the Proposed Transaction would induce shareholders into tendering their shares in the Proposed Transaction.   The Individual Defendants acted knowingly or in such reckless manner as to constitute deceit upon Plaintiff and the other members of the Class.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 14(d)(4) and 14(e) of the Exchange Act
### (Brought Individually Against Individual Defendants)

75.     Plaintiff repeats all previous allegations as if set forth in full herein.

76.     Plaintiff brings this claim individually and not on behalf of a class.

77.     Defendants have issued the Recommendation Statement with the intention of soliciting shareholder support of the Proposed Transaction.

78.     Sections 14(d)(4) and 14(e) of the Exchange Act require full and complete disclosure in connection with tender offers.  Specifically, Section 14(e) provides that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative

79.     The Recommendation Statement violates the Sections 14(d)(4) and 14(e) because it omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

80.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II
## Breach of Fiduciary Duties
## (Against All Individual Defendants)

81.     Plaintiff repeats all previous allegations as if set forth in full herein.

82.     The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith, and independence owed to the public shareholders of New Frontier and have acted to put their personal interests ahead of the interests of New Frontier shareholders.

83.     The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company which imposes heightened fiduciary responsibilities to maximize New Frontier's value for the benefit of the stockholders and requires enhanced scrutiny by the Court.

84.     The Individual Defendants have breached their fiduciary duties of loyalty, good faith, and independence owed to the shareholders of New Frontier because, among other reasons:

(a)     they failed to take steps to maximize the value of New Frontier to its public shareholders and took steps to avoid competitive bidding;

(b)     they failed to properly value New Frontier; and

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

85.     As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of New Frontier's assets and will be prevented from benefiting from a value-maximizing transaction.

86.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

87.     Plaintiff and the Class have no adequate remedy at law.

## COUNT III
## Breach of Fiduciary Duty -- Disclosure
## (Against Individual Defendants)

88.     Plaintiff repeats all previous allegations as if set forth in full herein.

89.     The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiff and the Class all information material to the decisions confronting New Frontier shareholders.

90.     As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

91.     As a result, Plaintiff and the Class members are being harmed irreparably.

92.     Plaintiff and the Class have no adequate remedy at law.

**COUNT IV**
**Aiding and Abetting**
**(Against New Frontier, LFP Broadcasting, and Merger Sub)**

93.     Plaintiff repeats all previous allegations as if set forth in full herein.

94.     As alleged in more detail above, Defendants New Frontier, LFP Broadcasting, and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties.

95.     As a result, Plaintiff and the Class members are being harmed.

96.     Plaintiff and the Class have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)     enjoining, preliminarily and permanently, the Proposed Transaction;

(C)     declaring that the Recommendation Statement is materially misleading and contains omissions of material fact in violation of Sections 14(d)(4) and 14(e) of the Exchange Act;

(D)     in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)     directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(F)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 8, 2012

DYER & BERENS LLP
ROBERT J. DYER III
JEFFREY A. BERENS

  /s/ JEFFREY A. BERENS_____
303 East 17th Avenue, Suite 300
Denver, CO 80203
Tel: (303) 861-1764
Fax: (303) 395-0393
bob@dyerberens.com
jeff@dyerberens.com

LEVI & KORSINSKY, LLP
Shannon L. Hopkins, Esq.
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
shopkins@zlk.com

*Counsel for Plaintiff*