**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-02941-JLK-KLM

CRAIG TELKE, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO,
WALTER TIMOSHENKO,
LFP BROADCASTING, LLC and
FLYNT BROADCAST, INC.,

     Defendants.

_____

**MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR EXPEDITED**
**PROCEEDINGS**

**<u>ORAL ARGUMENT REQUESTED</u>**

_____

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………iv

I.      INTRODUCTION…………….....………………………………………..1

II.     STATEMENT OF FACTS………………………………………………...2

III.    ARGUMENT...……………………………………………………….……8

       A.      Plaintiff Has Demonstrated A Substantial Likelihood Of Success On His Claims That The New Frontier Board Breached Its Fiduciary Duties To Stockholders………………………………………………………….8

          1.      Plaintiff Has Demonstrated A Substantial Likelihood Of Success On His Claim That The Board Breached Its Fiduciary Duty Of Candor By Issuing A Materially Misleading Recommendation Statement…………………………………….9

              a.      Disclosures Related to the Removal and/or Resignations of New Frontier CEO and Director Michael Weiner and Former Director David Nicholas…………………………………………………..11

              b.      Disclosures Related to Avondale Partner's Financial Analyses…………………………………………………..12

          2.      Plaintiff Has Demonstrated A Substantial Likelihood Of Success On His Claim That The Board Violated Sections 14(d)(4) And 14(e) Of The Exchange Act And The Rules Promulgated Thereunder…………………………………………15

       B.      Plaintiff And New Frontier's Shareholders Will Suffer Irreparable Harm If Defendants Are Not Required To Disclose All Material Information Necessary For Them To Make An Informed Decision Of Whether To Tender Their Shares…….………………………………………….…………..18

       C.      The Balance Of Harms Favors An Injunction………………………….......19

       D.      An Injunction is Not Adverse to the Public Interest………………………..20

IV.     NO BOND IS REQUIRED………………………………………………...20

V.      GOOD CAUSE EXISTS FOR ORDERING A HEARING ON THE
        PRELIMINARY INJUNCTION PRIOR TO THE EXPIRATION OF
        THE TENDER OFFER ON NOVEMBER 27, 2012……………………………….23

VI.     CONCLUSION…………………………………………………………………..24

# TABLE OF AUTHORITIES

## CASES

*ACLU v. Johnson*,
   194 F.3d 1149 (10th Cir. 1999) ................................................................. 8

*American Carriers, Inc. v. Baytree Investors, Inc.*,
   685 F. Supp. 800 (D. Kan. 1988) ................................................. 19, 20, 21

*Arnold v. Society for Sav. Bancorp, Inc.*,
   650 A.2d 1270 (Del. 1994) .................................................................. 10, 12

*Bender v. Jordan*,
   439 F. Supp. 2d 139 (D.D.C. 2006) ........................................................ 17

*Berkman v. Rust Craft Greeting Cards, Inc.*,
   454 F.Supp.787 (S.D.N.Y.1978) .............................................................. 17

*Bray v. QFA Royalties, LLC*,
   486 F. Supp. 2d 1237 (D. Colo. 2007) ...................................................... 8

*Calumet Industries, Inc. v. MacClure*,
   464 F. Supp. 19 (N.D. Ill. 1978) ............................................................. 17

*Canadian Javelin Ltd. v. Brooks*,
   462 F. Supp. 190 (S.D.N.Y. 1978) .......................................................... 17

*Chambers v. Briggs & Stratton Corp.*,
   863 F. Supp. 900 (E.D. Wis. 1994) ......................................................... 17

*Cinerama, Inc., v. Technicolor, Inc.*,
   663 A.2d 1156 (Del. 1995) ..................................................................... 10

*Continental Oil Co. v. Frontier Ref. Co.*,
   338 F.2d 780 (10th Cir. 1964) ................................................................... 9

*Coquina Oil Corp. v. Transwestern Pipeline Co.*,
   825 F.2d 1461 (10th Cir. 1987) ............................................................... 21

*Crouch v. Prior*,
   905 F. Supp. 248 (D.C.V.I. 1995) ........................................................... 17

*David P. Simonetti Rollover IRA v. Margolis*,
   2008 WL 5048692 (Del. Ch. June 27, 2008) ........................................... 10

*Emerald Partners v. Berlin*,
   726 A.2d 1215 (Del. 1999) ..................................................................... 10

*Gandy v. Zavaras*,
   09-CV-00205-CMA-KMT, 2009 WL 5064447 (D. Colo. Dec. 16, 2009) ................................. 8

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006) ................................................................................. 8

*Heideman v. South Salt Lake City*,
    348 F.3d 1182 (10th Cir. 2003) ........................................................................ 9

*In re Art Tech. Group, Inc. S'holders Litig.*,
    Cons. C.A. No. 5955-VCL, 2010 WL 5184244 (Del. Ch. Dec. 21, 2010) .............. 21

*In re Celera Corp. S'holder Litig.*,
    2012 WL 1020741 (Del. Ch. Mar. 23, 2012) ........................................................ 13

*In re MONY Group, Inc. S'holder Litig.*,
    852 A.2d 9 (Del. Ch. Feb. 18, 2004) .................................................................... 22

*In re Staples, Inc. S'holders Litig.*,
    792 A.2d 934 (Del. Ch. 2001) .............................................................................. 18

*Int'l Controls Corp. v. Vesco*,
    490 F.2d 1334 (2d Cir. 1974) ................................................................................ 22

*J.I. Case Co. v. Borak*,
    377 U.S. 426, 84 S.Ct. 1555 (1964) ...................................................................... 17

*Kaufman v. Cooper Companies, Inc.*,
    719 F. Supp. 174 (S.D.N.Y. 1989) ........................................................................ 17

*Krauth v. Executive Telecard, Ltd.*,
    890 F. Supp. 269 (S.D.N.Y.1995) ........................................................................ 17

*La. Mun. Police Employees' Ret. Sys. v. Crawford*,
    Civil Action Nos. 2635-N, 263 3- N, 2007 WL 625006 (Del. Ch. Feb. 13, 2007) .............. 22

*La. Mun. Police Emps. Ret. Sys. v. Crawford*,
    918 A.2d 1172 (Del. Ch. 2007) ............................................................................ 22

*Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*,
    2009 WL 4725866 (Del. Ch. Nov. 18, 2009) ........................................................ 13

*Lichtenberg v. Besicorp Group, Inc.*,
    43 F. Supp. 2d 376 (S.D.N.Y. 1999),
    *app. dism.,* 204 F.3d 397 (2d Cir. 2000) ...................................................... 16, 17

*Lovenheim v. Iroquois Brands, Ltd.*,
    618 F. Supp. 554 (D.D.C. 1985) .......................................................................... 17

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) .......................................................................................... 10

*Metro Mobile CTS, Inc. v. Centel Corp.*,
    694 F. Supp. 806 (D. Kan.1988) .......................................................................... 17

*O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*,
    389 F.3d 973 (10th Cir. 2004) .............................................................................. 8

*ODS Techs., L.P. v. Marshall*,
    832 A.2d 1254 (Del. Ch. 2003) ...................................................................... 18, 21

*Otero Sav. & Loan Ass'n v. Federal Reserve Bank*,
    665 F.2d 275 (10th Cir.1981) ................................................................................ 9

v

*Pinson v. Pacheco*,
42 4 Fed. Appx. 749 (10th Cir. 2011) ........................................................................ 8

*Pod-Ners, LLC v. Northern Feed & Bean*,
204 F.R.D. 675 (D. Colo. 2002) ................................................................................ 24

*Prairie Band of Potawatomi Indians v. Pierce*,
253 F.3d 1234 (10th Cir. 2001) ................................................................................ 9

*Resolution Trust Corp. v. Cruce*,
972 F.2d 1195 (10th Cir. 1992) .................................................................................. 9

*Rice v. Hamilton Oil Corp.*,
658 F. Supp. 446 (D. Colo. 1987) ............................................................................ 16

*Robert M. Bass Group, Inc. v. Evans*,
552 A.2d 1227 (Del. Ch. 1988) ................................................................................ 19

*RoDa Drilling Co. v. Siegal*,
552 F.3d 1203 (10th Cir. 2009) ................................................................................ 21

*Ryan v. Tad's Enterprises, Inc.*,
709 A.2d 682 (Del. Ch. 1996) .................................................................................. 12

*Skeen v. Jo-Ann Stores, Inc.*,
750 A.2d 1170 (Del. 2000) ....................................................................................... 10

*Solar Cells, Inc. v. True N. Partners, LLC*,
No. 19477, 2002 Del. Ch. LEXIS 38 (Del. Ch. Apr. 25, 2002) ............................... 21

*Steinberg v. The Children's Place, Inc.*,
1982 WL 17845 (Del. Ch. Jan. 25, 1982) ................................................................ 21

*Steinhardt v. Howard-Anderson*,
C.A. No. 5878-VCL, 2011 WL 229777 (Del. Ch. Jan. 24, 2011) ........................... 21

*Temple Univ. v. White*,
941 F.2d 201 (3d Cir. 1991) ..................................................................................... 22

**STATUTES**

15 U.S.C. § 78n(e) (1988). ............................................................................................ 15

**OTHER AUTHORITIES**

8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §2046.1 (2d ed.
1987); ......................................................................................................................... 24

**RULES**

D.C.COLO.L. Civ.R.7.1A ................................................................................................ 1

Fed R. Civ. P. 65 ................................................................................................... 20, 21

Fed. R. Civ. P. 26 ......................................................................................................... 23

Plaintiff Craig Telke hereby moves the Court for an Order granting plaintiff's motion for preliminary injunction and expedited proceedings.  In addition, plaintiff moves for an expedited ruling on this motion because of the time-sensitive nature of this action.  Under D.C.COLO.L. Civ.R.7.1A, plaintiff certifies that the parties have conferred and defendants have stated they will oppose any production of documents and request for depositions and that they oppose plaintiff's motion for preliminary injunction.  Accordingly, this motion is opposed.

## I.   INTRODUCTION

Plaintiff in this action (the "Action") brought on behalf of the public shareholders of New Frontier Media, Inc. ("New Frontier" or the "Company") respectfully submits this Motion for a Preliminary Injunction to enjoin consummation of the proposed acquisition of New Frontier by LFP Broadcasting, LLC ("LFP Broadcasting").

This Action arises out of the proposed acquisition of New Frontier by LFP Broadcasting pursuant to an Agreement and Plan of Merger dated October 15, 2012.  On October 29, 2012, LFP Broadcasting commenced a tender offer to acquire all of the outstanding shares of New Frontier for $2.02 per share in cash along with one contingent right per share to receive a contingent cash payment of up to six additional cents per share depending upon the extent to which New Frontier's available cash balance at the closing of the tender offer exceeds $11,514,000.  The tender offer is set to expire at midnight on November 27, 2012, just days away.

Plaintiff's Complaint alleges, among other things, that Defendants are seeking shareholder approval of the Proposed Transaction by means of a recommendation statement that contains material omissions and omits material information thereby preventing New Frontier

shareholders from making a fully informed decision regarding the Proposed Transaction.[1]  As set forth below, the Company has failed to disclose critical information concerning the suspicious circumstances underlying the dismissals of two key members of New Frontier's Board of Directors -- former CEO and Director, Michael Weiner, and former Director and Special Committee member, David Nicholas -- as well as key information supporting the fairness opinion of the Board's financial advisor, Avondale Partners, upon which the Board relied in recommending the Proposed Transaction as fair and in the best interests of New Frontier's pubic shareholders.

Accordingly, Plaintiff respectfully seeks a preliminary injunction enjoining Defendants from proceeding with the Proposed Transaction until supplemental disclosure of the material information identified herein is made to the Company's shareholders.

## II.    STATEMENT OF FACTS

New Frontier Media, Inc. ("New Frontier" or the "Company") is a leader in transactional television as well as general motion picture entertainment.  The Company delivers transactional adult-themed pay-per-view networks to cable and satellite operators across the United States. Additionally, the Company is a leading provider of content to video-on-demand platforms on cable and satellite.  Complaint ¶¶ 2, 33.  Like many companies, New Frontier suffered in the economic downturn of 2008. This effect lingered for quite some time, with the Company's stock hitting a low of $1.03 per share at the end of 2011.  New Frontier stock began to recover in 2012 however, climbing back to $1.19 per share by the beginning of March 2012.  *Id*. ¶ 34.

---

[1] Citations to "¶ __" are to paragraphs of Plaintiff's Complaint for Violations of the Federal Securities Laws and Breach of Fiduciary Duty (the "Complaint") filed on November 8, 2012.  To the extent not otherwise defined herein, capitalized terms shall have the same meaning as in the Complaint, and the facts set forth in the Complaint are incorporated herein by reference.

This recovery did not go unnoticed.  By the end of March 2012, the Company had received two unsolicited acquisition proposals, one from Longkloof Limited ("Longkloof"), New Frontier's largest shareholder owning approximately 15.7% of the Company's outstanding shares, and the other from Manwin Holding SARL ("Manwin"), both seeking to purchase the Company as it began to rebound.  *Id.* ¶ 35.

The interest of Longkloof in acquiring the Company in January, 2012, sparked a turbulent sales process.  *Id.* ¶ 45.  On January 30, 2012, Adam Rothstein, acting on behalf of Longkloof, indicated that an investment group led by Longkloof was interested in pursuing an acquisition of New Frontier.  On February 7, 2012, Longkloof indicated its continuing interest in an acquisition and its intent to possibly seek to change the Board composition at the next annual shareholder meeting.  *Id.* ¶ 46.

Upon receiving the indication of interest, the Board formed a Special Committee to consider Longkloof's interest, as well as consider strategic alternatives for the Company.  *Id.* ¶ 47.  The Special Committee was led by Individual Defendant Alan Isaacman ("Isaacman"), who had been a New Frontier director since 1999.  *Id.* ¶¶ 15, 47.  The other members of the Special Committee were Individual Defendants and New Frontier directors Melissa Hubbard ("Hubbard"), Hiram J. Woo ("Woo"), Walter Timoshenko ("Timoshenko"), and former director and non-defendant David M. Nicholas ("Nicholas").  *Id.* ¶¶ 16-18, 47.

On March 9, 2012, Longkloof submitted an indication of interest to acquire the Company for $1.35 per share in cash.  Conflict between Longkloof and the Board developed rapidly in negotiations, and by the end of March, Longkloof began to threaten to use its position as a substantial shareholder of the Company to commence a proxy contest.  *Id.* ¶ 48.

On March 22, 2012, Manwin submitted an indication of interest to acquire the Company for $1.50 per share in cash.  Also in late March, LFP Broadcasting, LLC ("LFP Broadcasting") contacted New Frontier's Chief Executive Officer and Chairman of the Board at the time, Michael Weiner ("Weiner"), to express interest in a potential transaction with the Company.  *Id*. ¶ 5, 49.  LFP Broadcasting operates as a subsidiary of LFP, Inc., the flagship of the adult entertainment empire owned by Larry Flynt ("Flynt").  *Id*. ¶ 6.  On April 16, 2012, LFP Broadcasting verbally expressed to Avondale Partners LLP ("Avondale"), which the Special Committee had retained as its financial advisor on March 30, 2012, that it was interested in acquiring the Company for $1.60 per share in cash.  *Id*. ¶¶ 38, 49, 70(g).  The Company had unsuccessfully courted acquisition proposals from LFP Broadcasting in 2010 and 2011.  *Id*. ¶ 44.

On April 23, 2012, the Special Committee was reduced to Isaacman, Hubbard and Timoshenko, removing Woo and Nicholas ostensibly in order to make the committee a "more appropriate and manageable size."  *Id*. ¶ 50.  After receiving bids from Longkloof, Manwin and LFP Broadcasting, which were publicly announced, on May 3, 2012, the Special Committee determined to conduct a "mini auction" in which Avondale would contact a select group of strategic and private equity buyers to solicit interest in an acquisition of New Frontier.  *Id*. ¶ 51. Avondale apparently contacted over twenty potential buyers after being authorized by the Special Committee to so do on May 8, 2012, but it is unknown what, if anything was discussed in the course of these contacts.  *Id*. ¶ 52.

On May 31, 2012 the Company filed a lawsuit against Longkloof, accusing Longkloof of attempting to bypass the Special Committee's sales process and coerce the Board into giving it preferential treatment.  Longkloof then filed counterclaims on June 11, 2012, alleging among

other things, that the Board breached its fiduciary duties with respect to its actions in response to Longkloof's unsolicited offer to acquire the Company. *Id*. ¶ 53.

On July 6, 2012, the Special Committee was again restructured, with Woo reclaiming his place on the committee. Nicholas was the only original member of the committee who continued to be excluded. *Id*. ¶ 54.

On July 11, 2012 the Company entered into a settlement agreement with Longkloof in which Longkloof agreed to pursue a sale of the Company only through a consensual acquisition. *Id*. ¶ 55. On August 22, 2012, the Special Committee concluded that it believed Longkloof and LFP Broadcasting to be the "only viable bidders with which to continue to pursue a transaction." From this point forward, however, it became clear that the Isaacman-led Special Committee was solely interested in entering into a deal with LFP Broadcasting. *Id*. ¶ 56.

On September 15, 2012, the Company terminated then CEO and Chairman of the Board Weiner's employment, accusing him of being allied with Longkloof. *Id*. ¶ 57. Weiner was replaced as Chairman by Isaacman. New Frontier Press Release, Sept. 18, 2012. On September 29, 2012, Nicholas, who had already been targeted as the only independent director kept from serving on the Special Committee, resigned from the Board after being asked for his resignation. Complaint ¶ 57; Form 8-K (filed Oct. 4, 2012). Weiner resigned from the Board on October 10, 2012. Form 8-K (filed Oct. 16, 2012).

In an October 8, 2012 letter to the Board, Nicholas lambasted the Board's actions both with regard to him and Weiner, as well as to Longkloof:

> I disagree with your continuous attempts to portray yourselves as saviors of the company for filing the Longkloof lawsuit and to cast my opposition to the lawsuit as an expression of favoritism towards Longkloof. A board that was interested in maximizing shareholder value would not have wasted hundreds of thousands of dollars to sue a bona-fide (acquirer) and instead would have attempted to negotiate with them to raise their offer price. My intent has always been to obtain

the best and highest price for the company -- whether from Longkloof or otherwise.

Complaint ¶ 58.

With Weiner and Nicholas gone from the Company, the Board and Special Committee, now both chaired by Isaacman, steered the sales process towards a deal with LFP Broadcasting. *Id*. ¶ 59.   Isaacman has a long-time relationship with Flynt, stemming back to 1988 when Isaacman represented Flynt in the Supreme Court case between Flynt's Hustler Magazine and Jerry Falwell.  *Id*. ¶ 6.  Instead of negotiating in the best interest of the Company's shareholders, the Board brought the tumultuous and flawed sales process to a close by agreeing to the Proposed Transaction with Isaacman's long-time associate Flynt on October 15, 2012.  *Id.* ¶ 59.

On October 15, 2012, the Company announced that it had entered into a merger agreement with LFP Broadcasting pursuant to which LFP Broadcasting, through Flynt Broadcast, Inc., a wholly-owned subsidiary of LFP Broadcasting that was created for the purposes of effectuating the Proposed Transaction, commenced a tender offer to acquire all of the outstanding shares of New Frontier for $2.02 per share in cash along with one contingent right per share to receive a contingent cash payment of up to six additional cents per share depending upon the extent to which New Frontier's available cash balance at the closing of the tender offer exceeds $11,514,000.  The tender offer is set to expire at 12:00 midnight, New York City time, on Tuesday, November 27, 2012.  *Id*. ¶¶ 3, 21, 36.

In addition, as part of the Merger Agreement, the Individual Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company. *Id*. ¶ 60.  Section 6.04 of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in

6

excess of the amount offered by LFP Broadcasting. Section 6.04(a) demands that the Company terminate any and all prior or on-going discussions with other potential acquirers. *Id.* ¶ 61.

Pursuant to section 6.04(d) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Company must notify LFP Broadcasting of the bidder's identity and the terms of the bidder's offer.  Thereafter, section 6.04(d) demands that should the Board determine to enter into a superior competing proposal, it must grant LFP Broadcasting three days in which the Company must negotiate in good faith with LFP Broadcasting (if LFP Broadcasting so desires) and allow LFP Broadcasting to amend the terms of the Merger Agreement to make a counter-offer so that the superior proposal is no longer superior.  In other words, the Merger Agreement gives LFP Broadcasting access to any rival bidder's information and allows LFP Broadcasting a free right to eliminate any superior offer simply by matching it.  *Id.* ¶ 62.  The Merger Agreement also provides that a termination fee of $1 million must be paid to LFP Broadcasting by New Frontier if the Company decides to pursue the competing offer. *Id.* ¶ 63.

LFP Broadcasting is also the beneficiary of a "Top-Up" provision that ensures that LFP Broadcasting gains the shares necessary to effectuate a short-form merger.  Pursuant to the Merger Agreement, if LFP Broadcasting receives 90% of the shares outstanding through its tender offer, it can effect a short-form merger.  In the event LFP Broadcasting fails to acquire the 90% required, the Merger Agreement also contains a "Top-Up" provision that grants LFP Broadcasting an option to purchase additional shares from the Company in order to reach the 90% threshold required to effectuate a short-form merger. *Id.* ¶ 64.

On October 29, 2012 the Company filed the Recommendation Statement, Schedule 14D-9, with the SEC in connection with the Proposed Transaction ("Recommendation Statement"). *Id.* ¶¶ 7, 66.   The Recommendation Statement, which recommends that New Frontier

shareholders tender their shares in the Proposed Transaction, fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision as to whether to tender their shares in the tender offer. *Id*. ¶¶ 66-71.

## III.   ARGUMENT

In the Tenth Circuit, courts look to four factors to determine whether to grant injunctive relief: (1) plaintiff's likelihood of success on the merits; (2) the threat of irreparable harm in the absence of injunctive relief; (3) the balance between that harm and the harm injunctive relief would cause Defendants; and (4) whether the injunction would be adverse to the public interest. *Gandy v. Zavaras*, 09-CV-00205-CMA-KMT, 2009 WL 5064447, at *2 (D. Colo. Dec. 16, 2009) (quoting *ACLU v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999)). *See also Pinson v. Pacheco*, 42 4 Fed. Appx. 749, 753-754 (10th Cir. 2011) (same).

In making this evaluation, courts are to keep in mind the "fundamental principle" of preliminary injunctive relief under the Federal Rules of Civil Procedure, which is "to preserve the relative positions of the parties until a trial on the merits can be held." *Bray v. QFA Royalties, LLC*, 486 F. Supp. 2d 1237, 1243-44 (D. Colo. 2007) (citing *O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004)(*en banc*), *aff'd and remanded, Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

As discussed below, Plaintiff has satisfied all of the criteria for granting an injunction.

### A.   Plaintiff Has Demonstrated A Substantial Likelihood Of Success On His Claims That The New Frontier Board Breached Its Fiduciary Duties To Stockholders

Plaintiff must demonstrate a substantial likelihood of success on the merits.  Thus, the court need not decide whether the movant will ultimately prevail on the merits.  The Tenth Circuit has adopted the Second Circuit's liberal definition of the 'probability of success'

requirement." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003) (quoting *Otero Sav. & Loan Ass'n v. Federal Reserve Bank*, 665 F.2d 275, 278 (10th Cir.1981)). Accordingly, where the moving party has established that the three irreparable harm factors tip decidedly in its favor, the "probability of success requirement" is somewhat relaxed. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003). *See also Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001) (same); *Continental Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 781–82 (10th Cir. 1964) (same). In such cases, "[t]he movant need only show 'questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation.'" *Heideman*, 348 F.3d at 1188-89 (quoting *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1199 (10th Cir. 1992)).

As discussed below, Plaintiff has demonstrated a substantial likelihood of success on his claim that the Board breached its fiduciary duties by failing to disclose all material information necessary for New Frontier shareholders to make an informed decision on whether to tender their shares.

### 1. Plaintiff Has Demonstrated A Substantial Likelihood Of Success On His Claim That The Board Breached Its Fiduciary Duty Of Candor By Issuing A Materially Misleading Recommendation Statement[2]

Plaintiff has demonstrated a substantial likelihood of success on his claim that the Board breached its fiduciary duty of candor by issuing a materially misleading recommendation statement, because the Board omitted from its Discounted Cash Flow Analysis ("DCF"), material definitions and assumptions necessary for investors to understand the Company's valuation.

---

[2] Colorado courts often look to Delaware corporate jurisprudence in defining and analyzing Colorado corporate law. *See Pueblo Bancorporation v. Lindoe, Inc.,* 63 P.3d 353, 365 (Colo. 2005)( Because the General Assembly enacted Colorado's corporate code based largely on the Model Act [i.e. Delaware's], the presumption is that it intended, to some degree, to place Colorado's corporate law in step with the law of other states.); *Szaloczi v. Behrmann Revocable Trust*, 90 P. 3d 835, 838-840 (Colo. 2004) (same).

Complete candor must guide corporate directors' communications with shareholders in the merger context. In Colorado, "fiduciary duties of care and loyalty give[] rise to the requirement that 'a director disclose to shareholders ***all material facts*** bearing upon a merger vote. . . .'" *Cinerama, Inc*., *v. Technicolor, Inc.*, 663 A.2d 1156, 1163 (Del. 1995) (citation omitted and emphasis added). "When stockholder action is requested, directors are required to provide shareholders with ***all information that is material*** to the action being requested and 'to provide a balanced, truthful account of all matters disclosed in the communications with shareholders.'" *Emerald Partners v. Berlin*, 726 A.2d 1215, 1223 (Del. 1999) (quoting *Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998)) (emphasis added).

If there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available," it is material and the directors must disclose it. *Arnold v. Society for Sav. Bancorp, Inc.*, 650 A.2d 1270, at 1277 (Del. 1994). Moreover, "once defendants traveled down the road of partial disclosure of the history leading up to the Merger and used the vague language described, they had an obligation to provide the stockholders with an accurate, full and fair characterization of those historic events." *Arnold*, 650 A.2d at 1280-81. Plaintiff needs not show that disclosure of the information would necessarily change their vote. *David P. Simonetti Rollover IRA v. Margolis*, 2008 WL 5048692, at *6 (Del. Ch. June 27, 2008). Rather, a fact is material and must be disclosed "if there is a substantial likelihood that a reasonable stockholder would consider it important in deciding how to vote." *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1172 (Del. 2000) (citations omitted).

10

a. **Disclosures Related to the Removal and/or Resignations of New Frontier CEO and Director Michael Weiner and Former Director David Nicholas**

The Recommendation Statement clearly omits and mischaracterizes highly material information concerning the circumstances underlying the dismissals of two key members of New Frontier's Board of Directors: former CEO and Director, Michael Weiner, and former Director and Special Committee member, David Nicholas. For example, the Recommendation Statement makes the following, cryptic and misleading, statement concerning the removal of David Nicholas from the Special Committee:

> On April, 23 2013 [*sic*] . . . the Board reconstituted the Special Committee to reduce its size from five members to three, with the continuing members being Mr. Isaacman, Ms. Hubbard and Mr. Timoshenko. Among the reasons for the reduction in size of the Special Committee at this time was the concern of the Board that, rather than being composed of all the members of the Board other than the Chief Executive Officer, a Special Committee of three independent and disinterested directors was a more appropriate and more manageable size. Mr. Isaacman continued as chairman of the Special Committee.

Recommendation Statement at 17. Similarly, the sole explanation proffered for the dismissal of former CEO and Director, Michael Weiner, in the Recommendation Statement states that, "[o]n September 15, 2012, the Board met, . . . and, following discussion, terminated the employment of Mr. Weiner as Chief Executive Officer of the Company. At this same meeting, the Board appointed Mr. Isaacman to succeed Mr. Weiner as the Chairman of the Board." Recommendation Statement at 30.

Notwithstanding the statements in the Recommendation Statement, correspondence by Michael Weiner and David Nicholas cast the circumstances surrounding their removal from New Frontier in a vastly different manner. Complaint ¶¶ 50-55. For example, David Nicholas claims that one reason he was dismissed from the Special Committee was that he opposed the Special Committee's effort to pay its own members additional fees he viewed as "excessive." *Id.* ¶ 51.

11

Another reason David Nicholas alleges he was removed from the Special Committee was his opposition to some directors' efforts to pursue litigation against Longkloof. *Id.* Similarly, Michael Weiner also contested numerous efforts undertaken by the Special Committee which, in his view, harmed New Frontier shareholders. *Id.* ¶ 55.[3]

The Recommendation Statement clearly omits material information concerning the conflicts of interest suffered by the Board and the Special Committee regarding the removal of New Frontier CEO and Director Michael Weiner and Former Director and Special Committee member David Nicholas. *See Ryan v. Tad's Enterprises, Inc.*, 709 A.2d 682, 690-691 (Del. Ch. 1996) (Disclosure of a director's interest is material if (1) the independence of judgment of a reasonable person in the director's position would be affected; and (2) that such director's individual self-interest would have affected the collective decision of the board). Thus, at a minimum, Defendants have failed to fulfill their "obligation to provide the stockholders with an accurate, full and fair characterization of those historic events." *Arnold*, 650 A.2d at 1280-81 (citations omitted).

### b.  Disclosures Related to Avondale Partner's Financial Analyses

The Recommendation Statement is materially misleading in that it fails to disclose certain definitions and assumptions underlying the financial analyses supporting the fairness opinion of the Board's financial advisor, Avondale Partners.  Most importantly, with respect to Avondale Partners's DCF, the primary metric underlying the Company's total valuation, the Recommendation Statement fails to disclose the definitions and uses of several key components of the DCF, including disclosing to investors its definition of cash flows; its application of stock-

---

[3] Similarly, neither the Recommendation Statement, nor any other Company filing, explains the reason why Defendant Hiram J. Woo was removed from the original Special Committee on April 23, 2012, Recommendation Statement at 17, only to be added again to the Special Committee on July 6, 2012. Recommendation Statement at 26.

based compensation expenses ("SBC") and net operating loss carry forwards ("NOLS"); and the rationale behind employing an unusually high discount rate range of 20%-30%.

First, the Recommendation Statement fails to define "cash flows" as used by Avondale Partners in its DCF Analysis. Recommendation Statement, p. 44. Investors are left to guess whether Avondale Partners used unlevered after-tax free cash flow, levered cash flow, some measure of earnings, or even dividends as a metric of cash flow. Without a definition of cash flow, the numbers used in the Management I Forecast and Management II Forecast are rendered meaningless, as a Discounted Cash Flow Analysis can provide widely different numerical results depending on the definition of "cash flows" provided. *See, e.g.*, *In re Celera Corp. S'holder Litig.*, 2012 WL 1020741, at *23 (Del. Ch. Mar. 23, 2012) (noting that "[a]lso valuable . . . was the additional information regarding certain assumptions Credit Suisse made in its DCF analysis.")

Second, the Recommendation Statement does not inform investors as to whether Avondale Partners treated SBC as a cash or non-cash expense in its discounted cash flow analysis.[4] Recommendation Statement, p. 44. If Avondale Partners' accounting in its DCF defined SBC as a cash expense, then the provided DCF analysis states a much lower DCF, and thus a lower valuation of the Company, then whether a non-cash SBC was used. The potential effects on the analysis are substantial. *See, e.g.*, *Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*, 2009 WL 4725866, at *1 (Del. Ch. Nov. 18, 2009) (holding that a financial advisor's failure to disclose how stock based compensation expenses were treated in the DCF analysis established "a colorable disclosure claim"). Under the Company's Management I

---

[4] There is debate within the valuation community as to whether SBC expenses should be treated as cash or non-cash expenses. So long as the method used is adequately disclosed, either may be appropriate.

Forecast, the SBC expense is expected to be a range from $174,100 to $230,100 per year. Recommendation Statement, p. 49. The SBC thus represents between 15% and 36.6% of the total net income that the company is expected to generate in the years contained in the DCF. Similarly, in the Management II Forecast, the SBC represents well over a third of the projected total net income for the years in which there is projected to be a positive net income. Recommendation Statement, p. 51. Thus, depending on Avondale Partners' SBC recognition method, the projected total net income, a key indicator of a Company's value, may be between 15% and 36.6% higher or lower.

Third, the Company's DCF analysis is materially misleading because the Recommendation Statement fails to indicate whether Avondale Partners accounted for NOLS in its calculation of free cash flow, or in any other part of its DCF analysis. Recommendation Statement, p. 44. NOLS, tax assets, allow the company to shield taxable income from taxation, resulting in higher income. Thus, if the value of the NOLS was not included in Avondale Partners' DCF, the income, and the DCF, should be much higher than provided. This would result in a substantially higher valuation of the Company. Specifically, the Company has accumulated approximately $5.4 million of NOLs in the form of write-offs for federal taxes. 2011 Form 10-K, filed with the SEC on July 19, 2012, p. F-29. This amount represents more than 1/4 of the total enterprise value of the company,[5] as offered in the Solicitation.

Finally, the Recommendation Statement does not inform investors as to the rationale underlying Avondale Partners' unusually high assumed discount rate range of 20%-30%. Recommendation Statement, at p. 44. Such a discount is extremely high for a publicly traded company with historical operations and assets of value. The Recommendation Statement gives

---

[5] The Enterprise Value is achieved by multiplying the offering price of $2.02 per common share times the number of outstanding shares.

no indication of the inputs or assumptions utilized by Avondale Partners to arrive at such a high discount rate. Avondale Partners' rate results in discounting cash flows generated only five years out by a massive 56%-69%.[6] Investors thus deserve to know why the value of the Company was depressed by such a large margin.

Therefore, the Board breached its duty of candor by distributing a financial analysis in its Recommendation Statement that portrays a confusing and materially inaccurate picture of New Frontier's value by failing to give investors a reasonable basis to understand the financial analysis.

> 2.    **Plaintiff Has Demonstrated A Substantial Likelihood Of Success On His Claim That The Board Violated Sections 14(d)(4) And 14(e) Of The Exchange Act And The Rules Promulgated Thereunder**

Sections 14(d)(4) and 14(e) of the Exchange Act require full and complete disclosure in connection with tender offers. Specifically, Section 14(e) provides that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

15 U.S.C. § 78n(e) (1988).

Section 14(d)(4) further provides that: "Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may

---

[6] Using mid-period discounting.

prescribe as necessary or appropriate in the public interest or for the protection of investors." *Id.*

These regulations aim to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure pursuant to a tender offer. To find a violation of Section 14(e), plaintiff must show a "material nondisclosure in connection with the tender offer." *Rice v. Hamilton Oil Corp.*, 658 F. Supp. 446, 448 (D. Colo. 1987).

Plaintiff has demonstrated a substantial likelihood of success on his claim that New Frontier violated Sections 14(d)(4) and 14(e) of the Exchange Act by making misleading statements and omissions in its Recommendation Statement pursuant to the tender offer as detailed *supra*, Part I.   As set out above, these misleading statements and omissions were material.  Further, the material omissions in the Recommendation Statement as described in Part I, *supra*, are sufficient to show liability under Section 14(e), as defendants negligently drafted the Recommendation Statement and defendants' filing has caused injury to Plaintiff necessitating the injunctive relief requested here.

Federal Courts routinely enjoin matters in which shareholders are required to make decisions concerning corporate matters pursuant to Section 14 of the Exchange Act where, as here, material information was omitted from the public documents soliciting shareholder action. In *Lichtenberg v. Besicorp Group, Inc.*, 43 F. Supp. 2d 376 (S.D.N.Y. 1999), *app. dism.,* 204 F.3d 397 (2d Cir. 2000), the United States District Court for the Southern District of New York effectively enjoined a cash-out merger due to defendants' violations of Section 14(a) until modification of the merger terms that the shareholders would have demanded had they been fully informed occurred. The violations of Section 14(a) in question in this case arose from material

omissions and misstatements in the Schedule 14D filed with the Securities and Exchange

Commission pursuant to the proposed merger.  In issuing its injunction, the Court held:

> The irreparable harms alleged by plaintiffs are: (1) the deprivation of the shareholders' opportunity to make a fully informed decision and vote with respect to the merger; and (2) the consequential loss of standing to adjudicate the Bansbach and Lichtenberg Actions. Both threatened harms were actual and imminent. By virtue of the time restrictions present here (i.e., the inability to amend the Proxy before the merger vote was to take place), ***the shareholders were forced to vote on the basis of a materially misleading Proxy. This alone establishes the irreparable harm sought to be prevented by § 14(a) of the Act***. "Irreparable injury results from the use of [materially] false and misleading proxies when the free exercise of shareholders' voting rights will be frustrated." *Krauth v. Executive Telecard, Ltd.*, 890 F. Supp. 269, 287 (S.D.N.Y.1995) (citing *J.I. Case Co. v. Borak*, 377 U.S. 426, at 431, 84 S.Ct. 1555 (1964)).

*Id.* at 390 (emphasis added).  *See also, e.g., Bender v. Jordan*, 439 F. Supp. 2d 139

(D.D.C. 2006) (enjoining shareholder meetings and further proxy solicitations due to

materially misleading disclosures in the proxies in violation of Section 14(a)); *Crouch v.*

*Prior*, 905 F. Supp. 248 (D.C.V.I. 1995) (enjoining change of board membership

pursuant to a shareholder vote based on materially misleading disclosures in the proxy in

violation of Section 14(a)).[7]

Accordingly, this factor also weighs in favor of granting a preliminary injunction.

---

[7] *See also, e.g.*, *Chambers v. Briggs & Stratton Corp.*, 863 F. Supp. 900 (E.D. Wis. 1994) (enjoining shareholder vote on new board of directors due to materially misleading disclosures in the proxy in violation of Section 14(a)); *Kaufman v. Cooper Companies, Inc.*, 719 F. Supp. 174 (S.D.N.Y. 1989) (same); *Metro Mobile CTS, Inc. v. Centel Corp.*, 694 F. Supp. 806 (D. Kan.1988) (enjoining annual shareholders' meeting due to materially misleading disclosures in the proxy in violation of Section 14(a)); *Lovenheim v. Iroquois Brands, Ltd.*, 618 F. Supp. 554 (D.D.C. 1985) (enjoining solicitation of proxies for upcoming shareholders' meeting that included materially misleading disclosures in violation of Section 14(a)); *Canadian Javelin Ltd. v. Brooks*, 462 F. Supp. 190 (S.D.N.Y. 1978) (same); *Berkman v. Rust Craft Greeting Cards, Inc.*, 454 F.Supp.787 (S.D.N.Y.1978) (same); *Calumet Industries, Inc. v. MacClure*, 464 F. Supp. 19 (N.D. Ill. 1978) (enjoining exercise of consents due to materially misleading disclosures in proxy in violation of Section 14(a)).

**B.**     **Plaintiff And New Frontier's Shareholders Will Suffer Irreparable Harm If Defendants Are Not Required To Disclose All Material Information Necessary For Them To Make An Informed Decision Of Whether To Tender Their Shares**

Absent an injunction, New Frontier's shareholders face imminent, irreparable injury based on the Board's fiduciary duty breaches, which prevented other potentially interested parties from submitting superior offers.  Permitting the Proposed Transaction to proceed without ameliorative disclosures will deprive New Frontier's shareholders of their right to make an informed decision about whether to tender their shares in the Proposed Transaction.  Given that the Board breached its fiduciary duty by issuing the materially deficient Recommendation Statement, the only meaningful way to redress defendants' wrongdoing is for this Court to enjoin the Proposed Transaction until Defendants cure their wrongdoing.

Here, the Company's shareholders have not been provided with necessary information to adequately decide whether to tender their shares or not.  Courts have consistently held that stockholder decisions on whether to cash out their shares made pursuant to insufficient disclosures constitutes irreparable harm warranting injunctive relief.  *See, e.g., ODS Techs., L.P. v. Marshall*, 832 A.2d 1254, 1262 (Del. Ch. 2003) ("[t]he threat of an uninformed stockholder vote constitutes irreparable harm."); *In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001) ("[O]ur cases recognize that it is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected.").

Accordingly, the Company's shareholders stand to be harmed irreparably if the Proposed Transaction is not enjoined.

###### C.       The Balance of Harms Favors an Injunction

In balancing the harms, the Court must weigh the potential harm to Plaintiff if the injunction is not issued against the potential harm to the Defendants if injunctive relief is granted.  Here, the equities decidedly favor the issuance of an injunction.

The failure of the Board to fulfill its fiduciary duties in connection with the Proposed Transaction will forever deprive the Company's shareholders of their right to make an informed decision on whether to tender their shares. The Company's shareholders will be irreparably harmed if the Proposed Transaction is not enjoined as the Company's shareholders are threatened with a cash-out of their company for inadequate consideration and pursuant to a vote based on a materially deficient Recommendation Statement.

By contrast, there will be little, if any, harm to Defendants and they will be in no worse position than they were in before they announced the Proposed Transaction.  Thus, the balance of hardships tips decidedly in favor of granting injunctive relief.  *See, e.g., Robert M. Bass Group, Inc. v. Evans*, 552 A.2d 1227, 1247 (Del. Ch. 1988) (granting preliminary injunction and holding that "defendants have not shown why if the transaction is ultimately found to be valid, it could not be revived and allowed to go forward at that time").  Granting preliminary injunctive relief will merely force Defendants to abide by their fiduciary obligations to provide full and fair disclosures to the Company's shareholders who may then make an informed decision concerning whether to tender their shares.  *See American Carriers, Inc. v. Baytree Investors, Inc.*, 685 F. Supp. 800, 811 (D. Kan. 1988) (In considering violation of Section 14(d) in connection with a tender offer, finding the balance of harms tips "decidedly" in plaintiff's favor as "The preliminary injunction only requires defendants to obey the law").

19

Accordingly, the balance of hardships, thus, tips decidedly in favor of granting injunctive relief.

### D.    An Injunction is Not Adverse to the Public Interest

The fourth factor requires the Court to evaluate whether a preliminary injunction is adverse to the public interest.  Plaintiff alleges that Defendants violated the federal securities laws and fiduciary duties to the Company's shareholders. Given the significant size of New Frontier and its many shareholders, the issuance of an injunction will benefit many individuals and entities by ensuring they are properly informed in deciding whether to tender their shares and approve the Proposed Transaction. *See, e.g., American Carriers, Inc.,* 685 F. Supp. at 811 (finding that enjoining defendants from further violations of Section 14(d) would serve the public interest in "preventing uninformed securities transactions").   Moreover, a significant number of New Frontier's shareholders do not have the wherewithal to bring their own actions.

In light of these considerations, this factor weighs in favor of issuing a brief injunction to extend the tender offer long enough for Defendants to make the required material disclosures and for shareholders to digest them before deciding whether to tender their shares. Indeed, as discussed above, Defendants have contemplated extending the tender offer if an insufficient number of shares is tendered.

## IV.    NO BOND IS REQUIRED

Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure:

The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Courts in this circuit have discretion in requiring a bond under this rule. *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) (holding that court has discretion to determine that security is unnecessary in absence of proof showing likelihood of harm); *see also RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir. 2009) ("trial courts have wide discretion under Rule 65(c) in determining whether to require security") (internal citation omitted).

In interpreting Rule 65(c), Courts have held that, in appropriate cases, a substantial bond may be completely unnecessary. *See*, *e.g.*, *Am. Carriers, Inc. v. Baytree Investors, Inc.*, 685 F. Supp. 800, 801 (D. Kan. 1988) (granting a preliminary injunction after posting of $15,000 bond by plaintiffs).

Because Plaintiff has sued in a representative capacity to redress breaches of fiduciary duty, he respectfully submits that no bond, or at most, a nominal bond be required. Under Delaware law, which Colorado Courts regularly look to in resolving corporate matters, a bond is often not required in instances such as this.[8]

Indeed, in one case the Delaware Chancery Court enjoined a shareholder vote concerning

---

[8] *See, e.g.,* Trial Order at 101-02, *Steinhardt v. Howard-Anderson*, C.A. No. 5878-VCL, 2011 WL 229777 (Del. Ch. Jan. 24, 2011) (ordering no bond be posted; "The plaintiffs have sued in a fiduciary capacity. . . . While there is certainly some risk of some negative impact that might occur to the deal because of the delay that I have imposed, that is more than counter-balanced by the benefit to the stockholders. . . ."); Trial Order, *In re Art Tech. Group, Inc. S'holders Litig.*, Cons. C.A. No. 5955-VCL, 2010 WL 5184244 (Del. Ch. Dec. 21, 2010) (injunction not conditioned on a bond); *ODS Techs. LP v. Marshall*, 832 A.2d 1254, 1264 (Del. Ch. 2003) (enjoining corporate transaction and requiring bond of $5,000); *Steinberg v. The Children's Place, Inc.*, 1982 WL 17845, at *4 (Del. Ch. Jan. 25, 1982) (issuing a temporary restraining order precluding the consummation of a corporate merger "so as to maintain the *status quo* until the situation can be analyzed in further depth and setting bond at "$10,000"); *ODS Techs., L.P. v.* Marshall, 832 A.2d 1254 (Del. 2003) (ordering plaintiff post a secured bond in the amount of $5,000 after granting a shareholder's motion to enjoin a shareholder vote due to a materially misleading 14D-9 statement); *Solar Cells, Inc. v. True N. Partners, LLC*, No. 19477, 2002 Del. Ch. LEXIS 38, at *28 (Del. Ch. Apr. 25, 2002) (ordering plaintiff-shareholder to post a $2,500 bond in connection with issuance of preliminary injunction enjoining merger).

21

the *$23 billion* merger between Caremark and CVS due to inadequate disclosures provided to the

company's shareholders. The court did not require that a bond be posted, and aptly noted that:

> Caremark shareholders face irreparable harm if they are forced to make their
> decision without adequate time to consider relevant information revealed by
> defendants almost upon the eve of a vote. Finally, in considering the balance
> of equities between plaintiffs and defendants, ***it is relevant to note that any***
> ***wounds to defendants are entirely self-inflicted.***

*La. Mun. Police Employees' Ret. Sys. v. Crawford*, Civil Action Nos. 2635-N, 2633-N, 2007

WL 625006, at *1 (Del. Ch. Feb. 13, 2007); *see also La. Mun. Police Emps. Ret. Sys. v.*

*Crawford*, 918 A.2d 1172, 1192 (Del. Ch. 2007) (again enjoining same multi-billion dollar

merger for 20 days for inadequate disclosure problems; no bond required).

Other Federal Courts have also waived the bond requirement in certain circumstances

similar to the instant one. *See, e.g.*, *Temple Univ. v. White*, 941 F.2d 201, 219-20 (3d Cir. 1991)

(equities of potential hardships weighed in favor of waiving bond requirement); *Int'l Controls*

*Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974) (holding that court may dispense with

security when there is no proof of likelihood of harm to party enjoined).

Here, it would be patently unfair to require Plaintiff to post more than a nominal bond in

an effort to prevent the Company's Board, which owes Plaintiff and other New Frontier

shareholders legal obligations under the federal securities laws, from violating such laws.  In

fact, given that the requested injunction actually benefits Defendants in their capacity as directors

of New Frontier's shareholders – by ensuring that they are in compliance with the federal

securities laws, Defendants cannot prove any harm here; much less a harm that outweighs the

harm to the shareholders if an injunction is not issued. *See*, *e.g.*, *In re MONY Group, Inc.*

*S'holder Litig*., 852 A.2d 9, 32-34 (Del. Ch. Feb. 18, 2004) (issuing preliminary injunction

enjoining proposed merger in light of "'irreversible harm which would occur by permitting a

stockholder vote on a merger to proceed without all material information necessary to make an informed decision,'" and finding that "an injunction would remedy the wrong caused to the [s]tockholders' right to cas[t] a vote after a full and fair disclosure of material facts"). As discussed above, the proposed injunction only prevents Defendants from continuing to violate federal securities laws.  Accordingly, no bond should be required as it would be unfair to require Plaintiff, an individual shareholder of New Frontier, to post a bond in an effort to prevent Defendants from violating the law.

Moreover, Defendants cannot make any showing that any temporary delay would cause Defendant LFP to abandon the plan to merge with New Frontier.  Rather, an injunction will maintain the status quo and prevent Defendants from harming shareholders through their continued breaches of fiduciary duty.   The Court should therefore order no more than a nominal bond, if any at all.

In the event the Court is inclined to require the posting of a bond, under the circumstances, Plaintiff respectfully requests that the bond be nominal.

**V.       GOOD CAUSE EXISTS FOR ORDERING A HEARING ON THE PRELIMINARY INJUNCTION PRIOR TO THE EXPIRATION OF THE TENDER OFFER ON NOVEMBER 27, 2012**

Absent an expedited injunction schedule, Plaintiff will be effectively denied an opportunity to present his case for injunctive relief in advance of expiration of the tender on November 27, 2012.  For that reason, the authorities are in accord: the Advisory Committee Notes to the Federal Rules of Civil Procedure, leading commentators such as Wright and Miller, and numerous courts all agree that these circumstances warrant the expedited scheduling of the preliminary injunction hearing under Rule 26(d) of the Federal Rules of Civil Procedure.  *See, e.g.*, Advisory Committee Note to 1993 Amendment to Rule 26(d); 8 Charles Alan Wright &

23

Arthur R. Miller, *Federal Practice and Procedure* §2046.1 (2d ed. 1987); *Pod-Ners, LLC v. Northern Feed & Bean*, 204 F.R.D. 675, 676 (D. Colo. 2002) ("expedited discovery is appropriate 'in some cases, such as those involving requests for a preliminary injunction'").

In order for the critical and material issues to be addressed by this Court, a hearing must take place prior to the expiration of the tender offer.  As such, good cause exists for an expedited injunction schedule.

**VI.      CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this Court grant this Motion for Preliminary Injunction and Expedited Proceedings.

Plaintiff further requests oral argument on this motion due to the time sensitive nature of the relief sought.  The tender offer at issue is set to expire on November 27, 2012 and, thus, time is of the essence.  Plaintiff and New Frontier's other public shareholders will be severely prejudiced and irreparably harmed if forced to make an uninformed decision on whether to tender their shares in the tender offer.  Accordingly, Plaintiff also respectfully requests that the Court set oral argument on the instant motion prior to November 27, 2012.

Dated: November 19, 2012                    Respectfully submitted,

                                                                                DYER & BERENS LLP

                                                                                 ROBERT J. DYER III
                                                                                 JEFFREY A. BERENS

                                                        /s/ JEFFREY A. BERENS_____
                                                    303 East 17th Avenue, Suite 300
                                                    Denver, CO 80203
                                                    Tel: (303) 861-1764
                                                    Fax: (303) 395-0393
                                                    bob@dyerberens.com
                                                    jeff@dyerberens.com

LEVI & KORSINSKY, LLP
Shannon L. Hopkins, Esq.
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
shopkins@zlk.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2012, I electronically filed the foregoing **MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR EXPEDITED PROCEEDINGS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List and further certify the foregoing document was served via e-mail on the following counsel, who are not CM/ECF participants:

Stuart N. Bennett
Jones & Keller, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
Email: sbennett@joneskeller.com

Mark A. Vander Laan
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Email: mark.vanderlaan@dinsmore.com

<div style="margin-left:45%">

*s/ Jeffrey A. Berens*
Jeffrey A. Berens
Attorney for Plaintiff
DYER & BERENS LLP
303 East 17th Avenue, Suite 300
Denver, CO  80203
Telephone: (303) 861-1764
FAX: (303) 395-0393
Email: jeff@dyerberens.com

</div>

26