IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02941-JLK-KLM

CRAIG TELKE, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO,
WALTER TIMOSHENKO,
LFP BROADCASTING, LLC, and
FLYNT BROADCAST, INC.,

    Defendants.

---

## DEFENDANTS LFP BROADCASTING, LLC AND FLYNT BROADCAST, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants LFP Broadcasting, LLC ("LFP") and Flynt Broadcast, Inc. ("Flynt") (collectively, the "Flynt Defendants") hereby move to dismiss the claims of Plaintiff Craig Telke ("Plaintiff") in the Complaint "(Complaint") against the Flynt Defendants with prejudice. As grounds for their motion to dismiss, the Flynt Defendants state as follows:

1

I.  **INTRODUCTION**

Plaintiff's Complaint fails to make any substantive allegations of wrongdoing against the Flynt Defendants. In fact, Plaintiff has not even alleged the critical element of his aiding and abetting claim – that the Flynt Defendants "knowingly participated" in any breach of fiduciary duty by New Frontier's directors. Nor has Plaintiff alleged facts to show that the Flynt Defendants participated in New Frontier's decision-making process or manipulated New Frontier's board into breaching its fiduciary duties.

On the contrary, Plaintiff's own allegations establish that the Flynt Defendants did nothing more than engage in an appropriate arm's-length negotiation with New Frontier. Accordingly, Plaintiff has failed to allege any basis on which to impose liability on the Flynt Defendants, and his claims against the Flynt Defendants should be dismissed.

II. **FACTUAL ALLEGATIONS**

Plaintiff asserts a single claim against the Flynt Defendants – aiding and abetting breach of fiduciary duties. (Complaint, Count IV, ¶¶ 94-96). Plaintiff's claim arises out of the Flynt Defendants' October 15, 2012 proposed cash offer to acquire all of the issued and outstanding shares of New Frontier's common stock at a share price of $2.02, plus a contingent cash payment not to exceed $.06 per share (the "Tender Offer"). (Complaint, ¶ 3).

The Complaint describes a series of competitive bids for New Frontier beginning in March, 2012. As early as January 30, 2012, Longkloof Limited ("Longkloof"), who was New Frontier's largest shareholder, expressed interest in acquiring New Frontier. (Complaint, ¶ 46). In response, New Frontier's Board of Directors formed a Special

2

Committee, comprised solely of outside directors. (Complaint, ¶ 47). Then, on March 9, 2012, New Frontier received an unsolicited offer to purchase the Company from Longkloof. (Complaint, ¶ 48). Longkloof's offer was made at a price of $1.35 per share. (*Id.*)

Soon thereafter, on March 22, 2012, New Frontier received a second unsolicited offer, this time from Manwin Holding SARL ("Manwin"). (Complaint, ¶ 49). Manwin's offer was made at a price of $1.50 per share. (*Id.*)

In light of the competing offers, the Special Committee asked its financial advisor, Avondale Partners LLP ("Avondale"), to conduct a "mini auction" with strategic and private equity buyers. (Complaint, ¶ 51). Avondale then contacted "over 20 potential buyers." (Complaint, ¶ 52). Following these efforts, the Special Committee concluded that Longkloof and LFP were the "only viable bidders with which to continue to pursue a transaction." (Complaint, ¶ 56).

As New Frontier continued to consider its strategic alternatives, Michael Weiner was terminated as New Frontier's Chief Executive Officer. (Complaint, ¶ 57). David Nicholas also resigned as a director of New Frontier. (*Id.*) Nicholas and Weiner then engaged in a public letter-writing campaign criticizing the remaining New Frontier directors. (Complaint, ¶ 58). Notably, none of the letters from Nicholas and Weiner (which were filed by New Frontier as part of an 8-K) mention LFP or Flynt.

According to Plaintiff, the Board and Special Committee then "steered the sales process towards a deal with LFP Broadcasting." (Complaint, ¶ 59). There is no allegation that the Flynt Defendants forced New Frontier to take this action. On October

3

DEN-33104-1

15, 2012, LFP and New Frontier entered into an Agreement and Plan of Merger ("Merger Agreement") which outlined the Flynt Defendants' Tender Offer. (Complaint, ¶ 36). Specifically, the Flynt Defendants offered to purchase the shares of New Frontier for a cash price of $2.02 per share, plus a contingent cash payment right for each common share. (*Id.*)

The Merger Agreement contained a number of common deal provisions, such as: (i) a termination fee of $1 million, or approximately 3% of the value of the Tender Offer; (ii) a no solicitation clause that limited, but did not prevent, New Frontier's ability to consider alternative offers; (iii) a matching rights provision which allowed the Flynt Defendants to match any competing offers made to New Frontier; and (iv) a top-up option which would permit the Flynt Defendants to complete their merger with New Frontier once a certain percentage of New Frontier's shareholders agreed to the Tender Offer. (Complaint, ¶¶ 61 - 64).

In connection with the Tender Offer, on October 29, 2012, New Frontier filed a Form 14D-9 with the SEC ("Recommendation Statement"). (Complaint, ¶ 66). Plaintiff alleges that the Recommendation Statement "fails to provide the Company's shareholders with material information and/or provides them with materially misleading information...." (Complaint, ¶ 66). However, Plaintiff does not allege that the Flynt Defendants had anything to do with the Recommendation Statement.

Armed with nothing more than the foregoing allegations, which do not implicate the Flynt Defendants in any actual wrongdoing, Plaintiff then alleges that the Flynt Defendants "have aided and abetted the Individual Defendants' breaches of fiduciary

4

duties." (Complaint, ¶ 94). Plaintiff does not identify any specific action of aiding and abetting. And despite quotations from director correspondence, SEC filings, and press releases, the Flynt Defendants are nowhere to be found in the substantive allegations. Plaintiff does not even make the conclusory allegation that the Flynt Defendants "knowingly participated" in the Individual Defendants' breaches of fiduciary duty.

### III. LAW AND ARGUMENT

#### A. The Fed. R. Civ. P. 12(b)(6) standard under *Twombly* and *Iqbal*.

A motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. Fed. R. Civ. P. 12(b)(6). The Court views the complaint in the light most favorable to the plaintiff and must accept as true well-pleaded facts set forth in the complaint. Factual allegations must support legal conclusions in Plaintiff's complaint before the Court may "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

If it appears beyond doubt that the plaintiff's complaint does not state facts sufficient to "state a claim that is plausible on its face," then the claims must be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief" as required by the Federal Rules. *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

A complaint, therefore, must lay out "more than a 'formulaic recitation of the elements' of a ... claim." *Id.* at 678 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Instead, the complaint must establish "enough fact to raise a reasonable expectation that discovery will reveal evidence" to show the averments are factually plausible. *Twombly*, 550 U.S. at 556. If the "complaint does not contain any factual allegation sufficient to plausibly suggest" each essential element of the averred violation, it does not contain enough "factual content to 'nudge' [the claim] 'across the line from conceivable to plausible'" and must be dismissed. *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 570). Put simply, the Civil Rules "[do] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678.

    **B.**    **The Complaint's allegations detailing the Flynt Defendants' arm's-length negotiation are insufficient to demonstrate that the Flynt Defendants "knowingly participated" in a breach of fiduciary duty.**

In Colorado, the elements of aiding and abetting a breach of fiduciary duty are: (1) breach of a fiduciary duty owed to a plaintiff, (2) a defendant's knowing participation in the breach, and (3) damages. *Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1242 (D. Colo. 2011) (dismissing aiding and abetting claim under Fed. R. Civ. P. 12(b)(6)) (*citing Nelson v. Elway*, 971 P.2d 245, 250 (Colo. Ct. App. 1998)).

6

The crucial element of an aiding and abetting claim is a defendant's "knowing participation" in a breach of fiduciary duty. *Holmes v. Young*, 885 P. 2d 305, 309 (Colo. Ct. App. 1994); *In re Del Monte Foods Co. S'holders Litig.*, 25 A.3d 813, 836 (Del. Ch. 2011). In order to satisfy this element, a plaintiff must demonstrate that the defendant is "generally aware of his role as part of an overall illegal or tortious activity ... and knowingly and substantially assists the principal violation." *Holmes*, 885 P. 2d at 308. Aiding and abetting "requires actual knowledge and is not satisfied by reckless or negligent conduct." *Lifeblood Biomedical, Inc., Opt-In Trust v. Mann*, 423 F. Supp. 2d 1155, 1176 (D. Colo. 2006) (*citing Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1339-1340 (D. Colo. 1997)).

As to that requirement, Delaware[1] courts will only find knowing participation in limited circumstances: (1) where the terms of the transaction are so egregious or the magnitude of the side deals is so excessive as to be inherently wrongful; (2) if it appears that the defendant may have used knowledge of the breach to gain a bargaining advantage in the negotiations; or (3) where direct factual allegations support a theory that the defendant sought to induce the breach of fiduciary duty, such as through the offer of side payments intended as incentives for the fiduciaries to ignore their duties. *Morgan v. Cash*, C.A. No. 5053-VCS, 2010 Del. Ch. LEXIS 148, at *14 (Del. Ch. July 16, 2010) (*citing In re Telecommunications, Inc. S'holders Litig.*, C.A. No. 16470-NC, 2003 Del. Ch. LEXIS 78, at *2 (Del. Ch. July 7, 2003)).

---

[1] Colorado courts look to Delaware law on corporate law issues. *See Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353, 365 (Colo. 2003).

7

However, the Delaware Supreme Court has explained that "a bidder's attempt to reduce the merger price through arm's-length negotiations cannot give rise to liability for aiding and abetting." *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001). Indeed, "evidence of arm's-length negotiation with fiduciaries negate[s] a claim of aiding and abetting, because such evidence precludes a showing that the defendants knowingly participated in the breach by the fiduciaries." *In re Gen. Motors (Hughes) S'holder Litig.*, C.A. No. 20269, 2005 Del. Ch. LEXIS 65, at *24 (Del. Ch. May 4, 2005). *See also In re Frederick's of Hollywood, Inc. S'holders Litig.*, C.A. No. 15944, 1998 Del. Ch. LEXIS 111, at *4 (Del. Ch. July 9, 1998) ("an offeror who conducts arm's-length negotiations leading to an acquisition agreement cannot be said to be knowingly participating in an alleged breach of fiduciary duty by the target board"); *Weinberger v. United Fin. Corp. of Cal.*, C.A. No. 5915, 1983 Del. Ch. LEXIS 443 (Del. Ch. Oct. 13, 1983) (tender offeror could not be liable because it "simply pursued arm's length negotiations with [target] in an effort to obtain the best price it could").

Allegations of "deal protection devices" such as no solicitation provisions, matching rights, termination fees, and top-up options cannot rescue a deficient complaint by attempting to show egregious unfairness. Delaware courts have "repeatedly held that provisions such as these are standard merger terms, are not per se unreasonable, and do not alone constitute breaches of fiduciary duty." *In re 3Com S'holders Litig.*, C.A. No. 5067-CC, 2009 Del. Ch. LEXIS 215 (Del. Ch. Dec. 18, 2009). *See also In re Toys "R" Us, Inc. S'holder Litig.*, 877 A.2d 975, 1017 (Del. Ch. 2005) ("[N]either a termination fee nor a matching right is per se invalid. Each is a common contractual feature that, when

8

assented to by a board fulfilling its fundamental duties of loyalty and care for the proper purpose of securing a high value bid for the stockholders, has legal legitimacy."); *State of Wisconsin Inv. Bd. v. Bartlett*, C.A. No. 17727, 2000 Del. Ch. LEXIS 42, at *9 (Del. Ch. Feb. 24, 2000) (deal-protection provisions are permitted absent director interest or other breaches of fiduciary duty); *In re IXC Commc'n, Inc. S'holders Litig.*, C.A. No. 17324, C.A. No. 17334, 1999 Del. Ch. LEXIS 210, at *2, *6 (Del. Ch. Oct. 27, 1999) ("no solicitation" provisions "are common in merger agreements and do not imply some automatic breach of fiduciary duty"); *Golden Cycle, LLC v. Allan*, C.A. No. 16301, 1998 Del. Ch. LEXIS 237, at *17 (Del. Ch. Dec. 10, 1998) ("Delaware law recognizes the propriety in appropriate circumstances of reasonable and proportionate termination fee/expense reimbursement ... in merger agreements."); *In re JP Stevens & Co., Inc. S'holders Litig.*, 542 A.2d 770, 783 (Del. Ch. 1988) (deal-protective devices such as termination fees are "reasonably conventional"); *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 505 (Del. Ch. 2010) ("Top-up options have become commonplace in two-step tender offer deals" and "A termination fee of 3% is generally reasonable").

In *Malpiede*, the Delaware Supreme Court upheld dismissal of an aiding and abetting claim in a merger context because the complaint failed to establish "knowing participation." There, the court found that "there is no indication in the amended complaint that [buyer] participated in the board's decisions, conspired with the board, or otherwise caused the board to make the decisions at issue." 780 A.2d at 1098 (*citing Repairman's Service Corp. v. Nat'l Intergroup, Inc.*, C.A. No. 7811, 1985 Del. Ch. LEXIS 405 (Mar. 15, 1985) (denying aiding and abetting claim because "there was

9

intensive arm's-length bargaining between the parties with demands made and concessions granted on both sides") and *In re Shoe-Town, Inc. Stockholders Litigation*, C.A. No. 9483, 1990 Del. Ch. LEXIS 14, *25 (Feb. 12, 1990) (rejecting aiding and abetting claim because "the complaint describes classic arms-length bargaining, not knowing participation in the breach of a fiduciary duty")).

Similarly, in *In re General Motors (Hughes) S'holder Litig.*, the court dismissed an aiding and abetting of a fiduciary duty claim. The court stated that "it was clearly necessary for [buyer] to participate in the negotiation and structuring of the Hughes transactions, as it was a party to those transactions. But that alone does not imply knowing participation on [buyer's] part in a breach of fiduciary duty by [target's] directors." 2005 Del. Ch. LEXIS 65 at *106-107. Instead, there were no "properly pled allegations that [buyer's] representatives participated in meetings of the [target's] board of directors or otherwise interjected themselves into the process … other than as an arms-length bidder." *Id.* at *107.

Most recently, in *Morgan*, the court granted a buyer's motion to dismiss an aiding and abetting of fiduciary duty claim where the complaint "makes it clear that [buyer] and [seller] were bargaining at arm's-length." 2010 De. Ch. LEXIS 148 at *24. Despite the plaintiff's attempts to avoid the facts pled in her complaint, the court noted that "drawing reasonable inferences in [plaintiff's] favor, as is required under the Rule 12(b)(6) analysis, does not give this court license to conjure up a reality on behalf of the plaintiff that the plaintiff has failed to establish by pleading facts that support an inference that that reality plausibly existed." *Morgan*, 2010 Del. Ch. LEXIS 148, at *25.

The *Morgan* court also explained the sound public policy behind the "knowing participation" rule:

> That rule protects acquirors, and by extension their investors, from the high costs of discovery where there is no reasonable factual basis supporting an inference that the acquiror was involved in any nefarious activity. That rule also aids target stockholders by ensuring that potential acquirors are not deterred from making bids by the potential for suffering litigation costs and risks on top of the considerable risk that already accompanies buying another entity, particularly ones that may have a checkered financial and performance history.

*Id.* at *27. In other words, "the long-standing rule that arm's-length bargaining is privileged and does not, absent actual collusion and facilitation of fiduciary wrongdoing, constitute aiding and abetting helps to safeguard the market for corporate control by facilitating the bargaining that is central to the American model of capitalism." *Id.*

This rule stems partly from the idea that "both the bidder's board and the target's board have a duty to seek the best deal terms for their own corporations when they enter a merger agreement." *Id.* Thus, "[t]o allow a plaintiff to state an aiding and abetting claim against a bidder simply by making a cursory allegation that the bidder got too good a deal is fundamentally inconsistent with the market principles with which our corporate law is designed to operate in tandem." *Id.* at *28.

These same principles apply to Plaintiff's Complaint in this case. Plaintiff has not pled any facts to show "knowing participation" by the Flynt Defendants in any alleged breach of fiduciary duties by New Frontier's directors. In fact, the Complaint is almost entirely silent as to any actions taken by the Flynt Defendants. The Complaint does not allege that the Flynt Defendants participated in any New Frontier board meetings,

11

injected themselves into New Frontier's decision-making process, or otherwise caused New Frontier enter into the Merger Agreement. Nor has Plaintiff alleged that the Flynt Defendants exploited any conflicts of interest on New Frontier's board of directors, offered excessive side deals, or conspired with New Frontier to breach fiduciary duties.

And, perhaps most importantly, Plaintiff has not alleged that the Merger Agreement itself is egregiously unfair or inherently wrongful. Plaintiff makes no such allegation because his own Complaint actually reveals that the Tender Offer was the highest bid received by New Frontier. In light of the considerable premium paid by the Flynt Defendants, the competitive bidding environment in which the Tender Offer was made, and the fact that shareholder value was maximized by the Tender Offer, Plaintiff cannot make any substantive allegations of wrongdoing against the Flynt Defendants.

The most Plaintiff can allege is the boilerplate recitation of some of the legal elements of aiding and abetting. (*See, e.g.*, Complaint, ¶ 94). But even here, Plaintiff has not alleged all of the necessary elements of his purported claim. Plaintiff has not alleged the *sine qua non* of an aiding and abetting claim – "knowing participation." Thus, Plaintiff's Complaint fails on its face.

Even if Plaintiff had pled all of the necessary elements, such conclusory statements are insufficient to plead a cause of action. *See In re Lukens Inc. Shareholders Litig.*, 757 A.2d 720, 735 (Del. Ch. 1999) ("conclusory allegation that [buyer] 'approved and urged' the Director Defendants to enter into the Merger Agreements does not satisfy this pleading burden"); *Iqbal*, 556 U.S. at 678 (Civil Rules "[do] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). Indeed, to allow

Plaintiff to maintain a claim against the Flynt Defendants based on nothing more than unsupported conclusory allegations would be "fundamentally inconsistent with the market principles with which our corporate law is designed to operate in tandem." *Morgan*, 2010 Del. Ch. LEXIS 148, at *28.

Plaintiff's Complaint simply does not assert a viable claim against the Flynt Defendants. At most, Plaintiff's Complaint alleges that the Flynt Defendants are successful negotiators who reached an arm's-length bargain with New Frontier. As a matter of law, this cannot give rise to liability for the Flynt Defendants.

## IV.   CONCLUSION

Plaintiff's own Complaint establishes that the Flynt Defendants have conducted an appropriate, arm's-length negotiation for New Frontier. Plaintiff has not alleged facts to demonstrate any "knowing participation" by the Flynt Defendants in any breach of fiduciary duty. Accordingly, Plaintiff's claims against the Flynt Defendants should be dismissed with prejudice.

Dated:   November 21, 2012

                        Respectfully submitted,

                        */s/ David S. Steefel*
                        Jeffrey A. Chase (#5203)
                        David S. Steefel (#9194)
                        HUSCH BLACKWELL LLP
                        1700 Lincoln Street, Suite 4700
                        Denver, Colorado  80203
                        Phone:  (303) 749-7200
                        Fax:     (303) 749-7272
                        E-mail:  Jeffrey.Chase@huschblackwell.com
                                    David.Steefel@huschblackwell.com

                        **Attorneys for Defendants**
                        **LFP Broadcasting, LLC and**
                        **Flynt Broadcast, Inc.**

OF COUNSEL:
Mark A. Vander Laan (admission pending)
Robert M. Zimmerman (admission pending)
DINSMORE & SHOHL LLP
1900 First Financial Center
255 East Fifth Street
Cincinnati, Ohio  45202
Phone:(513) 977-8200
Fax:    (513) 977-8141
Email: mark.vanderlaan@dinsmore.com
        robert.zimmerman@dinsmore.com

14

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **DEFENDANTS LFP BROADCASTING, LLC AND FLYNT BROADCAST, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** has been duly served upon the following counsel via the Court's CM/ECF filing system, this 21st day of November, 2012:

Robert J. Dyer, III
Jeffrey A. Berens
DYER & BERENS LLP
303 East 17th Avenue, Suite 300
Denver, Colorado  80203
Phone:  (303) 861-1764
Fax:       (303) 395-0393
Email:   bob@dyerberens.com
             jeff@dyerberens.com

**Attorneys for Plaintiff
Craig Telke**

Stuart N. Bennett
Aaron Goldhamer
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado  80202
Phone:  (303) 573-1600
Fax:       (303) 573-8133
Email:   sbennett@joneskeller.com
             agoldhamer@joneskeller.com

**Attorneys for Defendants
Alan Isaacman, Hiram J. Woo, Melissa Hubbard, Walter Timoshenko, and New Frontier Media, Inc.**

/s/ *Terri Khan*

15

DEN-33104-1