# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.1:12-cv-02941-JLK-KLM

CRAIG TELKE, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO,
WALTER TIMOSHENKO,
LFP BROADCASTING, LLC and
FLYNT BROADCAST, INC.,

    Defendants.

---

**DEFENDANTS NEW FRONTIER MEDIA, INC., ALAN ISAACMAN, MELISSA HUBBARD, HIRAM J. WOO, AND WALTER TIMOSHENKO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR EXPEDITED PROCEEDINGS**

---

Defendants New Frontier Media, Inc. ("New Frontier" or the "Company"), Alan Isaacman, Melissa Hubbard, Hiram J. Woo, and Walter Timoshenko, by and through their attorneys, Jones and Keller, P.C, hereby respond to Plaintiff's Motion for Preliminary Injunction and Request for Expedited Proceedings ("Motion") and state the following in opposition thereto:

## I.    INTRODUCTION

Plaintiff Craig Telke owns a mere 300 shares of New Frontier's common stock. By this lawsuit and his pending Motion, Mr. Telke seeks to enjoin the closing of a Tender Offer that will benefit shareholders owing 16.2 million shares of the Company's stock. Mr. Telke's shares at the Tender Offer price are worth a mere $606. The value of the Tender Offer to the Company's

remaining shareholders is $32.9 million.  Mr. Telke's Complaint alleges that the Tender Offer price of the shares is too low and the process involved was flawed; in fact, the Tender Offer results from an extensive public bidding process with four bidders during which LFP increased its offer three times.  LFP's offer is the highest and best offer received and no other bidder is waiting in the wings to match or exceed the LFP's offer.  New Frontier's shareholders stand to gain very little from this lawsuit, but if Mr. Telke is successful in enjoining the Tender Offer, they stand to lose LFP's $32.9 million offer.  If the Company's stock price declines to pre-bidding levels, the shareholders may lose as much $14.5million in market value of their shares.  Unless Mr. Telke is in a position to post a $14.5 million bond to compensate New Frontier and its public shareholders for the harm that may befall them if LFP's offer is enjoined, consideration of and/or granting the pending Motion are pointless.

Plaintiff's Complaint alleges flaws in the bidding process and omissions in the Company's public disclosures.  The Motion either recites or references most of the unverified allegations of the Complaint.  In arguing that that Plaintiff has met his burden for the issuance of an injunction, the Motion refers to only five discrete items that were allegedly not disclosed in the Company's Tender Offer Solicitation / Recommendation Statement filed on Schedule 14D-9 with the Securities and Exchange Commission (the "14D-9," attached as Exhibit "A").  This Response therefore addresses only the five discrete issues.  By doing so, Defendants do not concede that any of Plaintiff's factual allegations are in fact true.

One of these five items relates to the Company's disclosures of the events that led to the termination of the Company's former Chief Executive Officer, Michael Weiner and the resignation of Mr. Weiner and fellow board member David Nicholas.  While the fact of Weiner's termination is disclosed in the 14D-9, the Company made extensive disclosures about the dispute

in Forms 8-K/A and 8-K filed with the SEC on October 10 and 16, 2012 (attached as Exhibits "B" and "C"), just days before filing the 14D-9 on October 29, 2012. The other four allegedly non-disclosed items involve details underlying the investment banker's fairness opinion which do not amount to the non-disclosure material information, Plaintiff's nitpicking notwithstanding.

The standards for granting a preliminary injunction are well known and non-controversial. Plaintiff has virtually no likelihood of success on the merits. Moreover, Plaintiff will not suffer any irreparable harm should the Court not grant the Motion. Indeed, the harm—if any—that Plaintiff and the putative class might suffer in the absence of an injunction is purely economic and compensable by money damages. The harm that the public will suffer if the injunction were improperly granted greatly outweighs any harm that the Plaintiff may suffer. Owners of 16.2 million shares of the Company's stock stand to lose the Tender Offer value of their shares if LFP's tender offer is enjoined and the proposed transaction scuttled. The balance of the harms and the public interest weigh heavily in favor of denying the Motion. As Plaintiff cannot show that any of the three "harm" factors in the preliminary injunction analysis tip decidedly in his favor, his likelihood of success on the merits should be scrutinized closely. Plaintiff is decidedly not entitled to relaxation of the requirement that he demonstrate a clear and unequivocal likelihood of success on the merits. Because Plaintiff's claims cannot survive scrutiny on the merits, the Motion should be denied.

This case—along with the three lawsuits recently filed in Boulder County District Court (*see* Plaintiff's "Notice of Case Association," [Docket # 6])—is the typical product of plaintiffs' shareholder litigation gin mills. *See* Scott Fletcher, Tom Jackson, Mike Davitt, <u>Disturbing Trends in M&A Litigation</u>, 59 The Advoc. (Texas) 31 (2012). Indeed, *almost all* public merger transactions of any significant size draw shareholder litigation, as they are "particularly attractive

to plaintiffs' attorneys" even though "only a small fraction of the lawsuits result in any payments to shareholders." *Id.* at 32.  The Court should see Plaintiff's Complaint and the Motion for what they patently are: an attempt by Plaintiffs' attorneys to leverage Plaintiff's miniscule ownership interest in the Company to extort attorneys' fees from New Frontier's transaction.

## II.   ARGUMENT

To demonstrate a right to a preliminary injunction, a movant must demonstrate the following:

> (1) the movant will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the movant ultimately will prevail on the merits; (3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest.

*Am. Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999) (citations omitted); *see also Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980); *Aspen Limousine Serv., Inc. v. Colorado Mountain Exp., Inc.*, 891 F. Supp. 1450, 1454-55 (D. Colo. 1995); *Religious Tech. Ctr. v. F.A.C.T.NET, Inc.*, 901 F. Supp. 1519, 1523 (D. Colo. 1995).

As this Court has observed, a party seeking a preliminary injunction faces a tall order:

> It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. ***The right to relief must be clear and unequivocal***.

*George Washington Home Owners Associations, Inc. v. Widnall*, 863 F. Supp. 1423, 1425 (D. Colo. 1994) (citations omitted, emphasis added).

Plaintiff cannot meet his burden to show a clear and unequivocal right to relief.  Plaintiff does not have a likelihood of success on the merits and there is no threat of irreparable harm if the injunction is not granted.  Granting the injunction would, however, impose significant harm

to Defendants and would not serve the public interest.  As such, the Court should deny the Motion.  *Am. Civil Liberties Union v. Johnson*, 194 F.3d at 1155.

### A. Plaintiff Cannot Demonstrate the Threat of Irreparable Harm if the Injunction is Not Granted.

Plaintiff alleges two supposed "irreparable" injuries should an injunction not issue: (1) the injury that flows from the Director Defendants' alleged breach of fiduciary duty which prevented "other potentially interested parties from submitting superior offers[,]" and (2) the deprivation of "New Frontier's shareholders of their right to make an informed decision about whether to tender their shares in the Proposed Transaction."  Motion at 18.  Neither of these alleged potential harms is irreparable.

#### 1. Irreparable Injury Does Not Flow From an Allegedly Inadequate Tender Offer Price.

Where a shareholder is responding to a cash tender offer—as is the situation with the disputed transaction in this case—a shareholder "who allegedly [sells] at an unfairly depressed price [has] an adequate remedy by way of an action for damages, thus negating the basis for equitable relief."  *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 60 (1975).  It is highly doubtful that Plaintiff can prove his tenuous claim that higher bidders were dissuaded from bidding for New Frontier's stock because of Defendants' alleged breaches.  Plaintiff has not pled any facts to show the existence of such bidders or how they were prevented from bidding.  But if he were to prove such allegations, he could recover money damages.  Furthermore, if Plaintiff— or any other shareholder—is dissatisfied with the tender offer price, he need not tender his shares and will be able to avail himself of the dissenters rights and appraisal remedies under C.R.S. §§ 7-113-101 *et seq*. in connection with the subsequent proposed merger.  *See* the description of dissenters' rights in the 14D-9 at 61.  Indeed, the existence of dissenters' rights was a factor the

New Frontier Board considered in determining to recommend the transaction to shareholders. *See* 14D-9 at 37-38.

It well established that "[e]quity will not intervene where a plaintiff has a plain and adequate remedy at law[,]" especially where, as here, an alleged harm "is measurable and compensable in money." *Am. Investors Life Ins. Co. v. Green Shield Plan, Inc.*, 358 P.2d 473, 476 (Colo. 1960); *see also, In re K-Sea Transp. Partners, L.P.*, 2011 WL 2410395, at *9 (Del. Ch. June 10, 2011) ("This Court is reluctant to enjoin a premium transaction where there is no superior bid on the table and repeatedly has held that money damages are sufficient to remedy a claim that a transaction price is inadequate."); *In re Lear Corp. Shareholder Litig.*, 926 A.2d 94, 118-19 (Del. Ch. 2007) (expedited relief inappropriate when shareholders can obtain monetary relief through post-transaction appraisal remedy).

This conclusion is particularly true here, where there is no rival higher offer for Plaintiff's shares. *Davis v. Duncan Energy Partners L.P.*, 801 F. Supp. 2d 589, 597-98 (S.D. Tex. 2011) ("Given that there is no rival offer in this case, no *per se* threat of irreparable harm exists. [T]he ultimate question to be decided in this action is the [value of the company], a determination that is not likely to be more speculative after the sale than before the sale. Thus, the court is not persuaded that plaintiffs will not have an adequate remedy at law even if the Proposed Acquisition is ultimately approved at a price they later prove to be inadequate."); *Leone v. King Pharms., Inc.*, 2010 WL 4736271 at *5 (E.D. Tenn. Nov. 16, 2010) ("In addition, because there is no rival offer on the table, there does not appear to be any basis for a conclusion that monetary damages would not be sufficient to compensate shareholders if the plaintiff's allegations are ultimately proven to be true. [T]he ultimate question to be decided in this litigation is the per share value of the common stock, a determination that is hardly more

speculative after the sale than before. Thus, it appears that the shareholders will have an adequate remedy at law if the transaction at issue here is ultimately approved at a price which plaintiff can later prove to be inadequate.").

### 2. Irreparable Harm Does Not Automatically Flow From Alleged Non-Disclosure of Facts Relating to a Shareholder Decision to Tender.

Plaintiff's second alleged threat of irreparable harm is the deprivation of "New Frontier's shareholders of their right to make an informed decision about whether to tender their shares in the Proposed Transaction." Motion at 18. For this proposition, Plaintiff relies on a number of cases in which courts have held that omissions of facts necessary to have an informed shareholder vote in proxy and board member elections virtually constitute *per se* irreparable injury. Motion at 16-18.

As described above, any shareholder can obtain adequate monetary relief—either through appraisal rights or a separate post-tender action—if they can demonstrate the price they received for their shares was inadequate. The nature of the injury, if any, to a shareholder tendering their shares on the basis of allegedly misleading material in the 14D-9 is not irreparable. Plaintiff quotes a case from the Southern District of New York—*Lichtenberg v. Besicorp Group, Inc.*—for the proposition that irreparable injury to the free exercise of shareholders' voting rights in a merger results from false and misleading proxies. *See* Motion at 16-17. *Lichtenberg* is of questionable relevance, as that court focused on the irreparable adverse effect that the proposed merger would have on a separate $45.5 million shareholder derivative action. 43 F. Supp. 2d 376, 392 (S.D.N.Y. 1999). No such concern is present in the instant case.

Moreover, where a shareholder's dissenting vote may be overwhelmed by votes which are influenced by allegedly misleading proxy materials, the difficulty—if any—of "undoing" the harm to the dissenting shareholder after the fact has not moved this Court to order equitable

{JK00437577.2 }                                        7

relief in the context of board of directors election: "As I noted in denying a TRO in another recent case (*Kaiser Steel v. Hendrix*, 86–K–2406), the court can always set aside the results of the election, if warranted, or grant other necessary relief." *Crown Res. Corp. v. Gold Capital Corp.*, 650 F. Supp. 985, 988 (D. Colo. 1987) (denying motion for temporary restraining order as movant could not "demonstrate the element of irreparable harm").  The instant case presents far less difficulty in repairing harm, if any, to Plaintiff.  The <u>tender</u> decisions reached by other shareholders do not foreclose any of Plaintiff's rights; he can choose freely and avail himself of subsequent appraisal rights to obtain economic damages if the tender price is inadequate.  Indeed, Plaintiff has not cited any case where a <u>tender offer</u> was enjoined.

The Court's refusal to order equitable relief in *Crown Res. Corp.*—a corporate control situation where the alleged harm had a decidedly non-economic flavor—demonstrates that equitable relief is similarly inappropriate where alleged harm is subject to well-defined mechanisms for measuring economic redress.  This is especially true <u>where there has been no failure to disclose any material information</u>, as described below.

### B. Plaintiff Does Not Have A Substantial Likelihood Of Success On The Merits.

To obtain a preliminary injunction, the moving party must establish that "there is <u>substantial likelihood</u> [of success] on the merits." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (citation omitted, brackets in original, emphasis added).  Plaintiff cannot demonstrate that the other "three 'harm' factors tip *decidedly* in [his] favor[.]" *Heideman*, 348 F.3d at 1188-89 (emphasis in original).  Plaintiff should fear no irreparable harm given the availability of money damages.  Plaintiff also cannot show the other two "harm" factors (harm to defendants from granting the injunction and the harm to the public interest) tip "decidedly" in his favor.  As such, Plaintiff is *not* entitled to the "somewhat relaxed" probability of success

standard. *Heideman*, 348 F.3d at 1188-89.[1]  Plaintiff must instead show a "substantial likelihood of success," by clear and unequivocal evidence.

### 1. Alleged Non-Disclosures Regarding Messrs. Weiner and Nicholas.

Plaintiff complains that Defendants' statements and disclosures concerning the removal and/or resignations of Michael Weiner and David Nicholas "clearly omit[] material information," and that Defendants therefore have not provided stockholders "with an accurate, full and fair characterization of those historic events."  Motion at 12 (citation and quotation marks omitted).  Plaintiff cannot claim that the termination of Weiner is not disclosed in the 14D-9 because the fact of his termination is referenced numerous times throughout the document.  14D-9 at 8, 30, 32, and 60.  Further, New Frontier *exhaustively described* these historic events in various letters exchanged between the Company and Messrs. Weiner and Nicholas *and filed them in the public record* in the Company's 8-K/A and 8-K SEC filings dated October 10, 2012, and October 16, 2012, respectively (attached as **Exhibit B** at exhibits 17.1-17.4 thereto and **Exhibit C** at exhibits 17.1 and 17.2 thereto).  If anything, Defendants exceeded their disclosure obligations concerning these two former board members.  It is paradoxical that Plaintiff complains about a lack of disclosure concerning events about which the Complaint and Motion demonstrate he is in fact aware.  However, this paradox does not excuse Plaintiff's apparent lack of diligence reviewing New Frontier's other SEC filings.

Other courts have rejected Plaintiff's counsel's arguments concerning disclosure claims similar to those about which Plaintiff complains here.  Levi & Korsinsky, Plaintiff's counsel,

---

[1] Whether any modified standard from the well-recognized four part test for preliminary injunctions should exist at all has been rightly questioned by this Court.  *See Bray v. QFA Royalties LLC*, 486 F. Supp. 2d 1237, 1241-42 (D. Colo. 2007).  Regardless, a "reasoned application" of the four factors will "lead to the proper result."  *Id.* at 1245.

{JK00437577.2 }                                             9

was counsel for the Plaintiff in *Gottlieb v. Willis*, 2012 WL 5439274 (D. Minn. Nov. 7, 2012), which similarly denied a motion for preliminary injunction brought by Plaintiff's counsel.  The *Gottlieb* court rejected Plaintiff's counsel's arguments that statements were false or misleading, despite being "truthful statements" because Plaintiff's counsel argued "in essence, [] defendants must tell [] more about the subject of those statements." *Id.* at *3.  Plaintiff essentially makes the same argument here, and that argument should be similarly rejected, especially because the Company has said more, in public SEC filings, not less (*see* **Exhibits B** and **C**).  Plaintiff's complaints about the lack of disclosure regarding Messrs. Weiner and Nicholas do not meet the "substantial likelihood of success" standard.

### 2. Alleged Breaches of Fiduciary Duty Stemming from Merger Terms.

Plaintiff furthermore does not have a substantial likelihood of success concerning his claim that the Director Defendants' breached their fiduciary duties by agreeing to improper deal terms.  The deal-protection mechanisms which Plaintiff alleges prevented "other potentially interested parties from submitting superior offers[,]" (Motion at 18) are in fact well-recognized business practices.  *In re 3Com Shareholders Litig.*, 2009 WL 5173804, at *3-4 & n.37 (Del. Ch. Dec. 18, 2009) (noting in merger case that "this Court has repeatedly held that [no solicitation, matching rights, and termination fee provisions] are standard merger terms, are not *per se* unreasonable, and do not alone constitute breaches of fiduciary duty") (numerous cases collected); *In re Toys "R" Us, Inc. Shareholder Litig.*, 877 A.2d 975, 1017 (Del. Ch. 2005) (holding that termination fees and matching rights provisions are "common contractual feature[s]"); *In re Dollar Thrifty Shareholder Litig.*, 14 A.3d 573, 612-13 (Del. Ch. 2010) (directors not required to conduct pre-signing market check and are permitted to adopt termination fee, matching rights, and no-shop clauses).

The merger agreement between New Frontier and LFP contains a no-shop and matching rights clauses, a termination fee, and a top-up option, but does not contain retention agreements and bonuses, or voting and tender agreements. 14D-9 at 37-38, 59. In the opinion of the New Frontier Board, the merger agreement taken as a whole compares favorably to those found generally in comparable acquisition transactions. 14D-9 at 38. Moreover, the Board retained the right under the merger agreement to participate in negotiations with a third party concerning takeover proposals that may constitute an offer superior to LFP's. *Id.* The merger agreement also allows the Board under certain circumstances to withdraw, modify or change the Board's recommendation to shareholders. *Id.* The deal measures in this case are thus less onerous on New Frontier than other deal provisions that have been upheld by the courts.

Other courts have rejected Plaintiff's counsel's arguments concerning deal-protection measures similar to those which Plaintiff claims constitute breaches of the Director Defendants' fiduciary duties. Levi & Korsinsky, Plaintiff's counsel, was counsel for the Plaintiff in *In re Cogent, Inc. Shareholder Litig.*, 7 A.3d 487 (Del. Ch. 2010). There, the court denied a motion for preliminary injunction after determining that the merger agreement did not unreasonably inhibit other proposals from bidders notwithstanding no-shop and matching rights clauses, a termination fee, a top-up option, retention agreements and bonuses, and voting and tender agreements. *Id.* at 508. Plaintiff's complaints concerning the deal terms do not meet the "substantial likelihood of success" standard.

### 3. Alleged Non-Disclosure of Details Concerning Investment Bankers' Fairness Opinion.

Plaintiff cannot demonstrate a "substantial likelihood of success" with respect to his allegations concerning the Company's disclosures about the details underlying the fairness opinion rendered by New Frontier's investment bankers, Avondale Partners, LLC ("Avondale").

Indeed, Courts do not hesitate to reject injunction motions based on the alleged failure to disclose underlying details regarding a financial advisor's fairness opinion. *See Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1173 (Del. 2000) (rejecting request to enjoin merger based on failure to disclose "summary of 'the methodologies used and ranges of values generated by DLJ' in reaching its fairness opinion").

More importantly, Plaintiff's complaints about disclosure concerning Avondale Partners' analysis pertain to information that is not material to shareholders in evaluating whether to tender their shares in the Tender Offer. This immateriality of the complained-of information demonstrates the futility of Plaintiff's Complaint on the merits.

Plaintiff complains about four aspects of Avondale's analysis: (1) definitions relating to the discounted cash flow ("DCF") are not described; (2) the application of stock-based compensation expenses ("SBC") is unclear; (3) the application of net operating loss carry forwards ("NOLS") is not described; and (4) the rationale for the discount rate is not described. *See* Motion at 12-15. None of these issues is material.

Avondale employed a DCF measure of "unlevered after-tax free cash flow." *See* Affidavit of Karsten Lampka attached as **Exhibit D** ("Lampka Aff."), at ¶ 8.[2] It is not surprising that Plaintiff speculated this might be the measure of DCF (*see* Motion at 13), as this is a common measure. Lampka Aff. at ¶ 8. The other possible measures that Plaintiff speculates might have been used for DCF are either nonsensical or would not have changed the Avondale opinion. New Frontier does not pay dividends, so Plaintiff's speculation that "[i]nvestors are left to guess whether [Avondale] used…dividends as a metric of cash flow[,]" is not reasonable.

---

[2] Because of scanning issues, Mr. Lampka's signed affidavit is difficult to read. An unsigned copy is also included in Exhibit D for clarity.

Motion at 13; Lampka Aff. at ¶10.  Similarly, "some measure of earnings…as a metric of cash flow" would not be within industry norms.  Motion at 13; Lampka Aff. at ¶ 10.

The exclusion of these highly aberrant measures leaves "levered" cash flow as a possible DCF measure among Plaintiff's hypotheses.  "Levered" cash flow refers to the inclusion of interest income and interest expense in cash flows.  Lampka Aff. at ¶ 9.  As New Frontier does not have any significant interest income or interest expense, the use of "levered" cash flow as a DCF measure would not have materially changed Avondale's DCF analysis.  Lampka Aff. at ¶ 9.

With respect to SBC, Avondale employed customary practices concerning its calculations.  Lampka Aff. at ¶ 11.  Avondale added back SBC in calculating cash flows so as not to artificially reduce cash flows by non-cash expenses.  Lampka Aff. at ¶ 11.  Treating SBC differently, however, would not have resulted in a material change in Avondale's analysis due to the relatively small size of SBC compared to total overall Company expenses.  Lampka Aff. at ¶ 11.

Avondale took into account the tax savings from NOL stemming from New Frontier's continuing net operating losses.  Lampka Aff. at ¶ 12.  The Financial Projections set forth in 14D-9 demonstrate that NOL is included in the line item labeled "Income Tax Expense/(Benefit)" which shows for FY 2013P that there is a "(Benefit)," *i.e.,* there is no tax expense although there is taxable income. 14D-9 at 49.  This projection can only be derived from giving effect to NOL.  New Frontier has not generated in the past, and is not expected to generate in the future, sufficient taxable net earnings to fully utilize its NOL.  Lampka Aff. at ¶ 12.  As such, Avondale did not attempt to separately identify NOL calculations because it would not have materially impacted the shareholders' mix of information.  *Id.*

Finally, Avondale based its chosen discount rate range on the weighted average cost of capital for New Frontier and comparable companies, as well as a study New Frontier commissioned of its weighted average cost of capital from an independent consultant unrelated to the Proposed Transaction.  Lampka Aff. at ¶13.  This discount rate is clearly disclosed to the shareholders. 14D-9 at 44.  The shareholders are free to disagree with this rate in making their own decision with respect to the Proposed Transaction, but they are in no way being misled.

Notably, the Complaint is not verified, and Plaintiff has not come forward with any expert evidence, sworn affidavits, or indeed *anything beyond the argument of counsel* to demonstrate that the complained-of omissions are material to an investor's decision in evaluating the Proposed Transaction.  This troubling omission is typical of Plaintiff's counsel's *modus operandi*, as it was clearly a factor in the *Gottlieb* court's recent rejection of Plaintiff's counsel's motion for preliminary injunction there:

> Gottlieb has not submitted so much as a declaration averring that the information she seeks would be material to her vote, much less an expert affidavit stating that a reasonable investor would likely find the omitted information material….  Given both the uncertain state of the law and the sparse state of the record, the Court simply cannot say that Gottlieb is likely to succeed on the merits....

*Gottlieb*, 2012 WL 5439274 at *3.

### C. The Balance Of Harms Favors Denying The Motion.

Plaintiff has very little at stake in this litigation.  Although there are over 16.2 million shares of New Frontier stock outstanding (*see* Complaint at ¶ 28), Plaintiff owns merely 300 shares, worth approximately $606 at the offer price.  Affidavit of Alan Isaacman ("Isaacman Aff.," attached as **Exhibit E**) at ¶ 14. Therefore, Plaintiff has very little exposure to any potential harm.  Plaintiff could mitigate any potential harm should an injunction not issue by exercising his dissenters' rights and appraisal remedies.

By contrast, Defendants could suffer great harm if the Proposed Transaction is enjoined, as there is no guarantee that the Proposed Transaction—or even an alternative transaction—would ever be consummated following an injunction. Defendant New Frontier has invested countless hours into negotiating the Proposed Transaction; its Special Committee has convened over 40 meetings and conferences concerning the Proposed Transaction. Isaacman Aff. at ¶ 5. This effort would represent an inordinate waste of time should the Proposed Transaction fail. Additionally, the Director Defendants have 358,525 shares in New Frontier (not including options to acquire additional shares), approximately 600 times more shares than Plaintiff. 14D-9 at A-21. The Director Defendants therefore have much more to lose than Plaintiff should the New Frontier stock price collapse if the Proposed Transaction is enjoined.

On balance, the harm that could possibly flow to Plaintiff if an injunction is not issued is dwarfed by the potential harm to Defendants should an injunction issue. This factor weighs in favor of rejecting the Motion.

### D.     The Public Interest Favors Denying The Motion.

Plaintiff's minimal holdings of New Frontier stock demonstrate that he should not be permitted to enjoin a $32.9 million transaction. Several of New Frontier's large stockholder's have either already tendered their shares at the Tender Offer price or indicated their intention to do so. Isaacman Aff. at 13. These large stockholders would be severely damaged if the Tender Offer was enjoined and their stock was suddenly worth far less. Indeed, in March of 2012, before parties started expressing interest in acquiring the Company, New Frontier's stock traded at $1.13 per share. Isaacman Aff. at 15. The Tender Offer price per share is $2.02, or a 79% premium over the March 2012 trading level. Isaacman Aff. at 13; 14D-9 at 47. Shares of New Frontier traded at $2.01 as of noon on November 21, 2012. Isaacman Aff. at 15. Should the

Tender Offer be enjoined, there is no assurance that LFP will complete the transaction. There is likewise no assurance that the trading price of New Frontier shares will not return to their pre-offer market price of around $1.13 per share. Isaacman Aff. at 15; 14D-9 at 47.  The shareholders could suffer upwards of a forty percent loss in the value of their shares.  While a loss of this magnitude may only erase a few hundred dollars from the value of Plaintiff's shares, it could mean losses of up to $14.5 million for New Frontier's shareholders as a whole.

On balance, the harm that could possibly flow to Plaintiff if an injunction is not issued is insignificant compared to the potential harm to the public shareholders should an injunction issue.  This factor weighs in favor of rejecting the Motion.

### E.     Expedited Proceedings Are Inappropriate.

The transaction which is the subject of this dispute was announced on October 15, 2012, (Complaint at ¶ 3). Thirty-five days elapsed before Plaintiff filed the present Motion on November 19, 2012.  This Court has observed that a plaintiff's delay in seeking a temporary restraining order "raises a serious question as to how emergent the irreparable harm alleged actually is."  *Colorado Rail Passenger Ass'n v. Federal Transit Admin.,* 2010 WL 1050054, at *3 (D. Colo. Mar. 18, 2010).  Any prejudice to Plaintiff from the alleged "time-sensitive nature of this action" (Motion at 1) is due to Plaintiff's own delay.  Plaintiff's failure to act timely does not constitute good cause justifying an expedited schedule.

### F.     If The Court Grants The Motion, It Should Require A Substantial Bond.

Plaintiff cites several inapposite cases for the remarkable proposition that—despite his mere $600 stake in the Company which he claims entitles him to enjoin a $32 million deal—he should not have to post a bond to insure against the very real potential damage an injunction

could inflict.  The Court should require a bond if it grants the Motion to comply with the spirit of F.R.C.P. 65(c).

Plaintiff curiously cites *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461 (10th Cir. 1987), to support his argument that no bond is required.  *See* Motion at 21.  *Coquina Oil*, however, found an injunctive order to be "unenforceable" given the trial court's failure to consider the appellant's motion to set a bond, and the Tenth Circuit dismissed the appeal for lack of jurisdiction due to the lack of an appealable order.  *Id.* at 1462.  In no way does the holding of *Coquina Oil* support Plaintiff's extraordinary argument that his minimal stake in the outcome of the challenged transaction allows him to imperil others without any security.

*RoDa Drilling Co v. Siegal*, 552 F.3d 1203 (10th Cir. 2009), is likewise of no assistance to Plaintiff.  There, the trial court did not order a bond because it definitively found that the party to be restrained "had no ownership or security interest in the [subject real] propert[y]."  *Id.* at 1215.  Here, however, there is no such certainty of the outcome in favor of Plaintiff.  Rather, precisely the opposite appears certain—numerous parties will suffer if there proves to be a wrongfully issued injunction, as the New Frontier stock price could collapse without any certainty of revival.

This Court observed the following in the *Colorado Rail Passenger Ass'n* case:

> [W]ere I to grant the instant Motion [for a TRO], I would do so on the condition that Plaintiff post a bond in a significant sum to compensate the enjoined entities ***and the public*** if it turned out they were improperly enjoined.  Because Plaintiff acknowledges it would not be able to post a substantial bond—as much as $28,000 per day plus $5 million—the issuance of the requested TRO would be a pointless act.

*Colorado Rail Passenger Ass'n v. Federal Transit Admin.,* 2010 WL 1050054 at *3 (D. Colo. Mar. 18, 2010) (emphasis added).  Unless Plaintiff can commit to posting a bond in approximately $14.5 million to insure the New Frontier's public shareholders adequate

compensation if the requested injunction scuttles the Tender Offer permanently, granting the pending Motion would be "pointless."

Rather than require untold numbers of New Frontier shareholders to possibly suffer without security should the Tender Offer be enjoined, the Court should honor the spirit of the Federal Rules:

> The court may issue a preliminary injunction or a temporary restraining order **only if** the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

F.R.C.P. 65(c) (emphasis added). The determination of the "proper" amount of a bond is squarely within the Court's discretion. *Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 782 (10th Cir. 1964). However, "[b]ecause the damages caused by an erroneous preliminary injunction cannot exceed the amount of the bond posted as security, and because an error in setting the bond too high is not serious, district courts should err on the high side when setting bond." *Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*, 482 F. Supp. 2d 1065, 1078 (E.D. Wis. 2007) *modified at* 2007 WL 2138760 (E.D. Wis. July 23, 2007).

In this case, should the Court grant the Motion, Defendants submit that the "proper" amount of a bond should be $14.5 million—the number of New Frontier's outstanding shares, 16,264,213, times the $0.89 per share difference between the tender offer amount and New Frontier's per share value in March of 2012. New Frontier's shareholders—the very people Plaintiff is purporting to represent, but who in fact could suffer greatly due to Plaintiff's actions—only then will be protected from the possible deleterious effects of Plaintiff's Motion.

### III.   CONCLUSION

Some shareholder suits have merit; this case is not such a case. While Plaintiff's counsel would like to use Plaintiff's *de minimus* stake in the Company to hold the Tender Offer hostage

for the purpose of extorting attorneys' fees, the preliminary injunction standards prevent Plaintiff's counsel from doing so. The Court should deny the Motion.

DATED: November 26, 2012.

Respectfully submitted,

s/ Stuart N. Bennett
Stuart N. Bennett
Aaron D. Goldhamer
**JONES AND KELLER, P.C.**
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone:   303-573-1600
Fax:         303-573-8133
E-mail:      sbennett@joneskeller.com
             agoldhamer@joneskeller.com

Attorneys for Defendants New Frontier Media, Inc., Alan Isaacman, Melissa Hubbard, Hiram J. Woo, and Walter Timoshenko

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| *Attorneys for Plaintiff* | bob@dyerberens.com<br>jeff@dyerberens.com | Robert J. Dyer, III<br>Jeffrey A. Berens<br>DYER & BERENS LLP<br>303 East 17th Avenue, Suite 300<br>Denver, Co   80203 |
|---|---|---|
| | shopkins@zlk.com | Shannon L. Hopkins<br>LEVI & KORSINSKY, LLP<br>30 Broad Street, 24th Floor<br>New York, NY   10004 |

And I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner indicated by the non-participant's name:   NONE

s/ *Stuart N. Bennett*
_____
Stuart N. Bennett
Aaron D. Goldhamer
Attorneys for Defendants New Frontier Media, Inc.,
Alan Isaacman, Melissa Hubbard, Hiram J. Woo, and
Walter Timoshenko
**JONES AND KELLER, P.C.**
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone:       303-573-1600
Fax:                  303-573-8133
E-mail:             sbennett@joneskeller.com
                         agoldhamer@joneskeller.com