Exhibit B

# NEW FRONTIER MEDIA INC (NOOF)

## 8-K/A
Current report filing
Filed on 10/10/2012
Filed Period 10/08/2012

THOMSON REUTERS **ACCELUS**™

 **THOMSON REUTERS**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# FORM 8-K/A

### CURRENT REPORT
**Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934**

**October 8, 2012**
Date of Report (Date of earliest event reported)

# New Frontier Media, Inc.
(Exact Name of Registrant as Specified in Charter)

| **Colorado** | **000-23697** | **84-1084061** |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File No.) | (IRS Employer Identification No.) |

**6000 Spine Road, Suite 100, Boulder, CO 80301**
(Address of principal executive offices)

**(303) 444-0900**
(Registrant's telephone number, including area code)

**N/A**
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐   Written communication pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 5.02. Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**

(a)  On October 4, 2012, New Frontier Media, Inc. (the "Company") announced the resignation of Mr. David Nicholas as a director, effective immediately as of September 29, 2012.  Mr. Nicholas's resignation followed the decision by the board of directors (based on the recommendation of its nominating committee) not to nominate Mr. Nicholas for re-election and to ask for his resignation. In accordance with the requirements of Item 5.02 of Form 8-K, the Company filed with such announcement a copy of Mr. Nicholas's resignation letter and the Company's response to such letter.

On October 8, 2012, the Company received a letter from Mr. Nicholas disagreeing with the Company's October 4, 2012 response letter.  In accordance with the requirements of Item 5.02 of Form 8-K, this letter is attached hereto as Exhibit 17.3.  On October 10, 2012, the Company responded to Mr. Nicholas by means of the letter attached hereto as Exhibit 17.4.

**Item 9.01   Financial Statements and Exhibits**

(d) Exhibits

| Exhibit No. | Exhibit Description |
|---|---|
| 17.1 | Letter from David Nicholas dated September 28, 2012.* |
| 17.2 | Letter from the Company to David Nicholas dated October 4, 2012.* |
| 17.3 | Letter from David Nicholas dated October 8, 2012. |
| 17.4 | Letter from the Company to David Nicholas dated October 10, 2012. |

*        Previously Filed.

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: October 10, 2012                            **NEW FRONTIER MEDIA, INC.**


By:      /s/ Marc Callipari
Name:   Marc Callipari
Title:    Chief Legal Officer

3

**Exhibit Index**

| Exhibit No. | Exhibit Description |
| --- | --- |
| 17.1 | Letter from David Nicholas dated September 28, 2012.* |
| 17.2 | Letter from the Company to David Nicholas dated October 4, 2012.* |
| 17.3 | Letter from David Nicholas dated October 8, 2012. |
| 17.4 | Letter from the Company to David Nicholas dated October 10, 2012. |

\*        Previously Filed.

4

Exhibit 17.3

**David Nicholas**
P.O. Box 681647
Park City, Utah 84068

October 8, 2012

Alan Isaacman
Melissa Hubbard
Walter Timoshenko
Hiram J. Woo
New Frontier Media, Inc.
6000 Spine Road, Suite 100
Boulder, Colorado 80301

Dear Alan, Melissa, Walter and Hiram:

I refer to your letter dated October 4, 2012 (and attached as an exhibit to New Frontier's Form 8-K filed on same date) responding to my resignation letter in which I set forth the reasons for my resignation, including my serious concerns with actions taken by the current directors. It is shocking that the Special Committee, comprised of two attorneys and two accounting professionals, would use a publicly-filed SEC document as a platform to defend its actions with material misstatements and mischaracterizations of the events leading up to my resignation.

Let me be clear for the record that my disappointment with your transgressions and my concerns about potential breaches of your fiduciary duties should not be confused, as suggested in your letter, as malcontent or "sour grapes" caused by your decision not to re-nominate me for election at the upcoming annual meeting. I assure you that my reputation in the industry during the past thirty-two years has not, and will not, be impacted by your self-serving and transparent attempt to demonize me. I am nevertheless compelled, in the interest of full disclosure to shareholders, to address various inaccuracies in your letter and to reiterate some of the concerns you failed to address.

Your assertions that I was seeking to advance Michael Weiner's "agenda" and that our interests were aligned with Longkloof are entirely inaccurate. My support for Mr. Weiner is based on my belief that he was the best person to serve as CEO of the Company and that he was wrongfully terminated. It is a complete fabrication to insinuate that I had a conversation with Longkloof and was invited to participate in their proxy contest. In fact, I have only spoken to Adam Rothstein once in my entire life - he called me earlier in the spring and we spoke about video distribution trends. Furthermore, I disagree with your continuous attempts to portray yourselves as saviors of the Company for filing the Longkloof lawsuit and to cast my opposition to the lawsuit as an expression of favoritism towards Longkloof. A Board that was interested in maximizing shareholder value would not have wasted hundreds of thousands of dollars to sue a bona-fide acquiror and instead would have attempted to negotiate with them to raise their offer price. My intent has always been to obtain the best and highest price for the Company - whether from Longkloof or otherwise. Any statements to the contrary have no merit.

Your allegation that I was removed from the Special Committee because I could not be trusted to act in the best interests of shareholders is a red herring designed to cloud the true

circumstances of my removal. As I stated in my resignation letter, I believe I was removed from the Special Committee because I questioned the amount of additional fees its members agreed to pay themselves. Despite threats from other directors that my refusal to accept these committee fees would make them "look bad," I stand by my decision not to accept additional committee fees that I believe are excessive and unwarranted.

You have done a disservice to shareholders by failing to adequately address many of the concerns raised in my resignation letter. Your assertion that the Special Committee provided "periodic updates" to the other Board members in order to "help ensure an independent and unbiased process" is disingenuous on multiple levels. The limited updates I received regarding the strategic review process lacked substance and were designed to keep me in the dark about the interests of any potential bidders in the Company. Neither I nor the shareholders can be assured that the activities of the Special Committee, which have been going on for approximately eight months, are actually benefiting shareholders. In addition, my concerns regarding your potential business relationships, personal interests and/or agendas with respect to the strategic review process have been ignored. The issues I have raised regarding your independence also remain unaddressed.

The Special Committee has wasted corporate assets and in my view damaged the Company's business. Ultimately, each of you will be held accountable for any destruction of shareholder value that has resulted from your actions.

Very truly yours,

/s/ David Nicholas
David Nicholas

cc:     Michael Weiner
        Marc Callipari

**Exhibit 17.4**

October 10, 2012

Mr. David M. Nicholas
P.O. Box 681647
Park City, Utah 84068

Dear David:

Your most recent letter dated October 8, 2012, only affirms our position that it was in the best interests of all the Company's shareholders that we requested your resignation.  In its diligent ongoing process to review all strategic alternatives to maximize shareholder value, including a potential sale of the Company, our Board's Special Committee has worked tirelessly to create and maintain a level playing field and a fair and open process for all parties interested in acquiring the Company. We have also maintained a steadfast commitment to ensuring that no bidder receives an unfair advantage.

Your correspondence indicates that you don't understand that a commitment to acting in the best interests of ALL shareholders and to maximizing shareholder value does not necessarily mean agreeing to sell the Company to a bidder preferred by you and then – Chief Executive Officer Michael Weiner, particularly at a time before the Board is able to create a process, with the assistance of its advisors, that facilitates an independent and unbiased review of the proposal and the various terms and conditions relating thereto against other alternatives that may be more likely to maximize value for ALL shareholders.  That was particularly so with respect to Longkloof's publicly-announced interest in the Company given the personal relationships that Mr. Weiner has with the Longkloof group which had the potential to cause conflicts of interest given his role, prior to September 15, 2012, as then – Chief Executive Officer of the Company. Mr. Weiner's repeated expressions of preference for the Longkloof group to be the ultimate buyer of the Company, his frequent communications with representatives of the Longkloof group and his unwillingness to respect the independent nature of the Special Committee presented numerous challenges for the Special Committee in its attempts to safeguard the integrity of its process and ensure a level playing field for all potential bidders. It also compelled the Special Committee to be especially vigilant in designing and implementing, with the assistance of our financial and legal advisors, a competitive strategic review process that invited and sought out participation from multiple bidders in an effort to ensure the greatest likelihood of identifying a transaction that would maximize shareholder value.  In that same spirit of seeking to have broad participation in our process, even when Longkloof's proxy contest against the Company was still pending, the Special Committee went out of its way to invite Longkloof to participate in its process.

It would have been preferable and in the best interests of our shareholders if the Special Committee had been allowed to conduct its process for reviewing strategic alternatives without the numerous undue distractions that it has had to endure. Within a month of the Special Committee being formed, the Company received two publicly-announced unsolicited offers and was threatened with a proxy contest by the Longkloof group that would have allowed them to acquire control of the Company without being required to pay our shareholders a control premium for their shares.  The threatened proxy contest, in addition to being highly disruptive to the Special Committee's process, caused the Company to incur significant expenses to ensure that the interests of our shareholders were protected and the integrity of the Special Committee's process was safeguarded.

Rather than abandoning our strategic review process in the face of these numerous and difficult challenges, the Special Committee persevered in ensuring that a fair process was maintained that provided a level playing field for all potential bidders. Ultimately, the Special Committee was successful in negotiating a settlement agreement with the Longkloof group that resulted in the termination of their proxy contest and the related litigation and their commitment that, through the end of the year and subject to the terms of the settlement agreement, they would only pursue an acquisition of the Company through a consensual transaction. The settlement agreement negotiated by the Special Committee facilitated our strategic review process by ensuring that the interest of potential bidders in the Company would no longer be "chilled" by a threatened proxy contest and the related litigation.

Given how strongly you opposed our efforts to seek a resolution of the proxy contest and your failure to take any action to protect our shareholders from the possible consequences of a proxy contest that sought control of our Company (and would have replaced all the independent members of the Board other than you), it is not surprising that you have been unwilling to acknowledge the extent to which the Special Committee's efforts to preserve the integrity of its process has benefitted our shareholders.

It is clear that you and the members of the Special Committee will continue to have extremely different and contrasting views as to how best to serve the interests of the shareholders of New Frontier Media and how a member of the board of directors of a public company should comply with his or her fiduciary duties. It is also clear that you still do not understand why a Special Committee needs to function independently free from potential conflicts of interest and why it is so critically important that a strategic review process overseen by a Special Committee be safeguarded from actions that could adversely affect the fairness and level-playing field required for a successful process. While you criticize the length of time the process has taken, you fail to acknowledge the numerous distractions that the Special Committee has had to contend with in managing its process and the culpability of those, including yourself, that have caused or contributed to these distractions.

While we appreciate a constructive dialogue with our shareholders, we believe your continuing self-serving public letter-writing campaign is yet another attempt to disrupt the Special Committee from focusing on its process to maximize value for ALL shareholders. We believe that your departure from the Board will now enable the Special Committee to conclude its process without any further unnecessary distraction. If you are still a shareholder in the Company, you should be pleased to know that the Special Committee has made solid progress in advancing its process, despite your numerous efforts to distract us. We hope you will respect the desire of the Board and its Special Committee to focus on concluding its process and discontinue your public letter writing.

Sincerely,

THE BOARD OF DIRECTORS OF NEW FRONTIER MEDIA, INC.

# NEW FRONTIER MEDIA INC (NOOF)

## 8-K
Current report filing
Filed on 10/04/2012
Filed Period 09/29/2012

THOMSON REUTERS ACCELUS™



THOMSON REUTERS

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 8-K

### CURRENT REPORT
### Pursuant to Section 13 or 15(d) of the
### Securities Exchange Act of 1934

**September 29, 2012**
Date of Report (Date of earliest event reported)

# New Frontier Media, Inc.
(Exact Name of Registrant as Specified in Charter)

| **Colorado** | **000-23697** | **84-1084061** |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File No.) | (IRS Employer Identification No.) |

**6000 Spine Road, Suite 100, Boulder, CO 80301**
(Address of principal executive offices)

**(303) 444-0900**
(Registrant's telephone number, including area code)

**N/A**
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐   Written communication pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 5.02. Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**

(a)  On September 29, 2012, Mr. David Nicholas tendered his resignation as a director of New Frontier Media, Inc. (the "Company"), effective immediately.  Mr. Nicholas indicated that he was resigning as a result of a disagreement with decisions made by the special committee of the Company's board of directors, which solely consists of independent directors.  Mr. Nicholas's resignation follows the decision by the board of directors (based on the recommendation of its nominating committee) not to nominate Mr. Nicholas for re-election and to ask for his resignation. As a result of his resignation, Mr. Nicholas also ceased to be a member of the audit committee of the Company's board of directors as of such date. A copy of Mr. Nicholas's resignation letter is attached hereto as Exhibit 17.1.

On October 4, 2012, the Company responded to Mr. Nicholas by means of the letter attached hereto as Exhibit 17.2.  In accordance with the requirements of Item 5.02 of Form 8-K, the Company has provided Mr. Nicholas a copy of the disclosures it is making in this report (including the Company letter referenced in the immediately preceding sentence) no later than the day of filing this report with the Securities and Exchange Commission.  The Company has provided Mr. Nicholas with the opportunity to furnish it as promptly as possible with a letter addressed to the Company stating whether he agrees with the statements made by the Company in response to this Item 5.02 and, if not, stating the respects in which he does not agree.

**Item 9.01   Financial Statements and Exhibits**

(d) Exhibits

| Exhibit No. | Exhibit Description |
|---|---|
| 17.1 | Letter from David Nicholas dated September 28, 2012. |
| 17.2 | Letter from the Company to David Nicholas dated October 4, 2012. |

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: October 4, 2012                              **NEW FRONTIER MEDIA, INC.**


By:    /s/ Marc Callipari
Name:  Marc Callipari
Title:   Chief Legal Officer

3

**Exhibit Index**

| Exhibit No. | Exhibit Description |
| --- | --- |
| 17.1 | Letter from David Nicholas dated September 28, 2012. |
| 17.2 | Letter from the Company to David Nicholas dated October 4, 2012. |

4

Exhibit 17.1

**David Nicholas**
P.O. Box 681647
Park City, Utah 84068

September 28, 2012

Alan Isaacman
Melissa Hubbard
Walter Timoshenko
Hiram J. Woo
New Frontier Media, Inc.
6000 Spine Road, Suite 100
Boulder, Colorado 80301

Dear Alan, Melissa, Walter and Hiram:

  I hereby submit my resignation as a director of New Frontier Media, Inc., effective immediately, as a result of my fundamental disagreement with recent actions taken by each of you, in your capacities as members of the Special Committee and otherwise, that I believe are not in the best interests of the shareholders, employees and other constituents of the Company.

  Since Longkloof Limited made its offer to acquire the Company back in March 2012, I believe the members of the Special Committee have put their own interests ahead of those of the shareholders and may have breached their fiduciary duties. Consistent with my fiduciary duties, I delivered to each of you a letter dated August 15, 2012 detailing my serious concerns that the Special Committee was imperiling the Company and pursuing its own personal self-interests at the expense of shareholders. In the letter, I suggested that we immediately hold a special meeting of the Board to cordially and productively discuss these concerns. Instead of coordinating to convene a meeting, I received a written response one month later from the members of the Special Committee containing self-serving and misleading statements that failed to adequately address my concerns.

  The following is a brief summary of some of my concerns that have compelled me to resign:

  **Formation of Special Committee -** The purpose of the Special Committee established by the Board in response to the Longkloof offer was purportedly to evaluate the Company's current long-term business plan against a range of alternatives that have the potential to maximize shareholder value. I was appointed to serve on the Special Committee when it was first established by the Board.

However, the amount of additional fees other members of the Special Committee proposed to pay themselves became a sore point of contention among us. After I expressed my view that these fees were excessive and that I would be willing to continue to serve on the Special Committee without additional compensation, I was told by other members of the Special Committee that it would "look bad" if I was the only member who did not accept additional fees. Shortly thereafter, the size of the Special Committee was reduced from 5 to 3 and Mr. Woo and I were voted off the Special Committee. It was at this point that I began to have serious concerns with the policies, practices and motives of the Special Committee. At a subsequent Board meeting, Mr. Woo was added back to the Special Committee despite my emphatic objection as this would result in a majority of the Board serving on the Special Committee, thereby ceding control of the Company to the Special Committee.

**Longkloof Litigation -** In response to Longkloof's acquisition proposal and nomination of a dissident slate, the Special Committee filed an expensive lawsuit against Longkloof and its affiliates. I do not believe the lawsuit made strategic sense from a shareholder interest standpoint and believe it was a waste of corporate assets. In addition, the lawsuit was filed without first holding a Board meeting to obtain formal approval or even consulting Michael Weiner, the then current CEO, or me and in my view contained false and misleading statements. Instead of just accepting my criticism of the Special Committee's decision to file the lawsuit, the Special Committee brazenly suggested that because I did not openly support the lawsuit, I must have been sympathetic to Longkloof and complicit in its efforts to acquire the Company. This accusation is absurd and is completely lacking of merit. My intent has always been to obtain the highest and best offer for the Company, irrespective of who made the proposal, in order to maximize shareholder value.

**Exclusion From Strategic Review Process -** The Special Committee has continuously excluded me and other Company executives from the strategic review process. I am fully aware of the reasons why an independent committee is necessary to run the process. However, the full Board still needs to be assured that the significant time and money being spent by the Special Committee is actually benefiting shareholders. Despite numerous requests in my capacity as a director, I was not given any meaningful updates on the process by the Special Committee. This lack of communication on the part of the Special Committee curtailed my ability to carry out my fiduciary duties as a director.

**Termination of Michael Weiner -** Based upon my conversations with senior management, in my view the Special Committee has effectively shut senior management out of the strategic review process, thereby making it extremely difficult for management to effectively run the business, and has attempted to usurp the duties of key members of management. This has culminated with the recent termination of Michael Weiner as CEO of the Company, a decision that was made by the Board members constituting the Special Committee without my approval and without seeking my input. Alan Isaacman, the Chairman of the Special Committee, has also replaced Mr. Weiner as Chairman of the Board. Prior to his termination, Mr. Weiner also raised what in my view are serious concerns with the lack of communication with management regarding the strategic review process, the Longkloof lawsuit and the activities of the members of the Special Committee in general.

It is my strong belief that the directors of any public company should be receptive to and welcome other points of view on the Board. This ensures a system of checks and balances that prevents any individual or group of directors from taking action that is contrary to the best interests of the shareholders, the true owners of the company. Unfortunately, the termination of Mr. Weiner as CEO, the replacement of Mr. Weiner as Chairman of the Board and the other activities of the Special Committee that have made it impossible for me to continue to serve as a director was in my view a coup d'etat carefully orchestrated by the members of the Special Committee to silence opposition. For example, I am told that despite the fact that I remain a director of the Company, certain members of management have been informed that speaking to me could create issues for them.

With my resignation, it is my hope that I have impressed upon shareholders an urgent need to question your true independence and closely monitor your future actions, including your decision to be the only director nominees up for election at the upcoming annual meeting of shareholders. This Board cries out for the addition of truly independent directors to serve as representatives of the shareholders. I remain seriously concerned with the strategic review process as a result of the failure of the Special Committee to properly update me prior to my resignation. I hope that any business relationships, personal interests or agendas advanced by any of you with respect to the strategic review process will not interfere with the process.

Throughout my tenure as a director of New Frontier during the past 10 years, I have always made the interests of shareholders my top priority. Due to the actions taken by the members of the Special Committee, I am now powerless to continue to serve as a steward of shareholders in accordance with my fiduciary duties. It is therefore with great regret and a heavy heart that I must now step down from the Board.

Very truly yours,

/s/ David Nicholas
David Nicholas

cc:   Michael Weiner
      Marc Callipari

Exhibit 17.2

October 4, 2012

Mr. David M. Nicholas
P.O. Box 681647
Park City, Utah  84068

Dear David:

We received your September 28, 2012 letter accepting our September 15, 2012 request that you resign from the New Frontier Media, Inc. Board of Directors.  Your resignation is effective immediately.  Your conduct as a member of the Board has been unacceptable, and we believe that your resignation is in the best interests of the company and its shareholders.

While we understand your disappointment with not being re-nominated for election to the Board at our upcoming annual meeting and in being asked to resign from the Board, we don't believe that excuses the baseless and misleading statements you made in your letter.

As you know, earlier this year, the Board unanimously decided to form a Special Committee consisting of the independent members of the Board to review alternatives to maximize shareholder value, including, without limitation, the unsolicited acquisition proposal received from an investor group that included Longkloof Limited and Adam Rothstein. As you also know, Mr. Rothstein is a friend and personal business associate of Michael Weiner who was the CEO of New Frontier until the middle of last month. As is common practice, the Special Committee retained its own financial and legal advisors to assist it in conducting the process, which has included contacting numerous parties potentially interested in making a bid for the Company. The Special Committee has also provided periodic updates to the other Board members and, to help ensure an independent and unbiased process, required that other Board members contact the Special Committee with any requests for information on the process, as opposed to directly contacting the advisors. The Special Committee also required that other Board members refrain from engaging in any communications with potential bidders with respect to the process.

As an independent director, you were originally appointed to the Special Committee.  However, we removed you from the Special Committee in April because we believed you were not prepared to act in the best interests of shareholders, and we did not believe you could be trusted to provide the Special Committee with your independent and unbiased judgment.  Specifically we believe you had a clear conflict of interest in acting as a "proxy" on the Special Committee for New Frontier's former CEO, Michael Weiner and seeking to advance Michael's agenda.  It became clear very early on in the Special Committee's deliberations that you were committed to advancing Michael's frequently stated and unambiguous preference for selling the Company to the Longkloof / Rothstein investor group even if such a transaction would not maximize value for our shareholders. Our concerns that your and Michael's interests may be aligned with Longkloof and Mr. Rothstein were confirmed when Longkloof, in connection with its publicly-announced unsolicited offer to acquire the Company, announced its intention to initiate a proxy contest against the Company and we learned that Longkloof had invited you and Michael to participate in their proxy contest and serve as nominees on their slate. Such proxy contest, if successful, would have enabled Longkloof to take control of the Company without being required to acquire all shares of the Company (other than the shares held by Longkloof) at a price that maximized value for all shareholders.

Following your removal from the Special Committee, you continued to demonstrate that you and Michael favored Longkloof and did not share the Special Committee's steadfast commitment to ensuring a level playing field and fair process for all potential bidders. You alone, among the independent members of the Board, opposed the Special Committee's decision to file litigation against Longkloof and various associated parties.  As you know, that litigation eventually resulted in Longkloof withdrawing its proxy contest for control of the Company — a successful outcome for the Company as the proxy contest had the potential to chill the interest of potential bidders given the cost and uncertainty it was generating.  Your alignment with Longkloof was further confirmed to us when, in the course of the negotiations to settle the proxy contest, Longkloof initially requested that if you and Michael were no longer serving on the Board prior to our 2013 annual meeting, Longkloof would have the right to consent to the appointment of the directors replacing the both of you - indicating to us again that they considered you and Michael their allies.

The evidence cited above as well as your numerous other actions to demonstrate your unwavering loyalty to Michael and his agenda culminated in our complete lack of faith and confidence in your ability to act in the best interests of shareholders and fulfill your fiduciary duties and, accordingly, we determined not to re-nominate you at the upcoming annual meeting and asked for your resignation.

We believe that your departure from the Board will now enable the Special Committee to continue its process without any further unnecessary distraction. Since the resolution of the proxy contest and the related litigation, the Special Committee has made solid progress in advancing its process to review strategic alternatives.  We strongly advise you not to take any actions to interfere with the Special Committee's review of strategic alternatives and efforts to maximize shareholder value.

It is regrettable that after ten years of service on the New Frontier Media Board that your service as a public company board member needed to end in the way that it did.

Sincerely,

The Board of Directors of New Frontier Media, Inc.

2