IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02941-JLK-KLM

CRAIG TELKE, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO,
WALTER TIMOSHENKO,
LFP BROADCASTING, LLC, and
FLYNT BROADCAST, INC.,

    Defendants.

---

**DEFENDANTS LFP BROADCASTING, LLC AND FLYNT BROADCAST, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR EXPEDITED PROCEEDINGS**

---

Defendants LFP Broadcasting, LLC ("LFP") and Flynt Broadcast, Inc. ("Flynt") (collectively, the "Flynt Defendants") hereby oppose the Motion for Preliminary Injunction and Request for Expedited Proceedings ("Motion") filed by Plaintiff Craig Telke ("Plaintiff"):

## I. INTRODUCTION

Plaintiff's Motion, filed on the eve of the closing of the Tender Offer and more than a month after the transaction was announced, completely fails to make the necessary

1

showing to support the extraordinary remedy of an injunction. In fact, Plaintiff has not provided the Court with *any* evidence whatsoever. Despite this evidentiary gap, Plaintiff seeks to stop the Flynt Defendants' Tender Offer and prevent New Frontier Media, Inc.'s ("New Frontier") shareholders from making their own decision. Relying entirely on his boilerplate Complaint, Plaintiff argues that the Recommendation Statement does not make certain disclosures that are essential to New Frontier's shareholders.

But the requested information is not material because it does not significantly alter the total mix of information made available to New Frontier's shareholders. The Recommendation Statement need not provide a complete "play-by-play" of the actions of New Frontier's directors, and any information related to director resignations has already been disclosed. Moreover, the detailed Recommendation Statement offers a fair summary of the analysis conducted by Avondale Partners, LLP ("Avondale"). Thus, New Frontier has complied with its disclosure obligations.

In addition, Plaintiff cannot demonstrate any irreparable harm in the absence of an injunction. If the Tender Offer proceeds, New Frontier's shareholders will still be entitled to decide whether to tender their stock. No irreparable harm will result from such a choice. Furthermore, the lack of irreparable harm is underscored by Plaintiff's delay in seeking injunctive relief.

Plaintiff should not be permitted to deprive New Frontier's shareholders of the opportunity to realize maximum value for their shares based on such a thin record. Accordingly, the Motion should be denied and the Tender Offer should be permitted to close.

DEN-33122-1

II.  **LAW AND ARGUMENT**

To merit a preliminary injunction, a plaintiff must show that four factors weigh in his favor: (1) he is substantially likely to succeed on the merits; (2) he will suffer irreparable injury if the injunction is denied; (3) his threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).

A.  **Plaintiff has not demonstrated a likelihood of success on the merits of his breach of fiduciary duty and Exchange Act claims that the Director Defendants issued a materially misleading Recommendation Statement.**

Plaintiff's claims for breach of fiduciary duty and violation of Sections 14(d)(4) and 14(e) of the Exchange Act are premised on the same disclosure allegations.[1] Specifically, Plaintiff's Motion points to two categories of information that he contends should have been disclosed in the Recommendation Statement: (1) information related to the resignation/termination of Michael Weiner ("Weiner") and David Nicholas ("Nicholas"); and (2) information related to Avondale's financial analyses. (Motion, pp. 11-12, 16). Neither argument has any merit.

---

[1] Plaintiff does not base his Motion on any alleged wrongdoing in connection with the price or process of the Tender Offer.

3

It is true that directors are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action. *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1277 (Del. 1994). However, the essential inquiry in analyzing a disclosure claim is whether the alleged omission or misrepresentation is material. *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 509 (Del. Ch. 2010). The objective definition of materiality employed by Delaware courts is "an omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Arnold*, 650 A.2d at 1277 (*citing TSC Indus. v. Northway, Inc.,* 426 U.S. 438, 449 (1976)). This standard requires "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Id.*

That is, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* Directors do not need to disclose all information about a particular subject, or even information that is simply helpful, if it does not meet this standard. *Cogent*, 7 A.3d at 509-510.

Here, Plaintiff has presented no evidence whatsoever in support of his Motion. Plaintiff has not filed an affidavit stating that the requested disclosures would actually be significant to his deliberations. Nor has he presented any expert testimony opining that a

4

DEN-33122-1

reasonable shareholder would find such information important. In a similar situation[2] just a few weeks ago, a federal district court found no likelihood of success on a motion for preliminary injunction. The Court noted that:

> the Court has been presented with absolutely no evidence – save the proxy statement itself – concerning the merits of [Plaintiff's] claim. [Plaintiff] has not submitted so much as a declaration averring that the information she seeks would be material to her vote, much less an expert affidavit stating that a reasonable investor would likely find the omitted information material.

*Gottlieb v. Willis*, No. 12-CV-2537, 2012 U.S. Dist. LEXIS 159434 (D. Minn. Nov. 7, 2012). The same evidentiary deficiency exists in this case and should likewise prove fatal. But even if Plaintiff were to provide such testimony, his argument still must fail.

### 1. Disclosures related to Nicholas and Weiner.

Plaintiff first argues that the Recommendation Statement omits material information related to the dismissal of Weiner and Nicholas. (Motion, p. 11). The Recommendation Statement discloses the departures of Weiner and Nicholas, but Plaintiff apparently seeks more details.

The law "does not require a play-by-play description of every consideration or action taken by a Board, especially when such information would tend to confuse stockholders or inundate them with an overload of information." *Cogent*, 7 A.3d at 511 (*citing In re MONY Gp. Inc. S'holder Litig.*, 852 A.2d 9, 24-25 (Del. Ch. 2004)). Thus, Delaware courts have held that information regarding director resignations are immaterial and need not be disclosed. *See In re Frederick's of Hollywood, Inc. S'holders Litig.*,

---

[2] Indeed, the *Gottlieb* case involved the same New York counsel who represents Plaintiff in this action.

5

C.A. No. 15944, 2000 Del. Ch. LEXIS 19, *27 (Del. Ch. Jan. 31, 2000) (dismissing shareholder claim and finding "the reasons for the directors' resignations are immaterial").

Plaintiff cites a single case in support of his claim that New Frontier was obligated to disclose further information regarding Weiner and Nicholas's departures – *Ryan v. Tad's Enters.*, 709 A.2d 682 (Del. Ch. 1996). But the *Ryan* case is not on point. That case involved the fairness of a transaction where directors stood on both sides of the deal. No such allegation has been made here. *Ryan* does not support Plaintiff's claim.

Finally, even if the requested information were material, it has already been disclosed. As Plaintiff alleges in his Complaint, Nicholas engaged in a very public letter-writing campaign with the Board following his resignation. These letters, and the Board's responses, describe in great detail the disagreements between the Directors and Nicholas and the reason for Nicholas and Weiner's departures. Each of these letters was attached to New Frontier's October 10, 2012 8-K filing, which is available to shareholders such as Plaintiff.

Moreover, Weiner has already tendered his shares to the Flynt Defendants in connection with the Tender Offer. Clearly the supposed conflicts behind his departure have not led Weiner to object to the Tender Offer. Thus, Plaintiff cannot use disclosures related to the directors' resignations to stop the Tender Offer.

  2.  **Disclosures related to Avondale's analysis.**

Plaintiff also complains that the Recommendation is incomplete as to Avondale's analysis, particularly its Discounted Cash Flow. Plaintiff seeks more information

regarding: (1) the definition of "cash flow"; (2) the treatment of stock-based compensation; (3) the treatment of net operating loss carry forwards; and (4) the basis for a discount rate range of 20% - 30%. (Motion, p. 12). None of this information is material, and the Recommendation Statement provides a more than fair summary of Avondale's analysis.

Shareholders are entitled to a "fair summary" of the substantive work performed by the investment bankers upon whose advice their board relied in reaching their recommendation as to a tender offer. *Cogent*, 7 A.3d at 511 (*citing In re MONY Gp.*, 852 A.2d at 24-25). But whether a particular piece of an investment bank's analysis needs to be disclosed "depends on whether it is material, on the one hand, or immaterial minutia, on the other." *Id.* Because "it is always possible to request just one more piece of information," Courts must "guard against the fallacy that increasingly detailed disclosure is always material and beneficial disclosure." *Id.*; *Abrons v. Maree*, 911 A.2d 805, 813 (Del. Ch. 2006). Consequently, "Delaware courts have repeatedly held that a board need not disclose specific details of the analysis underlying a financial advisor's opinion." *In re Micromet, Inc. S'holders Litig.*, C.A. No. 7197-VCP, 2012 Del. Ch. LEXIS 41, at *35 (Del. Ch. Feb. 29, 2012) (*quoting Ryan v. Lyondell Chem. Co.*, C.A. No. 3176-VCN, 2008 Del. Ch. LEXIS 105, at *19 (Del. Ch. July 29, 2008)).

In *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170 (Del. 2000), the Supreme Court of Delaware rejected arguments similar to Plaintiff's. The *Skeen* court, noting that "[o]mitted facts are not material simply because they might be helpful," dismissed a shareholder complaint which alleged that various financial disclosures should have been

made in connection with a tender offer. *Id.* at 1174. The court made clear that shareholders are not entitled to "all the financial data they would need if they were making an independent determination of fair value." *Id.* Because "the basic financial data were disclosed," the court found no support for the plaintiff's disclosure arguments. *Id.*

The *Gottlieb* case, in which Plaintiff's counsel participated, is also instructive. There, the plaintiff made similar disclosure claims in seeking an injunction. But the court refused to enjoin the tender offer because the plaintiff was "essentially seeking the data necessary to replicate [investment bank's] analysis." 2012 U.S. Dist. LEXIS 159343, * 17. The proxy in question disclosed the investment bank's entire fairness opinion; the information relied upon and the types of analyses performed by the investment bank; and various estimates of the target company's value. The court found such disclosures to be sufficient to meet the "fair summary" standard. As a result, the court denied the plaintiff's motion.

In the case at bar, New Frontier has provided more than a fair summary of Avondale's analysis. The Recommendation Statement includes a detailed description of Avondale's work, and sets forth extensive data underlying Avondale's fairness opinion. The disclosures Plaintiff seeks would only be necessary if Plaintiff were seeking to reach an independent determination of fair value.

Plaintiff's Motion cites two cases in arguing in favor of further financial disclosures. But once again, Plaintiff misreads the cases he offers. The *Celera* decision did not deal with a request for injunctive relief; instead, it approved a settlement

8

agreement. *In re Celera Corp. S'holder Litig.*, C.A. No. 6304-VCP, 2012 Del. Ch. LEXIS 66 (Del. Ch. Mar. 23, 2012). Furthermore, the *Celera* decision does not require disclosure of the cash flow information sought by Plaintiff.

Similarly, Plaintiff's reliance on *Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*, C.A. No. 5002-CC, 2009 Del. Ch. LEXIS 210 (Del. Ch. Nov. 18, 2009) is misplaced. That order merely permitted expedited discovery based on a "colorable" disclosure claim. It did not decide that a likelihood of success on the merits had been established, or that there was any actual breach of fiduciary duty. Thus, *Starent* does not support Plaintiff's claims.

Plaintiff has not established a likelihood of success on the merits of his disclosure claims. Plaintiff has presented no evidence that the information sought is material, and relevant case law holds otherwise. Thus, Plaintiff cannot satisfy the first element of the preliminary injunction analysis.

### B. **Plaintiff has not demonstrated irreparable harm in the absence of an injunction.**

Plaintiff has also failed to demonstrate that irreparable harm would result in the absence of an injunction. As the *Cogent* court noted, "Fully informed stockholders may voluntarily choose not to tender their shares and instead seek appraisal. As long as the stockholders' decision is informed ... the choice whether to tender will be voluntary and cannot in any legally meaningful sense be said to threaten irreparable harm." 7 A.3d at 516.

9

Furthermore, Plaintiff's delay in seeking injunctive relief weighs against a finding of irreparable harm. Delay in seeking preliminary injunctive relief can be powerful evidence that no irreparable injury exists. *See Kansas Health Care Assoc. v. Kansas Dept. of Soc. and Rehab. Servs.*, 31 F.3d 1536, 1543-44 (10th Cir. 1994) ("As a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury."); *Galaton v. Johnson*, No. 5:11-CV-397-D, 2011 U.S. Dist. LEXIS 92125 (E.D.N.C. Aug. 17, 2011) (denying preliminary injunction due in part to unnecessary delay).

In *Galaton*, the court considered a motion for preliminary injunction filed by Plaintiff's New York counsel seeking to enjoin a shareholder vote on a proposed merger. The plaintiff filed a motion for preliminary injunction on August 2 ahead of a shareholder vote scheduled for August 23. The plaintiff then filed his memorandum of law in support of his motion on August 12, just eleven days before the scheduled shareholder vote. The court found that "[plaintiff's] argument that he is likely to suffer irreparable harm is due to his own delay." 2011 U.S. Dist. LEXIS 92125. Consequently, the court refused to enjoin the shareholder vote and held that "equity need not and will not provide a balm for [plaintiff's] self-inflicted wound." *Id.*

In the case at hand, Plaintiff has left even less time than in the *Galaton* case. Plaintiff filed its Complaint on November 8, 2012, nearly a month after the Tender Offer was publicly announced. And despite the knowledge that the Tender Offer would close on November 27, Plaintiff waited until November 19 to file its Motion. Plaintiff thus waited until a mere eight days (three business days) before the Tender Offer is scheduled to close to seek an injunction. Plaintiff did not file suit immediately after the Tender

Offer was announced, and did not immediately seek injunctive relief when he did file his Complaint. He cannot now claim to be threatened by immediate and irreparable harm.

### C. Plaintiff has not demonstrated that the balance of harms favors an injunction or that the public interest would be served by an injunction.

Finally, Plaintiff cannot establish the final two elements of the injunctive analysis: that his threatened injury outweighs the injury Defendants will suffer under the injunction and that the injunction would not be adverse to the public interest.

Enjoining a transaction such as this will at a minimum create uncertainty and delay and ultimately could even jeopardize the transaction. Thus, an injunction will lead to significant harm to Defendants. *See In re Dollar Thrifty S'holder Litig.*, 14 A.3d 573, 617-18 (Del. Ch. 2010). An injunction would also lead to significant harm to third parties, especially New Frontier's shareholders. *Matador Capital Mgmt. Corp. v. BRC Hldgs., Inc.*, 729 A.2d 280, 293-94 (Del. Ch. 1998) ("Delaware law is clear that a court will not deprive shareholders of the opportunity to receive a premium on their shares [in the context of a tender offer] without some showing of a fiduciary or disclosure violation."); *Micromet*, 2012 Del. Ch. LEXIS 41 at *43 ("the proposed transaction may represent the shareholders' only and best opportunity to receive a substantial premium for their shares ... the balance of the equities weighs against enjoining the proposed transaction.").

In contrast, the harm to Plaintiff if the Tender Offer closes is minimal. Plaintiff holds a tiny fraction of New Frontier's shares, and has very little personal exposure. Nevertheless, he seeks to stop a major transaction from closing based on nothing more

11

than a form complaint. This balance of harms thus weights against injunctive relief. *See Gottlieb*, 2012 U.S. Dist. LEXIS 159343 ("it is difficult to justify the extraordinary remedy of a preliminary injunction of a complex transaction affecting thousands of people ... on the strength of a single shareholder's complaint and in the absence of any evidence that the sought-after information has any practical value to her or any other shareholder").

Even if Plaintiff tenders his shares, he will be entitled to a 79% premium along with the rest of New Frontier's shareholders. Thus, an injunction is arguably against his interest. *See Cogent*, 7 A.3d at 517 ("entry of an order precluding effectuation of the tender offer would appear at this time to be at least as likely to injure the economic interests of the Plaintiffs as to protect or enhance those interests.").

Ultimately, the balance of harms and the public interest weight in favor of allowing the tender Offer to close. As the Delaware Chancery Court has stated, "[t]he balance of equities favors letting the shareholders decide the Company's fate." *In re Answers Corp. S'holders Litig.*, C.A. No. 6170-VCN, 2011 Del. Ch. LEXIS 57, at *37 (Del. Ch. Apr. 11, 2011). In this case, New Frontier's shareholders deserve the chance to make up their own mind without further interference from Plaintiff.

### D. If Plaintiff does obtain an injunction, he should be forced to post a substantial bond.

If Plaintiff is successful in obtaining an injunction, he should be required to post a bond commensurate with the significance of the Tender Offer. Fed. R. Civ. P. 65(c) provides that no preliminary injunction shall issue except upon the giving of security by

12

the applicant "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party . . . found to have been wrongfully enjoined."

In this case, the Tender Offer represents a $33 million transaction that will provide significant value to both parties. An injunction will undoubtedly disrupt the process, and may affect the price of New Frontier's stock or even jeopardize the entire transaction. Given the serious harm to Defendants and New Frontier's shareholders in the event of a wrongful injunction, the Court should require a substantial bond to secure any injunction.

## III. CONCLUSION

Plaintiff has not met his burden of proving his entitlement to an injunction. On the contrary, the facts reveal that Plaintiff has no likelihood of success on the merits or irreparable harm, and that the balance of equities and public interest favor denial of the Motion. Accordingly, Plaintiff's Motion should be denied in its entirety.

          Respectfully submitted,

          /s/ *David S. Steefel*
          Jeffrey A. Chase (#5203)
          David S. Steefel (#9194)
          HUSCH BLACKWELL LLP
          Wells Fargo Center
          1700 Lincoln Street, Suite 4700
          Denver, Colorado 80203
          Phone: (303) 749-7200
          Fax:    (303) 749-7272
          E-mail: Jeffrey.Chase@huschblackwell.com
                    David.Steefel@huschblackwell.com

Mark A. Vander Laan
Robert M. Zimmerman
DINSMORE & SHOHL LLP
1900 First Financial Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone:  (513) 977-8200
Fax:     (513) 977-8141
Email:  mark.vanderlaan@dinsmore.com
            robert.zimmerman@dinsmore.com

**Attorneys for Defendants
LFP Broadcasting, LLC and
Flynt Broadcast, Inc.**

14

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **DEFENDANTS LFP BROADCASTING, LLC AND FLYNT BROADCAST, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR EXPEDITED PROCEEDINGS** has been duly served electronically upon the following counsel through CM/ECF this 26th day of November, 2012:

Robert J. Dyer, III
Jeffrey A. Berens
DYER & BERENS LLP
303 East 17th Avenue, Suite 300
Denver, Colorado 80203
Phone: (303) 861-1764
Fax: (303) 395-0393
Email: bob@dyerberens.com
        jeff@dyerberens.com

**Attorneys for Plaintiff
Craig Telke**

Stuart N. Bennett
Aaron Goldhamer
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
Phone: (303) 573-1600
Fax: (303) 573-8133
Email: sbennett@joneskeller.com
        agoldhamer@joneskeller.com

**Attorneys for Defendants
Alan Isaacman, Hiram J. Woo, Melissa Hubbard, Walter Timoshenko, and New Frontier Media, Inc.**

/s/ *David S. Steefel*