**THIS DOCUMENT IS IMPORTANT AND REQUIRES YOUR IMMEDIATE ATTENTION.**

**Letter of Transmittal**
**To Surrender Certificates Formerly Representing**
**Shares of Common Stock**

of

# New Frontier Media, Inc.

*The Exchange Agent is:*

**Corporate Stock Transfer**

*By Registered or Certified Mail, Hand or Overnight Carrier:*

Corporate Stock Transfer
Attn: Carylyn Bell
3200 Cherry Creek Dr. South
Suite 4300
Denver, CO 80209
Phone: (303) 282-4800
Facsimile: (303) 282-5800

**DELIVERY OF THIS LETTER OF TRANSMITTAL TO AN ADDRESS OTHER THAN AS SET FORTH ABOVE WILL NOT CONSTITUTE A VALID DELIVERY. YOU MUST SIGN THIS LETTER OF TRANSMITTAL WHERE INDICATED BELOW AND, IF YOU ARE A U.S. HOLDER, COMPLETE THE IRS FORM W-9 ENCLOSED WITH THIS LETTER OF TRANSMITTAL. IF YOU ARE A NON-U.S. HOLDER, YOU MUST OBTAIN AND COMPLETE AN IRS FORM W-8BEN OR OTHER IRS FORM W-8, AS APPLICABLE. PLEASE READ THE INSTRUCTIONS ACCOMPANYING THIS LETTER OF TRANSMITTAL CAREFULLY BEFORE COMPLETING THIS LETTER OF TRANSMITTAL.**

| DESCRIPTION OF SHARES SURRENDERED | | | |
|---|---|---|---|
| Name(s) and Address(es) of Registered Holder(s) (Please fill in, if blank, exactly as name(s) appear(s) on Share Certificate(s)) | Shares Surrendered (Please fill in. Attach additional signed list, if necessary) | | |
| | Share Certificate Numbers (1) | Total Number of Shares Represented by Share Certificate(s) (1) | Number of Shares Surrendered (2) |
| | | | |
| | | | |
| | | | |
| | Total Shares Surrendered | | |

(1)   Need not be completed by shareholders surrendering by book-entry transfer.
(2)   Unless a lower number of Shares to be surrendered is otherwise indicated, it will be assumed that all Shares described above are being surrendered. See Instruction 4.



EXHIBIT
a - 1

**IF YOU WOULD LIKE ADDITIONAL COPIES OF THIS LETTER OF TRANSMITTAL OR ANY OF THE OTHER OFFERING DOCUMENTS, YOU SHOULD CONTACT THE EXCHANGE AGENT, AT ITS ADDRESS OR TELEPHONE NUMBER SET FORTH ABOVE.**

You have received this Letter of Transmittal in connection with certificates for shares of common stock, par value $0.0001 per share, of New Frontier, Inc., a Colorado corporation ("*New Frontier*") that were not tendered in the tender offer of Flynt Broadcast, Inc. ("*Merger Sub*"), a Colorado corporation and direct, wholly-owned subsidiary of LFP Broadcasting, LLC, a Delaware limited liability company ("*LFP Broadcasting*"), to purchase all outstanding shares of common stock, par value $0.0001 per share ("*Shares*"), of New Frontier. In connection with the terms of an Agreement and Plan of Merger dated as of October 15, 2012 (the "*Merger Agreement*") by and among Merger Sub, LFP Broadcasting, and New Frontier, LFP Broadcasting completed the acquisition of New Frontier via a short-form merger of Merger Sub with and into New Frontier (the "*Merger*"), effective on Wednesday, November 28, 2012 (the "*Effective Time*").

Pursuant to the Merger Agreement, at the Effective Time, each outstanding Share was automatically cancelled and exchanged for the right to receive $2.02 net per share in cash, without interest thereon (the "*Offer Price*"), plus a contingent payment right, which has been subsequently determined to be worth $0.04 (the "*CPR*" and together with the Offer Price, the "*Offer Consideration*"). Until you surrender your share certificate(s) to Corporate Stock Transfer (the "*Exchange Agent*"), such share certificates represent only the right to receive the respective Offer Consideration. The acceptance for payment of Shares validly exchanged according to any of the procedures described in this Letter of Transmittal and in the Instructions hereto will constitute a binding agreement among the undersigned, LFP Broadcasting and Merger Sub upon the terms, and subject to the conditions, of the Merger Agreement.

You should use this Letter of Transmittal to surrender to Corporate Stock Transfer (the "*Exchange Agent*") Shares represented by certificates (each, a "*Share Certificate*") that were not tendered in the tender offer. If you are surrendering your Shares by book-entry transfer to an account maintained by the Exchange Agent at The Depository Trust Company ("*DTC*"), you may use this Letter of Transmittal or you may use an Agent's Message (as defined in Instruction 2 below). In this Letter of Transmittal, shareholders who surrender Share Certificates representing their Shares are referred to as "*Certificate Shareholders*," and shareholders who surrender their Shares through book-entry transfer are referred to as "*Book-Entry Shareholders*."

**Delivery of documents to DTC will not constitute surrender to the Exchange Agent.**

**Additional Information if Shares Have Been Lost, Are Being Surrendered By Book-Entry Transfer, or Are Being Surrendered Pursuant to a Previous Notice of Guaranteed Delivery**

If any Share Certificate(s) you are surrendering with this Letter of Transmittal has been lost, stolen, destroyed or mutilated, then you should contact Corporate Stock Transfer, New Frontier's transfer agent (the "*Transfer Agent*"), at (303) 282-4800, regarding the requirements for replacement. You may be required to post a bond to secure against the risk that the Share Certificate(s) may be subsequently recirculated. **You are urged to contact the Transfer Agent immediately in order to receive further instructions, for a determination of whether you will need to post a bond and to permit timely processing of this documentation. See Instruction 10.**

☐ **CHECK HERE IF SURRENDERED SHARES ARE BEING DELIVERED HEREWITH.**

☐ **CHECK HERE IF SHARE CERTIFICATES HAVE BEEN LOST, STOLEN, DESTROYED OR MUTILATED. SEE INSTRUCTION 10.**

☐ **CHECK HERE IF SURRENDERED SHARES ARE BEING DELIVERED BY BOOK-ENTRY TRANSFER TO THE ACCOUNT MAINTAINED BY THE DEPOSITARY WITH DTC AND COMPLETE THE FOLLOWING (ONLY FINANCIAL INSTITUTIONS THAT ARE PARTICIPANTS IN DTC MAY SURRENDER SHARES BY BOOK-ENTRY TRANSFER):**

Name of Surrendering Institution: _____

DTC Participant Number: _____

Transaction Code Number: _____

☐ **CHECK HERE IF SURRENDERED SHARES ARE BEING SURRENDERED PURSUANT TO A NOTICE OF GUARANTEED DELIVERY PREVIOUSLY SENT TO THE DEPOSITARY AND COMPLETE THE FOLLOWING (PLEASE ENCLOSE A PHOTOCOPY OF SUCH NOTICE OF GUARANTEED DELIVERY):**

Name(s) of Registered Owner(s): _____

Window Ticket Number (if any) or DTC Participant Number: _____

Date of Execution of Notice of Guaranteed Delivery: _____

Name of Institution which Guaranteed Delivery: _____

**NOTE: SIGNATURES MUST BE PROVIDED BELOW.**

**PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY.**

Ladies and Gentlemen:

In connection with the terms of an Agreement and Plan of Merger dated as of October 15, 2012 (the "*Merger Agreement*") by and among Flynt Broadcast, Inc., a Colorado corporation ("*Merger Sub*"), LFP Broadcasting, LLC, a Delaware limited liability company ("*LFP Broadcasting*"), and New Frontier Media, Inc., a Colorado corporation ("*New Frontier*"), LFP Broadcasting completed the acquisition of New Frontier via a short-form merger of Merger Sub with and into New Frontier (the "*Merger*"), effective on Wednesday, November 28, 2012 (the "*Effective Time*").

Pursuant to the Merger Agreement, at the Effective Time, each outstanding Share was automatically cancelled and exchanged for the right to receive $2.02 net per share in cash, without interest thereon (the "*Offer Price*"), plus a contingent payment right, which has been subsequently determined to be worth $0.04 (the "*CPR*" and together with the Offer Price, the "*Offer Consideration*"). Until you surrender your share certificate(s) to Corporate Stock Transfer (the "*Exchange Agent*"), such share certificates represent only the right to receive the respective Offer Consideration. The acceptance for payment of Shares validly exchanged according to any of the procedures described in this Letter of Transmittal and in the Instructions hereto will constitute a binding agreement among the undersigned, LFP Broadcasting and Merger Sub upon the terms, and subject to the conditions, of the Merger Agreement.

By delivery of this Letter of Transmittal to the Exchange Agent, the undersigned hereby accepts the applicable Offer Consideration and acknowledges and agrees that it received notice that was sent of November 29, 2012 of its appraisal rights as required by Section 7-113-203 of the Colorado Business Corporations Act (which notice is attached as Annex A to this Letter of Transmittal). By signing and delivering this Letter of Transmittal and surrendering the Share certificate(s) herewith surrendered to the Exchange Agent, the undersigned hereby forever waives any and all rights of appraisal and any dissenters' rights to which the undersigned may have been entitled pursuant to Section 7-113-102 et seq. of the Colorado Business Corporations Act with respect to the transactions contemplated by the Merger Agreement and withdraws any and all written objections to the Merger and/or demands for appraisal, if any, with respect to the Shares.

By delivery of this Letter of Transmittal to the Exchange Agent, the undersigned hereby represents and warrants that: (i) the undersigned has full power and authority to submit, sell, assign and transfer the Shares and to perform his, her or its obligations hereunder; (ii) the undersigned has good and unencumbered title to the Shares, free and clear of all liens, restrictions, charges and encumbrances and the same shall not be subject to any adverse claim or right; and (iii) this Letter of Transmittal constitutes a valid and binding obligation of the undersigned, enforceable against him, her or it in accordance with its terms.

By delivery of this Letter of Transmittal to the Exchange Agent, the undersigned agrees, upon request, to execute and deliver any additional documents necessary or desirable to complete the surrender of the Shares; irrevocably constitutes and appoints the Exchange Agent as the undersigned's true and lawful agent and attorney-in-fact to effect such surrender of the Shares and to transfer the Shares on the books of New Frontier; and authorizes and instructs the Exchange Agent to surrender to New Frontier the enclosed share certificate(s).

All authority conferred or agreed to be conferred in this Letter of Transmittal shall be binding upon the successors, assigns, heirs, executors, administrators and legal representatives of the undersigned and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

The undersigned understands that surrender is not made in acceptable form until the receipt by the Exchange Agent of this Letter of Transmittal, duly completed and signed, and of the share certificate(s), together with all accompanying evidences of authority in form satisfactory to the Exchange Agent. The undersigned understands that the method of surrender of share certificate(s) and all other required documents is at the election of the surrendering stockholder(s), but risk of loss and title to the share certificate(s) will pass only upon physical receipt thereof by the Exchange Agent. All questions as to validity, form and eligibility of any surrender of share certificate(s) hereunder will be determined by the Exchange Agent and such determination shall be final and binding.

Unless otherwise indicated herein under "Special Payment Instructions," please issue the check for the purchase price in the name(s) of, and/or return any Share Certificates representing Shares not surrendered or accepted for payment to, the registered owner(s) appearing under "Description of Shares Surrendered." Similarly, unless otherwise indicated under "Special Delivery Instructions," please mail the check for the purchase price and/or return any Share Certificates representing Shares not surrendered or accepted for payment (and accompanying documents, as appropriate) to the address(es) of the registered owner(s) appearing under "Description of Shares Surrendered." In the event that both the Special Delivery Instructions and the Special Payment Instructions are completed, please issue the check for the cash portion of the purchase price and/or issue any Share Certificates representing Shares not surrendered or accepted for payment (and any accompanying documents, as appropriate) in the name of, and deliver such check and/or return such Share Certificates (and any accompanying documents, as appropriate) to, the person or persons so indicated. Unless otherwise indicated herein in the box titled "Special Payment Instructions," please credit any Shares surrendered hereby or by an Agent's Message (as defined in Instruction 2) and surrendered by book-entry transfer, but which are not purchased, by crediting the account at DTC designated above. The undersigned recognizes that LFP Broadcasting has no obligation pursuant to the Special Payment Instructions to transfer any Shares from the name of the registered owner thereof if it does not accept for payment any of the Shares so surrendered.

## SPECIAL PAYMENT INSTRUCTIONS
### (See Instructions 1, 4, 5, 6 and 7)

To be completed ONLY if Share Certificate(s) not surrendered or not accepted for payment and/or the check for the purchase price are to be issued in the name of someone other than the undersigned or if Shares surrendered by book-entry transfer which are not accepted for payment are to be returned by credit to an account maintained at DTC other than that designated above.

Issue:  ☐ Check and/or
      ☐ Share Certificates to:

Name: _____

**(Please Type or Print)**

Address: _____

_____

_____

**(Include Zip Code)**

_____

**(Tax Identification or Social Security Number)**

**SPECIAL DELIVERY INSTRUCTIONS**
**(See Instructions 1, 4, 5, 6 and 7)**

To be completed ONLY if Share Certificate(s) not surrendered or not accepted for payment and/or the check for the purchase price of Shares accepted for payment, are to be sent to someone other than the undersigned or to the undersigned at an address other than that shown in the box titled "Description of Shares Surrendered" above.

Deliver:   ☐  Check and/or
           ☐  Share Certificates to:

Name: _____
                        **(Please Type or Print)**

Address: _____

_____

_____
                        **(Include Zip Code)**

_____
            **(Tax Identification or Social Security Number)**

**IMPORTANT**
**SHAREHOLDER—SIGN HERE**
**(U.S. Holders Please Also Complete the Enclosed IRS Form W-9)**
**(Non-U.S. Holders Please Obtain and Complete IRS Form W-8BEN or Other  Applicable IRS Form W-8)**

_____

(Signature(s) of Shareholder(s))

Dated: _____

     (Must be signed by registered owner(s) exactly as name(s) appear(s) on Share Certificate(s) or on a security position listing or by person(s) authorized to become registered owner(s) by certificates and documents transmitted herewith. If signature is by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations or others acting in a fiduciary or representative capacity, please set forth full title and see Instruction 5. For information concerning signature guarantees, see Instruction 1.)

Name(s): _____

**(Please Type or Print)**

Capacity (full title): _____

Address: _____

**(Include Zip Code)**

Area Code and Telephone Number: _____

Tax Identification or Social Security No.: _____

**GUARANTEE OF SIGNATURE(S)**
**(For use by Eligible Institutions only;**
**see Instructions 1 and 5)**

Name of Firm: _____

_____
**(Include Zip Code)**

Authorized Signature: _____

Name: _____
**(Please Type or Print)**

Area Code and Telephone Number: _____

Dated: _____

_____
**PLACE MEDALLION GUARANTEE IN SPACE BELOW**

## INSTRUCTIONS
### Forming Part of the Terms and Conditions of the Offer

1. **Guarantee of Signatures.** Except as otherwise provided below, all signatures on this Letter of Transmittal must be guaranteed by a financial institution (including most commercial banks, savings and loan associations and brokerage houses) that is a member in good standing of a recognized Medallion Program approved by the Securities Transfer Association Incorporated, including any of the Security Transfer Agents Medallion Program, the New York Stock Exchange Medallion Signature Program and the Stock Exchanges Medallion Program or an "eligible guarantor institution", as such term is defined in Rule 17Ad-15 of the Securities Exchange Act of 1934, as amended (each, an "*Eligible Institution*"). Signatures on this Letter of Transmittal need not be guaranteed (a) if this Letter of Transmittal is signed by the registered owner(s) (which term, for purposes of this document, includes any participant in DTC whose name appears on a security position listing as the owner of the Shares) of Shares surrendered herewith and such registered owner has not completed the box titled "Special Payment Instructions" or the box titled "Special Delivery Instructions" on this Letter of Transmittal or (b) if such Shares are surrendered for the account of an Eligible Institution. See Instruction 5.

2. **Delivery of Letter of Transmittal and Share Certificates or Book-Entry Confirmations.** This Letter of Transmittal is to be completed by shareholders either if Share Certificates are to be forwarded herewith or, unless an Agent's Message is utilized, if surrenders are to be made pursuant by book-entry transfer. Share Certificates representing all physically surrendered Shares, or confirmation of any book-entry transfer into the Exchange Agent's account at DTC of Shares surrendered by book-entry transfer ("*Book-Entry Confirmation*"), as well as this Letter of Transmittal properly completed and duly executed with any required signature guarantees, unless an Agent's Message in the case of a book-entry transfer is utilized, and any other documents required by this Letter of Transmittal, must be received by the Exchange Agent at one of its addresses set forth herein. Please do not send your Share Certificates directly to Merger Sub, LFP Broadcasting, or New Frontier.

A properly completed and duly executed Letter of Transmittal must accompany each such delivery of Share Certificates to the Exchange Agent.

The term "*Agent's Message*" means a message, transmitted by DTC to, and received by, the Exchange Agent and forming part of a Book-Entry Confirmation, which states that DTC has received an express acknowledgment from the participant in DTC surrendering the Shares which are the subject of such Book-Entry Confirmation that such participant has received and agrees to be bound by the terms of this Letter of Transmittal and that Merger Sub may enforce such agreement against the participant.

THE METHOD OF DELIVERY OF THE SHARES, THIS LETTER OF TRANSMITTAL AND ALL OTHER REQUIRED DOCUMENTS, INCLUDING DELIVERY THROUGH DTC, IS AT THE ELECTION AND RISK OF THE SURRENDERING SHAREHOLDER. DELIVERY OF ALL SUCH DOCUMENTS WILL BE DEEMED MADE AND RISK OF LOSS OF THE SHARE CERTIFICATES SHALL PASS ONLY WHEN ACTUALLY RECEIVED BY THE EXCHANGE AGENT (INCLUDING, IN THE CASE OF A BOOK-ENTRY TRANSFER, BY BOOK-ENTRY CONFIRMATION). IF SUCH DELIVERY IS BY MAIL, IT IS RECOMMENDED THAT ALL SUCH DOCUMENTS BE SENT BY PROPERLY INSURED REGISTERED MAIL WITH RETURN RECEIPT REQUESTED.

No alternative, conditional or contingent surrenders will be accepted. All surrendering shareholders, by execution of this Letter of Transmittal, waive any right to receive any notice of the acceptance of their Shares for payment.

All questions as to validity, form, eligibility (including time of receipt) and acceptance of any Share Certificate surrendered hereunder will be determined by LFP Broadcasting (which may delegate power in whole or in part to the Exchange Agent) in its sole and absolute discretion, which determination shall be final and binding. LFP Broadcasting reserves the right to waive any irregularities or defects in the surrender of any Shares or Share Certificate(s). A surrender will not be deemed to have been made until all irregularities have been cured or waived.

3. **Inadequate Space.** If the space provided herein is inadequate, the certificate numbers and/or the number of Shares should be listed on a separate schedule attached hereto and separately signed on each page thereof in the same manner as this Letter of Transmittal is signed.

4. **Partial Surrenders (Applicable to Holders of Certificated Shares Only).** If fewer than all the Shares evidenced by any Share Certificate delivered to the Exchange Agent are to be surrendered, fill in the number of Shares which are to be surrendered in the column titled "Number of Shares Surrendered" in the box titled "Description of Shares Surrendered". In such cases, new certificate(s) for the remainder of the Shares that were evidenced by the old certificate(s) but not surrendered will be sent to the registered owner, unless otherwise provided in the appropriate box on this Letter of Transmittal, promptly after the acceptance for payment of, and payment for, the Shares surrendered herewith. All Shares represented by Share Certificates delivered to the Exchange Agent will be deemed to have been surrendered unless otherwise indicated.

5. **Signatures on Letter of Transmittal; Stock Powers and Endorsements.** If this Letter of Transmittal is signed by the registered owner(s) of the Shares surrendered hereby, the signature(s) must correspond with the name(s) as written on the face of the Share Certificate(s) without alteration or any other change whatsoever.

If any Shares surrendered hereby are owned of record by two or more joint owners, all such owners must sign this Letter of Transmittal.

If any surrendered Shares are registered in the names of different holder(s), it will be necessary to complete, sign and submit as many separate Letters of Transmittal as there are different registrations of such Shares.

If this Letter of Transmittal or any certificates or stock powers are signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations or others acting in a fiduciary or representative capacity, such persons should so indicate when signing, and proper evidence satisfactory to LFP Broadcasting of their authority so to act must be submitted.

If this Letter of Transmittal is signed by the registered owner(s) of the Shares listed and transmitted hereby, no endorsements of Share Certificates or separate stock powers are required unless payment is to be made to, or Share Certificates representing Shares not surrendered or accepted for payment are to be issued in the name of, a person other than the registered owner(s), in which case the Share Certificates representing the Shares surrendered by this Letter of Transmittal must be endorsed or accompanied by appropriate stock powers, in either case, signed exactly as the name(s) of the registered owner(s) or holder(s) appear(s) on the Share Certificates. Signatures on such Share Certificates or stock powers must be guaranteed by an Eligible Institution.

If this Letter of Transmittal is signed by a person other than the registered owner(s) of the Share(s) listed, the Share Certificate(s) must be endorsed or accompanied by the appropriate stock powers, in either case, signed exactly as the name or names of the registered owner(s) or holder(s) appear(s) on the Share Certificate(s). Signatures on such Share Certificates or stock powers must be guaranteed by an Eligible Institution.

6. **Transfer Taxes.** Except as otherwise provided in this Instruction 6, LFP Broadcasting will pay any transfer taxes with respect to the transfer and sale of Shares contemplated hereby (for the avoidance of doubt, transfer taxes do not include United States federal income or backup withholding taxes). If, however, payment of the purchase price is to be made to, or (in the circumstances permitted hereby) if Share Certificates not surrendered or accepted for payment are to be registered in the name of, any person other than the registered owner(s), or if surrendered Share Certificates are registered in the name of any person other than the person signing this Letter of Transmittal, the amount of any transfer taxes (whether imposed on the registered owner(s) or such person) payable on account of the transfer to such person will be deducted from the purchase price unless satisfactory evidence of the payment of such taxes, or exemption therefrom, is submitted.

**Except as provided in this Instruction 6, it will not be necessary for transfer tax stamps to be affixed to the Share Certificates listed in this Letter of Transmittal.**

7. **Special Payment and Delivery Instructions.** If a check for the purchase price and/or Share Certificates representing Shares not surrendered or accepted for payment are to be issued or returned to, a person other than the signer(s) of this Letter of Transmittal and/or such certificates are to be mailed to a person other than the signer(s) of this Letter of Transmittal or to an address other than that shown in the box titled "Description of Shares Surrendered" above, the appropriate boxes on this Letter of Transmittal should be completed. Shareholders delivering Shares surrendered hereby or by Agent's Message by book-entry transfer may request that Shares not purchased be credited to an account maintained at DTC as such shareholder may designate in the box titled "Special

Payment Instructions" herein. If no such instructions are given, all such Shares not purchased will be returned by crediting the same account at DTC as the account from which such Shares were delivered. The cost of any payment via a method other than check shall be borne by any such shareholder requesting such other method of payment.

**8. Requests for Assistance or Additional Copies.** Questions or requests for assistance may be directed to the Exchange Agent at its address and telephone number set forth above.

**9. U.S. Shareholders: Form W-9**

In order to avoid backup withholding of U.S. federal income tax, a shareholder whose Shares are converted in the Merger, and who is a resident of the United States for U.S. federal income tax purposes or who is otherwise a U.S. person for U.S. federal income tax purposes is required to provide the shareholder's current taxpayer identification number ("*TIN*") by completing the attached Form W-9, certifying under penalties of perjury that the TIN provided on that form is correct (or that such shareholder is awaiting a receipt of a TIN), that the shareholder is a U.S. person for U.S. federal income tax purposes, and that (a) the shareholder is exempt from backup withholding, (b) the shareholder has not been notified by the Internal Revenue Service ("*IRS*") that the shareholder is subject to backup withholding as a result of a failure to report all interest or dividends, or (c) after being so notified, the IRS has notified such shareholder that such shareholder is no longer subject to backup withholding. If the correct TIN is not provided or if any other information is not correctly provided, a penalty of up to US $50 may be imposed on the shareholder by the IRS and the shareholder may be subject to backup withholding at a rate of 28%. Willfully falsifying certifications or affirmations may result in criminal penalties.

Backup withholding is not an additional tax. Rather, the U.S. income tax liability of persons subject to backup withholding will be reduced by the amount of tax withheld. If backup withholding results in an overpayment of taxes, a refund may be obtained, provided that the required information is furnished in a timely manner to the IRS.

The TIN for an individual U.S. citizen or resident is the individual's social security number.

Certain shareholders (including, among others, all corporations and certain not-for-profit organizations) are not subject to these backup withholding requirements. To avoid possible erroneous backup withholding, a shareholder who is a U.S. person for U.S. federal income tax purposes and is exempt from backup withholding should complete the Form W-9 by provided the shareholder's correct TIN, signing and dating the form, and checking the box "Exempt from backup withholding". A shareholder should consult its tax advisor as to the shareholder's qualification for an exemption from backup withholding and the procedure for obtaining such an exemption.

**All shareholders are urged to consult their own tax advisors to determine which forms should be used and whether they are exempt from backup withholding.**

**10. Non-U.S. Shareholders: Form W-8**

A shareholder whose Shares are converted in the Merger, and who is not a U.S. person for U.S. federal income tax purposes must submit the appropriate Form(s) W-8. Generally, a foreign individual or a foreign corporation that is not a pass-through entity for U.S. income tax purposes and is not engaged in a trade or business within the United States would provide a Form W-8BEN. A foreign entity that is a pass-through entity for U.S. federal income tax purposes and is not engaged in a trade or business within the United States would generally provide a W-8BEN and/or a Form W-8IMY (which may require additional Forms W-8BEN for its beneficial owners), depending on its particular circumstances. A foreign individual or a foreign entity that is engaged in a trade or business within the United States may be required to provide a Form W-8ECI. The Forms W-8 will be provided to shareholders upon request to the Exchange Agent or downloaded from the IRS's website at: *http://www.irs.gov.*

Exempt persons are not subject to backup withholding. Shareholders that are non-U.S. residents for U.S. federal income tax purposes may qualify as exempt persons by submitting a Form W-8BEN, signed under penalties of perjury, certifying the shareholder's foreign status.

If backup withholding applies, 28% of certain payments to be made to the shareholder is required to be withheld. Backup withholding is not an additional tax. Rather, the U.S. tax liability of persons subject to backup

withholding will be reduced by the amount of tax withheld. If withholding results in an overpayment of taxes, a refund may be obtained by filing a tax return with the IRS.

**All shareholders are urged to consult their own tax advisors to determine which forms should be used and whether they are exempt from backup withholding.**

11. **Lost, Destroyed, Mutilated or Stolen Share Certificates.** If any Share Certificate has been lost, destroyed, mutilated or stolen, the shareholder should promptly (i) complete this Letter of Transmittal and check the appropriate box and (ii) notify the Transfer Agent at (303) 282-4800. The shareholder will then be instructed as to the steps that must be taken in order to replace the Share Certificate. This Letter of Transmittal and related documents cannot be processed until the procedures for replacing lost, mutilated, destroyed or stolen Share Certificates have been followed.

12. **Waiver of Conditions.** Subject to the terms and conditions of the Merger Agreement and the applicable rules and regulations of the Securities and Exchange Commission, the conditions of the Merger may be waived by LFP Broadcasting and Merger Sub in whole or in part at any time and from time to time in their sole discretion.

**TREASURY DEPARTMENT CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, SHAREHOLDERS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES HEREIN IS NOT INTENDED OR WRITTEN BY US TO BE RELIED UPON, AND CANNOT BE RELIED UPON BY SHAREHOLDERS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON SHAREHOLDERS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN AS PART OF THE REQUIRED DISCLOSURE IN THIS DOCUMENT, WHICH IS BEING USED BY THE COMPANY IN CONNECTION WITH ITS PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) SHAREHOLDERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

| Form **W-9**<br>(Rev. December 2011)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | **Give Form to the**<br>**requester. Do not**<br>**send to the IRS.** |
|---|---|---|

<table>
<tr><td rowspan="7">Print or type<br>See **Specific Instructions** on page 2.</td><td colspan="2">Name (as shown on your income tax return)</td></tr>
<tr><td colspan="2">Business name/disregarded entity name, if different from above</td></tr>
<tr><td>Check appropriate box for federal tax classification:<br>☐ Individual/sole proprietor   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate<br><br>☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____<br><br>☐ Other (see instructions) ▶</td><td>☐ Exempt payee</td></tr>
<tr><td>Address (number, street, and apt. or suite no.)</td><td>Requester's name and address (optional)</td></tr>
<tr><td>City, state, and ZIP code</td><td></td></tr>
<tr><td colspan="2">List account number(s) here (optional)</td></tr>
</table>

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

[ ][ ][ ] – [ ][ ] – [ ][ ][ ][ ]

Employer identification number

[ ][ ] – [ ][ ][ ][ ][ ][ ][ ]

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

| **Sign**<br>**Here** | Signature of<br>U.S. person ▶ | Date ▶ |
|---|---|---|

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

Cat. No. 10231X

Form **W-9** (Rev. 12-2011)

Form W-9 (Rev. 12-2011)

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

• The U.S. owner of a disregarded entity and not the entity,

• The U.S. grantor or other owner of a grantor trust and not the trust, and

• The U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person, do not use Form W-9. Instead, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS a percentage of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

Also see *Special rules for partnerships* on page 1.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account, for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name/disregarded entity name" line.

**Partnership, C Corporation, or S Corporation.** Enter the entity's name on the "Name" line and any business, trade, or "doing business as (DBA) name" on the "Business name/disregarded entity name" line.

**Disregarded entity.** Enter the owner's name on the "Name" line. The name of the entity entered on the "Name" line should never be a disregarded entity. The name on the "Name" line must be the name shown on the income tax return on which the income will be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a domestic owner, the domestic owner's name is required to be provided on the "Name" line. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on the "Business name/disregarded entity name" line. If the owner of the disregarded entity is a foreign person, you must complete an appropriate Form W-8.

**Note.** Check the appropriate box for the federal tax classification of the person whose name is entered on the "Name" line (Individual/sole proprietor, Partnership, C Corporation, S Corporation, Trust/estate).

**Limited Liability Company (LLC).** If the person identified on the "Name" line is an LLC, check the "Limited liability company" box only and enter the appropriate code for the tax classification in the space provided. If you are an LLC that is treated as a partnership for federal tax purposes, enter "P" for partnership. If you are an LLC that has filed a Form 8832 or a Form 2553 to be taxed as a corporation, enter "C" for C corporation or "S" for S corporation. If you are an LLC that is disregarded as an entity separate from its owner under Regulation section 301.7701-3 (except for employment and excise tax), do not check the LLC box unless the owner of the LLC (required to be identified on the "Name" line) is another LLC that is not disregarded for federal tax purposes. If the LLC is disregarded as an entity separate from its owner, enter the appropriate tax classification of the owner identified on the "Name" line.

Form W-9 (Rev. 12-2011)

**Other entities.** Enter your business name as shown on required federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business name, trade, or DBA name on the "Business name/ disregarded entity name" line.

## Exempt Payee

If you are exempt from backup withholding, enter your name as described above and check the appropriate box for your status, then check the "Exempt payee" box in the line following the "Business name/ disregarded entity name," sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following payees are exempt from backup withholding:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2),

2. The United States or any of its agencies or instrumentalities,

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities,

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities, or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation,

7. A foreign central bank of issue,

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States,

9. A futures commission merchant registered with the Commodity Futures Trading Commission,

10. A real estate investment trust,

11. An entity registered at all times during the tax year under the Investment Company Act of 1940,

12. A common trust fund operated by a bank under section 584(a),

13. A financial institution,

14. A middleman known in the investment community as a nominee or custodian, or

15. A trust exempt from tax under section 664 or described in section 4947.

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 15.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
| --- | --- |
| Interest and dividend payments | All exempt payees except for 9 |
| Broker transactions | Exempt payees 1 through 5 and 7 through 13. Also, C corporations. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt payees 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney, and payments for services paid by a federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited Liability Company (LLC)* on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at *www.ssa.gov.* You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, below, and items 4 and 5 on page 4 indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on the "Name" line must sign. Exempt payees, see *Exempt Payee* on page 3.

**Signature requirements.** Complete the certification as indicated in items 1 through 3, below, and items 4 and 5 on page 4.

1. **Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

2. **Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. **Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

Form W-9 (Rev. 12-2011)                                                                 Page **4**

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulation section 1.671-4(b)(2)(i)(A)) | The grantor [*] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity [4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulation section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 1.

*Note. Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to phishing@irs.gov. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: spam@uce.gov or contact them at www.ftc.gov/idtheft or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. possessions for use in administering their laws. The information may also be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

{JK00487494.1 }

<u>**Annex A**</u>

**NOTICE OF DISSENTERS' RIGHTS**

**TO:    Shareholders of New Frontier Media, Inc., a Colorado corporation**

This Dissenters' Notice is provided to you as a shareholder of New Frontier Media, Inc., a Colorado corporation (the "Company").

You are hereby notified that:

- At a meeting of the board of directors held on October 14, 2012, the directors of the Company approved an Agreement and Plan of Merger (the "Merger Agreement"), which was entered into on October 15, 2012, by and among the Company, LFP Broadcasting, LLC, and Flynt Broadcast, Inc. ("Merger Sub"). Under the terms of the Merger Agreement, each outstanding share of capital stock of the Company is cancelled and extinguished by operation of law and converted automatically into the right to receive payment of the merger consideration ($2.02 net per share in cash, without interest, plus a contingent payment right of $0.04) upon the effectiveness of the merger (the "Merger"). The Merger was effective as of November 28, 2012.

- A copy of Article 113, entitled Dissenters' Rights, of the Colorado Business Corporation Act is enclosed with this Notice in the form attached hereto as **<u>Exhibit B</u>** (the "Statute"). The Statute describes the rights of shareholders who dissent from the Merger to require the Company to purchase their "dissenting shares" for cash at a price equal to the fair market value of the shares. Such rights to receive the fair market value of dissenting shares are referred to in this Notice as "Dissenters' Rights." The procedure you must follow if you desire to exercise any Dissenters' Rights you may have with respect to the Merger is set forth in full in the Statute, which should be reviewed carefully to ensure protection of your Dissenters' Rights. This notice itself does not purport to be a complete statement of the law and is qualified in its entirety by reference to the Statute.

In order to exercise your Dissenters' Rights with respect to the Merger, you must provide to the Company a written demand for payment at the address indicated below. Your demand must state the number, class and series of shares that you demand to have purchased by the Company. Your demand must also include an address to which payment is to be made. You must also submit to the Company, at the address indicated below, original certificates representing all of the shares you demand to have purchased, in order that they may be stamped or endorsed to indicate that they are dissenting shares. If you own shares of the Company's stock in uncertificated form, you must so indicate in your written demand. Such uncertificated Shares will be subject to a restriction on transfer from the date of your written demand until such time as the Company either makes payment for your shares or releases your shares from such restriction.

Attached to this Notice as **<u>Exhibit A</u>** is a form of Notice of Payment Demand which, if completed, will satisfy the requirements stated in the paragraph above. You may use this form to demand payment, or any other writing that meets these requirements. If you do not use the attached

form to demand payment, you must include the following certification in any writing you submit to demand payment:

"The undersigned shareholder hereby certifies that he, she or it:

(a) acquired beneficial ownership of the shares referred to above prior to November 28, 2012;

(b) is demanding payment for all shares owned by me in accordance with Sections 7-113-101 through 7-113-302 of the Colorado Business Corporation Act, a copy of which has been provided to and reviewed by me; and

(c) has enclosed the original stock certificate(s) identified above."

The address to which any demand for payment and accompanying certificates representing shares must be sent is:

New Frontier Media, Inc.
6000 Spine Road, Suite 100
Boulder, CO 80301
Attn: Chief Financial Officer

To successfully invoke your Dissenters' Rights and receive payment for your shares, your demand for payment and the certificates representing your shares must be received by the Company no later than December 31, 2012, which date is more than thirty days after the date on which this Notice was given.

If you fail to demand payment or to deposit your stock certificates as required by the Statute, you forfeit your right to assert dissenters' rights for your shares under the Statute.

DATED:        November 28, 2012.

**New Frontier Media, Inc.,**
**a Colorado corporation**

**EXHIBIT A**

**NOTICE OF PAYMENT DEMAND**

In connection with the recent merger of the Company with Flynt Broadcast Inc. pursuant to the Agreement and Plan of Merger by and among LFP Broadcasting, LLC, Flynt Broadcast, Inc., and the Company, which agreement was approved by the Company's board of directors, the undersigned shareholder hereby makes demand for payment of its fair market value of the shares of the Company.

1. Name of Shareholder: _____
   SSN or FEIN: _____

2. Address of shareholder to which payment should be sent:

   _____
   _____
   _____

3. List of stock certificate(s) as to which payment is demanded:

| Stock Certificate # | # of Shares | Class or Series of Shares | Name(s) in Which Registered |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

4. The undersigned shareholder hereby certifies that it:

   (a) acquired beneficial ownership of the shares referred to above prior to November 29, 2012;

   (b) is demanding payment for all shares referred to in paragraph 3 in accordance with Sections 7-113-101 through 7-113-302 of the Colorado Business Corporation Act, a copy of which has been provided with this form; and

   (c) has enclosed the original stock certificate(s) identified above.

The undersigned, upon request, will execute and deliver any additional documents deemed necessary by the Company to complete the transfer of the shares referred to above.

**SHAREHOLDER(S):**

By: _____        By: _____

Name: _____        Name: _____

Title: _____        Title: _____

Date: _____        Date: _____

{JK00487494.1 }

EXHIBIT B

COLORADO BUSINESS CORPORATION ACT
COLORADO REVISED STATUTES
TITLE 7
ARTICLE 113
DISSENTERS' RIGHTS


**Part 1 – Right of Dissent – Payment of Shares**

**7-113-101. Definitions.**

For purposes of this article:

(1) "Beneficial shareholder" means the beneficial owner of shares held in a voting trust or by a nominee as the record shareholder.

(2) "Corporation" means the issuer of the shares held by a dissenter before the corporate action, or the surviving or acquiring domestic or foreign corporation, by merger or share exchange of that issuer.

(3) "Dissenter" means a shareholder who is entitled to dissent from corporate action under section 7-113-102 and who exercises that right at the time and in the manner required by part 2 of this article.

(4) "Fair value", with respect to a dissenter's shares, means the value of the shares immediately before the effective date of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action except to the extent that exclusion would be inequitable.

(5) "Interest" means interest from the effective date of the corporate action until the date of payment, at the average rate currently paid by the corporation on its principal bank loans or, if none, at the legal rate as specified in section 5-12-101, C.R.S.

(6) "Record shareholder" means the person in whose name shares are registered in the records of a corporation or the beneficial owner of shares that are registered in the name of a nominee to the extent such owner is recognized by the corporation as the shareholder as provided in section 7-107-204.

(7) "Shareholder" means either a record shareholder or a beneficial shareholder.

**7-113-102. Right to dissent.**

(1) A shareholder, whether or not entitled to vote, is entitled to dissent and obtain payment of the fair value of the shareholder's shares in the event of any of the following corporate actions:

   (a) Consummation of a plan of merger to which the corporation is a party if:

(I) Approval by the shareholders of that corporation is required for the merger by section 7-111-103 or 7-111-104 or by the articles of incorporation; or

(II) The corporation is a subsidiary that is merged with its parent corporation under section 7-111-104;

(b) Consummation of a plan of share exchange to which the corporation is a party as the corporation whose shares will be acquired;

(c) Consummation of a sale, lease, exchange, or other disposition of all, or substantially all, of the property of the corporation for which a shareholder vote is required under section 7-112-102 (1);

(d) Consummation of a sale, lease, exchange, or other disposition of all, or substantially all, of the property of an entity controlled by the corporation if the shareholders of the corporation were entitled to vote upon the consent of the corporation to the disposition pursuant to section 7-112-102 (2); and

(e) Consummation of a conversion in which the corporation is the converting entity as provided in section 7-90-206 (2).

(1.3) A shareholder is not entitled to dissent and obtain payment, under subsection (1) of this section, of the fair value of the shares of any class or series of shares that either were listed on a national securities exchange registered under the federal "Securities Exchange Act of 1934", as amended, or were held of record by more than two thousand shareholders, at the time of:

(a) The record date fixed under section 7-107-107 to determine the shareholders entitled to receive notice of the shareholders' meeting at which the corporate action is submitted to a vote;

(b) The record date fixed under section 7-107-104 to determine shareholders entitled to sign writings consenting to the corporate action; or

(c) The effective date of the corporate action if the corporate action is authorized other than by a vote of shareholders.

(1.8) The limitation set forth in subsection (1.3) of this section shall not apply if the shareholder will receive for the shareholder's shares, pursuant to the corporate action, anything except:

(a) Shares of the corporation surviving the consummation of the plan of merger or share exchange;

(b) Shares of any other corporation which, at the effective date of the plan of merger or share exchange, either will be listed on a national securities exchange registered under the federal "Securities Exchange Act of 1934", as amended, or will be held of record by more than two thousand shareholders;

(c) Cash in lieu of fractional shares; or

{JK00487494.1 }

(d) Any combination of the foregoing described shares or cash in lieu of fractional shares.

(2) (Deleted by amendment, L. 96, p. 1321, § 30, effective June 1, 1996.)

(2.5) A shareholder, whether or not entitled to vote, is entitled to dissent and obtain payment of the fair value of the shareholder's shares in the event of a reverse split that reduces the number of shares owned by the shareholder to a fraction of a share or to scrip if the fractional share or scrip so created is to be acquired for cash or the scrip is to be voided under section 7-106-104.

(3) A shareholder is entitled to dissent and obtain payment of the fair value of the shareholder's shares in the event of any corporate action to the extent provided by the bylaws or a resolution of the board of directors.

(4) A shareholder entitled to dissent and obtain payment for the shareholder's shares under this article may not challenge the corporate action creating such entitlement unless the action is unlawful or fraudulent with respect to the shareholder or the corporation.

### 7-113-103.  Dissent by nominees and beneficial owners.

(1) A record shareholder may assert dissenters' rights as to fewer than all the shares registered in the record shareholder's name only if the record shareholder dissents with respect to all shares beneficially owned by any one person and causes the corporation to receive written notice which states such dissent and the name, address, and federal taxpayer identification number, if any, of each person on whose behalf the record shareholder asserts dissenters' rights. The rights of a record shareholder under this subsection (1) are determined as if the shares as to which the record shareholder dissents and the other shares of the record shareholder were registered in the names of different shareholders.

(2) A beneficial shareholder may assert dissenters' rights as to the shares held on the beneficial shareholder's behalf only if:

(a) The beneficial shareholder causes the corporation to receive the record shareholder's written consent to the dissent not later than the time the beneficial shareholder asserts dissenters' rights; and

(b) The beneficial shareholder dissents with respect to all shares beneficially owned by the beneficial shareholder.

(3) The corporation may require that, when a record shareholder dissents with respect to the shares held by any one or more beneficial shareholders, each such beneficial shareholder must certify to the corporation that the beneficial shareholder and the record shareholder or record shareholders of all shares owned beneficially by the beneficial shareholder have asserted, or will timely assert, dissenters' rights as to all such shares as to which there is no limitation on the ability to exercise dissenters' rights. Any such requirement shall be stated in the dissenters' notice given pursuant to section 7-113-203.

### Part 2 – Procedure for Exercise of Dissenters' Rights

### 7-113-201.  Notice of dissenters' rights.

(1) If a proposed corporate action creating dissenters' rights under section 7-113-102 is submitted to a vote at a shareholders' meeting, the notice of the meeting shall be given to all shareholders, whether or not entitled to vote. The notice shall state that shareholders are or may be entitled to assert dissenters' rights under this article and shall be accompanied by a copy of this article and the materials, if any, that, under articles 101 to 117 of this title, are required to be given to shareholders entitled to vote on the proposed action at the meeting. Failure to give notice as provided by this subsection (1) shall not affect any action taken at the shareholders' meeting for which the notice was to have been given, but any shareholder who was entitled to dissent but who was not given such notice shall not be precluded from demanding payment for the shareholder's shares under this article by reason of the shareholder's failure to comply with the provisions of section 7-113-202 (1).

(2) If a proposed corporate action creating dissenters' rights under section 7-113-102 is authorized without a meeting of shareholders pursuant to section 7-107-104, any written or oral solicitation of a shareholder to execute a writing consenting to such action contemplated in section 7-107-104 shall be accompanied or preceded by a written notice stating that shareholders are or may be entitled to assert dissenters' rights under this article, by a copy of this article, and by the materials, if any, that, under articles 101 to 117 of this title, would have been required to be given to shareholders entitled to vote on the proposed action if the proposed action were submitted to a vote at a shareholders' meeting. Failure to give notice as provided by this subsection (2) shall not affect any action taken pursuant to section 7-107-104 for which the notice was to have been given, but any shareholder who was entitled to dissent but who was not given such notice shall not be precluded from demanding payment for the shareholder's shares under this article by reason of the shareholder's failure to comply with the provisions of section 7-113-202 (2).

## 7-113-202.  Notice of intent to demand payment.

(1) If a proposed corporate action creating dissenters' rights under section 7-113-102 is submitted to a vote at a shareholders' meeting and if notice of dissenters' rights has been given to such shareholder in connection with the action pursuant to section 7-113-201 (1), a shareholder who wishes to assert dissenters' rights shall:

> (a) Cause the corporation to receive, before the vote is taken, written notice of the shareholder's intention to demand payment for the shareholder's shares if the proposed corporate action is effectuated; and

> (b) Not vote the shares in favor of the proposed corporate action.

(2) If a proposed corporate action creating dissenters' rights under section 7-113-102 is authorized without a meeting of shareholders pursuant to section 7-107-104 and if notice of dissenters' rights has been given to such shareholder in connection with the action pursuant to section 7-113-201 (2), a shareholder who wishes to assert dissenters' rights shall not execute a writing consenting to the proposed corporate action.

(3) A shareholder who does not satisfy the requirements of subsection (1) or (2) of this section is not entitled to demand payment for the shareholder's shares under this article.

## 7-113-203. Dissenters' notice.

(1) If a proposed corporate action creating dissenters' rights under section 7-113-102 is authorized, the corporation shall give a written dissenters' notice to all shareholders who are entitled to demand payment for their shares under this article.

(2) The dissenters' notice required by subsection (1) of this section shall be given no later than ten days after the effective date of the corporate action creating dissenters' rights under section 7-113-102 and shall:

(a) State that the corporate action was authorized and state the effective date or proposed effective date of the corporate action;

(b) State an address at which the corporation will receive payment demands and the address of a place where certificates for certificated shares must be deposited;

(c) Inform holders of uncertificated shares to what extent transfer of the shares will be restricted after the payment demand is received;

(d) Supply a form for demanding payment, which form shall request a dissenter to state an address to which payment is to be made;

(e) Set the date by which the corporation must receive the payment demand and certificates for certificated shares, which date shall not be less than thirty days after the date the notice required by subsection (1) of this section is given;

(f) State the requirement contemplated in section 7-113-103 (3), if such requirement is imposed; and

(g) Be accompanied by a copy of this article.

## 7-113-204. Procedure to demand payment.

(1) A shareholder who is given a dissenters' notice pursuant to section 7-113-203 and who wishes to assert dissenters' rights shall, in accordance with the terms of the dissenters' notice:

(a) Cause the corporation to receive a payment demand, which may be the payment demand form contemplated in section 7-113-203 (2) (d), duly completed, or may be stated in another writing; and

(b) Deposit the shareholder's certificates for certificated shares.

(2) A shareholder who demands payment in accordance with subsection (1) of this section retains all rights of a shareholder, except the right to transfer the shares, until the effective date of the proposed corporate action giving rise to the shareholder's exercise of dissenters' rights and has only the right to receive payment for the shares after the effective date of such corporate action.

(3) Except as provided in section 7-113-207 or 7-113-209 (1) (b), the demand for payment and deposit of certificates are irrevocable.

(4) A shareholder who does not demand payment and deposit the shareholder's share certificates as required by the date or dates set in the dissenters' notice is not entitled to payment for the shares under this article.

## 7-113-205.  Uncertificated shares.

(1) Upon receipt of a demand for payment under section 7-113-204 from a shareholder holding uncertificated shares, and in lieu of the deposit of certificates representing the shares, the corporation may restrict the transfer thereof.

(2) In all other respects, the provisions of section 7-113-204 shall be applicable to shareholders who own uncertificated shares.

## 7-113-206.  Payment.

(1) Except as provided in section 7-113-208, upon the effective date of the corporate action creating dissenters' rights under section 7-113-102 or upon receipt of a payment demand pursuant to section 7-113-204, whichever is later, the corporation shall pay each dissenter who complied with section 7-113-204, at the address stated in the payment demand, or if no such address is stated in the payment demand, at the address shown on the corporation's current record of shareholders for the record shareholder holding the dissenter's shares, the amount the corporation estimates to be the fair value of the dissenter's shares, plus accrued interest.

(2) The payment made pursuant to subsection (1) of this section shall be accompanied by:

(a) The corporation's balance sheet as of the end of its most recent fiscal year or, if that is not available, the corporation's balance sheet as of the end of a fiscal year ending not more than sixteen months before the date of payment, an income statement for that year, and, if the corporation customarily provides such statements to shareholders, a statement of changes in shareholders' equity for that year and a statement of cash flow for that year, which balance sheet and statements shall have been audited if the corporation customarily provides audited financial statements to shareholders, as well as the latest available financial statements, if any, for the interim or full-year period, which financial statements need not be audited;

(b) A statement of the corporation's estimate of the fair value of the shares;

(c) An explanation of how the interest was calculated;

(d) A statement of the dissenter's right to demand payment under section 7-113-209; and

(e) A copy of this article.

## 7-113-207.  Failure to take action.

(1) If the effective date of the corporate action creating dissenters' rights under section 7-113-102 does not occur within sixty days after the date set by the corporation by which the corporation must receive the payment demand as provided in section 7-113-203, the corporation shall return the deposited certificates and release the transfer restrictions imposed on uncertificated shares.

(2) If the effective date of the corporate action creating dissenters' rights under section 7-113-102 occurs more than sixty days after the date set by the corporation by which the corporation must receive the payment demand as provided in section 7-113-203, then the corporation shall send a new dissenters' notice, as provided in section 7-113-203, and the provisions of sections 7-113-204 to 7-113-209 shall again be applicable.

**7-113-208.   Special provisions relating to shares acquired after announcement of proposed corporate action.**

(1) The corporation may, in or with the dissenters' notice given pursuant to section 7-113-203, state the date of the first announcement to news media or to shareholders of the terms of the proposed corporate action creating dissenters' rights under section 7-113-102 and state that the dissenter shall certify in writing, in or with the dissenter's payment demand under section 7-113-204, whether or not the dissenter (or the person on whose behalf dissenters' rights are asserted) acquired beneficial ownership of the shares before that date. With respect to any dissenter who does not so certify in writing, in or with the payment demand, that the dissenter or the person on whose behalf the dissenter asserts dissenters' rights acquired beneficial ownership of the shares before such date, the corporation may, in lieu of making the payment provided in section 7-113-206, offer to make such payment if the dissenter agrees to accept it in full satisfaction of the demand.

(2) An offer to make payment under subsection (1) of this section shall include or be accompanied by the information required by section 7-113-206 (2).

**7-113-209.  Procedure if dissenter is dissatisfied with payment or offer.**

(1) A dissenter may give notice to the corporation in writing of the dissenter's estimate of the fair value of the dissenter's shares and of the amount of interest due and may demand payment of such estimate, less any payment made under section 7-113-206, or reject the corporation's offer under section 7-113-208 and demand payment of the fair value of the shares and interest due, if:

   (a) The dissenter believes that the amount paid under section 7-113-206 or offered under section 7-113-208 is less than the fair value of the shares or that the interest due was incorrectly calculated;

   (b) The corporation fails to make payment under section 7-113-206 within sixty days after the date set by the corporation by which the corporation must receive the payment demand; or

   (c) The corporation does not return the deposited certificates or release the transfer restrictions imposed on uncertificated shares as required by section 7-113-207 (1).

(2) A dissenter waives the right to demand payment under this section unless the dissenter causes the corporation to receive the notice required by subsection (1) of this section within thirty days after the corporation made or offered payment for the dissenter's shares.

**Part 3 – Judicial Appraisal of Shares**

**7-113-301. Court action.**

(1) If a demand for payment under section 7-113-209 remains unresolved, the corporation may, within sixty days after receiving the payment demand, commence a proceeding and petition the court to determine the fair value of the shares and accrued interest. If the corporation does not commence the proceeding within the sixty-day period, it shall pay to each dissenter whose demand remains unresolved the amount demanded.

(2) The corporation shall commence the proceeding described in subsection (1) of this section in the district court for the county in this state in which the street address of the corporation's principal office is located, or, if the corporation has no principal office in this state, in the district court for the county in which the street address of its registered agent is located, or, if the corporation has no registered agent, in the district court for the city and county of Denver. If the corporation is a foreign corporation without a registered agent, it shall commence the proceeding in the county in which the domestic corporation merged into, or whose shares were acquired by, the foreign corporation would have commenced the action if that corporation were subject to the first sentence of this subsection (2).

(3) The corporation shall make all dissenters, whether or not residents of this state, whose demands remain unresolved parties to the proceeding commenced under subsection (2) of this section as in an action against their shares, and all parties shall be served with a copy of the petition. Service on each dissenter shall be by registered or certified mail, to the address stated in such dissenter's payment demand, or if no such address is stated in the payment demand, at the address shown on the corporation's current record of shareholders for the record shareholder holding the dissenter's shares, or as provided by law.

(4) The jurisdiction of the court in which the proceeding is commenced under subsection (2) of this section is plenary and exclusive. The court may appoint one or more persons as appraisers to receive evidence and recommend a decision on the question of fair value. The appraisers have the powers described in the order appointing them, or in any amendment to such order. The parties to the proceeding are entitled to the same discovery rights as parties in other civil proceedings.

(5) Each dissenter made a party to the proceeding commenced under subsection (2) of this section is entitled to judgment for the amount, if any, by which the court finds the fair value of the dissenter's shares, plus interest, exceeds the amount paid by the corporation, or for the fair value, plus interest, of the dissenter's shares for which the corporation elected to withhold payment under section 7-113-208.

## 7-113-302. Court costs and counsel fees.

(1) The court in an appraisal proceeding commenced under section 7-113-301 shall determine all costs of the proceeding, including the reasonable compensation and expenses of appraisers appointed by the court. The court shall assess the costs against the corporation; except that the court may assess costs against all or some of the dissenters, in amounts the court finds equitable, to the extent the court finds the dissenters acted arbitrarily, vexatiously, or not in good faith in demanding payment under section 7-113-209.

(2) The court may also assess the fees and expenses of counsel and experts for the respective parties, in amounts the court finds equitable:

    (a) Against the corporation and in favor of any dissenters if the court finds the corporation did not substantially comply with part 2 of this article; or

(b) Against either the corporation or one or more dissenters, in favor of any other party, if the court finds that the party against whom the fees and expenses are assessed acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by this article.

(3) If the court finds that the services of counsel for any dissenter were of substantial benefit to other dissenters similarly situated, and that the fees for those services should not be assessed against the corporation, the court may award to said counsel reasonable fees to be paid out of the amounts awarded to the dissenters who were benefited.