**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-02941-JLK

CRAIG TELKE, and
WILLIAM DOUGLAS MORELAND,
Individually and on Behalf of All Others Similarly Situated,

       Plaintiffs,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO, and
WALTER TIMOSHENKO,

       Defendants.
_____

**AMENDED STIPULATED SCHEDULING AND DISCOVERY ORDER**
_____

## 1.  DATE OF CONFERENCE

On January 31, 2014, the Court held a scheduling and discovery conference pursuant to Fed. R. Civ. P. 16 and D.C.COLO.LCivR 16.1.

## 2.  STATEMENT OF CLAIMS AND DEFENSES

**a.  <u>Plaintiffs' Statement</u>**:

Plaintiffs assert claims on behalf of themselves and a putative class of former New Frontier Media, Inc.'s ("New Frontier" or "Company") shareholders against four of New Frontier's former members of the board of directors (the "Individual Defendants") who

are believed to have committed the alleged wrongdoing for breach of fiduciary duty arising out of the Individual Defendants' sale of New Frontier to LFP Broadcasting, LLC ("LFP Broadcasting") by means of an unfair process for an unfair price and pursuant to a materially misleading 14D-9 Recommendation Statement, filed with the U.S. Securities and Exchange Commission on October 29, 2012.  Plaintiffs also claim that New Frontier aided and abetted the Individual Defendants' breaches of fiduciary duties.

Plaintiffs further assert individual claims against the Individual Defendants for violation of Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with their failure to disclose material information to New Frontier's public shareholders prior to the expiration of the tender offer, forcing shareholders to make an uninformed decision about whether to tender their shares.

Plaintiffs allege that the Individual Defendants breached their fiduciary duties to further their desire to control the Company in order to preserve their lucrative seats on its Board as long as possible and to shepherd a sale of the Company to their preferred bidder, LFP Broadcasting, headed by defendant Alan Isaacman's close personal friend and former legal client, Larry Flynt.   As a result of Defendants' gross misconduct, Plaintiffs and New Frontier's other public stockholders were actively misled into tendering their shares for an inadequate price and seek rescission of the merger or, in the alternative, recessionary damages, as well as the Individual Defendants' disgorgement of wrongfully obtained director and other fees.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as this action alleges violations of Section 14(d) and 14(e) of the Exchange Act.

This Court also has pendent jurisdiction over state law breach of fiduciary duty claims pursuant to 28 U.S.C. §1367.

**b.  <u>Defendants' Statement</u>**:

This case was originally brought by Plaintiff Craig Telke before the closing of a tender offer by LFP for New Frontier Media's shares whereby shareholders owning more than 16.2 million shares of the Company's stock were to receive a 70% premium over the pre-bid market value of their shares ("Tender Offer"). The value of the Tender Offer to the Company's shareholders was in excess of $32 million.  The value of Mr. Telke's shares at the Tender Offer price was $606.  Mr. Telke's motion for a preliminary injunction that would have prevented the Tender Offer from closing was summarily denied by this Court when Mr. Telke was unable to offer any evidence in support of his motion.

By the Amended Complaint, Mr. Telke has joined forces with William Douglas Moreland.  Moreland himself was the subject of a FINRA inquiry into pre-announcement trading in the Company's stock.  The allegations of the amended complaint add little to the original complaint.  In sum, Plaintiffs claim that the Tender Offer and subsequent merger was the product of a "flawed process" and for a "grossly inadequate price."  Such

allegations are all too common in the class action litigation frequently brought in the aftermath of corporate mergers and acquisitions.  Moreover, such allegations in this case totally lack merit.  The Tender Offer was the result of an extensive and highly publicized public bidding process where 20 companies were solicited to bid and four active bidders chose to participate.  The successful bidder, LFP Broadcasting, raised its offer three times and presented the highest and best offer.  No other bidder was waiting in the wings to match or exceed LFP Broadcasting's offer.  The Company's independent investment adviser opined after extensive analysis that the offer was fair to the Company's shareholders.  There is simply no basis for the claim that the price was too low, let alone that it was "grossly inadequate."

The Plaintiffs also allege flaws in the Company's public disclosures of the events leading up to the termination of the Company's CEO and its other disclosures in the Company's Tender Offer Solicitation/Recommendation Statement filed on Schedule 14D-9 with the SEC (14D-9). The fact of Mr. Weiner's termination is disclosed in the 14D-9, and the Company made extensive disclosures of the dispute that led to his termination in filings with the SEC on Forms 8-K and 8-K/A as well as in public press releases.  Indeed, the vast majority of the amended complaint's 125 paragraph allegations are taken directly from the 14D-9, Forms 8-K and 8-K/A and the attachments thereto. The balance of Plaintiffs' allegations of misleading disclosures amount to nothing more than nitpicking the disclosures on the basis of the Company's investment banker's

fairness opinion.  Plaintiffs' nitpicking aside, all material information concerning the banker's fairness opinion is laid out in detail in the Company's 14D-9.

Aside from maintaining that Plaintiffs' claims are wholly without substantive merit, Defendants raise several affirmative defenses thereto.  These include failure to state a claim and lack of standing.  These defenses are based upon, among other things, Plaintiffs' failure to allege that they actually tendered their shares in the Tender Offer and therefore either relied to their detriment upon the alleged misrepresentations or non-disclosures or were caused some harm thereby.  Defendants raise law of the case as a defense to Plaintiff's seeking equitable relief because the Court has already decided that equitable relief is not available and therefore Plaintiffs are relegated to whatever damages they can muster.  Defendants raise the doctrines of estoppel, waiver, ratification, and/or laches due to Plaintiffs', and in particular Moreland's, failure to object to the merger in a timely fashion.  Furthermore, Plaintiffs failed to exercise their dissenters' rights and appraisal remedy under Colorado Revised Statutes §§ 7-113-101, *et seq.* which were Plaintiffs' sole and exclusive remedy with respect to the Merger.  This amounts to the affirmative defensives of waiver and failure to mitigate Plaintiffs' damages.  Plaintiffs' federal securities law claims fail to comply with the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1) and (2).  Finally, Plaintiff Moreland's individual equitable claims are barred by his unclean hands relating to his pre-merger trading activities that apparently gave rise to an inquiry by FINRA.

### 3.  UNDISPUTED FACTS

The undisputed facts are set forth in Exhibit 1, as attached to this Stipulated Scheduling and Discovery Order.

### 4.  COMPUTATION OF DAMAGES

**<u>Plaintiffs' Statement</u>**:

Plaintiffs seek to rescind the merger or, in the alternative, recessionary damages, including interest thereon, for all losses sustained as a result of Defendants' wrongdoing, including, but not limited to, the difference between the fair value of the Company and the merger consideration of $2.02 per share and interest thereon, costs and expenses, attorneys' fees, expert fees and any other relief as deemed appropriate by the Court. Plaintiffs also seek statutory damages pursuant to Section 14(d) and 14(e) of the Exchange Act.

Plaintiffs are unable to determine the full extent of damages as a result of Defendants' alleged wrongful conduct at this time because they have not had the benefit of any discovery.  Plaintiffs submit that in order to determine the precise amount of damages sought, Plaintiffs first need access to documents concerning, at a minimum, the preparation and determination of New Frontier's financial projections used by Avondale Partners LLC ("Avondale"), the Company's financial advisor in the merger, to opine that the merger price was fair, Avondale's analyses supporting its fairness opinion and New Frontier's financial projections during the relevant period leading up to the merger.

Plaintiffs also need deposition testimony from a representative from Avondale, which advised the Individual Defendants in connection with the merger, the person(s) most knowledgeable about the Company's financial projections and a Board representative most knowledgeable about the process employed to sell the Company. In addition, Plaintiffs anticipate that the calculation of damages in this action will also be the subject of expert analysis and discovery.

Plaintiffs submit that the appropriate calculation of damages in this case for both of Plaintiffs' Exchange Act claims[1] and breach of fiduciary duty claims is the difference between the merger price of $2.02 per share and the fair value of New Frontier at the time New Frontier and LFP entered into the Merger Agreement, reflecting an adequate change-of-control premium and further adjusted upward for synergies realized in the merger. Plaintiffs' preliminary damages analysis, based solely upon publicly available information, yields a value for New Frontier of $5.80 to $9.00 per share per share. Thus, the Merger consideration of $2.02 per share undervalues the Company by $3.78 to $6.98 per share.

Plaintiffs' higher value for the Company is based upon the following: (1) applying EBITDA[2] and Revenue multiples in the Comparable Companies Analysis, Precedent Transactions Analysis and Discounted Cash Flow ("DCF") Analysis, rather than the

---

[1] Damages pursuant to Section 14(d) and 14(e) of the Exchange Act, are generally determined as the difference between the merger consideration and the fair value of the shares.

[2] Earnings Before Interest, Taxes, Depreciation and Amortization ("EBITDA").

unconventional and distortive EBIT[3] multiples that Avondale used in its analyses supporting its fairness opinion (Compl. ¶¶ 88-95)[4]; (2) using only *comparable* companies and transactions in the respective analyses (Compl. ¶¶ 93, 96-99); (3) applying an appropriate discount rate (Compl. ¶ 98, n.3); (4) accounting for the value of synergies received in the merger (Compl. ¶¶ 82-85, 99); and (5) accounting for a reasonable control premium to which New Frontier shareholders were entitled in this change of control transaction.

First, in order to properly value New Frontier, EBITDA and Revenue multiples from *comparable* companies and precedent transaction should be used. From there, a reasonable multiple range within the observed comparables is then applied to New Frontier's earnings to value the Company. Avondale improperly used the unconventional EBIT multiples in its analyses, which artificially decreased the valuation of New Frontier. In addition to being unconventional, EBIT multiples are also inappropriate because they distort New Frontier's value downward as a result of an inherent negative bias that results from excluding the Company's unsustainably high depreciation and amortization expense. (Compl. ¶¶ 88-95). Further demonstrating the inappropriateness of using EBIT multiples is the fact many companies do not even report EBIT -- five of the companies that Avondale used in its Comparable Companies Analysis only reported EBITDA, but not EBIT. (*Id.*, ¶ 92). Moreover, using EBIT multiples in the Precedent Transactions

---

[3] Enterprise Value ("EV")/Earnings Before Interest and Taxes ("EBIT").

[4] References to "Compl. ¶ __" are to Plaintiffs' Amended Class Action Complaint for Breach of Fiduciary Duty and Violations of the Federal Securities Laws.

Analysis yielded no meaningful result because New Frontier's EBIT multiple was negative. (*Id.*, ¶ 92).

Second, in order to correctly value New Frontier, only comparable companies and transactions should be used.  Avondale relied upon companies in its Comparable Companies Analysis, which were not comparable to New Frontier because of, among other reasons, they were not in compliance with debt covenants and/or financial reporting requirements where New Frontier had no debt and was in compliance.  (Compl. ¶¶ 93, 96-99).  Those non-comparable companies artificially reduced the value of New Frontier and should have been excluded.

Third, in conducting a DCF Analysis, an appropriate discount rate must be applied.  In the case of New Frontier, an appropriate discount rate based upon its peers, as reported by Bloomberg, is 11.8%, rather than the extraordinarily high discount rate range of 20%-30% used by Avondale in its DCF Analysis.  (Compl. ¶ 98, n.3).  Avondale's use of an insupportably high discount rate artificially reduced the value of New Frontier.

Finally, New Frontier shareholders were not compensated for an estimated $34 million in synergies (based on a 5.5x multiple) that LFP received from its acquisition of New Frontier, or as much as $2.09 per share.

Plaintiffs will be able to provide the precise amount of damages sought upon submitting their opening expert report, currently proposed for October 10, 2014, subject to this Court's approval.

**Defendants' Statement**:

The Amended Complaint seeks "rescission of the Merger Agreement and/or money damages."  Complaint at ¶ 16; *see also id.* at page 56 (seeking "recessionary [sic] damages").  The undoing of a complex and now 13-month old merger of two companies cannot feasibly be accomplished.  Rescission of the Merger Transaction would not only hopelessly complicate current business affairs of the merged entities and their business partners, but would involve clawing back the consideration paid to New Frontier's shareholders.  The federal securities laws do not require "the court to unscramble a corporate transaction merely because a violation occurred."  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 386 (1970) (citation and internal quotation marks omitted).  This is especially true here, where no violation occurred as described above.

Where, as here, rescission is impracticable, the appropriate measure of damages is "the fair value of [the owned] interest as of the time of the [allegedly improper] merger." *Andrews v. Blue*, 489 F.2d 367, 376 (10th Cir. 1973) (citation omitted); *see also Mills*, 396 U.S. at 389 ("If commingling of the assets and operations of the merged companies makes it impossible to establish direct injury from the merger, relief might be predicated on a determination of the fairness of the terms of the merger at the time it was approved.").  Realistically, the Amended Complaint simply seeks money damages due to some hypothetical price that Plaintiffs allege could have been obtained.  Defendants submit they are entitled to a particularized statement of the basis of Plaintiffs' claim that

the merger price was "grossly inadequate" or "grossly unfair". (Complaint ¶¶ 10, 12, 77, 79 and 82).  It is not sufficient for Plaintiffs to state that details concerning calculation of their damages will await the submission of expert reports months from now, and Defendant's written discovery requests seek information concerning Plaintiffs' claims concerning the merger price.

### 5.  REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER Fed. R. Civ. P. 26(f)

**a.  Date of Rule 26(f) meeting**:  October 10, 2013, supplemented by continuing discussions thereafter.

**b.  Name of each participant and each party represented**:

- Shannon L. Hopkins and Stephanie Bartone of Levi & Korsinsky, LLP, attorneys for Craig Telke;

- Stephen J. Crane and Jason T. Leehan of Crane Dunham PLLC, attorneys for Plaintiff William Douglas Moreland;

- Darby K. Kennedy of Dyer & Berens LLP, liaison counsel for Plaintiffs Craig Telke and William Douglas Moreland; and

- Stuart N. Bennett and Aaron D. Goldhamer of Jones and Keller, P.C. for Defendants New Frontier Media, Inc., Alan Isaacman, Melissa Hubbard, Hiram J. Woo, and Walter Timoshenko.

c.  **Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1)**:  The parties stipulated to extend the deadline for exchanging initial disclosures to October 30 and 31, 2013.

d.  **Statement as to when Rule 26(a)(1) disclosures were made or will be made**: Pursuant to Fed. R. Civ. P. 26(a)(1) and the individual rules of practice set forth in this Court's Pretrial and Trial Procedures Memorandum, Plaintiffs served their initial disclosures on Defendants on October 30, 2013 and Defendants served their initial disclosures on Plaintiffs on October 31, 2013.

e.  **Statement concerning any agreements to conduct informal discovery**: None.

f.  **Statement concerning any agreements or proposals regarding electronic discovery**:  The parties agree that electronic discovery will be necessary in this case and have agreed in principle to the use of computer-assisted review in order to identify responsive electronic source information ("ESI") rapidly and efficiently.

Defendants have searched for and collected ESI.  Defendants did not seek the input of Plaintiffs or their counsel in connection with their efforts to search for and collect ESI.  Counsel for the parties met and conferred on February 7, 2014 regarding Defendants' efforts to collect relevant documents. The parties have continued to correspond concerning issues pertaining to ESI,

have discussed general terms of an agreement regarding same, and will advise the Court concerning the result of those ongoing discussions.

Plaintiffs have requested that Defendants produce the documents with a dat.file, opt file and OCR in order for Plaintiffs' counsel to load and search such documents onto their Eclipse document management system.  Plaintiffs submit that this is the standard format that large document productions, such as this are produced in similar cases and will aid in the much more efficient review of ESI.  Defendants have agreed to produce each document with an OCR file if possible and have otherwise agreed to produce each document in pdf format.  Upon Plaintiffs' request as to specific document, Defendants have agreed to produce the requested documents in native format if the document existed in native format at the time of collection.

g. **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs**:  The parties agree to share, coordinate, and phase discovery wherever practicable to reduce costs. The parties also agree to avoid duplicative discovery. Additional cost-reduction measures should include, wherever practicable: (1) relevant witnesses should be deposed only once; (2) discovery requests will be joint, including combined sets of requests for production, interrogatories and requests for admission; and (3) the parties will cooperate regarding non-party discovery. The parties agree to

discuss opportunities where depositions may be conducted by video or telephonic conference when practicable and agreed upon by the parties. The parties also agree to certain phasing of discovery, as reflected in the Case Plan and Schedule below.

**h. Statement regarding use of unified exhibit numbering system**:  The parties agree to use the unified exhibit numbering system.  Each exhibit will be given only one Arabic number throughout the litigation and that number will be used for that exhibit for all purposes.

**i. Statement regarding anticipated costs of litigation**:  Litigation costs will depend largely upon the amount of merits and expert discovery conducted by the parties.

> **<u>Plaintiffs' Statement</u>**:

Plaintiffs believe that it is simply too early in this litigation to accurately anticipate costs or fees.  Plaintiffs' counsel have and will continue to share efforts and costs whenever possible, however, to ensure cost efficiency and non-duplication.

> **<u>Defendants' Statement</u>**:

Defendants estimate that the case plan and schedule outlined by Plaintiffs, below, will involve hundreds of thousands of dollars to accomplish and should not be permitted unless Plaintiffs fully comply with their disclosure obligations

as to the basis of their claimed damages.  Further, Defendants are of the view that Plaintiffs' claims are barred by their failure to exercise their statutory appraisal remedies and any merits discovery should be held in abeyance pending the Court's resolution of this issue.

### 6.  CASE PLAN AND SCHEDULE

a.  **Deadline for Joinder of Parties**:  August 12, 2014.

b.  **Deadline to Amend Pleadings**:  August 12, 2014.

c.  **Discovery Cutoff**:

    **<u>Merits Document Discovery</u>**

    1.    Electronic Discovery:  The parties have agreed to meet and confer no later than February 7, 2014 regarding the scope of electronic discovery, the preservation of electronic documents, the method for production of electronic documents, search terms and the format for production of electronic document.  Defendants have collected and preserved all applicable electronic documents and do not believe there is anything further to gather.

    2.    Merits document discovery, including production of documents and responses to interrogatories, shall be completed by April 15, 2014.

    3.    Merits discovery, unless otherwise provided herein, shall be completed by September 12, 2014.

**d. Dispositive Motion Deadline**:

1.  Any motions for summary judgment shall be filed and served no later than February 16, 2015.

2.  Briefs in opposition to any motions for summary judgment shall be filed and served no later than March 16, 2015.

3.  Briefs in reply to any motions for summary judgment shall be filed and served no later than March 31, 2015.

**e. Expert Witness Disclosure**:

(1) Each party shall identify anticipated fields of expert testimony, if any, by September 19, 2014.

(2) Statement regarding any limitations proposed on the use or number of expert witnesses: Plaintiffs will endeavor to utilize experts only to the limited extent necessary to prove their case.  Defendants will utilize experts to the extent necessary to oppose Plaintiffs' experts.

(3) The parties shall designate all experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before October 10, 2014.  Each party shall serve all opening expert reports no later than October 10, 2014.

(4) The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ.

P. 26(a)(2) on or before November 7, 2014. Each party shall serve all sur-rebuttal reports, limited to responding to the rebuttal reports, by November 21, 2014.

(5) The parties agree that all designations of experts shall include a statement describing the methodology to be used by the particular expert. The parties understand and agree that *Daubert/Kumho Tire* motions challenging any proposed methodology may be considered by the Court before any expert is deposed, without prejudice to the opportunity to file subsequent motions. The parties understand and agree with the goal of avoiding extensive discovery based on faulty expert methodologies and therefore these motions may result in amended designation with either a new expert, a revised methodology or both.

(6) Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2), no exception to the requirements of the rule will be allowed by stipulation of the parties unless the stipulation is approved by the Court.

**f.   Deposition Schedule**:

1.     Depositions of merits witnesses, excluding experts, shall be completed by September 12, 2014.

2.     Defendants shall depose the Plaintiffs during this period.

3.     Depositions of experts shall be completed by January 20, 2015.

| | Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|---|
| 1 | Alan Isaacman | | 9:30 a.m. | 7 Hours |
| 2 | Melissa Hubbard | | 9:30 a.m. | 7 Hours |
| 3 | Hiram J. Woo | | 9:30 a.m. | 7 Hours |
| 4 | Walter Timoshenko | | 9:30 a.m. | 7 Hours |
| 5 | Michael Weiner | | 9:30 a.m. | 7 Hours |
| 6 | David Nicholas | | 9:30 a.m. | 7 Hours |
| 7 | Grant Williams | | 9:30 a.m. | 7 Hours |
| 8 | Marc Callipari | | 9:30 a.m. | 7 Hours |
| 9 | Scott Berdan, Corporate Counsel, Holland & Hart | | 9:30 a.m. | 7 Hours |
| 10 | Scott Piper, a former Chief Technology Officer of New Frontier | | 9:30 a.m. | 7 Hours |
| 11 | Karsten Lampka, of Avondale Partners | | 9:30 a.m. | 7 Hours |
| 12 | Adam Rothstein, Longkloof Limited's financial advisor | | 9:30 a.m. | 7 Hours |
| 13 | Michael H. Klein, LFP Broadcasting President | | 9:30 a.m. | 7 Hours |
| 14 | Damien J. Park, of Hedge Fund Solutions, LLC, an advisor to the Company | | 9:30 a.m. | 7 Hours |
| 15 | A representative from Manwin Holdings S.A.R.L. | | 9:30 a.m. | 7 Hours |
| 16 | A representative from Bidder C or Bidder D | | 9:30 a.m. | 7 Hours |
| 17 | A representative of Longkloof, Limited, or its related entity Hoskin Holdings | | 9:30 a.m. | 7 Hours |
| 18 | Stuart Duncan, a potential acquirer of New Frontier | | 9:30 a.m. | 7 Hours |
| 19 | Plaintiff Craig Telke | | 9:30 a.m. | 7 Hours |
| 20 | Plaintiff Douglas William Moreland | | 9:30 a.m. | 7 Hours |
| 21 | Larry Flynt | | 9:30 a.m. | 7 Hours |
| 22 | A representative of Grant Thornton | | 9:30 a.m. | 7 Hours |
| 23 | Bob Miller, Perkins Coie | | 9:30 a.m. | 7 Hours |

**g. Interrogatory Schedule**:

1.    The parties must serve their respective interrogatories on opposing counsel no later than March 1, 2014.

2.    Responses to interrogatories shall be due by April 1, 2014.

3.    No contention interrogatories or requests for admission shall be served before September 12, 2014, but may be served after that time.

**h. Schedule for Request for Production of Documents**:

Plaintiffs and Defendants shall serve their first Fed. R. Civ. P. 34 requests for production on March 1, 2014, Plaintiffs and Defendants shall serve their responses and objections to the Fed. R. Civ. P. 34 document requests and commence a rolling production of the documents identified in their initial disclosures and/or Fed. R. Civ. P. 34 document requests served by the other side by April 1, 2014.  Subject to ruling on any objections, good faith production of all documents shall be completed no later than April 15, 2014.

**i. Discovery Limitations**:

1.    **Any limits any party proposes on the length of any deposition:** The parties agree that the presumptive 7-hour limit in Fed. R. Civ. P. 30(d)(1) applies except as otherwise provided by the rule, agreed by

the parties or ordered by the Court.  Depositions shall be taken in accordance with D.C.COLO.LCivR 30.1.

2.     **Any modifications any party proposes on the presumptive numbers of depositions or interrogatories contained in the Federal Rules**:  The ten (10) deposition limit set forth in the Fed. R. Civ. P. 30 is amended to permit twenty-three (23) depositions, including depositions of both parties and non-parties, for each side. Additional depositions may be scheduled or extended in time as the parties shall agree or pursuant to Court order.  The parties agree that no modifications should be applied to the presumptive number of interrogatories allowed for by the Federal Rules of Civil Procedure. The parties reserve the right to ask the Court to modify such limit if the need arises.

3.     **Any limitations any party proposes on the number of requests for production of documents and/or requests for admissions**: The parties agree that no limitations should be applied to the number of document requests or requests for admissions allowed for by the Federal Rules of Civil Procedure.  The parties reserve the right to ask the Court to set such limits if the need arises.

**j.  Other Planning or Discovery Orders**:

    **1.  Confidentiality/Protective Order**:  Pursuant to Fed. R. Civ. P. 26(c), the parties agree to enter into a Stipulated Protective Order concerning the treatment of Confidential Information, attached hereto as Exhibit 2. Such agreement ensures that any document containing information that may injure the parties' business or privacy interests will not be disclosed to the public.

## 7.  SETTLEMENT

Pursuant to Fed. R. Civ. P. 26(f)(2), the parties certify that they have discussed the possibilities for settlement or resolution of this action and both sides are open to the possibility of a resolution of the action.  Plaintiffs made an opening settlement demand on defendants on October 28, 2013, subject to certain confirmatory discovery.  While the parties believe a settlement conference before a magistrate judge would be premature at this juncture, in the event that any party believes that assistance from the Court or a magistrate judge would advance settlement prospects, they will promptly inform the Court.

Defendants are unable to evaluate Plaintiffs' settlement offer at this juncture because Plaintiffs have not furnished any information as to the basis of their claimed damages.

Plaintiffs are prepared to furnish the analysis they have thus far, without having the benefit of any discovery, in connection with a formal settlement mediation of the claims asserted in the Action.

## 8.   OTHER SCHEDULING ISSUES

**a.   Statement of those discovery or scheduling issues, if any, on which counsel, after a good faith effort, were unable to reach an agreement**:

None, except as noted in the textual discussion above.

**b.   Statement of anticipated motions to be filed, by whom, estimated time of filing, and any proposed briefing schedule**:

With respect to class certification, the parties propose the following schedule:

> (1) Plaintiffs shall file and serve their motion for class certification by no later than December 8, 2014.

> (2) Defendants shall file and serve any opposition brief to the motion for class certification by no later than January 8, 2015.

> (3) Plaintiffs shall file and serve any reply brief in support of their motion for class certification by no later than January 22, 2015.

**c.   Statement whether trial is to the court or jury.  If a mixed trial, e.g., declaratory judgment and damages, specify which claims are to be tried to a jury and which to the court**:

Trial is to the Court.

### 9. AMENDMENTS TO DISCOVERY AND SCHEDULING ORDER

This Stipulated Scheduling and Discovery Order may be altered or amended only upon motion showing good cause and order entered thereon.

DATED this _____ day of _____, 201_

BY THE COURT:

_____
JOHN L. KANE, Jr. Senior Judge
United States District Judge

**STIPULATED SCHEDULING AND
DISCOVERY ORDER APPROVED:**

/s/ Shannon L. Hopkins
Shannon L. Hopkins
Stephanie Bartone
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, NY 10004
(212) 363-7500

*Attorneys for Plaintiff Craig Telke*

/s/ Stuart N. Bennett
Stuart N. Bennett
Aaron D. Goldhamer
JONES AND KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
(303) 573-1600

*Attorneys for Defendants New Frontier
Media, Inc., Alan Isaacman, Melissa
Hubbard, Hiram J. Woo, and Walter
Timoshenko*

/s/ Stephen J. Crane
Stephen J. Crane
Jason T. Leehan
CRANE DUNHAM PLLC
2121 Fifth Avenue
Seattle, WA 98121
(206) 292-9090

*Attorneys for Plaintiff William Douglas
Moreland*

/s/ Jeffrey A. Berens
Jeffrey A. Berens
Darby K. Kennedy
DYER & BERENS LLP
303 East 17th Avenue, Suite 810
Denver, CO  80203
(303) 861-1764

*Liaison Counsel for Plaintiffs Craig Telke
and William Douglas Moreland*