## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02941-JLK

CRAIG TELKE, and
WILLIAM DOUGLAS MORELAND,
Individually and on Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO, and
WALTER TIMOSHENKO,

      Defendants.

_____

## PLAINTIFFS' MOTION TO COMPEL
_____

## <u>TABLE OF CONTENTS</u>

CERTIFICATION ................................................................................................ 1

SUMMARY OF ACTION .................................................................................... 2

STATUS OF DISCOVERY .................................................................................. 5

ARGUMENT ........................................................................................................ 9

  I.  LEGAL STANDARD ................................................................................... 9

  II. DEFENDANTS SHOULD BE COMPELLED TO PRODUCE RELEVANT
      DOCUMENTS FOR AN APPROPRIATE RELEVANT TIME PERIOD ............. 10

    A. Defendants Should Be Compelled To Provide The Search Terms And Methods
       Used To Collect Relevant Documents .................................................... 10

    B. Defendants Should Be Compelled To Produce Documents Prior To The Merger
       Up To The Present ................................................................................ 12

      1. Plaintiffs Are Entitled To Discovery Relating To Potential Conflicts Of Interest
         Prior To The Merger Process Through The Present ........................................ 13

      2. The Relevant Time Period Should Extend To The Present Date ...................... 14

    C. Defendants Should Be Compelled To Produce Documents For Which They
       Improperly Asserted And/Or Waived The Attorney-Client Privilege .................. 16

      1. The Attorney-Client Privilege And Work Product Doctrine Do Not Apply To
         Advice Provided By New Frontier's Advisors In Connection With The Merger .
         ................................................................................................ 17

      2. Plaintiffs Have Demonstrated Good Cause To Waive The Attorney-Client
         Privilege ............................................................................................ 18

      3. Defendants Have Waived Their Attorney-Client Privilege .............................. 24

    D. Defendants Should Be Compelled To Produce Communications With Their
       Accountants And Auditors ..................................................................... 26

    E. Defendants Should Be Compelled To Produce Deposition Transcripts From
       Weiner's Wrongful Termination Arbitration Proceeding ............................... 28

    F. Defendants Should Be Compelled To Produce Documents Pursuant To Plaintiffs'
       Requests And Interrogatories And To Fully Answer Plaintiffs Interrogatories .... 29

  III. Defendants Cannot Show That Producing The Documents Requested By Plaintiffs
      Will Cause An Undue Burden .................................................................... 30

CONCLUSION .................................................................................................. 32

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Baldrige v. Shapiro*,
 455 U.S. 345 (1982) .......................................................................................... 9

*Benton v. Bd. Of County Comm'rs*,
 Civ. No. 06-cv-01406-PSF-MEH, 2007 U.S. Dist. LEXIS 98656 (D. Colo.  July 16,
 2007) ................................................................................................................. 28

*Bershad v. Curtiss-Wright Corp.*,
 Civ. No. 5827, Civ. No. 5830, 1983 Del. Ch. LEXIS 461 (Del. Ch. Mar. 21, 1983) ... 12

*Chevron Corp. v. Pennzoil Co.*,
 974 F.2d 1156 (9th Cir 1992) ...................................................................... 24, 25

*Christensen v. Am. Family Mut. Ins. Co.*,
 No. 1:09-cv-94 TS, 2011 U.S. Dist. LEXIS 96620 (D. Utah Aug. 29, 2011) .............. 30

*Condit v. Dunne*,
 225 F.R.D. 100 (S.D.N.Y. 2004) .................................................................... 30

*Couch v. United States*,
 409 U.S. 322 (1973) ........................................................................................ 26

*Finkel v. Am. Oil & Gas, Inc.*,
 Civ. No. 10-cv-01808-CMA-MEH, 2012 U.S. Dist. LEXIS 6770 (D. Colo. Jan. 20,
 2012) ................................................................................................................. 12

*Frontier Ref. v. Gorman-Rupp Co.*,
 136 F.3d 695 (10th Cir. 1998) ........................................................................ 24

*Garner v. Wolfinbarger*,
 430 F.2d 1093 (5th Cir. 1970) .............................................................. 18, 20, 27

*Gerrits v. Brannen Banks of Florida, Inc.*,
 138 F.R.D. 574 (D. Colo. 1991) .................................................................. 19, 20

*Grossman v. First Pennsylvania Corp.*,
 No. 89-9234, 1992 U.S. Dist. LEXIS 2266 (E.D. Pa. Feb. 24, 1992) .......................... 12

*Harkabi v. Sandisk Corp.*,
 No. 08 Civ. 8203 (WHP), 2010 U.S. Dist. LEXIS 87483 (S.D.N.Y. Aug. 23, 2010) .. 10

*In re Art Tech. Group, Inc. S'holders Litig.*,
 Consolidated C.A. No. 5955-VCL, 2010 Del. Ch. LEXIS 257 (Del. Ch. Dec. 21, 2010)
 ......................................................................................................................... 13

*In re Best Lock Corp. Shareholder Litig.*,
 Consol. Civ. No. 16281, 2000 Del. Ch. LEXIS 175 (del. Ch. Dec. 18, 2000) .............. 15

*In re Cooper Tire & Rubber Co.*,
    568 F.3d 1180 (10th Cir. 2009) ................................................................... 9

*In re Diagnostics Securities Litigation*,
    110 F.R.D. 570 (D. Colo. 1986) ........................................................... 19, 20

*In re Grand Jury Investigation (Schroeder)*,
    842 F.2d 1223 (11th Cir. 1987) ................................................................ 26

*In re Grand Jury Proceedings*,
    727 F.2d 1352 (4th Cir. 1984) ................................................................. 17

*In re John Q. Hammons Hotels Inc. S'holder Litig.*,
    Civ. No. 758-CC, 2009 Del. Ch. LEXIS 41 (del. Ch. Mar. 25, 2009) .......................... 15

*In re Olivetti Underwood Corp.*,
    246 A.2d 800 (Del. Ch. 1968) ................................................................ 14

*Kaye v. Pantone, Inc.*,
    Civ. No. 5466, 1981 Del. Ch. LEXIS 607 (Del. Ch. Oct. 6, 1981) ............................ 14

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*,
    Slip Op. 2011-1157 (Fed. Cir. 2011) ......................................................... 28

*Lane v. Cancer Treatment Ctrs. Of Am.*,
    C.A. No. 12207, 1994 Del. Ch. LEXIS 67 (Del. Ch. May 25, 1994)............................. 13

*Lozoya v. All Phase Landscape Constr., Inc.*,
    No. 12-cv-1048-JLK, 2014 U.S. Dist. LEXIS 7138 (D. Colo. Jan. 21, 2014)............. 10

*Monfardini v. Quinlan*,
    No. 02 C 4284, 2004 U.S. Dist. LEXIS 4054 (N.D. Ill. Mar. 11, 2004)....................... 19

*Moutnain States Tel. & Tel. Co. v. DiFede*,
    780 P.2d 533 (Colo. 1989)................................................................... 24

*Nakkhumpun v. Taylor*,
    Civ. No. 12-cv-01038-CMA-CBS, 2014 U.S. Dist. LEXIS 11583 (D. Colo. Jan. 29,
    2014)....................................................................................... 12

*Neusteter v. Dist. Court for the City and County of Denver*,
    675 P.2d 1 (Colo. 1984).................................................................. 19, 27

*Oppenheimer Fund v. Sanders*,
    437 U.S. 340 (1978).......................................................................... 9

*Pattie Lea, Inc. v. Dist. Court of Denver*,
    161 Colo. 493 (1967)........................................................................ 27

*Pentz v. United States*,
    Case No. 2:09-cv-687-FtM-29DNF, Case No. 2:02-cr-78-FtM-29DNF, 2011 U.S. Dist.
    LEXIS 83360 (M.D. Fla. July 29, 2011) ...................................................... 26

*Ptasynski v. Co2 Claims Coalition, LLC*,
   Civ. No. 02-cv-00830-WDM-MEH, 2006 U.S. Dist. LEXIS 59694 (D. Colo. Aug. 23,
   2006) ................................................................................................................ 26

*Ross v. Proco Mgmt.*,
   Civ. No. 6146, 1983 Del Ch. LEXIS 494 (Del. Ch. May 23, 1983) ............................ 14

*Ryskamp v. Looney*,
   Civ. No. 10-cv-00842-WJM-KLM, 2011 U.S. Dist. LEXIS 98644 (D. Colo. Sept. 1,
   2011) ........................................................................................................... 12, 19

*Seabron v. Am. Family Mut. Ins. Co.*,
   Civ. No. 11-cv-01096-WJM-KMT, 2011 U.S. Dist. LEXIS 138345 (D. Colo. Dec. 1,
   2011) ................................................................................................................ 24

*Treppel v. Biovail Corp.*,
   233 F.R.D. 363 (S.D.N.Y. 2006) .................................................................... 10

*United States v. Arthur Young and Co.*,
   465 U.S. 805 (1984) ............................................................................................ 26

*United States v. Davis*,
   636 F.2d 1028 (5th Cir. 1981) ......................................................................... 26

*United States v. Wainwright*,
   413 F.2d 796 (10th Cir. 1969) .......................................................................... 26

*United States v. Workman*,
   138 F.3d 1261 (8th Cir. 1998) ......................................................................... 25

*Van De Walle v. Unimation, Inc.*,
   Civ. No. 7046, 1984 Del. Ch. LEXIS 575 (Del. Ch. Oct. 15, 1984) ............................ 13

*Wellinger Family Trust 1998 v. Hartford Life & Accident Ins. Co.*,
   Civ. No. 11-cv-02568-CMA-BNB, 2013 U.S. Dist. LEXIS 79019 (D. Colo. June 5,
   2013) .......................................................................................................... 24, 25

**Statutes**

C.R.S. 13-90-107 .................................................................................................. 26

**Rules**

Fed. R. Civ. P. 26 .......................................................................................... 9, 30

Fed. R. Civ. P. 37 .............................................................................................. 10

Pursuant to Federal Rule of Civil Procedure 37(a)(2) and Local rule 37.1, Plaintiffs Craig Telke and William Douglas Moreland ("Plaintiffs"), by their attorneys, respectfully move this Court for an Order:  (1) compelling the production of documents that Defendants[1] are improperly withholding under the assertions of attorney-client privilege, accountant-client privilege, third person confidentiality or privacy rights, and relevancy; (2) compelling the disclosure of documents and information for a Relevant Time Period that begins prior to 2012, the purported date the Merger process began, and extending to the present; (3) compelling disclosure of the search terms and methods that Defendants used to search for and collect relevant and responsive documents; (4) requiring Defendants to complete their production of documents; and (5) requiring Defendants to supplement their Interrogatory responses ("Motion").  The grounds for Plaintiffs' Motion are set forth below.

## CERTIFICATION

Pursuant to Fed. R. Civ. P. 37(a)(1) and Local Rule 7.1(A), counsel for Plaintiffs certify that they have conferred with Defendants telephonically on February 7, 2014 and April 18, 2014; by written letter on February 12, 2014 and May 5, 2014; and through email on several occasions to resolve the their discovery disputes without court intervention.  The parties have been unsuccessful, necessitating the instant Motion.

---

[1] Defendants are: New Frontier Media, Inc. ("New Frontier" or the "Company"), Alan Isaacman ("Isaacman"), Melissa Hubbard ("Hubbard"), Hiram J. Woo ("Woo"), and Walter Timoshenko ("Timoshenko" and, collectively, the "Individual Defendants" and, with New Frontier, "Defendants").

## SUMMARY OF ACTION[2]

This shareholder class action litigation (the "Action") is brought by Plaintiffs on behalf of New Frontier's former public stockholders against four of the former members of New Frontier's Board of Directors (the "Board") for their breaches of fiduciary duties arising out of their sale of the Company to LFP Broadcasting, LLC ("LFP Broadcasting") by means of an unfair process, for an unfair price, and pursuant to materially misleading disclosure documents. Plaintiffs also individually bring a claim against Defendants for their violations of Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act").

On October 15, 2012, New Frontier announced that the Company had entered into a merger agreement (the "Merger Agreement") with LFP Broadcasting, a Delaware corporation that offers adult entertainment through HUSTLER TV pursuant to which LFP Broadcasting commenced a tender offer to acquire all of the outstanding shares of New Frontier for $2.02 per share in cash along with one contingent right per share to receive up to an additional $0.06 dependent on the degree to which New Frontier's available cash balance at the closing of the tender offer exceeded $11,514,000 (the "Merger"). The tender offer expired on November 27, 2012 and the Merger closed on November 28, 2012.

At the time the Merger was announced, the Board consisted of Isaacman, Hubbard, Timoshenko and Woo. Over the years, the Board has continually increased the

---

[2] The factually assertions herein are taken from Plaintiffs' Amended Class Action Complaint for Breach of Fiduciary Duty and Violations of the Federal Securities Laws ("Amended Complaint").

fees paid to its members -- the average director fee paid in cash in 2007 was approximately $40,000 as compared to 2012, in which director fees paid in cash have more than doubled and almost tripled in the case of defendant Isaacman who received $110,000 in fees in 2012, in addition to the hundreds of thousands of dollars in fees his firm, Isaacman, Kaufman & Painter, has billed the Company over the years.

Michael Weiner ("Weiner"), the Company's co-founder and former Chief Executive Officer, and David Nicholas ("Nicholas"), a former independent director, who were both forced off the Board mid-way through the sales process, repeatedly objected throughout 2012 to the Individual Defendants putting their own interests ahead of those of New Frontier's shareholders by continuing to find ways to increase Board fees and other self-dealing. Yet the Individual Defendants ignored these concerns and continued to entrench themselves.

On March 9, 2012, Longkloof Limited ("Longkloof"), New Frontier's largest shareholder owning approximately 15.7% of the Company's outstanding shares, submitted a non-binding offer to acquire the Company for $1.35 per share and chastising the Board for its focus on paying itself "excessive director fees and engaging in related party transactions, rather than running the Company in the best interest of the stockholders." Disappointed with the Board's failure to act in shareholders' best interests, on April 26, 2012, Longkloof delivered a letter to the Company seeking to nominate a slate of four individuals for re-election to the Board at the Company's 2012 annual meeting, in which it sought to replace all members except for Messrs. Weiner and Nicholas.

Rather than focusing its time and money on seeking a transaction that was in shareholders' best interests, in effort to further distract and prevent Longkloof from acquiring or otherwise gaining control of New Frontier, on May 31, 2012, the Board commenced a lawsuit against Longkloof, accusing Longkloof of attempting to bypass the Board's sales process and coerce the Board into giving it preferential treatment.

The Board's decision to sue Longkloof, *the Company's then highest bidder*, was met with substantial criticism from shareholders.  The primary reason for the Board's decision to sue Longkloof was to deter other potential suitors for the Company from submitting a higher offer.  This strategy of warding off other bidders by commencing litigation against Longkloof was successful in allowing the Board to sell New Frontier to the Board's preferred bidder, Larry Flynt ("Flynt"), founder and owner of LFP Broadcasting, for a grossly inadequate price.  Indeed, after the Longkloof suit, no other bidders came forward with an offer higher than Flynt's offer, which is well below the true value of the Company.

In September, the Individual Defendants retaliated against Weiner and terminated his employment, accusing Weiner of being allies with Longkloof.  Shortly after, Nicholas, who had already been targeted as the only independent director kept from serving on the Special Committee, was constructively removed from the Board for the same reason.

With Weiner and Nicholas out of the way, the Board, chaired by Isaacman, steered the sales process towards a rushed deal with LFP Broadcasting.  Instead of negotiating in the best interests of the Company's shareholders, in breach of their fiduciary duties of

4

loyalty, due care and good faith, the Board brought the tumultuous and flawed sales process to a close by agreeing to the Merger with Isaacman's long-time client, friend and colleague Flynt on October 15, 2012 for grossly inadequate consideration. This rushed sale of the Company, and subsequent rapid delisting of New Frontier ensured that for the Board, there would be no further inquiries into the allegations of gross mismanagement and other breaches of loyalty.

On October 29, 2012, the Company filed its 14D-9 Recommendation Statement with the SEC ("Recommendation Statement") and disseminated it to the Company's public shareholders in an attempt to convince shareholders to tender their shares in the tender offer.  In contravention of the Board's duty of candor and full disclosure, and in violation of Sections 14(d)(4) and 14(e) of the Exchange Act, the Recommendation Statement failed to provide the Company's shareholders with material information and/or provided them with materially misleading information critical to the total mix of information available to the Company's shareholders concerning the financial and procedural fairness of the Merger. Without such information, New Frontier shareholders were forced to decide whether to tender their shares in the tender offer without all information necessary to make a fully informed decision.

Plaintiffs now seek rescission of the Merger Agreement and/or money damages.

## STATUS OF DISCOVERY

Pursuant to the Proposed Stipulated Scheduling and Discovery Order, filed with the Court on January 24, 2014, the parties met and conferred on February 7, 2014 regarding the scope and method that Defendants used to search for relevant documents in

this Action.  Plaintiffs memorialized their understanding of the parties' meet and confer in a letter, dated February 12, 2014 (the "February 12th Letter").[3]   As of the date of this Motion, Defendants have not responded to several of the concerns Plaintiffs raised in their February 12th Letter.

Specifically, according to Defendants, the Individual Defendants -- Woo, Hubbard, Isaacman and Timoshenko – each personally conducted their own searches for relevant documents without the use of any search terms, although Defendants' counsel was not sure what criteria was used.  Defendants have not responded to Plaintiffs' request to provide the specific criteria each individual used to search for relevant documents. Thus, it is unclear how the Individual Defendants searched for responsive documents or how they determined which documents were relevant.  Moreover, it purportedly is Woo's practice to print every email he receives and immediately delete the email thereafter. Thus, it is unclear whether Woo searched the entire universe of documents or how he determined which documents were relevant to this Action.  In addition, Defendants have not responded as to whether the Individual Defendants' personal and work computer hard drives were searched and the methods and criteria used to conduct such searches.

With respect to New Frontier and its employees, Defendants used a predetermined list of search terms to collect relevant documents and agreed to provide Plaintiffs with the list of search terms used during the week of February 10, 2014.  Despite several requests, Defendants have not provided Plaintiffs with the list of search terms.

---

[3] *See* Affidavit of Shannon L. Hopkins in Support of Plaintiffs' Motion to Compel ("Hopkins Aff."), Ex. 1.

On March 3, 2014, Plaintiffs served on Defendants, their First Request for Production of Documents ("Plaintiffs' Requests") and First Set of Interrogatories ("Interrogatories").   *See* Hopkins Aff., Exs. 2 and 3.   Plaintiffs' Requests and Interrogatories defined the Relevant Time Period (with the exception of four Requests) as: "January 1, 2012, through the date of your response to this document request." (Pls.' Requests, p. 9, ¶ 4).  With respect to Request Nos. 13, 15, 39, and 44 relating to potential conflicts of interest, Plaintiffs requested documents "without regard to the Relevant Time Period."

On April 4, 2014, Defendants served their Responses to Plaintiffs' Requests and Interrogatories (the "Responses").  In their Responses, Defendants refused to produce any documents before January 1, 2012 and after November 28, 2012, the date the Merger closed, regardless of the relevance of any such information, stating:

> Defendants object to the Requests that fail to specify an applicable time period as overly broad, unduly burdensome and oppressive.  The burden and expense of accessing, reviewing and producing information and/or documents in response to a Request without a reasonable applicable time period outweighs any possible relevance of such Request and is not likely to lead to the discovery of admissible evidence. In addition, Defendants object to the proposed Definition of Relevant Time Period to the extent it seeks to impose a burden to produce documents after the closing of the Merger on November 28, 2012.  Post transaction information and documentation is overly burdensome and oppressive and unlikely to lead to the discovery of admissible evidence.

*See* Defendants' Response to Plaintiffs' First Request for the Production of Documents ("Defs.' Resp."), No. 6, attached as Exhibit 4 to the Hopkins Aff.

Defendants also improperly objected to Request Nos. 4, 5, 7, 11, 12, 13, 17, 18, 21, 30, 34, and 43 on the grounds of attorney-client privilege and to Request Nos. No. 4, 5, 7, 11, 12, 17, 18, 21, 30, 34, and 43 on the grounds of accountant-client privilege. Finally, Defendants objected to Request No. 47 requesting the deposition transcripts from a related wrongful termination arbitration involving former Company co-founder and CEO Michael Weiner and refused to produce any of the transcripts, claiming such transcripts were not relevant. Defs.' Resp. Nos. 3 and 27.

On April 18, 2014, the parties held a telephonic meet and confer to discuss their respective discovery responses and to follow-up on the status of Defendants' response to Plaintiffs' February 12th Letter. During their April 18th meet and confer, Defendants represented that, due to technical difficulties, they needed an additional two weeks from the April 15th due date in the Amended Stipulated Scheduling and Discovery Order, filed with the Court on March 1, 2014, to produce the documents and agreed to produce them by May 1, 2014. Plaintiffs memorialized the April 18th discussions in a letter to Defendants, dated May 5, 2014 (the "May 5th Letter") (attached to the Hopkins Aff. as Exhibit 5).

As of the date of this Motion, Defendants have not responded to Plaintiffs' February 12th Letter or May 5th Letter and have not produced any documents responding to Plaintiffs' Requests or Interrogatories or to Plaintiffs' inquiries as to when those documents will be produced.[4] Unable to resolve their discovery disputes, in large part

---

[4] Defendants did produce just over 6,000 pages of documents pursuant to their "Rule 26" disclosures, on April 28, 2014.

due to Defendants' lack of response, Plaintiffs now move the Court to compel Defendants

to produce documents and responses as set forth below.

## ARGUMENT

## I.    LEGAL STANDARD

The discovery provisions of the Federal Rules of Civil Procedure "are designed to

encourage open exchange of information by litigants in federal courts."   *Baldrige v.*

*Shapiro*, 455 U.S. 345, 360 (1982).   The scope of evidence subject to discovery under

these rules is broad:

> Parties may obtain discovery regarding any nonprivileged
> matter that is relevant to any party's claim or defense—
> including the existence, description, nature, custody,
> condition, and location of any documents or other tangible
> things and the identity and location of persons who know of
> any discoverable matter.

Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 350-51 (1978).

Relevancy is not determined by whether the information sought would be admissible at

trial, but rather "if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence."   Fed. R. Civ. P. 26(b)(1); *In re Cooper Tire & Rubber Co.*, 568

F.3d 1180, 1189 (10th Cir. 2009). *See also Oppenheimer,* 437 U.S. at 351 (construing the

standard "broadly to encompass any matter that bears on, or that reasonably could lead to

other matter that could bear on, any issue that is or may be in the case.").   Indeed, "[f]or

good cause, the court may order discovery of any matter relevant to the subject matter

involved in the action." Fed. R. Civ. P. 26(b)(1); *Cooper Tire,* 568 F.3d at 1188.

Moreover, "[t]he court may permit broader discovery in a particular case depending on

the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested." *Cooper Tire,* 568 F.3d at 1189.  Where a defendant fails to comply with a proper discovery request, a plaintiff may move the court for an order compelling a complete response.  Fed. R. Civ. P. 37(a).

## II.   DEFENDANTS SHOULD BE COMPELLED TO PRODUCE RELEVANT DOCUMENTS FOR AN APPROPRIATE RELEVANT TIME PERIOD

### A. Defendants Should Be Compelled To Provide The Search Terms And Methods Used To Collect Relevant Documents

Defendants have stated that they are relying on key word searches in connection with their document collection and production for New Frontier and certain Company employees.  However, despite Plaintiffs' numerous requests, Defendants have not yet provided Plaintiffs with this list of key words.  It is common for parties to confer on search terms in order to ensure relevant documents are captured and to potentially reduce the volume of E-Discovery.  *See, e.g., Lozoya v. All Phase Landscape Constr., Inc.*, No. 12-cv-1048-JLK, 2014 U.S. Dist. LEXIS 7138, at *3 (D. Colo. Jan. 21, 2014) ("Plaintiffs have agreed to a search term protocol proposed by Defendants that would further limit the extent of discovery produced."); *Harkabi v. Sandisk Corp.*, No. 08 Civ. 8203 (WHP), 2010 U.S. Dist. LEXIS 87483, at *14 (S.D.N.Y. Aug. 23, 2010) ("mutually agreed search terms"); *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) ("plaintiff's refusal to stipulate to a search methodology in this case . . . was a missed opportunity; the plaintiff might have convinced Biovail to broaden its search in ways that would uncover

more responsive documents and avoid subsequent disputes.").[5]  Defendants' failure to respond is particularly puzzling because they have agreed to provide the terms to Plaintiffs, but for reasons unknown, have not yet done so.  Plaintiffs are entitled to review the search terms in order to determine whether the Defendants have conducted an appropriate search.

Moreover, in order to comply with their discovery obligations, the non-employee Individual Defendants who did not use search terms to collect relevant documents are required to explain to Plaintiffs how they searched for and collected relevant documents for the same reasons set forth above.  *See The Sedona Principles, supra*, Cmt. 4.c. ("parties should be prepared to discuss the sources of electronically stored information that have been identified as containing relevant information, as well as the steps that have been taken to search for, retrieve, and produce such information").  Indeed "[a]bsent an agreement on the search methods to be used, parties should expect that their choice of search methods will need to be explained, either formally or informally, in subsequent legal contexts, including in depositions, evidentiary proceedings, and possibly even at trial." *Id.*, Cmt. 11.a.

---

[5] *See also The Sedona Principles, Second Edition: Best Practices Recommendations and Principles for Addressing Electronic Document Production,* Cmt. 3.a (Sedona Conference Working Group Series 2007) ("An obligation to discuss the issues in good faith applies to both parties, and requesting parties must be prepared to be as precise as possible in regard to potential discovery. . . . Some of the issues that parties should seek to resolve early in an action include: . . . (vii) use of search terms and other methods of reducing the volume of electronically stored information to be preserved or produced . . ."); *id.* at Cmt. 11.a ("Ideally, the parties should agree on the search methods, including search terms or concepts, to be used as early as practicable. . . . The search terms employed must be reasonably calculated to yield relevant data.  If not, courts may need to order additional searches, which will increase the cost and burden of discovery.").

Thus, Defendants should immediately provide Plaintiffs with the search terms used to collect relevant documents for New Frontier and its employees, as well as the methods and criteria the Individual Defendants used to search for responsive documents.

## B. Defendants Should Be Compelled To Produce Documents Prior To The Merger Up To The Present

With respect to the "Relevant Time Period," Plaintiffs have requested that Defendants produce all relevant documents up through the present. Plaintiffs also requested that a limited and narrow category of documents for four Requests relating to Defendants' prior relationships and other potential conflicts of interest be produced without regard to the Relevant Time Period.

Construing the rules of discovery liberally, Courts have consistently found that documents and information prior to and beyond the date of a merger are discoverable:

> [I]n view of the liberalized approach to valuation, the rules of discovery should also be construed liberally. While these documents, whether pre or postmerger, may later prove to be inadmissible, such documents may lead to discovery of admissible evidence pertaining to the issue of the value of the stock.

*Bershad v. Curtiss-Wright Corp.*, Civ. No. 5827, Civ. No. 5830, 1983 Del. Ch. LEXIS 461, at *19-21 (Del. Ch. Mar. 21, 1983).[6] Furthermore, "[t]he class period is not always

---

[6] Courts frequently look to Delaware case law for guidance, where much merger litigation has taken place. *See Nakkhumpun v. Taylor*, Civ. No. 12-cv-01038-CMA-CBS, 2014 U.S. Dist. LEXIS 11583, at *18 (D. Colo. Jan. 29, 2014) (referencing Delaware law); *Finkel v. Am. Oil & Gas, Inc.*, Civ. No. 10-cv-01808-CMA-MEH, 2012 U.S. Dist. LEXIS 6770 (D. Colo. Jan. 20, 2012) (using Delaware law to analyze the benefit conferred to shareholders in a merger context); *Ryskamp v. Looney*, Civ. No. 10-cv-00842-WJM-KLM, 2011 U.S. Dist. LEXIS 98644 (D. Colo. Sept. 1, 2011) (looking to Delaware law in a shareholder derivative suit).

determinative of what is relevant for discovery." *Grossman v. First Pennsylvania Corp.*, No. 89-9234, 1992 U.S. Dist. LEXIS 2266 (E.D. Pa. Feb. 24, 1992).  As discussed below, Plaintiffs are not limited to discovery from the year 2012, as Defendants suggest.

### 1. Plaintiffs Are Entitled To Discovery Relating To Potential Conflicts Of Interest Prior To The Merger Process Through The Present

Defendants have improperly limited their Responses to Request Nos. 13, 15, 39 and 44 to January 1, 2012 to November 28, 2012 -- the period when the process leading up to the Merger purportedly occurred.  These requests specifically relate to the Individual Defendants' potential conflicts of interest from, among other things, prior business relationships with LFP Broadcasting and/or Larry Flynt, prior relationships with any financial advisor or consultant, prior services provided by Isaacman's firm to New Frontier and business dealings between New Frontier and the Individual Defendants. Thus, the documents sought by these Requests are entirely relevant to the Individual Defendants' motive to want to sell the Company to Larry Flynt for an inadequate price, as alleged in Plaintiffs' Amended Complaint.

According to well-established legal precedent, Plaintiffs are entitled to discovery prior to 2012 where, as here, the information sought directly relates to allegations in the plaintiff's complaint.  *See, e.g.*, *Lane v. Cancer Treatment Ctrs. Of Am.*, C.A. No. 12207, 1994 Del. Ch. LEXIS 67 (Del. Ch. May 25, 1994); *In re Art Tech. Group, Inc. S'holders Litig.*, Consolidated C.A. No. 5955-VCL, 2010 Del. Ch. LEXIS 257 (Del. Ch. Dec. 21, 2010) (requiring disclosure of banker conflicts for four years prior to the merger).  Thus, the Delaware Chancery Court has allowed discovery of information prior to the merger

date.  *Id.*  Similarly, in appraisal actions, discovery routinely involves the production of documents over five years preceding the merger. *Van De Walle v. Unimation, Inc.*, Civ. No. 7046, 1984 Del. Ch. LEXIS 575 (Del. Ch. Oct. 15, 1984) (allowing discovery going back 5 years prior to merger and stating that "[s]ince the fair value of the stock is at issue here, earnings prospects will be one factor taken into account at trial. . . . The basis for a determination of earnings value will normally be the average earnings over the five-year period preceding the merger."). *See also Kaye v. Pantone, Inc.*, Civ. No. 5466, 1981 Del. Ch. LEXIS 607 (Del. Ch. Oct. 6, 1981); *In re Olivetti Underwood Corp.*, 246 A.2d 800, 804 (Del. Ch. 1968) ("And average earnings over the five-year period immediately preceding the merger is ordinarily used as the basis for determining earnings value.").

Plaintiffs allege in the Amended Complaint, that the Individual Defendants had material conflicts of interest dating back many years before the Merger that caused them to favor LFP Broadcasting and Larry Flynt, to the exclusion of other potential bidders. Defendants' favoritism is evidenced by the fact that New Frontier had engaged in discussions with LFP Broadcasting regarding a potential transaction as early as 2010.  In light of the broad notions of relevance under the Federal Rules of Civil Procedure, Plaintiffs request that Defendants produce documents and communications beginning on January 1, 2007, five years prior to the Merger, for Request Nos. 13, 15, 39 and 44.

## 2.  The Relevant Time Period Should Extend To The Present Date

Defendants improperly limit their discovery responses to the date of the Merger, November 28, 2012.  Plaintiffs, however, are entitled to responsive documents up until the present, as discovery of post-Merger events might lead to the discovery of relevant

14

information that existed before or at the time of the Merger.  *Ross v. Proco Mgmt.*, Civ. No. 6146, 1983 Del Ch. LEXIS 494 (Del. Ch. May 23, 1983) (ordering the production of post-merger documents).

Indeed, courts have routinely allowed post-merger discovery in breach of fiduciary duty actions such as this, finding discovery relevant to assessing the fair price of the merger.  For example, in *In re Best Lock Corp. Shareholder Litig.*, the plaintiffs sought to compel discovery of post-merger documents in a consolidated action arising out of three interrelated freeze-out mergers.  Consol. Civ. No. 16281, 2000 Del. Ch. LEXIS 175 (Del. Ch. Dec. 18, 2000).  Plaintiffs argued they were entitled to post-merger documents because "they [were] seeking rescissory damages, which necessitate[d] post-merger discovery." *Id.* at *17.  The Court agreed with the Plaintiffs, holding:

> [O]ther cases[] have relaxed significantly the limitations on discovery of post-merger evidence that *may* be admissible in certain circumstances even in appraisal cases that are statutorily limited to determining fair price at the time of the merger.  Moreover, the actions in these consolidated actions include a breach of fiduciary duty action (which may, ultimately, justify a rescissory damages remedy) as well as an appraisal case.  Thus, these documents may be admissible for both of these reasons.

*Id.* at *18.[7]  Similarly, in *In re John Q. Hammons Hotels Inc. S'holder Litig.*, the court allowed discovery of information covering the two year and one quarter period following the merger, holding that "the post-merger financial information . . . meets the liberal standard for relevance" and noting that "the post-merger information may be relevant in a

---

[7] The Court also noted that "it is not necessary for the Court to determine whether rescissory damages are appropriate under the law and the facts before such discovery can proceed." *Id.* at *19.

breach of fiduciary duty action which may, ultimately, justify a rescissory damages remedy." Civ. No. 758-CC, 2009 Del. Ch. LEXIS 41 at *4, n.4 (Del. Ch. Mar. 25, 2009) (internal quotation omitted).

As in *John-Q* and *Best Lock*, post-Merger discovery is necessary and relevant here because Plaintiffs are seeking, among other remedies, rescissory damages.  Post-Merger discovery is also relevant in determining the value of the Company at the time of the Merger and whether the Company was sold for an unfair price.

Accordingly, for the above stated reasons, the Relevant Time Period should extend up to the present for all Requests and Interrogatories.

### C. Defendants Should Be Compelled To Produce Documents For Which They Improperly Asserted And/Or Waived The Attorney-Client Privilege

Defendants have objected to Request Nos. 4, 5, 7, 11-13, 17, 18, 21, 30, 34 and 43 pertaining to certain "communications between New Frontier, its attorneys and persons hired to assist its attorneys with respect to the Merger including its investment bankers" and refused to produce those documents on the grounds of attorney-client privilege.

A party asserting the attorney-client privilege has the burden of establishing that the privilege is applicable. *Aull v. Cavalcade Pension Plan,* 185 F.R.D. 618, 624 (D. Colo. 1998).  "The privilege may only be raised by the client." *In re Diasonics Sec. Litigation,* 11 F.R.D 570, 572 (D. Colo. 1986).  The attorney-client privilege, however, is not an absolute privilege, nor is it favored in federal courts:

> [S]ince the [attorney-client] privilege impedes the full and free discovery of the truth and is in derogation of the public's right to every person's evidence, it is not favored by the federal courts.  Accordingly, the privilege is to be strictly

> confined within the narrowest possible limits consistent with
> the logic of its principle.

*In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984) (footnotes and internal quotations omitted).

As discussed below, Defendants have not met their burden of establishing the applicability of the privilege here and, thus, should be compelled to produce communications between New Frontier's counsel and its advisors because: (i) no attorney-client privilege exists between New Frontier's attorneys and such third parties who purportedly provided advice to counsel (not the other way around) regarding the Merger, not in connection with this litigation; (ii) even if the attorney-client privilege did exist (and it does not), Plaintiffs have demonstrated good cause to waive any purported privilege; and (iii) Defendants have otherwise waived the privilege by asserting "good faith reliance on the advice of counsel" as an affirmative defense.

## 1. The Attorney-Client Privilege And Work Product Doctrine Do Not Apply To Advice Provided By New Frontier's Advisors In Connection With The Merger

It is well established that the attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations.  Information which is merely factual and is simply relayed to a client through her attorney is not a privileged communication." *Seabron v. Am. Family Mut. Ins. Co.,* 2011 U.S. Dist. LEXIS 138345, 11 (D. Colo. Dec. 1, 2011) (internal citations and quotations omitted).  The privilege does

not apply where the communication is not made for the purpose of obtaining legal advice from the lawyer.  *Gerrits v. Brannen Banks of Florida, Inc.,* 138 F.R.D. 574 (D. Colo. 1991) (Hon. J. Kane).  Moreover, where, as here, the advice sought is in connection with business matters given from service professionals, not the lawyer, the privilege does not apply.  *Id.* at 577.

Defendants have improperly asserted the attorney-client privilege with respect to communications from New Frontier's financial advisors, accountants and other consultants to assist its attorneys "with respect *to the Merger*."  The advice New Frontier obtained is admittedly business advice from professionals, not the lawyers, in connection with the Merger, not this litigation.  *Id.*  Accordingly, the privilege does not apply and Defendants should be compelled to produce such documents and communications.  *Id.*

Moreover, the work-product doctrine does not apply here for similar reasons – the communications between New Frontier's attorneys and outside professionals were (admittedly) not prepared in anticipation of litigation but, rather, to assist with the Merger.  *McEwen v. Digitran Systems, Inc.* 155 F.R.D. 678, 682 (D. Ut. 1994) (citing *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp. Emer. Ct. App. 1985)).

### 2.  Plaintiffs Have Demonstrated Good Cause To Waive The Attorney-Client Privilege

Even if the Court determines that the attorney-client privilege applies to communications between New Frontier's counsel and the Company's financial advisors concerning the Merger, the Tenth Circuit has adopted the "fiduciary exception" to the attorney-client privilege recognized by the Fifth Circuit in *Garner v. Wolfinbarger*, 430

F.2d 1093 (5th Cir. 1970).[8]  Under this exception, "a communication between a client and its attorney is not privileged from those to whom the client owes a fiduciary duty." *Monfardini v. Quinlan*, No. 02 C 4284, 2004 U.S. Dist. LEXIS 4054, at *9 (N.D. Ill. Mar. 11, 2004).  As the *Garner* court explained:

> [I]t must be borne in mind that management does not manage for itself and that the beneficiaries of its actions are the stockholders.  Conceptualistic phrases describing the corporation as an entity separate from its stockholders are not useful tools of analysis.  They serve only to obscure the fact that management has duties which run to the benefit ultimately of the stockholders. . . . [W]hen all is said and done management is not managing for itself.

430 F.2d at 1102-03.  Moreover, where, as here, the corporation is in suit against its stockholders for acting against their interests, the privilege does not apply:

> [W]here the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

*Id.* at 1103-04.

Under the fiduciary exception, shareholders are given access to otherwise privileged information upon a showing of "good cause."  *Ryskamp v. Looney,* Civ. No. 10-cv-00842-WJM-KLM, 2011 U.S. Dist. LEXIS 98644, at *32 (D. Colo. Sept. 1, 2011).

---

[8] *See, e.g., Gerrits v. Brannen Banks of Florida, Inc.*, 138 F.R.D. 574 (D. Colo. 1991); *In re Diagnostics Securities Litigation*, 110 F.R.D. 570 (D. Colo. 1986); *Neusteter v. Dist. Court for the City and County of Denver*, 675 P.2d 1, 5 (Colo. 1984) (declaring that the "test established in *Garner* is solidly grounded in the realities of relationships within corporations.  The shareholders are the real owners of a corporation.").

In making a "good cause" determination, *Garner* identified the following nine non-exclusive factors that courts should consider:

> [1] the number of shareholders [calling for the information] and the percentage of stock they represent; [2] the bona fides of the shareholders; [3] the nature of the shareholders' claim and whether it is obviously colorable; [4] the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; [5] whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; [6] whether the communications related to past or prospective actions; [7] whether the communication is of advice concerning the litigation itself; [8] the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; [9] the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.

*Garner,* 430 F.2d at 1104.[9]   Moreover, good cause exists "in litigation involving a corporation and its shareholders . . . because shareholders stand in the shoes of a client when management seeks counsel on matters that ultimately should benefit shareholder interests." *Gerrits v. Brannen Banks of Florida, Inc.,* 138 F.R.D. 574, 577 (D. Colo. 1991) (internal citations omitted).   Importantly, as previously held by this District, "shareholders have a right to know about legal communications concerning the future of their company." *In re Diagnostics Securities Litigation,* 110 F.R.D. 570, 575 (D. Colo. 1986).   Application of the *Garner* factors amply demonstrates that the attorney-client

---

[9] This list is meant to be illustrative, rather than exhaustive. *See Garner,* 430 F.2d at *32 ("There are many indicia that may contribute to a decision of presence or absence of good cause . . . .").

privilege should not apply here and New Frontier's shareholders are entitled to the legal communications with New Frontier's advisors concerning the future of their company.

*First*, Plaintiffs collectively held 1,176,162 shares of New Frontier stock before the Merger, representing 13% of the outstanding shares of New Frontier common stock at the time of the Merger. Plaintiff Moreland, alone, held 1,175,862 shares, representing the largest interest held by any individual shareholder. Thus, Plaintiffs have a substantial interest in obtaining these documents in support of the claims asserted in this Action. *Second*, Plaintiffs have brought their claims in good faith in order to recover damages on behalf of themselves and the class. *Third*, Plaintiffs have alleged colorable claims that the Individual Defendants breached their fiduciary duties by selling New Frontier to Larry Flynt, the Board's preferred bidder, for an inadequate price and soliciting shareholders to tender their shares based upon materially misleading information.[10]

*Fourth*, the information Plaintiffs are seeking, which consists of internal Company documents such as Board meeting minutes, communications with, and analyses prepared by, financial advisors and other consultants who advised on the Merger, and communications regarding potential conflicts of interest, is necessary to support their claims. Specifically, in connection with the Merger, the Special Committee engaged two legal advisors, Alston & Bird and Blank Rome, and one financial advisor, Avondale Partners LLC ("Avondale"), to assist in evaluating strategic proposals and communicate with potential acquirers. Avondale also provided a fairness opinion upon which the

---

[10] Similarly, the plaintiffs in *Garner* brought a shareholder class action suit alleging fraud, management misconduct and violations of the Exchange Act. *Garner*, 430 F.2d 1093.

Board relied in approving the Merger, which was summarized in the Company's Recommendation Statement used to convince shareholders that the Merger price was fair and that they should tender their shares.  Similarly, the Company's outside legal counsel, Holland & Hart LLP, and the Company's Chief Legal Officer, Marc Callipari, were consulted during the strategic alternatives process and possess valuable information that Plaintiffs cannot obtain elsewhere.  Moreover, communications with Perkins Coie, counsel hired by the Compliance Committee to investigate Michael Weiner's termination, are directly relevant to the Plaintiffs' claim that Weiner was terminated in order for Defendants to remove an impediment to the sale of the Company for an inadequate price.  All of this information is solely within Defendants' custody and control and is not available from any other source.

New Frontier's shareholders are entitled to know the advice sought and/or given to Defendants regarding strategic alternatives available to the Company, the process leading up to the Merger, the fairness of the Merger terms and price and information indicating Defendants' motivations to act in the best interests of those other than the Company's shareholders.  This, information is not available from any other sources and, thus, should be produced to Plaintiffs.

*Fifth*, Plaintiffs' claims are for non-criminal, wrongful actions by the Company and the Individual Defendants.  *Sixth*, the communications sought by Plaintiffs relate to past actions for which such discovery already exists.  *Seventh*, Plaintiffs do not seek discovery of attorney-client communications of advice concerning the present litigation, but rather with respect to the Merger at issue in this Action, which closed on November

28, 2012.  *Eighth*, Plaintiffs' Requests consist of very targeted Requests for documents, which relate specifically to the Merger and Defendants' motivation for the Merger. *Finally*, there is no risk that any purported trade secrets or confidential information will be revealed improperly as this Court has entered a Protective Order governing the dissemination and reception of confidential information.

Moreover, additional consideration should be given to the fact that the Individual Defendants' interests in connection with the Merger were not aligned with those of New Frontier or its public shareholders.  The services rendered by New Frontier's attorneys and advisors -- Marc Callipari, Alston & Bird, Holland & Hart, Perkins Coie, Avondale and Grant Thornton, among others -- were performed as representatives of New Frontier and not for the Individual Defendants, management or Company employees.  New Frontier's attorneys' duties and obligations were to represent and protect the interests of New Frontier and its public shareholders.  Thus, the shareholders, and not the Individual Defendants, are the beneficiaries of the attorneys' legal representation of New Frontier and are entitled to the documents they seek.  The non-client Individual Defendants cannot invoke an attorney-client privilege that does not belong to them to prevent New Frontier's shareholders from obtaining information relating to the Merger.  To do so would violate the *Garner* fiduciary duty exception to the attorney-client privilege.

### 3. Defendants Have Waived Their Attorney-Client Privilege

To the extent that the attorney-client privilege applies, Defendants have waived their privilege by asserting "good faith reliance on the advice of counsel" as an affirmative defense.[11]

When attorney advice is raised as a defense, the attorney client privilege may be implicitly waived. *See, e.g.*, *Wellinger Family Trust 1998 v. Hartford Life & Accident Ins. Co.*, Civ. No. 11-cv-02568-CMA-BNB, 2013 U.S. Dist. LEXIS 79019 (D. Colo. June 5, 2013); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir 1992) (defendant's claim that his tax position was reasonable because it was based on advice of counsel put that advice at issue, and waived the attorney-client privilege). The Tenth Circuit has specifically recognized this implicit waiver, stating that "reliance upon a defense of advice of counsel has, in some circumstances, been held to constitute a waiver of the attorney-client privilege." *Frontier Ref. v. Gorman-Rupp Co.*, 136 F.3d 695 (10th Cir. 1998).[12]

The reasoning behind such a waiver comes from the notion that "[t]he privilege which protects attorney-client communications may not be used both as a sword and a

---

[11] Defendants assert: "Plaintiffs' claims are barred in whole or in part by Defendants' good faith reliance on the advice of counsel." New Frontier Media, Inc., Alan Isaacman, Melissa Hubbard, Hiram J. Woo, and Walter Timoshenko's Answer to Amended Class Action Complaint for Breach of Fiduciary Duty and Violations of the Federal Securities Laws, at 19.

[12] Similarly, the Colorado Supreme Court has held that "by placing in issue a confidential communication going directly to the claim or defense, a party impliedly waives the attorney-client privilege with respect to that communication." *Seabron v. Am. Family Mut. Ins. Co.*, Civ. No. 11-cv-01096-WJM-KMT, 2011 U.S. Dist. LEXIS 138345 (D. Colo. Dec. 1, 2011) (quoting *Moutnain States Tel. & Tel. Co. v. DiFede*, 780 P.2d 533, 543 (Colo. 1989)).

shield.  [Therefore,] [w]here a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992).  In *United States v. Workman*, the U.S. District Court for the District of Colorado held that the attorney-client privilege was waived when the defendant asserted his reliance on counsel's advice as a defense:

> During his opening statement and his questioning of Levad [defendant Workman's former counsel], Workman's trial counsel placed Levad's advice in issue by asserting that Workman had relied on the advice in cashing the checks. Workman cannot selectively assert the privilege to block the introduction of information harmful to his case after introducing other aspects of his conversations with Levad for his own benefit. The attorney client privilege cannot be used as both a shield and a sword, and **Workman cannot claim in his defense that he relied on Levad's advice without permitting the prosecution to explore the substance of that advice**.

138 F.3d 1261, 1264 (8th Cir. 1998) (internal citations omitted) (emphasis added).  Thus, "[w]here a party injects part of a communication as evidence, fairness demands that the opposing party be allowed to examine the whole picture." *Wellinger Family Trust 1998 v. Harford Life & Accident Ins. Co.,* Civ. No. 11-cv-02568-CMA-BNB, 2013 U.S. Dist. LEXIS 79019 (D. Colo. June 5, 2013).

Similarly, Defendants here cannot assert good faith reliance on their counsel's advice as a defense without allowing Plaintiffs' access to the substance of that advice. Fairness dictates that Defendants must disclose the whole picture rather than just select parts.  To allow otherwise would permit Defendants to use the privilege as both a sword and a shield.

**D. Defendants Should Be Compelled To Produce Communications With Their Accountants And Auditors**

Defendants have objected to Request Nos. 4, 5, 7, 11, 12, 17, 18, 21, 30, 34, and 43 pertaining to certain documents and communications with New Frontier's auditors and accountants.

As an initial matter, there is no recognized accountant-client privilege under Federal law and, thus, any such communications with respect to Plaintiffs' federal claims are not protected under this privilege. *See, e.g.*, *United States v. Wainwright*, 413 F.2d 796, 803 (10th Cir. 1969); *Ptasynski v. Co2 Claims Coalition, LLC*, Civ. No. 02-cv-00830-WDM-MEH, 2006 U.S. Dist. LEXIS 59694, at *4 (D. Colo. Aug. 23, 2006) (citing *United States v. Arthur Young and Co.*, 465 U.S. 805, 817 (1984)).[13]  Accordingly, Defendants' assertion of the accountant-client privilege as it relates to Plaintiffs' federal law claims must fail.

Moreover, to the extent the privilege is asserted with respect to Plaintiffs' state law claims, Plaintiffs have "good cause" for waiving the privilege, necessitating the production of these documents.  Colorado has a statutorily created accountant-client privilege[14] that is analogous to the attorney-client privilege. *Neusteter v. Dist. Court of*

---

[13] *See also In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1225 (11th Cir. 1987) ("for there is no accountant-client privilege under federal law") (citing *Couch v. United States*, 409 U.S. 322, 335 (1973)); *Pentz v. United States*, Case No. 2:09-cv-687-FtM-29DNF, Case No. 2:02-cr-78-FtM-29DNF, 2011 U.S. Dist. LEXIS 83360 (M.D. Fla. July 29, 2011) ("under federal law, there exists no confidential accountant-client privilege"); *United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981) ("there is no accountant-client privilege under federal law").

[14] C.R.S. 13-90-107(1)(f) provides: "A certified public accountant shall not be examined without the consent of his client as to any communication made by the client to him in

*Denver,* 675 P.2d 1, 8 (Colo. 1984).  Thus, as with the attorney-client privilege, the Colorado Supreme Court has expressly adopted the fiduciary "good cause" test annunciated in *Garner,* discussed *supra,* and has applied it as an exception to the accountant-client privilege. *Id.* at 16.[15]  Similar to the reasoning in *Garner*, the Colorado Supreme Court explained its basis for extending the "good cause" test to the account-client privilege:

> The "good cause" test established in *Garner* is solidly grounded in the realities of relationships within corporations. The shareholders are the real owners of a corporation. Accounting information records the transactions of the managers as trustees for the shareholders.  Management does not manage for itself; the beneficiaries of its action are the shareholders.  If a corporation is governed properly, assertion of the accountant-client privilege is consistent with shareholder interests.  **Where, as here, whether the corporation was governed properly or inimically to shareholder interests is a central issue of the case, shareholders must be permitted to show that there is good cause not to permit disclosure to be thwarted by invocation of the privilege.**

*Id.* at 13 (internal citations omitted) (emphasis added). Pursuant to this "good cause" test, the Colorado Supreme Court found that the account-client privilege should not apply where, as here, the complaint alleged a legally cognizable injury, the plaintiffs had been

---

person or through the media of books of account and financial records, or his advice, reports, or working papers given or made thereon in the course of professional employment; nor shall a secretary, stenographer, clerk or assistant of a certified public accountant be examined without the consent of the client concerned concerning any fact, the knowledge of which he has acquired in such capacity."

[15] *See also Pattie Lea, Inc. v. Dist. Court of Denver*, 161 Colo. 493, 498 (1967) (holding that in a derivative suit brought in good faith against the corporation, the accountant-client privilege did not protect a corporation from being required to disclose to its own stockholders communications made by the corporation to its certified public accountant).

denied access to corporate records necessary to prove their allegations, and there was no other apparent source for the information sought. *Id.* at 7.

As previously discussed in Section II.C.2., good cause exists because, among other things, Plaintiffs have alleged a legally cognizable injury, the documents and information Plaintiffs seek are necessary to prove the allegations in the complaint and are solely within Defendants' control and, thus, are not available elsewhere.

### E. Defendants Should Be Compelled To Produce Deposition Transcripts From Weiner's Wrongful Termination Arbitration Proceeding

Plaintiffs have requested that Defendants produce the deposition transcripts from the arbitration proceeding concerning Weiner's wrongful termination, as they are directly relevant to issues raised in this litigation – that the Board saw Weiner as an impediment to their goal of selling New Frontier to Larry Flynt on the cheap and terminated Weiner in order in order to facilitate the sale.[16]  Courts, including this District, routinely permit discovery of documents from related proceedings that are relevant to the current proceeding.  *See, e.g.*, *Benton v. Bd. Of County Comm'rs*, Civ. No. 06-cv-01406-PSF-MEH, 2007 U.S. Dist. LEXIS 98656 (D. Colo.  July 16, 2007) (permitting discovery of deposition  transcripts from related proceedings); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, Slip Op. 2011-1157 (Fed. Cir. 2011) (finding

---

[16]   Upon information and belief, at Mr. Weiner's arbitration hearing, the Individual Defendants all testified, under oath, regarding the purported basis for terminating Weiner, and the consideration at the time of his termination of the Company's pending plans to sell the Company to Flynt.  Also testifying at the arbitration hearing was a representative of the Company's financial advisor regarding the merger, Avondale.  Upon information and belief, the transcripts have already been prepared and are in the possession and/or control of Defendants.  Thus, there would be no undue burden or expense on Defendants to produce them to Plaintiffs.

materials related to a prior arbitration were discoverable in a subsequent patent infringement suit against another defendant); *Apple Inc. v. Samsung Elecs. Co. Ltd.*, No. C 11-1846 LHK (PSG), 2012 U.S. Dist. LEXIS 51884 (N.D. Cal. Apr. 12, 2012) (ordering the production of deposition transcripts of Company employees that were taken during a pending United States International Trade Commission Investigation, finding transcripts had a "technological nexus" to the current patent infringement lawsuit).

Here, the prior arbitration proceeding surrounding Weiner's wrongful termination is directly relevant to the current litigation. Specifically, Weiner's termination in the middle of the process leading up to the Merger bears directly on Plaintiffs' claim that the Individual Defendants viewed Weiner as an impediment to a potential sale of the Company to LFP Broadcasting at less than fair value. Plaintiffs believe that in order to proceed with a Merger that undervalued the Company, the Individual Defendants had to remove those who would try to stop the transaction. Thus, the arbitration transcripts are relevant and Plaintiffs are entitled to them.

## F. Defendants Should Be Compelled To Produce Documents Pursuant To Plaintiffs' Requests And Interrogatories And To Fully Answer Plaintiffs Interrogatories

As discussed in the "Status of Discovery" section at page 8, *supra*, despite the deadline to produce documents responsive to Plaintiffs' Requests and Interrogatories by April 15, 2014, Defendants have not produced a single document response to Plaintiffs' discovery requests. During the parties meet and confer on April 18, 2014, Defendants stated that, due to technical difficulties, they needed until May 1, 2014 in order to produce the documents. Plaintiffs agreed. When Plaintiffs had not received the

documents by May 1st, they reached out to Defendants by email to inquire when the documents would be received.  As of the date of this Motion, Plaintiffs have not received any response from Defendants as to when they intend to comply with their discovery obligations.

Moreover, Defendants have not responded to Plaintiffs' February 12th Letter or May 5th Letter requesting the specific search terms and criteria used to search for relevant and responsive documents they have yet to receive, nor have they full answered Plaintiffs' Interrogatories.

Accordingly, Plaintiffs' request an order from the Court compelling such information be provided to Plaintiffs as soon as possible.

## III.    DEFENDANTS CANNOT SHOW THAT PRODUCING THE DOCUMENTS REQUESTED BY PLAINTIFFS WILL CAUSE AN UNDUE BURDEN

As the party resisting discovery, it is Defendants' burden to establish, with specificity, that such disclosure will cause them undue burden. *See Christensen v. Am. Family Mut. Ins. Co.*, No. 1:09-cv-94 TS, 2011 U.S. Dist. LEXIS 96620, at *7-8 (D. Utah Aug. 29, 2011) ("When a discovery request appears to seek information relevant to a party's claim or defense, the burden shifts to the party opposing discovery to demonstrate lack of relevance, or to show that allowing discovery would result in detriment that outweighs the benefit resulting from such discovery."); *Condit v. Dunne*, 225 F.R.D. 100, 106 (S.D.N.Y. 2004) ("Once any possibility of relevance sufficient to warrant discovery is shown, the burden shifts to the party opposing discovery to show the discovery is improper.") (internal quotations omitted).  Moreover, in order to defeat discovery on the

basis of burden or expense, the resisting party must show that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Defendants have not met their heavy burden here.  Rather, they have advanced no more than blanket, non-specific assertions that producing documents, including attorney communications, accountant communications, and arbitrations transcripts, for the entire Relevant Time Period would be unduly burdensome.  Furthermore, although Plaintiffs have limited their Requests for information prior to 2012 to only four Requests, Defendants maintain their position that it would create an undue burden to produce these documents.

Pursuant to the parties' various attempts to meet and confer about discovery, Defendants have arbitrarily agreed to produce documents beginning in 2012 and ending on November 28, 2012.  Discovery relating to Defendants' actions and the valuation and worth of the Company, however, is absolutely crucial for Plaintiffs to be able to prosecute their claims.  Moreover, in this electronic age where documents can be retrieved and produced electronically, the additional purported burden on Defendants to extend their production to the entire Relevant Time Period, or beyond this period with respect to four of the Requests, would be minimal.

Accordingly, any slight additional purported burden Defendants might incur certainly does not outweigh Plaintiffs' strong interest in obtaining the necessary

information to pursue their claims on behalf of New Frontier stockholders. Thus, Plaintiffs respectfully submit that Defendants be required to produce relevant, non-privileged documents for the entire Relevant Time Period.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant Motion and compel Defendants to:  (1) produce documents being improperly withheld on privilege grounds (attorney-client privilege and accountant-client privilege); (2) produce the deposition transcripts from the related arbitration proceeding; (3) produce document for a Relevant Time Period from January 2, 2012 to the present, except for Request Nos. 13, 15, 39 and 44, for which a Relevant Timer Period of January 2, 2007 to the present is appropriate; (4) order Defendants to produce documents responsive to Plaintiffs' Requests and Interrogatories; (5) order Defendants to fully respond to Plaintiffs' Interrogatories; and (6) such other relief as the Court may deem just and proper.

Dated: May 20, 2014           DYER & BERENS LLP
ROBERT J. DYER III
JEFFREY A. BERENS
DARBY K. KENNEDY

  /s/ JEFFREY A. BERENS
303 East 17th Avenue, Suite 810
Denver, CO 80203
Tel: (303) 861-1764
Fax: (303) 395-0393
bob@dyerberens.com
jeff@dyerberens.com

*Liaison Counsel for Plaintiffs*

.

LEVI & KORSINSKY, LLP
SHANNON L. HOPKINS
STEPHANIE A. BARTONE
30 Broad Street, 24th Floor
New York, NY  10004
Tel: 212-363-7500
Fax: 212-363-7171
shopkins@zlk.com
sbartone@zlk.com

*Counsel for Plaintiff Telke*

CRANE DUNHAM PLLC
STEPHEN J. CRANE
JASON T. LEEHAN
2121 Fifth Avenue
Seattle, WA 98121
Tel: 206-292-9090
Fax: 206-292-9736
scrane@cranedunham.com
jleehan@cranedunham.com

*Counsel for Plaintiff Moreland*

4830-3664-3099, v.  1

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2014, I electronically filed the foregoing **PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

> s/ Jeffrey A. Berens
> Jeffrey A. Berens
> Attorney for Plaintiff
> DYER & BERENS LLP
> 303 East 17th Avenue, Suite 810
> Denver, CO  80203
> Telephone: (303) 861-1764
> FAX: (303) 395-0393
> Email: jeff@dyerberens.com

34