**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-02941-JLK

CRAIG TELKE and
WILLIAM DOUGLAS MORELAND,
Individually and on Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO, and
WALTER TIMOSHENKO,

      Defendants.

---

**PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO
DEFENDANTS NEW FRONTIER MEDIA, INC., ALAN ISAACMAN,
MELISSA HUBBARD, HIRAM J. WOO, AND WALTER TIMOSHENKO**

---

      Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs Craig Telke and

William Douglas Moreland ("Plaintiffs") hereby demand that defendants New Frontier Media,

Inc., Alan Isaacman, Melissa Hubbard, Hiram J. Woo, and Walter Timoshenko ("Defendants")

produce the documents described below for inspection and copying at the law office of Dyer &

Berens LLP, located at 303 East 17th Avenue, Suite 810, Denver, Colorado 80203, within 30

days after service, or at such other location and date upon which the parties may mutually agree.

<u>DEFINITIONS</u>

      1.    "New Frontier" or the "Company" means New Frontier Media, Inc., any of its

predecessors or predecessors in interest, successors or successors in interest, divisions, parents,

affiliates, subsidiaries, and anyone acting or purporting to act on its behalf, including any of its

1

respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives, intermediaries, or committees thereof.

2.      "Individual Defendants" means Alan Isaacman, Melissa Hubbard, Hiram J. Woo, and Walter Timoshenko.

3.      "LFP Broadcasting" means LFP Broadcasting, LLC, any of its predecessors or predecessors in interest, successors or successors in interest, divisions, parents, affiliates, subsidiaries, and anyone acting or purporting to act on its behalf, including any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives, intermediaries, or committees thereof.

4.      "Avondale" means Avondale Partners LLC, any of its predecessors or predecessors in interest, successors or successors in interest, divisions, parents, affiliates, subsidiaries, and anyone acting or purporting to act on its behalf, including any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives, intermediaries, or committees thereof.

5.      "Bidder C" refers to the entity that was identified in the Company's 14D-9 on page 20 (among other pages).

6.      "Bidder D" refers to the entity that was identified in the Company's 14D-9 on page 20 (among other pages).

7.      "Business Relationship" refers to any relationship, whether formal, informal, contractual or legal, concerning any employment, occupation, profession, ownership or equity interest for monetary gain, personal gain or livelihood.  "Business Relationship" shall also include, without limitation, any monetary, financial or labor investment.

8.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by any means, including, without limitation, executive summaries, memoranda and electronic mail.

9.      "Concerning" shall be construed in its broadest sense, and shall also mean, without limitation, relating to, referring to, reflecting, pertaining to, describing, evidencing, constituting, summarizing, arising out of, discussing, and comparing.

10.     "Document" shall be construed in its broadest sense and in accordance with the Federal Rules of Civil Procedure to include, without limitation, any writings, emails, records, drawings, graphs, charts, files, photographs, sound recordings, images, and other data or data compilations (including Electronic data) that have been recorded, stored, or transmitted in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

11.     "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, voice mail data files, voice mail recordings, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," personal digital assistant ("PDA") messages, instant messenger messages, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files,

crosswalks, code keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment.  "Electronic data" also includes any and all items stored on computer memory or memories, hard disks, floppy disks, zip drives, CD-ROM discs, Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM, or RAM of any kind) on or in any other vehicle for digital data storage or transmittal, files, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

12. "Financial Advisor" includes, without limitation, any financial institution, financial advisor, financial analyst, stockbroker, investment advisor, investment banker, accountant, expert, and any other person or entity that provided analysis or a fairness opinion concerning the Merger or any other Offers, including Avondale and Grant Thornton.

13. "Financial Statements" includes, but is not limited to, interim, final, pro forma, actual, projected, complete, or partial, annual, quarterly, monthly, weekly or otherwise, audited or unaudited, budgets, budget plans, balance sheets, schedules of direct costs, schedules of miscellaneous income, schedules of general services, fiscal serviceman administrative services, statements of earnings and earnings per share, income statements, cash flow statements, statement of revenues and statements of expenses, all notes or other commentary concerning any of the foregoing and all underlying work papers and all drafts used in connection with the preparation of any of the foregoing.

14. "Grant Thornton" means Grant Thornton LLP, any of its predecessors or predecessors in interest, successors or successors in interest, divisions, parents, affiliates,

subsidiaries, and anyone acting or purporting to act on its behalf, including any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives, intermediaries, or committees thereof.

15.     "Hustler" means Hustler, any of its predecessors or predecessors in interest, successors or successors in interest, divisions, partners, affiliates, subsidiaries, and anyone acting to purporting to act on its behalf, including any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives, intermediaries, or committees thereof.

16.     "Hedge Fund Solutions" means Hedge Fund Solutions, LLC, any of its predecessors or predecessors in interest, successors or successors in interest, divisions, partners, affiliates, subsidiaries, and anyone acting to purporting to act on its behalf, including any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives, intermediaries, or committees thereof.

17.     "Identify" when used to refer to a natural person, shall mean to set forth that person's: (i) full name and title, if any; (ii) present or last known address; (iii) present or last known business and home telephone number(s); and (iv) present or last known employer.

18.     "Identify" when used to refer to a document, shall mean: (i) the date of each document; (ii) the type of each such document (*i.e.*, correspondence, memorandum, business record, etc.); (iii) the identity of the author(s) or preparer(s) of each such document; and (iv) the present location of each such document or copies thereof.

19.     "Isaacman, Kaufman & Painter" means Isaacman, Kaufman & Painter, P.C. any of its predecessors or predecessors in interest, successors or successors in interest, divisions, partners, affiliates, subsidiaries, and anyone acting to purporting to act on its behalf, including

any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives, intermediaries, or committees thereof.

20.     "Longkloof" means Longkloof Limited, any of its predecessors or predecessors in interest, successors or successors in interest, divisions, partners, affiliates, subsidiaries, and anyone acting to purporting to act on its behalf, including any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives, intermediaries, or committees thereof.

21.     "Manwin" means Manwin Holdings S.A.R.L., any of its predecessors or predecessors in interest, successors or successors in interest, divisions, partners, affiliates, subsidiaries, and anyone acting to purporting to act on its behalf, including any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives, intermediaries, or committees thereof.

22.     "Merger" means the transaction announced on October 15, 2012, pursuant to which LFP Broadcasting commenced a tender offer to acquire all of the outstanding shares of New Frontier for $2.02 per share in cash along with one contingent right per share to receive up to an additional $0.06, dependent on the degree to which New Frontier's available cash balance at the closing of the tender offer exceeded $11,514,000.

23.     "Merger Agreement" means the agreement and plan of merger between New Frontier Media, Inc. and LFP Broadcasting, LLC and Flynt Broadcasting, Inc., dated October 15, 2012.

24.     "Offer" means any proposal or expression of interest concerning any acquisition, merger, consolidation, share exchange, business combination, sale of assets, or other similar transaction or series of related transactions involving New Frontier or any subsidiary of New

Frontier or any offer to purchase, tender offer, exchange offer or any similar transaction or series of related transactions made by any person involving 5% or more of the outstanding shares of any class of New Frontier securities, and/or the sale of all or substantially all of New Frontier's assets.

25.    "Person" or "persons" means and refers to natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations, and governmental agencies and other agencies.

26.    "Recommendation Statement" or "14D-9" refers to the Schedule 14D-9 Recommendation Statement that New Frontier filed with the SEC on October 29, 2012.

27.    "SEC" means the United States Securities and Exchange Commission.

28.    "SEC filings" means all documents filed or prepared for the purpose of filing with the SEC and any other state or federal regulatory agency, including, but not limited to, Forms 8-K, 10-K, 10-Q, Schedules TO-T, 13-D, 14A, 14D-1, and 14D-9 and any drafts thereof or amendments thereto.

29.    "Telephone records" includes, without limitation, telephone directories, rolodexes, messages, telephone logs, recordings of telephone conversations, and telephone bills (local and long distance).

30.    "Ten Broadcasting" means Ten Broadcasting Inc., any of its predecessors or predecessors in interest, successors or successors in interest, divisions, partners, affiliates, subsidiaries, and anyone acting to purporting to act on its behalf, including any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives, intermediaries, or committees thereof.

31.    "You" and "your" refer to the entity and/or person responding to these Requests.

32.     The following rules of construction apply to all discovery requests:

a.     The terms "any," "all," or "each" shall be construed as any and all and each;

b.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

c.     The use of the singular form of any word includes the plural and vice versa;

d.     The masculine includes the feminine and neutral genders; and

e.     The term "including" shall be construed as "including, but not limited to".

<u>INSTRUCTIONS</u>

1.     You are requested to produce all documents described below that are in your possession, custody, or control or in the possession, custody, or control of your agents, employees, attorneys, accountants, or other representatives.  The documents are to be produced in the form and in the same order within each file in which they were located prior to production. The file folders, boxes, binders, or other containers in which such documents are found are also requested to be produced intact, including the title, labels, or other description of each such folder, box, binder, or container.

2.     Except for spreadsheets and charts, responsive electronically stored information ("ESI") should be produced in single-page tagged image file format ("tiff"), along with metadata produced in text format linked to the associated files.  Spreadsheets and charts should be produced in tiff format with a link to the native file.  ESI in tiff format should be accompanied by

a Concordance load file (.dat) with an Opticon cross-reference file (.opt or .log).

3.     Unless otherwise indicated, the relevant time period for each request shall be January 1, 2012, through the date of your response to this document request (the "Relevant Time Period").

4.     Plaintiff's First Request for the Production of Documents shall be deemed continuing so as to require supplemental production should Defendants or their counsel obtain or identify further responsive documents between the time that the documents initially are presented and the time of trial.

5.     Each Defendant shall produce the original of each document described below or, if the original is not in its custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

6.     If production of a document is withheld pursuant to a claim of privilege, as to each such withheld document, state the following information:

   a.     The specific privilege that is claimed;

   b.     A statement of the facts upon which the claimed privilege is based;

   c.     With respect to each purportedly privileged document, a description of:

      i.     Its nature, e.g., agreement, letter, memorandum, etc.;

      ii.     The date it was prepared;

      iii.     The date it bears;

      iv.     The date it was sent;

      v.     The date it was received;

      vi.     The identity of the person preparing it;

vii.      The identity of the person sending it;

viii.      The identity of each person to whom it was sent or was to have been sent, including all addressees and recipients of copies;

ix.      A statement as to whom each identified person represented or purported to represent at all relevant times; and

x.      A precise description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

7.      Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full and describe to the best of your knowledge, information, and belief, and with as much particularity as possible, those portions of the document that are not being produced.

8.      If a document responsive to these requests was at any time in any Defendant's possession, custody, or control but now is no longer available for production, as to each such document state the following information:

a.      Whether the document is missing or lost;

b.      Whether the document has been destroyed;

c.      Whether the document has been transferred or delivered to another person or entity and, if so, at whose request;

d.      Whether the document has been otherwise disposed of; and

e.      A precise statement of the circumstances surrounding the disposition of the document and the date of the document's disposition.

<u>REQUESTED DOCUMENTS</u>

<u>REQUEST NO. 1:</u>

New Frontier's Articles of Incorporation and Bylaws, including, without limitation, all amendments or changes thereto.

<u>REQUEST NO. 2:</u>

All minutes (with exhibits/attachments) of and notes of or for meetings of the Board of Directors of New Frontier or any committee or subcommittee thereof (including but not limited to the Compliance Committee, Special Committee, Audit Committee, Compensation Committee, Nominations Committee and Executive Committee ) discussing any Offer, proposed business combination or strategic alternative concerning New Frontier (including but limited to the Merger).

<u>REQUEST NO. 3:</u>

Each Merger Agreement contemplated by New Frontier, including all related exhibits and schedules, and all drafts thereof.

<u>REQUEST NO. 4:</u>

All documents and communications concerning the Merger or any other Offers or efforts which could have resulted in an Offer, business combination, or strategic alternative relating to New Frontier, including, without limitation:

      a.      all internal communications of New Frontier;

      b.      all documents and communications between any of the Individual Defendants;

      c.      all documents and communications between New Frontier and LFP Broadcasting and/or its affiliates;

      d.     all documents and communications between New Frontier and any potential acquirer, including Manwin, Longkloof and/or Adam Rothstein, Bidder C, Bidder D, Ten Broadcasting and Hustler;

      e.     all non-public documents provided to potential purchasers of New Frontier concerning a potential sale or acquisition of New Frontier;

      f.     all communications between New Frontier and any financial institution, accounting firm, auditing firm, investment banking firm or advisor, including Avondale and Grant Thornton; and

      g.     all communications sent to, or prepared to be sent to, any person on behalf of New Frontier.

REQUEST NO. 5:

All documents and communications concerning the engagement or retention of any financial institution, accounting firm, auditing firm or investment banking firm to provide services relating to any Offer, proposed business combination or strategic alternative concerning New Frontier or of any efforts which could result in an Offer, other strategic alternatives or services concerning the valuation of New Frontier, including but not limited to Avondale and Grant Thornton.

REQUEST NO. 6:

All personnel files, expense reports or logs, diaries, notebooks, notes, date books, calendars, appointment books, address books or Telephone Records maintained by or for the Individual Defendants or by or for any New Frontier officer or executive concerning any Offer (including but not limited to the Merger).

REQUEST NO. 7:

All documents and communications concerning any financial due diligence conducted relating to any Offer (including but not limited to the Merger) or any other strategic alternatives.

REQUEST NO. 8:

All appraisals, analyses, opinions, reviews, Financial Statements or other documents concerning the financial results, value, market value, fair value, or inherent value of the stock or any of the assets or businesses of New Frontier.

REQUEST NO. 9:

All financial projections, forecasts, budgets, business plans, and plans of future operations concerning New Frontier and drafts thereof.

REQUEST NO. 10:

All documents and communications concerning assumptions underlying any analyses, opinions, or projections of New Frontier reviewed, analyzed, considered, or evaluated in connection with any Offer, proposed business combination or strategic alternative.

REQUEST NO. 11:

All documents and communications between New Frontier and any Financial Advisor, financial institution, accounting firm, auditing firm, investment banking firm or advisor, including Avondale and Grant Thornton, concerning any Offer, proposed business combination or strategic alternative concerning New Frontier (including but not limited to the Merger).

REQUEST NO. 12:

All documents and communications from Grant Thornton regarding the valuation of New Frontier and any Offer, including but not limited to the Merger.

REQUEST NO. 13:

All documents and communications concerning any past, present, prospective, potential, actual, or contemplated Business Relationship or personal relationship between New Frontier and/or the Individual Defendants and LFP Broadcasting and/or Larry Flynt, and any of their respective officers, directors, affiliates, or subsidiaries, including, without limitation, any management agreements, consulting agreements, retention agreements, or any other agreements, arrangements, or understandings, without regard to the Relevant Time Period.

REQUEST NO. 14:

All documents concerning any past, present, prospective, potential, actual, or contemplated Business Relationship or personal relationship between Longkloof and/or Adam Rothstein and New Frontier and/or the Individual Defendants.

REQUEST NO. 15:

All documents and communications concerning any past, present, prospective, potential, actual, or contemplated Business Relationship or personal relationship between New Frontier and/or the Individual Defendants and any Financial Advisor, and any of their respective principals, officers, directors, affiliates or subsidiaries including, without limitation, management agreements, consulting agreements, retention agreements, or any other agreements, arrangements, or understandings, without regard to the Relevant Time Period.

REQUEST NO. 16:

All documents and communications concerning any past, present, prospective, potential, actual, or contemplated Business Relationship between New Frontier and any Individual Defendant, or between any of the Individual Defendants, including, without limitation, any

management agreement, partnership agreement, consulting agreement or any other agreement. (This Request is made without regard to the Relevant Time Period limitation set forth above.)

REQUEST NO. 17:

All documents and communications concerning any past, present, prospective, actual, potential, or contemplated business affiliations and personal relationships, without regard to the Relevant Time Period, between any of the Individual Defendants and LFP Broadcasting and Larry Flynt (including as to contemplated or prospective future employment or participation), or between any of the Individual Defendants and New Frontier, including, without limitation, common board memberships or common membership in any business organization.

REQUEST NO. 18:

All documents and communications with LFP Broadcasting or Larry Flynt concerning any Offer, business combination or acquisition of New Frontier.

REQUEST NO. 19:

All confidentiality and standstill agreements entered as a result of discussions concerning any Offer, including, without limitation, the Merger.

REQUEST NO. 20:

All documents and communications concerning any opinion from any Financial Advisor or investment banking firm concerning the fairness of the Merger.

REQUEST NO. 21:

All documents and communications concerning any actual or proposed consideration to be paid to New Frontier shareholders as a result of the consummation of any Offer, proposed business combination, or strategic alternative (including, without limitation, the Merger).

REQUEST NO. 22:

Documents sufficient to identify the Individual Defendants vested or unvested options to purchase New Frontier stock, restricted New Frontier stock, and other stock awards respectively owned by the Individual Defendants.

REQUEST NO. 23:

Documents sufficient to identify all of the individual directors, officers and managerial-level employees of New Frontier, their duties and responsibilities, their respective dates of service and if any such persons have resigned or been terminated or removed, all documents and communications concerning such resignation, termination or removal and the reasons therefore.

REQUEST NO. 24:

All documents and communications concerning the termination of Michael Weiner's employment, including but not limited to those concerning the Compliance Committee's investigation.

REQUEST NO. 25:

All documents and communications concerning Isaacman's selection as successor to Michael Weiner as Chairman of the New Frontier Board.

REQUEST NO. 26:

All documents and communications relating to David Nicholas's resignation from the Company.

REQUEST NO. 27:

All documents and communications concerning the creation of the Compliance Committee, including its purpose, authority and member compensation.

REQUEST NO. 28:

All documents and communications between the Compliance Committee and itself or outside parties concerning any investigations the Compliance Committee conducted concerning the strategic process and the termination of Weiner.

REQUEST NO. 29:

All documents and communications concerning the Special Committee and its creation, authority, member compensation, change in member composition and meeting minutes.

REQUEST NO. 30:

All documents and communications between the Special Committee and itself or outside parties, including but not limited to financial advisors, potential parties, auditors, concerning the strategic alternatives process.

REQUEST NO. 31:

All documents and communications concerning New Frontier's plans to expand operations outside of the United States.

REQUEST NO. 32:

All documents and communications concerning New Frontier's consideration of plans to launch new products, including but not limited to "over the top" technology and plans to expand into South America.  This request includes but is not limited to, budgets, forecasts and market evaluations or studies.

REQUEST NO. 33:

All documents and communications concerning the retention of, and relationship with, Damien J. Park and/or Hedge Fund Solutions, including but not limited to engagement letters, services provided and compensation paid.

REQUEST NO. 34:

All documents and communications between New Frontier and Damien J. Park and/or Hedge Fund Solutions concerning any Offer, strategic alternative or business combination concerning New Frontier, including but limited to the Merger.

REQUEST NO. 35:

All documents and communications concerning the decision to file suit against Longkloof, the lawsuit filed against Longkloof, the Board's ratification of its decision to commence suit and the resolution of the lawsuit.

REQUEST NO. 36:

All documents and communications concerning the Board's consideration of exempting Longkloof from the Company's Rights Plan.

REQUEST NO. 37:

All documents and communications concerning the New Frontier Board's decision to create subcommittees to the Board, including the purpose of the committee, the membership, fees to be paid, duration, required meetings and authority.  (This Request is made without regard to the Relevant Time Period.)

REQUEST NO. 38:

Any communications or documents received from shareholders of New Frontier regarding director compensation, director election, the lawsuit against Longkloof, the strategic alternatives process, or the decision to enter into the Merger.  (This Request is made without regard to the Relevant Time Period.)

REQUEST NO. 39:

All documents relating to legal services provided by Isaacman, Kaufman & Painter to the Company, to LFP Broadcasting and/or Larry Flynt or any associated fees and costs. (This Request is made without regard to the Relevant Time Period.)

REQUEST NO. 40:

All documents concerning each of the Individual Defendants' purchases, sales, gifts, grants, options, or ownership, either directly, indirectly or beneficially, of New Frontier or LFP Broadcasting securities of any type or class, including, without limitation: (1) stock held by the Individual Defendants; and (2) options held by the Individual Defendants, their grant date, vesting date, exercise date, expiration date, price and amount or proceeds to be realized from cancellation or cash-out due to any Offer (including, without limitation, the Merger Agreement). (This Request is made without regard to the Relevant Time Period limitation set forth above.)

REQUEST NO. 41:

All documents concerning the Individual Defendants' or any New Frontier officer's compensation, employment, severance, retention bonus, non-competition agreement, change-of-control payments or agreements, or consulting agreements, or other corporate perquisites, including, without limitation, executed and all draft copies of any such agreements. (This Request is made without regard to the Relevant Time Period limitation set forth above.)

REQUEST NO. 42:

All documents and communications concerning the actual, intended, proposed, potential, anticipated, or agreed-upon capital structure of the surviving entity or entities, upon or following consummation of the Merger.

REQUEST NO. 43:

All documents and communications concerning the actual, intended, proposed, potential, anticipated, agreed-upon, or contemplated composition of the directors and officers of the surviving entity or entities upon or following consummation of the Merger Agreement, including but not limited to any proposals or offers for employment or directorships at LFP Broadcasting or any of its subsidiaries and affiliates.

REQUEST NO. 44:

All documents concerning loans made by New Frontier or LFP Broadcasting to any of New Frontier's officers or to any of the Individual Defendants or any agreements by which any of New Frontier's officers or the Individual Defendants borrowed money or received any incentives or any gifts from New Frontier or LFP Broadcasting or Larry Flynt. (This Request is made without regard to the Relevant Time Period limitation set forth above.)

REQUEST NO. 45:

All documents and communications concerning any stockholder agreements, support agreements, and/or voting agreements between LFP Broadcasting and any stockholders of New Frontier.

REQUEST NO. 46:

All documents and communications concerning any actual or proposed changes in the terms of the Merger Agreement or the right or option to terminate, amend or modify the terms of the Merger Agreement.

REQUEST NO. 47:

All documents and transcripts related to the Arbitration proceedings concerning Michael Weiner's termination, including but not limited to the testimony of the Individual Defendants, corporate representative of Avondale, and others given at the Arbitration proceedings.

REQUEST NO. 48:

All documents concerning any communications with the SEC, including but not limited to SEC comment letters and responses thereto, and all other communications with the SEC regarding the materials to be filed in connection with any Offer (including the Merger Agreement), and/or any other strategic alternative.

REQUEST NO. 49:

All documents concerning any policy, procedure or practice relating to the preservation or destruction of the documents or electronic data or types of documents or electronic data sought herein, and all documents and communications concerning any actual destruction of types of documents or electronic data sought herein.

REQUEST NO. 50:

All documents concerning insurance policies or indemnification agreements that may provide coverage to any Individual Defendant or New Frontier, individually or collectively, for any claims or causes of action asserted in this action or that may provide reimbursement for payments made in defense of this action, including, without limitation, loss mitigation insurance or liability-sharing arrangements, including options to purchase such insurance or sharing arrangements, whether acquired before or after the initiation of the litigation.

Dated: March 3, 2014                        **DYER & BERENS LLP**


By: /s/ Jeffrey A. Berens
    Jeffrey A. Berens
    Darby K. Kennedy
    303 East 17th Avenue, Suite 810
    Denver, CO 80203
    Tel: (303) 861-1764
    Fax: (303) 395-0393
    jeff@dyerberens.com
    darby@dyerberens.com

    LEVI & KORSINSKY, LLP
    Shannon L. Hopkins, Esq.
    Stephanie A. Bartone, Esq.
    30 Broad Street, 24th Floor
    New York, New York 10004
    Tel: (212) 363-7500
    Fax: (212) 363-7171
    shopkins@zlk.com
    sbartone@zlk.com

    CRANE DUNHAM PLLC
    Stephen J. Crane, Esq.
    Jason Leehan, Esq.
    2121 Fifth Avenue
    Seattle, Washington 98121
    Tel:  (206) 292-9090
    Fax: (206) 292-9736
    scrane@cranedunham.com
    jleehan@cranedunham.com

    *Counsel for Plaintiffs*

4826-9558-2489, v.  1

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2014, I served true and correct copies of the foregoing **PLAINTIFFS' FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANTS NEW FRONTIER MEDIA, INC., ALAN ISAACMAN, MELISSA HUBBARD, HIRAM J. WOO, AND WALTER TIMOSHENKO** on Defendants' counsel by causing copies to be sent by first-class U.S. mail, postage prepaid, and by electronic mail:

> Stuart N. Bennett
> Aaron D. Goldhamer
> JONES AND KELLER, P.C.
> 1999 Broadway, Suite 3150
> Denver, CO  80202
> sbennett@joneskeller.com
> agoldhamer@joneskeller.com

_/s/ Jeffrey A. Berens_____
          Jeffrey A. Berens