**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-02941-JLK

CRAIG TELKE and
WILLIAM DOUGLAS MORELAND,
Individually and on Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO, and
WALTER TIMOSHENKO,

      Defendants.

---

**RESPONSE TO PLAINTIFFS' MOTION TO COMPEL [Doc. # 42]**

---

      Defendants Alan Isaacman, Melissa Hubbard, Hiram J. Woo, and Walter Timoshenko ("Individual Defendants" and with New Frontier Media, Inc., "Defendants") hereby Respond in opposition to Plaintiffs' Motion to Compel [Doc. # 42] and state the following with reference to the capitalized terms contained therein:

## I.      INTRODUCTION

      The present status of discovery has changed significantly since the Motion was originally brought. Plaintiffs filed their Motion to Compel ("Motion"), on May 20, 2014, at a time when Defendants were in the process of incurring tens of thousands of dollars in collecting, reviewing, and producing documents. To date, Defendants have produced 27,104 pages[1] of documents to

---

[1] Defendants produced 6,282 pages on April 29, 2014, 12,388 pages on June 12, 2014 (which included native format excel spreadsheet files that were numbered as one page for each file), and

1

Plaintiffs pursuant to C.R.C.P. 26(a)(1) and Plaintiffs' discovery requests. Defendants have taken a very broad view of their discovery obligations and have produced, except for privileged documents, literally every document concerning the work of the Special Committee in connection with the Merger and every document relating to the dispute between the Board of Directors and two of its former members, David Nicholas and Michael Weiner. Because of the extensive work required to produce this volume of documents, some 20,000 pages were produced after the filing of Plaintiffs' motion. Despite the breadth and volume of Defendants' production, Plaintiffs have not withdrawn or modified their motion in the slightest. The further discovery sought by the Motion will have very limited likely benefit to Plaintiffs, and the Court should therefore deny the Motion. Fed. R. Civ. P. 26(b)(2)(C)(iii).

When this controversy came before the Court on Plaintiff Telke's motion for an injunction, Plaintiff Telke presented no evidence in support of that relief. Defendants submit that, notwithstanding their exhaustive production of over 27,000 pages in discovery to date, there are virtually no facts to support Plaintiffs' claims and the additional discovery sought by the Motion will not likely lead to evidence to support Plaintiffs' case.

Moreover, Plaintiffs' claims are so lacking in merit that further discovery should not be compelled. Plaintiffs' breach of fiduciary duty claim is not pleaded derivatively on behalf of the corporation, as required by Colorado law and is—even if it were properly pleaded—barred by the business judgment rule. Plaintiffs lack even the standing to assert their single federal claim— violation of section 14(d)(4) and 14(e) of the Exchange Act—because they did not tender their shares in reliance on alleged misstatements or omissions in the tender offer materials. In any event, the facts allegedly misrepresented or omitted about which Plaintiffs complain in their

8,434 pages on June 24, 2014.

federal claim were publicly disclosed in New Frontier's S.E.C. filings.  Finally, Plaintiffs will be unable to prove damages because they failed to exercise their exclusive remedy, which was the statutory dissent and appraisal process provided by Colorado law.  Collecting the discovery that Plaintiffs seek will undoubtedly be burdensome and expensive, but it will not provide any "likely benefit" for Plaintiffs in light of the core deficiencies in their claims.  As such, Fed. R. Civ. P. 26(b)(2)(C)(iii) protects Defendants from further unduly burdensome and expensive discovery that Plaintiffs now seek.

The Motion seeks additional discovery with respect to essentially the following five topics:  (a) the search terms and methods used to collect relevant documents; (b) documents generated years and even decades before the first discussions with prospective bidders began in January 2012; (c) communications with the board and special committee's lawyers; (d) communications between the Company and its auditors; and (e) deposition and hearing transcripts from an arbitration proceeding involving a breach of contract claim by the Company's former chief executive, Michael Weiner.  None of these requests is proper for the reasons discussed herein.

The Motion first complains that Plaintiffs have not received a description of the manner in which documents were gathered.  Motion at 6.  However, Plaintiffs have not sought such information within their extensive written discovery requests.  *See generally* Motion at Exh. 3. While counsel for the parties discussed voluntarily exchanging such information, such oral discussions cannot form the basis for a motion to compel.  If dissatisfied by counsel's description, Plaintiffs can inquire about the manner and method of the searches that were performed during depositions.  Indeed, the Motion cites authority which deems questions concerning search terms

as appropriate for inquiry during depositions.[2]

The Motion also complains about the timeframe for which Defendants have produced documents and provided information.  However, Plaintiffs themselves defined the "Relevant Time Period" for their requests as commencing on January 1, 2012.  Motion at Exh. 3, p. 6. Information and documents pre-dating January 1, 2012, would appear to be from an "Irrelevant Time Period," and in any event would pre-date the first unsolicited bid for New Frontier.  As Defendants explained in their discovery responses, the information that Plaintiffs seek relates for the most part to an attorney-client relationship between Defendant Alan Isaacman and Larry Flynt that ended more than thirteen years ago, the records of which would be privileged in any event. *Id.* at Exh. 4, p. 13.  More importantly, Plaintiffs' proffered reason for obtaining information and documents prior to 2012 makes no sense.  Plaintiffs assert that such documents are needed to show the Individual Defendants "potential conflicts of interest from, among other things, prior business relationships…."  Motion at 13.  If New Frontier had been sold to anyone besides the highest bidder, discovery into potential conflicts of interest might be productive.  However, it is undisputed that New Frontier was sold to the highest bidder after that bidder raised its bid three times.  As such, even if conflicts of interest did exist—and they did not—Plaintiffs have no real theory of how such a conflict caused damage where the sale was consummated with the highest bidder.

The Motion also seeks discovery related to time periods after the Merger closed.  The protections of the business judgment rule are not applied on a contingent basis turning on what hindsight reveals, but is rather applied based on what information was known at the time that business decisions were made.  As such, discovery from time periods which post-date the Merger

---

[2] *See* Motion at 11 (*quoting The Sedona Principles* for the proposition that "parties should expect that their choice of search methods will need to be explained…in depositions").

closing on November 28, 2012, will not avail Plaintiffs with respect to their breach of fiduciary duty claim.  Further, discovery regarding financial performance by the Company after November 28, 2012, would not appear to help Plaintiffs prove damages because their damages, if any, are measured as if no transaction had taken place, not based upon the financial performance of a business under new management and ownership.

Next, the Motion deals with documents withheld under either the attorney-client, attorney work product or accountant-client privileges.  Contrary to Plaintiffs' contention, the applicable privileges attach to the members of the Special Committee which cannot be pierced in this non-derivative action.  The at-issue waiver of those privileges cannot be determined at this point because of Plaintiffs' continued disinterest in articulating their specific theories of liability and damages.  In any event, the scope of the waiver, if any, is more targeted than the wholesale production Plaintiffs seek.

Finally, Plaintiffs seek the production of arbitration proceeding transcripts in an action that is only fancifully related to the issues to be decided in this case.  Although Defendants have offered to make portions of those transcripts available if Plaintiffs narrow their requests, Plaintiffs have not done so.

The burden on Defendants of the discovery sought by Plaintiffs is substantial.  That discovery will serve Plaintiffs with no "likely benefit" in the context of the needs of this case.  As such, the Motion should be denied.

## II.      RESPONSE TO THE MOTION'S "SUMMARY OF ACTION"

The Motion's "Summary of Action" is, of course, based upon the allegations in the Amended Complaint.  Motion at 2 n. 2.  These allegations are nothing more than that—Plaintiffs' allegations.  Indeed, when Plaintiff Telke initially brought the Complaint and moved to enjoin the

Merger, he presented <u>no</u> evidence in support of the relief he sought.  Nothing in the Motion appears to be based upon any evidence garnered by Plaintiffs either pre-filing or during the discovery process to date.  Therefore, the Motion's "Summary of Action" is nothing more than unsupported allegations.

Moreover, the allegations in the Motion's "Summary of Action" are internally inconsistent.  Plaintiffs allege that the Individual Defendants sought to "entrench" themselves on the Board.  Motion at 3.  However, Plaintiffs do not reconcile this unsupported allegation with the fact that the Individual Defendants were actively pursuing the Merger, which—far from "entrenching" the Individual Defendants—ultimately stripped them of their Board positions.  Moreover, Plaintiffs take issue with the fact that the Board had to resort to litigation to prevent Longkloof's takeover of the Company at $1.35 per share.[3]  Motion at 3-4.  Plaintiffs' gripe is curious, as this price was far less than the $2.06 per share price that the Individual Defendants diligently obtained—consistent with their fiduciary duty—for the shareholders in the Merger.  Longkloof itself tendered its shares in the Company for $2.06 per share in the Merger, which was the result of the highest and best offer obtained.  Thus, far from being a breach of fiduciary duty, the suit against Longkloof represents a successful exercise of fiduciary duty that resulted in a higher price per share for the Company than Longkloof was offering.  Aside from the conclusory and unsupported nature of the allegations, the Motion's "Summary of Action" does not make sense; the Individual Defendants did not "entrench" themselves by pursuing a transaction for the highest possible price whereby they lost their Board positions.

---

[3] During the course of Longkloof's effort to takeover the Company at $1.35 per share, Longkloof named Plaintiff Moreland as one of its potential partners in the takeover effort.

### III.    ARGUMENT

**A.    The Plaintiffs' claims are fatally flawed in manners that the sought discovery does not address.**

"Generally, 'control of discovery is entrusted to the sound discretion of the trial courts, and a denial of a motion to compel discovery will not be disturbed absent abuse of discretion.'" *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir.1995), *cert. denied*, 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 781 (1996) (*quoting Martinez v. Schock Transfer and Warehouse Co.*, 789 F.2d 848, 850 (10th Cir.1986)).  In exercising its discretion to decide the present discovery questions, the Court should look to the larger context of the dispute between the parties.  Fed. R. Civ. P. 26(b)(2)(C)(iii) (stating that the Court "must limit" discovery where the burden or expense of proposed discovery outweighs its "likely benefit," taking into consideration various factors, such as "the needs of the case").  Because the discovery that Plaintiffs seek will not serve the needs of this case, the Court should deny the Motion.

**1.    Plaintiffs' breach of fiduciary duty claims are barred by the business judgment rule and derivative or stockholder claim pleading standards; the discovery sought by Plaintiffs provides no "likely benefit" to remedy these failures.**

The heart of Plaintiffs' Complaint consists of breach of fiduciary duty claims against the Individual Defendants.  However, these claims are plainly barred by Colorado business judgment rule, as codified by statute and as interpreted in case law.  Because the business judgment rule dictates that there is no breach of fiduciary duty claim against the Individual Defendants, there can similarly be no claim for aiding and abetting a breach of fiduciary duty against New Frontier.

In discharging their duties, a corporate director or officer is "entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data," if that material is prepared or presented by the following categories of people:

(a) One or more officers or employees of the corporation whom the director or officer reasonably believes to be reliable and competent in the matters presented;

(b) Legal counsel, a public accountant, or another person as to matters the director or officer reasonably believes are within such person's professional or expert competence; or

(c) In the case of a director, a committee of the board of directors of which the director is not a member if the director reasonably believes the committee merits confidence.

C.R.S. § 7-108-401(2).

In the very limited circumstance where a corporate director or officer "has knowledge concerning the matter in question that makes reliance otherwise permitted [as described above] unwarranted[,]" a corporate director or officer loses their entitlement to rely on this information. C.R.S. § 7-108-401(3). Other scenarios where corporate directors may not be protected by the business judgment rule include breaches of loyalty, acts or omissions not in good faith involving intentional misconduct or a knowing violation of law, unlawful distributions, or any self-interested transaction. C.R.S. § 7-108-402.

Absent these limited circumstances, however, the corporate director or officer "**is not liable as such to the corporation or its shareholders for any action** the director or officer takes or omits to take as a director or officer, as the case may be, if, in connection with such action or omission, the director or officer performed the duties of the position in compliance with this section." C.R.S. § 7-108-401(4) (emphasis added).

Case law interpreting Colorado's business judgment rule gives the rule full effect: "Under the business judgment rule, a director's exercise of judgment will not subject that director to liability when exercised in good faith." *Kim v. Grover C. Coors Trust*, 179 P.3d 86, 95 (Colo. App. 2007) (*citing Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 405 (Colo. App. 2000); *Rifkin v. Steele Platt*, 824 P.2d 32 (Colo. App. 1991)), cert. denied 2007 WL 2822599. The business judgment rule provides a "presumption that in making a business decision the directors of a

8

corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Swanson v. Weil*, 2012 WL 4442795 at *4 (D. Colo. Sept. 26, 2012) (citation and quotation marks omitted).[4] "The burden is on the party challenging the decision [of the Board] to establish facts rebutting the presumption." *Id.* (citation and quotation marks omitted, brackets in original).

Here, Plaintiffs have not made any allegations which, even if proved to be true, would strip the Individual Defendants of the protection of the business judgment rule. The directors engaged Avondale, a competent group of professionals, to provide a fairness opinion.[5] Plaintiffs have not made any allegations that, even if proved to be true, the directors did not reasonably believe Avondale to be reliable and competent. The directors engaged Alston & Bird, accomplished securities counsel, to assist with New Frontier's public filings. Plaintiffs do not allege that the directors did not reasonably believe its counsel was reliable and competent.

There is no factual support for the proposition that Individual Defendants should lose the protection of the business judgment rule. Plaintiffs do not even allege sufficient facts to take the Individual Defendants out of the protection of the business judgment rule. Plaintiffs' discovery requests should be limited to the contours of their allegations. As the business judgment rule will determine that the Individual Defendants committed no breach of fiduciary duty, by necessity there can be no finding that New Frontier aided and abetted any breach of fiduciary duty. As the discovery to which Plaintiffs are truly entitled is dictated by Plaintiffs' allegations,

---

[4] In *Swanson*, then-Chief Judge Daniel dismissed a securities case brought by the same lawyers representing Plaintiffs in this case.

[5] Fairness opinions "are used to help directors or similarly situated business decision-makers discharge their fiduciary duties." *City P'ship Co. v. Lehman Bros., Inc.*, 344 F. Supp. 2d 1241, 1247 (D. Colo. 2004) (citations omitted).

no amount of additional discovery based on those allegations can change the conclusion that the Individual Defendants are protected by the business judgment rule.  If the Plaintiffs truly want to explore issues pertaining to the reasonableness of the Individual Defendants' reliance on Avondale and Alston & Bird, they can do so during depositions, which provide a "less burdensome" and "less expensive" method of discovery than the production of voluminous privileged documents.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).  Counsel estimates that there are approximately 5,000 privileged documents involving Avondale, Alston & Bird, Perkins Coie, or Holland & Hart—who were advisers to the Special Committee or the Company's board of directors.

In any event, a breach of fiduciary duty claim under Colorado law such as those alleged here are derivative claims owned by the company itself.[6]  Under Colorado Rule of Civil Procedure 23.1, a derivative claim must contain (i) a verification, (ii) particular allegations as to the plaintiff's efforts, if any, to convince the organization's appropriate authorities to pursue the claims on the organization's behalf, and (iii) particular allegations as to why the organization did not heed the member's request to pursue the claims on its own behalf, or why it would have been futile for the member to have made the request at all.  Compliance with these pleading

---

[6]*Colt v. Mt. Princeton Trout Club, Inc*., 78 P.3d 1115, 1120 (Colo. App. 2003) (right to expect that offers to purchase will be pursued and negotiated in good faith is properly pursued as a derivative action); *River Mgmt. Corp. v. Lodge Prop's Inc.*, 829 P.2d 398, 403-404 (Colo. App. 1991) (where minority shareholder sued in its individual capacity for alleged corporate waste and mismanagement, court concluded claim was derivative in nature and had to be pursued on that basis); *O'Malley v. Casey*, 589 P.2d 1388 (1979)(filing of derivative action is proper for claims regarding excessive salaries); *Ireland v. Wynkoop*, 539 P.2d 1349, 1257 (Colo. App. 1975) (unit owners' claims involving developer's alleged breach of fiduciary duty to the association, including claims of mismanagement, self-dealing, and secret profits were deemed derivative); *Buechner v. Rouse*, 538 P.2d 117, 120 (Colo. App. 1975) (allegations of complaint showed that the loss, if any, was to all shareholders alike and the right to sue belonged to the corporation).

requirements is mandatory and must be shown on the face of the Complaint.[7]

The Amended Complaint is not verified.  It does not contain allegations concerning Plaintiffs' efforts to convince New Frontier to pursue their claims.  It does not contain futility allegations.  Plaintiffs have therefore failed to properly allege a derivative claim.  Additional discovery would do nothing to change this fact, and therefore provides no "likely benefit" to be weighed against the burden of additional discovery in the Fed. R. Civ. P. 26(b)(2)(C)(iii) analysis.

Plaintiffs cannot bring an individual claim, either, as stockholders may only bring claims due to stockholder status if the injury is "unique to [themselves] and not suffered by the other stockholders."[8]  Plaintiffs have no such unique injury.  Plaintiffs cannot maintain their breach of fiduciary duty claims, nor can they maintain their aiding and abetting breach of fiduciary duty claim.[9]   No amount of additional discovery could change this conclusion.  The discovery that Defendants seek therefore provides no "likely benefit" to be weighed against the burden of additional discovery in the Fed. R. Civ. P. 26(b)(2)(C)(iii) analysis.

---

[7]*Caley Inv's I v. Lowe Family Assoc.*, 754 P.2d 793, 796 (Colo. App. 1988).  Additionally, Rule 23.1 provides that "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association."  C.R.C.P. 23.1; 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1833 (3d ed.).  As discussed below, Plaintiffs at most can only represent a class of other non-tendering shareholders.

[8]*Nicholson v. Ash*, 800 P.2d 1352, 1357 (Colo. App. 1990) (*citing Security Nat'l Bank v. Peters, Writer & Christensen, Inc.*, 569 P.2d 875, 881 (Colo. App. 1977)); *see also Combs v. PriceWaterhouse Coopers LLP*, 382 F.3d 1196, 1202 (10th Cir. 2004) (Plaintiff did not suffer a unique injury as a shareholder based upon his hybrid status as a stockholder/employee); *Bithell v. W. Care Corp.*, 762 P.2d 708, 714 (Colo. App. 1988) (Plaintiff did not suffer a unique injury as a shareholder based upon his hybrid status as a stockholder/independent contractor).

[9]*Stender v. Gerardi*, 2008 WL 4452117, *14 (D. Colo. Sept. 30, 2008) (lack of standing to assert breach of fiduciary duty claims against individual defendants compels conclusion that no standing exists for aiding and abetting claims).

**2.**      **Plaintiffs lack standing to assert their single federal claim because they did not tender their shares in reliance of any supposedly misleading public statement; the discovery sought by Plaintiffs provides no "likely benefit" to remedy these failures.**

Count I—the only federal claim in the Amended Complaint—alleges that the Recommendation Statement violated sections 14(d)(4) and 14(e) of the Exchange Act because it omitted material facts and was materially misleading.  However, Plaintiffs have no standing to bring Count I because they did not tender their shares.  A claim under § 14(e) only exists for shareholders who tendered their shares in reliance on alleged misstatements or omissions in tender offer materials.  *Spivak v. Petro-Lewis Corp.*, 120 F.R.D. 693, 695 (D. Colo. 1987).  A claim under § 14(d)(4) is in all relevant respects identical to a claim under § 14(e).  *See* 15 U.S.C. § 78n(d)(4).

Plaintiffs admit that they did not tender their shares.  *See* March 3, 2014 Statement of Undisputed Facts [Doc. No. 41-1] at ¶ 70, attached as **Exhibit A**, hereto ("Plaintiffs William Douglas Moreland and Craig Telke did not tender to LFP Broadcasting in the tender offer any of the shares held or beneficially owned by them.").  Plaintiffs have no standing to assert Count I.[10] **No amount of additional discovery will change this fact.**  Any argument from Plaintiffs that they did not tender because they *knew* the public disclosures were somehow false has no merit. *See Spivak*, 120 F.R.D. at 697 (where the injury plaintiffs seek to redress under section 14(e) is based on material in tender recommendation that plaintiff knew to be false, the injury is "not the

---

[10]Plaintiffs may defend this lack of standing argument on the basis of the "forced seller" doctrine, alleging that the supposedly misleading Recommendation Statement caused a stampede of other shareholders toward the merger, resulting in the success of the top-up option and the short form merger.  However, the Tenth Circuit has declined to adopt the "forced seller" doctrine. *See Anderson v. Dixon*, 86 F.3d 1166, 1996 WL 276183 at *2 (10th Cir. 1996) (unpublished) ("The Tenth Circuit has not yet adopted the 'forced sale' doctrine, and we do not have to decide whether to do so in this case."); *Katz v. Gerardi*, 655 F.3d 1212, 1222 (10th Cir. 2011) (*citing Anderson*).

type at which the [1934 Exchange Act] was aimed.  The Act was designed to prevent the injury

suffered by a shareholder fraudulently induced to make an unwise response (tendering or not) to

a tender offer.") (citations omitted); *Rice v. Hamilton Oil Corp.*, 658 F. Supp. 446, 448 (D. Colo.

1987) ("Plaintiffs cannot reasonably claim that they were deceived by alleged omissions when

they had knowledge of the information claimed to be omitted.").

Upon the dismissal of Count I, there will be no federal claims pending and the court

should dismiss the remaining state law claims.  The discovery that Plaintiffs seek will not change

this conclusion.  As such, there is no "likely benefit" in the discovery that Plaintiffs seek to be

weighed against the burden of additional discovery in the Fed. R. Civ. P. 26(b)(2)(C)(iii)

analysis.

3. **Even if they have standing, Plaintiffs cannot prevail on Count I because the issues about which Plaintiffs complain were all publicly disclosed; the discovery sought by Plaintiffs provides no "likely benefit" to remedy these failures.**

Messrs. Weiner and Nicholas' misunderstanding of (or interest in subverting) the

independent function of the Special Committee led to conflict between Messrs. Weiner and

Nicholas on one hand, and the majority of the Board on the other hand.  In any event, the conflict

itself was no secret, and was in fact fully disclosed in New Frontier's public filings.  Indeed, the

Amended Complaint in this case is chock-full of bulk quotations from New Frontier's public

disclosures.[11]  The issues with Weiner and Nicholas, and the basis for Avondale's fairness

---

[11] *See*, *e.g.*, Compl. at ¶ 56 (Nicholas' 9/28/12 letter and Company's 10/4/12 Response were in Company's 10/4/12 8-K attached hereto as **Exhibit B**), ¶ 57 (Nicholas' 10/8/12 letter and Company's 10/10/12 response in Company's 10/10/12 8-K/A attached hereto as **Exhibit C**); ¶ 58 (Weiner's 10/10/12 letter and Company's 10/16/12 response in Company's 10/16/12 8-K, attached hereto as **Exhibit D**); ¶¶ 63-68 (basis of Avondale's fairness opinion disclosed in Recommendation Statement, attached hereto as **Exhibit E**).

opinion, were public information.[12]  Shareholders were free to take this information into account when deciding whether to tender, but there is nothing misleading about the information disclosed.  The discovery that Plaintiffs seek does not change the fact that New Frontier's public filings disclosed precisely the subjects of which Plaintiffs complain in the Amended Complaint.

In sum, even if Plaintiffs obtain the discovery sought by the Motion, that discovery will not cure the numerous fatal flaws in Plaintiffs' claims.  As such, there is no "likely benefit" in the discovery that Plaintiffs seek to be weighed against the burden of additional discovery in the Fed. R. Civ. P. 26(b)(2)(C)(iii) analysis and the Motion should be denied.

**B.     Defendants have provided ample discovery responses to date, and additional discovery would be overly burdensome.**

As described above, Defendants have provided voluminous discovery since the Motion was filed.  The sheer volume of Defendants' production and written discovery responses to date is a factor in determining whether the additional discovery is overly burdensome.  *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1098 (6th Cir. 1994) (finding no abuse of discretion where district court determined that requested discovery was overly burdensome where party resisting discovery had already answered numerous interrogatories and produced "thousands of pages of documents").  The Court would be well within its discretion to deny the Motion based on the Defendants' ample discovery responses to date.

**1.     Information and documents from time periods before 2012 will not provide any likely benefit for Plaintiffs.**

Plaintiffs seek information and documents in several of their requests for the unbounded time period predating 2012, purportedly to inform "the Individual Defendants' motive to want to sell the Company to Larry Flynt for an inadequate price…."  Motion at 13.  Plaintiffs put no

---

[12]Note that a fairness opinion "is not completely synonymous with a fair market valuation, as it reflects whether the transaction as negotiated fell within a range of financial fairness given the exigencies of the situation."  *City P'ship*, 344 F.Supp. 2d at 1251.

temporal restriction whatsoever on the information they seek, which in itself demonstrates their request is burdensome.  Moreover, there are no indicia that the Individual Defendants had such a motive; Larry Flynt's company was the highest bidder for New Frontier, and raised its bid three times.  Plaintiffs' imagined "motive" is fanciful.  Mr. Isaacman, who represented Mr. Flynt in the past, answered Plaintiffs' discovery requests by indicating that his representation ended more than 11 years before the negotiations with the Flynt organization began.  *See* Exh. 4 to Motion at 13, 23.  Moreover, Mr. Isaacman has not even spoken to Mr. Flynt since 2001.  *See* Affidavit of Alan Isaacman, attached hereto as **Exhibit F**, at ¶ 5.  All communications between any of the Individual Defendants and any prospective bidder were provided in response to Plaintiffs' document requests.  Had there been any communications between the Individual Defendants and Mr. Flynt or anyone in his organization, they would have been produced.  There were none.  To provide discovery of decades-old attorney-client files relating to Mr. Isaacman's representation of Mr. Flynt serves no useful purpose and is indisputably burdensome.  There is simply no "likely benefit" that the discovery that Plaintiffs seek to be weighed against the burden of additional discovery in the Fed. R. Civ. P. 26(b)(2)(C)(iii) analysis.

Moreover, the authorities cited in the Motion for the proposition that information and documents that pre-date 2012 are distinguishable from this dispute.  New Frontier was a publicly-traded company, so its many years of publicly-available financial statements are already readily available to Plaintiffs.  As such, the Motion's citation to authorities which held that five years of pre-merger earnings statements should be discoverable[13] does not inform this case.  Likewise,

---

[13] Motion at 14 (*citing Van De Walle v. Unimation, Inc.*, 10 Del. J. Corp. L. 345, 349 (1984); *In re Olivetti Underwood Corp.*, 246 A.2d 800, 804 (Del. Ch. 1968); *Kaye v. Pantone, Inc.*, 1981 WL 15072 (Del. Ch. Oct. 6, 1981)).  Note that *Kaye* was concerned with the "overbroad demands…for discovery" and rejected several of the discovery requests on that basis.  1981 WL 15072 at *4.

several of the authorities in the Motion pertain to appraisal actions;[14] the exercise of appraisal rights by shareholders in those cases does not inform this case, where Plaintiffs waived their "exclusive" appraisal remedy.  Similarly, Plaintiffs' citation to a case where a merger was in fact enjoined[15] does not inform this case, where the Court summarily denied Plaintiff Telke's request to enjoin the Merger due to his failure to present any evidence.  The Motion's various Delaware-based authorities do not change the conclusion that there is no "likely benefit" that the discovery that Plaintiffs seek to be weighed against the burden of additional discovery in the Fed. R. Civ. P. 26(b)(2)(C)(iii) analysis.

> **2.      Information and documents from time periods after the Merger closed will not provide any likely benefit for Plaintiffs.**

Plaintiffs also seek information and documents from time periods after November 28, 2012, when the Merger closed.  In support, the Motion cites *In re Best Lock Corp. S'holder Litig.*, 2000 WL 1876460 (Del. Ch. Dec. 18, 2000), for the proposition that Plaintiffs are entitled to post-Merger discovery.  However, *In re Best Lock* was concerned with an appraisal action, which implicates the same appraisal remedy that Plaintiffs here have waived.  Moreover, *In re Best Lock* vindicated the defendants' argument that many of the discovery requests were "too broad and would impose an undue burden on the defendants."  2000 WL 1876460 at *5.  This highlights the case-specific inquiry[16] here: the Court here must make a determination whether the discovery sought will provide any likely benefit for Plaintiffs.

---

[14] Motion at 13-14 (*citing In re Lane v. Cancer Treatment Centers of Am., Inc.*, 1994 WL 263558 at *1 (Del. Ch. May 25, 1994); *Kaye*, *supra*; *In re Olivetti Underwood Corp., supra*).

[15] Motion at 13 (*citing In re Art Technology Group, Inc. Shareholders Litigation*, 2010 WL 5184244

[16] Plaintiffs also cite *In re John Q. Hammons Hotels Inc. S'holder Litig.*, 2009 WL 891805 (Del. Ch. Mar. 25, 2009) for the proposition that post-Merger discovery should be permitted here. However, discovery was permitted in that case because the financial advisor that reviewed the

As outlined above, there is no such likely benefit to Plaintiffs in this case, especially where—as here—New Frontier fell under different management after the Merger. Any documents and information generated by management is several steps removed from the documents and information available to Defendants when they had to decide whether to recommend the acceptance of a thrice-raised highest bid for the Company.

Post-closing financial information will not aid Plaintiffs in their damage calculations, which are based upon the value of their shares without the proposed transaction with the Flynt organization. *See* Doc. No. 41 at 6-7 (Amended Stipulated Scheduling and Discovery Order, Plaintiffs' Computation of Damages). How the Company fared under the Flynt organization's management is no indication of the value of the Plaintiffs' shares prior to the merger with Flynt. Therefore any post-closing financial information is irrelevant and should not be ordered produced.

## C.  Defendants' communications with their attorneys should be protected by the attorney-client privilege.

Plaintiffs seek the production of privileged attorney-client communications. A special committee's privilege with its attorneys is a separately-recognized privilege that should be honored. Moreover, the "fiduciary exception" does not apply to pierce that privilege in this case, because Plaintiffs have not brought a derivative suit and the Individual Defendants owed fiduciary duties to the shareholders as a group—not to Plaintiffs individually. Finally, Defendants have not waived their attorney-client privilege by raising the advice of counsel defense in their Answer, as it remains to be seen whether that defense will proceed to trial once

---

merger for the special committee deeply discounted the value of the merging company compared to its peers based on its prediction that the company would underperform peer companies in the post-merger period. *Id.* at *1. There is no such similar post-merger prediction in the fairness opinion rendered here.

the basis for Plaintiffs nebulous and contradictory claims is finally crystallized.

    1.    **A corporation's Special Committee has a well-recognized independent attorney-client privilege with its counsel.**

It is well-established that a special committee of a corporation's board of directors can maintain its own attorney-client privilege with its own counsel. For instance, in a case where a corporation itself brought a breach of fiduciary duty claim against members of its own former special committee, there was "no unfairness" in permitting the protection of "the Special Committee counsel's opinion work product from disclosure." *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 519 (N.D. Ill. 2005). Likewise, a bankrupt corporation's bankruptcy plan trustee could not obtain a special committee's privileged communications with its own separate counsel in *In re BCE W., L.P.*, 2000 WL 1239117 (S.D.N.Y. Aug. 31, 2000). Similarly, the Securities and Exchange Commission could not obtain a special committee's communications with its separate attorney in *S.E.C. v. Roberts*, 254 F.R.D. 371, 383 (N.D. Cal. 2008).

In this case, Defendants are not asserting a blanket objection on the basis of any communication involving attorneys. Rather, the Individual Defendants on the Special Committee assert an attorney-client privilege objection based on their separate communication with counsel for the Special Committee. These Individual Defendants were very much the clients in their attorney-client relationship, contrary to the Motion's categorization of them as "non-client Individual Defendants." Motion at 23. Their privilege with their counsel is well-recognized and should be honored.[17] In addition, the Company is asserting its attorney-client privilege with its corporate counsel, Holland & Hart, and another special committee that

---

[17] Although the privilege in this case attached to the Special Committee or its membership, it has been stated, with reference to Colorado authority, that "[w]ithout exception, the state courts have upheld corporate resistance to shareholder's demands to inspect privileged documents." *In re LTV Sec. Litig.*, 89 F.R.D. 595, 610 (N.D. Tex. 1981) (*citing Weck v. District Court of the Second Judicial District,* 158 Colo. 521, 408 P.2d 987 (1966)).

investigated suspected executive wrongdoing is asserting its attorney-client privilege with its counsel, Perkins Coie.  All of these privileges are well-recognized and should be likewise honored.

>    **2.    There is no fiduciary exception to the attorney-client privilege in this case because Plaintiffs do not bring derivative claims on behalf of the Company.**

As this Court recognized in *Stat-Tech Liquidating Trust v. Fenster*, stockholders generally cannot maintain a personal action against corporate directors whose actions allegedly harmed the corporation because that action belongs to the corporation.  981 F. Supp. 1325, 1332 (D. Colo. 1997) (citations omitted).  "[T]o have standing to pursue a personal action against a director, a shareholder-plaintiff must prove losses different from the loss sustained by the corporation and shareholders generally." *Id.* (citations omitted).  While a corporate director owes fiduciary duties to a corporation and its shareholders generally, there is no such direct duty to individual shareholders absent a particularized harm to that individual defendant.  There is no such allegation of individualized harm in this case.  Plaintiffs' discovery responses indicate that they do not in fact claim any such individualized harm.  *See* Plaintiff Telke's Discovery Responses, attached hereto as **Exhibit G**, at 21-22; Plaintiff Moreland's Discovery Responses, attached hereto as **Exhibit H**, at 22-23.  As such, the fiduciary exception from *Garner v. Wolfinbarger*, 430 F.2 1093 (5th Cir. 1970), does not apply.

Plaintiffs cite *Neusteter v. Dist. Court In & For City & Cnty. of Denver*, 675 P.2d 1 (Colo. 1984), for the proposition that Colorado has adopted *Garner*'s reasoning.  However, *Neusteter* presents an inapposite analogy to this case, because it concerned a derivative action. *See Neusteter*, 675 P.2d at 3 (describing action as brought in part "derivatively on behalf of the realty company"); *id.* at 5 (analyzing "the applicability of privileges in actions brought by shareholders <u>on behalf of</u> or against their corporations.") (emphasis added); *id.* at 8

(distinguishing between cases where shareholders bring individual claims and where "plaintiffs have claims on behalf of the corporation," where only the latter situation requires disclosure of privileged information).

### 3. There is no waiver of the attorney-client privilege at this stage of the case, and if a waiver is eventually found it is not a blanket waiver.

At this point of the litigation, the basis for Plaintiffs' damages claim remains unclear. *Ryskamp ex rel. Boulder Growth & Income Fund v. Looney*, 2011 WL 3861437 at *11 (D. Colo. Sept. 1, 2011). By virtue of Plaintiffs' delaying their computation of damages until October 10, 2014 (*see* Doc. No. 41 at 9) and their repeated objections to the so-called "contention interrogatory" nature of Defendants' inquiries,[18] Defendants remain in the dark concerning the nature of, and basis for, much of Plaintiffs' claimed damages. As such, Defendants cannot yet assess whether they will depend on the advice of counsel defense at trial. The stage to which litigation has progressed is an important factor in determining whether the at-issue waiver of privilege doctrine applies, especially in the context of litigation between a corporation and a shareholder. *Ryskamp*, 2011 WL 3861437 at *11. With their Answer, Defendants preserved their rights to assert the reliance on counsel defense until Plaintiffs' damages claim became clear. Plaintiffs' persistent refusal to elucidate the basis for their claims, such that Defendants still do not know whether their reliance on counsel defense will apply, does not warrant a determination that Defendants have waived their privilege.

In any event, the at-issue waiver—if such a waiver is ultimately found—does not compel the conclusion that Defendants waive all attorney-client privilege. Instead, the inquiry is more targeted:

---

[18] *See* Plaintiffs' Responses to Defendants' Interrogatory Nos. 2-5, 12, 18, 19, and 21-25 all of which asserted objections based on the supposed "premature" contention-interrogatory nature of the discovery request. Exh. G; Exh. H.

> [I]n *People v. Trujillo,* 144 P.3d 539, 543 (Colo. 2006), the Colorado Supreme Court explained that the at-issue waiver applies "if a client asserts a claim or defense that depends upon privileged information.... " At-issue waiver does not occur merely because a client has received legal advice about a matter. Such a rule would swallow the attorney-client privilege. Instead, at-issue waiver applies only where the claim or defense "depends" on the privileged information. In other words, a party cannot assert a defense that depends on privileged information and simultaneously use the privilege to keep that information from the opposing party. *Id.*

*Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.*, 2014 WL 943115 at *6 (D. Colo. Mar. 10, 2014).  Indeed, the party seeking to pierce the privilege must show that the privileged information relates to that party's "damage theories" and that the defense "*depends on*" the relevant communication.  *Rosania v. Grp. O, Inc.*, 2014 WL 1224234 at *5 (D. Colo. Mar. 25, 2014) (emphasis in original).  As Plaintiffs' damage theories remain unclear, the analysis of whether Plaintiffs are entitled to any privileged information—much less privileged information that a defense "depends on"—cannot be undertaken at this time.

**D.    Defendants' communications with its accountants and auditors are protected under Colorado law.**

For the same reasons that Plaintiffs are not entitled to attorney-client communications with counsel under *Garner—i.e.* because this suit is not brought derivatively—Plaintiffs are not entitled to communications with accountants and auditors, which are protected under Colorado law.  Plaintiffs' citation of *Pattie Lea, Inc. v. Dist. Court of Denver*, 161 Colo. 493, 498 (1967) (*see* Motion at 27 n. 15) highlights this conclusion, as *Pattie Lea* was a derivative suit.  Even if the accountant-client privilege does not apply to federal claims, the Motion proffers no reason why their single federal claim in this case—which they have no standing to assert—should be the tail that wags the dog.  Moreover, where a case implicates both federal claims and pendent state law claims, "permitting evidence inadmissible for one purpose to be admitted for another purpose defeats the purpose of a privilege. The moment privileged information is divulged the

point of having the privilege is lost." 3 *Weinstein's Federal Evidence,* § 501.02[3][b] (Matthew Bender 2d ed.).

In any event, the Special Committee has its own attorney-client privilege with respect to its counsel, and communications among and between accountants, auditors, and its counsel do not effect a waiver of applicable privileges. *S.E.C. v. Roberts*, *supra*, 254 F.R.D. at 382 ("In sum, any disclosures made to the auditors does not amount to a waiver as their assistance is necessary for [the Special Committee's counsel's work].").

**E.  Production of the transcripts of the arbitration proceeding should not be compelled in wholesale fashion.**

The Motion correctly observes that an arbitration proceeding took place concerning Mr. Weiner's termination.  Motion at 28.  The Motion also appears to admit that the confidentiality of those proceedings has already been compromised.  Motion at 28 n. 16.  This is no surprise, as Mr. Weiner and Plaintiff Moreland—who are longtime business associates—have cooperated in the prosecution of this action. *See* Exh. G at 13; Exh. H at 13.  Regardless, the arbitration proceeding concerned separate issues from those to be determined here.  Plaintiffs' theory of relevancy of the arbitration transcripts is tenuous at best.  The Company was sold in an auction where the highest bidder raised its bid three times.  Mr. Weiner's continued employment was not an obstacle to Larry Flynt purchasing the Company; the only obstacle to any bidders' purchase of the Company was their unwillingness to raise their bids to become the highest bidder.

In any event, counsel for Defendants has offered to provide selections from the arbitration proceeding transcripts to Plaintiffs if they articulate the topics of testimony they seek. To date, Plaintiffs have not done so.  Should the Court determine that the arbitration transcripts be produced, Plaintiffs should be required to articulate relevant topics, rather than being permitted to go on a fishing expedition through a breach of contract arbitration to round out the

speculative allegation that they "believe that in order to proceed with a Merger that undervalued the Company, the Individual Defendants had to remove those who would try to stop the transaction."  Motion at 29.

**F.      The burden of the sought discovery on Defendants is substantial.**

The production of documents that Plaintiffs seek through the Motion would impose a substantial burden on Defendants.  Although Defendants have already taken a wide view of discovery in their production of over 27,000 pages of documents in this case, Plaintiffs nevertheless seek to compel Defendants to search their records for documents that do not relate to the relevant time periods at issue in this case.  This process would require countless additional hours and many thousands of dollars of expense.  This is especially true for Mr. Isaacman's long-terminated attorney-client relationship with Mr. Flynt.  *See* Exh. F at ¶ 4.  Especially in light of the lack of a "likely benefit" to Plaintiffs of such discovery in the Fed. R. Civ. P. 26(b)(2)(C)(iii) analysis, as outlined above, Defendants should not have to bear the substantial additional burden of producing the documents requested by the Motion.

## IV.      CONCLUSION

Under Fed. R. Civ. P. 26(b)(2)(C)(iii), the Court "must limit" discovery where the burden or expense of proposed discovery outweighs its "likely benefit," taking into account "the needs of the case[.]"  The needs of this case show that what is required for Plaintiffs to bring viable claims is not more burdensome discovery, but rather a wholesale change in the law that currently bars their claims.  For the foregoing reasons, the Motion should be denied.

Dated: August 1, 2014.

s/   *Stuart N. Bennett*

Stuart N. Bennett
Aaron D. Goldhamer
**JONES AND KELLER, P.C.**
1999 Broadway, Suite 3150
Denver, CO 80202
(303) 573-1600
(303) 573-8133
sbennett@joneskeller.com
agoldhamer@joneskeller.com

*Attorneys for Defendants New Frontier Media, Inc.,*
*Alan Isaacman, Melissa Hubbard, Hiram J. Woo*
*and Walter Timoshenko*

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2014, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following e-mail addresses:

| | | |
|---|---|---|
| *Attorneys for Plaintiffs* | jeff@dyerberens.com<br>darby@dyerberens.com<br>bob@dyerberens.com | DYER & BERENS LLP<br>Robert J. Dyer III<br>Jeffrey A. Berens<br>Darby K. Kennedy<br>303 East 17th Avenue, Suite 810<br>Denver, CO 80203 |
| | scrane@cranedunham.com<br>jleehan@cranedunham.com | CRANE DUNHAM PLLC<br>Stephen J. Crane<br>Jason T. Leehan<br>2121 Fifth Avenue<br>Seattle, WA 98121 |
| | shopkins@zlk.com<br>sbartone@zlk.com | LEVI & KORSINSKY, LLP<br>Shannon L. Hopkins<br>Stephanie A. Bartone<br>30 Broad Street, 24th Floor<br>New York, NY 10004 |

*s/ Tammy Harris*
Tammy Harris