# Exhibit A

# Response to Plaintiffs' Motion to Compel

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

**The following facts are undisputed:**

1. New Frontier Media, Inc. ("NOOF" or the "Company") was a leader in transactional television as well as general motion picture entertainment.

2. NOOF delivered transactional adult-themed pay-per-view networks to cable and satellite operators across the United States.

3. NOOF provided content to video-on-demand (VOD) platforms on cable and satellite.

4. NOOF was co-founded by Michael Weiner ("Weiner").

5. In 2003, Weiner was appointed President of NOOF.

6. Weiner served as Chief Executive Officer and Chairman of the NOOF board of directors ("Board") from 2004 until his termination on September 15, 2012. Weiner remained a member of the Board until he resigned on October 10, 2012.

7. On October 15, 2012, NOOF announced in a press release that it had signed a definitive agreement to be acquired by LFP Broadcasting LLC, an affiliate of L.F.P., Inc. ("LFP Broadcasting") pursuant to which LFP Broadcasting would commence a tender offer to acquire all of the outstanding shares of New Frontier for $2.02 per common share in cash up front, or approximately $33 million, plus a contingent cash payment right per share to receive up to an additional $0.06 per common share, tied to the extent to which New Frontier's available cash balance

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

at the closing of the tender offer, less unpaid transaction expenses exceeded $11,514,000 (the "Tender Offer").

8. Under the terms of the agreement as announced in NOOF's October 15, 2012, press release, an affiliate of LFP Broadcasting would commence a cash tender offer for all the issued and outstanding shares of NOOF, which if successful, would be followed by a second-step merger in which any shares of NOOF not tendered would be converted into the right to receive the same per share consideration paid to NOOF shareholders in the tender offer, subject to shareholders' dissenters rights under Colorado law (the "Merger").

9. In 2012, the NOOF Board consisted of six members – Weiner, David Nicholas ("Nicholas"), Alan Isaacman ("Isaacman"), Melissa Hubbard ("Hubbard"), Walter Timoshenko ("Timoshenko") and Hiram Woo ("Woo"), until Nicholas' resignation on September 29, 2012 and Weiner's resignation on October 10, 2012.

10. At the time that the Tender Offer was announced on October 15, 2012, the Board consisted of four members – Messrs. Isaacman, Timoshenko and Woo and Ms. Hubbard.

11. The Tender Offer expired on November 27, 2012.

12. LFP Broadcasting gave notice of its intent to exercise its Top-Up Option on November 28, 2012.

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

13. The NOOF Board received compensation for their service as directors, for services on committees of the Board and as chairs of board committees.

14. Isaacman has served as a senior member of the law firm of Isaacman, Kaufman & Painter ("IK&P") from 1993 to the present.

15. IK&P has received compensation for services provided to NOOF.

16. IK&P received approximately $39,000 for legal services rendered during the fiscal year ended March 31, 2012.

17. According to its Schedule 13(D) filed with the Securities and Exchange Commission ("SEC") on January 17, 2012, Longkloof Limited ("Longkloof") was the beneficial holder of 15.7% of NOOF's outstanding shares.

18. Larry Flynt founded and controls L.F.P., Inc.

19. On October 29, 2012, NOOF filed a Solicitation/Recommendation Statement on Schedule 14d-9 with the U.S. Securities and Exchange Commission (the "Recommendation Statement").

20. New Frontier was a corporation organized and existing under the laws of the State of Colorado.

21. Prior to the Merger, the Company maintained its principal executive offices at 6000 Spine Road, Suite 100, Boulder, CO 80301.

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

22. Mr. Isaacman was Chairman of the NOOF Board from September 2012 and a director of the Company from 1999 until the Merger closed on November 28, 2012.

23. Mr. Isaacman was also the Chairman of the Special Committee from February 7, 2012 through November 28, 2012.

24. Ms. Hubbard was a director of the Company from 2002 until the Merger closed on November 28, 2012.

25. Ms. Hubbard was also a member of the Special Committee from February 7, 2012 through November 28, 2012.

26. Defendant Hiram J. Woo was a director of the Company from 2000 until November 28, 2012.

27. Defendant Walter Timoshenko was a director of the Company from 2007 until November 28, 2012.

28. Mr. Timoshenko was also a member of the Special Committee from February 7, 2012 through November 28, 2012.

29. LFP Broadcasting has offices at 8484 Wilshire Boulevard, Suite 900, Beverly Hills, CA 90211.

30. LFP Broadcasting or its affiliated companies markets the HUSTLER brand through media properties and licensing agreements, including HUSTLER TV.

4

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

31. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Section 14(d) and 14(e) of the Exchange Act.

32. Venue is proper in this district.

33. The Individual Defendants were subject to certain legal obligations imposed by applicable law as directors of New Frontier.

34. Founded in 1997 and headquartered in Boulder, Colorado, New Frontier is a leader in transactional television and adult-themed adult entertainment in North America, Europe and Latin America.

35. The majority of New Frontier's revenue is derived from three operating segments: Transactional TV, Film Production, and Direct-to-Consumer.

36. The Transactional TV segment distributes branded adult entertainment PPV networks and VOD content through electronic distribution platforms including cable television and DBS operators.

37. The Film Production segment produces and distributes mainstream and adult-themed films that are distributed through U.S. and international premium channels, PPV channels and VOD platforms.

38. The Direct-to-Consumer segment aggregates and resells adult-themed content via the internet, selling content to subscribers through the Company's consumer websites.

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

39. NOOF was governed by rules governing publicly traded companies.

40. For fiscal year 2012, each Board member who was not a Company employee received an annual fee of $80,000 payable in equal quarterly installments for performance of general board of director services, including attendance at regular and special board meetings and an additional annual fee of $7,500 for each then constituted board committee on which they served.

41. For fiscal year 2012, the chairman of each then constituted board committee received an additional annual fee of $2,500.

42. During calendar year 2012, NOOF's committees of its board were a Compensation Committee, an Audit Committee, a Nominations Committee, a Special Committee, an Executive Committee and a Compliance Committee.

43. Mr. Isaacman was appointed Chairman of the Special Committee.

44. For serving on the Special Committee, each Board member received a monthly fee of $5,000.

45. As the chairman of the Special Committee, Mr. Isaacman, was paid an additional $5,000 per month.

46. In July 2012, a Compliance Committee was formed by the Board consisting of Ms. Hubbard and Mr. Woo.

47. Mr. Damien Park ("Park"), of Hedge Fund Solutions, LLC, provided services to NOOF.

6

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

48. On March 9, 2012, Longkloof issued a press release publicly announcing its proposal which also indicated that Longkloof was considering a proxy contest at the Company's next annual meeting of shareholders to replace all of the members of the Board other than Messrs. Weiner and Nicholas.

49. On March 9, 2012, the Company issued a press release confirming the receipt of Longkloof's March 9, 2012, proposal and announcing that the Special Committee would, with the assistance of its legal and financial advisers, evaluate the proposal and determine the appropriate response thereto.

50. On April 23, 2012, the Board reconstituted the Special Committee to reduce its size from five members to three, with the continuing members being Mr. Isaacman, Ms. Hubbard and Mr. Timoshenko.

51. On May 31, 2012, NOOF filed a lawsuit against Longkloof and certain affiliates and/or associated persons, including Messrs Golding and Rothstein which (i) alleged, among other things, (A) violations of Section 13(d) of the Exchange Act for their failure to disclose the nature, extent and purpose of their "group" as required under such statute and (B) their failure to comply with the advance notice provisions of the Company's Bylaws for the nomination of candidates for election to the Board at the 2012 annual meeting of shareholders, and which (ii) sought, among other things, a declaratory judgment that the purported nominations to the Board by Longkloof were invalid and an injunction prohibiting Longkloof from

7

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

further actions with regard to their shares or the acquisition of additional shares until they complied with the requirements of Section 13(d) of the Exchange Act.

52. On June 11, 2012, Longkloof filed counterclaims in the lawsuit, alleging among other things, that the Board breached its fiduciary duties in denying Longkloof's nomination of a slate of four directors and with respect to the Board's actions in response to Longkloof's unsolicited offer to acquire the Company.

53. On July 6, 2012, the Board reconstituted the Special Committee to add Mr. Woo as a member of the Special Committee.

54. On July 11, 2012, the Company entered into a settlement agreement with Longkloof and other associated parties relating to the lawsuit filed by the Company on May 31, 2012.

55. Weiner resigned from the Board on October 10, 2012 and Nicholas resigned from the Board on September 28, 2012.

56. Mr. Nicholas sent a letter to the Board on September 28, 2012, to which the Company responded on October 4, 2012. The full text of both Nicholas' September 28, 2012 letter and the Company's October 4, 2012 response were made public in the Company's 8-K filing with the SEC on October 4, 2012.

57. On October 8, 2012 Mr. Nicholas sent another letter to the Company, to which the Board responded on October 10, 2012. The full text of both Mr. Nicholas' October 8, 2012 letter and the Board's October 10, 2012 response were made

8

**STIPULATED SCHEDULING AND DISCOVERY ORDER**
**EXHIBIT 1**

public in the Company's Form 8-K/A filing with the SEC on October 10, 2012. The Company's 8-K/A filing also included additional copies of Nicholas' September 28, 2012 letter and the Company's October 4, 2012 response.

58. Weiner sent a letter to the Board on October 10, 2012 to which the Board responded on October 16, 2012. The full text of both Weiner's October 10, 2012 letter and the Board's October 16, 2012 response were made public in the Company's 8-K filing with the SEC on October 16, 2012.

59. On October 15, 2012, the Denver Post published an article about the Merger.

60. On November 1, 2012, *Seeking Alpha* published an article about the Merger.

61. On November 1, 2012, *Business Insider* published an article about the Merger.

62. Avondale concluded the $2.02 per share price was "fair."

63. As disclosed in the Recommendation Statement, Avondale used EBIT multiples in its financial analyses in support of Avondale's fairness opinion on the Merger.

64. Depreciation and amortization are *non-cash* expenses resulting from the purchases of fixed and intangible assets, which are excluded from EBITDA but included in EBIT.

65. As disclosed in the Recommendation Statement, Avondale selected EBIT multiples of 5x and 7x in the *Discounted Cash Flow Analysis*.

66. As disclosed in the Recommendation Statement, in its *Precedent Transactions Analysis*, Avondale examined LTM EBIT multiples in 35 comparable transactions.

9

**STIPULATED SCHEDULING AND DISCOVERY ORDER**
**EXHIBIT 1**

67. As disclosed in the Recommendation Statement, Avondale "was unable to calculate an implied value for the Company using LM EBIT multiples because the Company's LTM EBIT was negative."

68. As disclosed in the Recommendation Statement, Avondale performed a *Comparable Companies Analysis* which examined New Frontier's LTM 2012 and 2013 EBIT multiples and certain information for selected comparable companies was not entirely available.

69. By November 27, 2012, approximately 83.1% of the Company's outstanding shares had been tendered to LFP Broadcasting in the tender offer.

70. Plaintiffs William Douglas Moreland and Craig Telke did not tender to LFP Broadcasting in the tender offer any of the shares held or beneficially owned by them.

71. On November 28, 2012, LFP exercised the Top-Up Option to acquire the rest of the shares necessary to effect a short form merger under Colorado law.

72. According to Recommendation Statement, as of October 26, 2012, the Company had 16,264,213 shares of common stock outstanding and 1,370,152 shares subject to issuance pursuant to the exercise of outstanding stock options.

73. The Merger Agreement has resulted in a change in control of NOOF.