# Exhibit C

Response to Plaintiffs' Motion to Compel

8-K/A 1 a12-23591_18ka.htm 8-K/A

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## FORM 8-K/A

### CURRENT REPORT
Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

October 8, 2012
Date of Report (Date of earliest event reported)

## New Frontier Media, Inc.
(Exact Name of Registrant as Specified in Charter)

| Colorado | 000-23697 | 84-1084061 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File No.) | (IRS Employer Identification No.) |

6000 Spine Road, Suite 100, Boulder, CO 80301
(Address of principal executive offices)

(303) 444-0900
(Registrant's telephone number, including area code)

N/A
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐ Written communication pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

---

Item 5.02. Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.

(a) On October 4, 2012, New Frontier Media, Inc. (the "Company") announced the resignation of Mr. David Nicholas as a director, effective immediately as of September 29, 2012. Mr. Nicholas's resignation followed the decision by the board of directors (based on the recommendation of its nominating committee) not to nominate Mr. Nicholas for re-election and

<mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark>
Case No. 1:12-cv-02941-JLK   Document 50-3   filed 08/01/14   USDC Colorado   pg 3 of 8

to ask for his resignation. In accordance with the requirements of Item 5.02 of Form 8-K, the Company filed with such announcement a copy of Mr. Nicholas's resignation letter and the Company's response to such letter.

On October 8, 2012, the Company received a letter from Mr. Nicholas disagreeing with the Company's October 4, 2012 response letter. In accordance with the requirements of Item 5.02 of Form 8-K, this letter is attached hereto as Exhibit 17.3. On October 10, 2012, the Company responded to Mr. Nicholas by means of the letter attached hereto as Exhibit 17.4.

Item 9.01   Financial Statements and Exhibits

(d) Exhibits

| Exhibit No. | Exhibit Description |
|---|---|
| 17.1 | Letter from David Nicholas dated September 28, 2012.* |
| 17.2 | Letter from the Company to David Nicholas dated October 4, 2012.* |
| 17.3 | Letter from David Nicholas dated October 8, 2012. |
| 17.4 | Letter from the Company to David Nicholas dated October 10, 2012. |

\*   Previously Filed.

2

### SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: October 10, 2012                    NEW FRONTIER MEDIA, INC.

By:      /s/ Marc Callipari
Name:   Marc Callipari
Title:   Chief Legal Officer

3

### Exhibit Index

| Exhibit No. | Exhibit Description |
|---|---|
| 17.1 | Letter from David Nicholas dated September 28, 2012.* |
| 17.2 | Letter from the Company to David Nicholas dated October 4, 2012.* |
| 17.3 | Letter from David Nicholas dated October 8, 2012. |
| 17.4 | Letter from the Company to David Nicholas dated October 10, 2012. |

\*   Previously Filed.

<mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark>
http://www.sec.gov/Archives/edgar/data/847383/000110465912068472/a12-23591_18ka....   10/30/2013
</mark>

<mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark>
DEFR260004079

4

DEFR260004080

EX-17.3 2 a12-23591_1ex17d3.htm EX-17.3

Exhibit 17.3

**David Nicholas**
P.O. Box 681647
Park City, Utah 84068

October 8, 2012

Alan Isaacman
Melissa Hubbard
Walter Timoshenko
Hiram J. Woo
New Frontier Media, Inc.
6000 Spine Road, Suite 100
Boulder, Colorado 80301

Dear Alan, Melissa, Walter and Hiram:

I refer to your letter dated October 4, 2012 (and attached as an exhibit to New Frontier's Form 8-K filed on same date) responding to my resignation letter in which I set forth the reasons for my resignation, including my serious concerns with actions taken by the current directors. It is shocking that the Special Committee, comprised of two attorneys and two accounting professionals, would use a publicly-filed SEC document as a platform to defend its actions with material misstatements and mischaracterizations of the events leading up to my resignation.

Let me be clear for the record that my disappointment with your transgressions and my concerns about potential breaches of your fiduciary duties should not be confused, as suggested in your letter, as malcontent or "sour grapes" caused by your decision not to re-nominate me for election at the upcoming annual meeting. I assure you that my reputation in the industry during the past thirty-two years has not, and will not, be impacted by your self-serving and transparent attempt to demonize me. I am nevertheless compelled, in the interest of full disclosure to shareholders, to address various inaccuracies in your letter and to reiterate some of the concerns you failed to address.

Your assertions that I was seeking to advance Michael Weiner's "agenda" and that our interests were aligned with Longkloof are entirely inaccurate. My support for Mr. Weiner is based on my belief that he was the best person to serve as CEO of the Company and that he was wrongfully terminated. It is a complete fabrication to insinuate that I had a conversation with Longkloof and was invited to participate in their proxy contest. In fact, I have only spoken to Adam Rothstein once in my entire life - he called me earlier in the spring and we spoke about video distribution trends. Furthermore, I disagree with your continuous attempts to portray yourselves as saviors of the Company for filing the Longkloof lawsuit and to cast my opposition to the lawsuit as an expression of favoritism towards Longkloof. A Board that was interested in maximizing shareholder value would not have wasted hundreds of thousands of dollars to sue a bona-fide acquiror and instead would have attempted to negotiate with them to raise their offer price. My intent has always been to obtain the best and highest price for the Company - whether from Longkloof or otherwise. Any statements to the contrary have no merit.

Your allegation that I was removed from the Special Committee because I could not be trusted to act in the best interests of shareholders is a red herring designed to cloud the true

circumstances of my removal. As I stated in my resignation letter, I believe I was removed from the Special Committee because I questioned the amount of additional fees its members agreed to pay themselves. Despite threats from other directors that my refusal to accept these committee fees would make them "look bad," I stand by my decision not to accept additional committee fees that I believe are excessive and unwarranted.

You have done a disservice to shareholders by failing to adequately address many of the concerns raised in my resignation letter. Your assertion that the Special Committee provided "periodic updates" to the other Board members in order to "help ensure an independent and unbiased process" is disingenuous on multiple levels. The limited updates I

received regarding the strategic review process lacked substance and were designed to keep me in the dark about the interests of any potential bidders in the Company. Neither I nor the shareholders can be assured that the activities of the Special Committee, which have been going on for approximately eight months, are actually benefiting shareholders. In addition, my concerns regarding your potential business relationships, personal interests and/or agendas with respect to the strategic review process have been ignored. The issues I have raised regarding your independence also remain unaddressed.

The Special Committee has wasted corporate assets and in my view damaged the Company's business. Ultimately, each of you will be held accountable for any destruction of shareholder value that has resulted from your actions.

Very truly yours,

/s/ David Nicholas
David Nicholas

cc: Michael Weiner
Marc Callipari

http://www.sec.gov/Archives/edgar/data/847383/000110465912068472/a12-23591_1ex1... 10/30/2013

DEFR260004082

Page 1 of 2

EX-17.4 3 a12-23591_1ex17d4.htm EX-17.4

Exhibit 17.4

October 10, 2012

Mr. David M. Nicholas
P.O. Box 681647
Park City, Utah 84068

Dear David:

Your most recent letter dated October 8, 2012, only affirms our position that it was in the best interests of all the Company's shareholders that we requested your resignation. In its diligent ongoing process to review all strategic alternatives to maximize shareholder value, including a potential sale of the Company, our Board's Special Committee has worked tirelessly to create and maintain a level playing field and a fair and open process for all parties interested in acquiring the Company. We have also maintained a steadfast commitment to ensuring that no bidder receives an unfair advantage.

Your correspondence indicates that you don't understand that a commitment to acting in the best interests of ALL shareholders and to maximizing shareholder value does not necessarily mean agreeing to sell the Company to a bidder preferred by you and then – Chief Executive Officer Michael Weiner, particularly at a time before the Board is able to create a process, with the assistance of its advisors, that facilitates an independent and unbiased review of the proposal and the various terms and conditions relating thereto against other alternatives that may be more likely to maximize value for ALL shareholders. That was particularly so with respect to Longkloof's publicly-announced interest in the Company given the personal relationships that Mr. Weiner has with the Longkloof group which had the potential to cause conflicts of interest given his role, prior to September 15, 2012, as then – Chief Executive Officer of the Company. Mr. Weiner's repeated expressions of preference for the Longkloof group to be the ultimate buyer of the Company, his frequent communications with representatives of the Longkloof group and his unwillingness to respect the independent nature of the Special Committee presented numerous challenges for the Special Committee in its attempts to safeguard the integrity of its process and ensure a level playing field for all potential bidders. It also compelled the Special Committee to be especially vigilant in designing and implementing, with the assistance of our financial and legal advisors, a competitive strategic review process that invited and sought out participation from multiple bidders in an effort to ensure the greatest likelihood of identifying a transaction that would maximize shareholder value. In that same spirit of seeking to have broad participation in our process, even when Longkloof's proxy contest against the Company was still pending, the Special Committee went out of its way to invite Longkloof to participate in its process.

It would have been preferable and in the best interests of our shareholders if the Special Committee had been allowed to conduct its process for reviewing strategic alternatives without the numerous undue distractions that it has had to endure. Within a month of the Special Committee being formed, the Company received two publicly-announced unsolicited offers and was threatened with a proxy contest by the Longkloof group that would have allowed them to acquire control of the Company without being required to pay our shareholders a control premium for their shares. The threatened proxy contest, in addition to being highly disruptive to the Special Committee's process, caused the Company to incur significant expenses to ensure that the interests of our shareholders were protected and the integrity of the Special Committee's process was safeguarded.

Rather than abandoning our strategic review process in the face of these numerous and difficult challenges, the Special Committee persevered in ensuring that a fair process was maintained that provided a level playing field for all potential bidders. Ultimately, the Special Committee was successful in negotiating a settlement agreement with the Longkloof group that resulted in the termination of their proxy contest and the related litigation and their commitment that, through the end of the year and subject to the terms of the settlement agreement, they would only pursue an acquisition of the Company through a consensual transaction. The settlement agreement negotiated by the Special Committee facilitated our strategic review process by ensuring that the interest of potential bidders in the Company would no longer be "chilled" by a threatened proxy contest and the related litigation.

DEFR260004083

Given how strongly you opposed our efforts to seek a resolution of the proxy contest and your failure to take any action to protect our shareholders from the possible consequences of a proxy contest that sought control of our Company (and would have replaced all the independent members of the Board other than you), it is not surprising that you have been unwilling to acknowledge the extent to which the Special Committee's efforts to preserve the integrity of its process has benefitted our shareholders.

It is clear that you and the members of the Special Committee will continue to have extremely different and contrasting views as to how best to serve the interests of the shareholders of New Frontier Media and how a member of the board of directors of a public company should comply with his or her fiduciary duties. It is also clear that you still do not understand why a Special Committee needs to function independently free from potential conflicts of interest and why it is so critically important that a strategic review process overseen by a Special Committee be safeguarded from actions that could adversely affect the fairness and level-playing field required for a successful process. While you criticize the length of time the process has taken, you fail to acknowledge the numerous distractions that the Special Committee has had to contend with in managing its process and the culpability of those, including yourself, that have caused or contributed to these distractions.

While we appreciate a constructive dialogue with our shareholders, we believe your continuing self-serving public letter-writing campaign is yet another attempt to disrupt the Special Committee from focusing on its process to maximize value for ALL shareholders. We believe that your departure from the Board will now enable the Special Committee to conclude its process without any further unnecessary distraction. If you are still a shareholder in the Company, you should be pleased to know that the Special Committee has made solid progress in advancing its process, despite your numerous efforts to distract us. We hope you will respect the desire of the Board and its Special Committee to focus on concluding its process and discontinue your public letter writing.

Sincerely,

THE BOARD OF DIRECTORS OF NEW FRONTIER MEDIA, INC.

2

DEFR260004084