# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02941-JLK

CRAIG TELKE, and
WILLIAM DOUGLAS MORELAND,
Individually and on Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO, and
WALTER TIMOSHENKO,

      Defendants.

_____

### PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL
_____

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 3

I.  THE DISCOVERY PLAINTIFFS SEEK IS DIRECTLY RELATED TO THE
    CORE CLAIMS ASSERTED IN THEIR COMPLAINT AND SHOULD BE
    PRODUCED ......................................................................................................... 3

   A. Defendants' Discovery to Date ................................................................. 3

   B. Plaintiffs are Entitled to Know the Search Terms and Methods That Defendants
      Used to Cull Responsive Documents ....................................................... 4

   C. Plaintiffs Are Entitled to Discovery On Their Requests Relating to Conflicts of
      Interest From 2007 through the Merger and for Relevant Discovery to the
      Present ...................................................................................................... 6

   D. Defendants Have Not Met Their Burden to Demonstrate That Either the Attorney-
      Client or Accountant-Client Privileges Apply ...................................... 10

      1.  The Attorney-Client Privilege Does Not Apply ........................... 11

      2.  The Accountant-Client Privilege Does Not Apply ...................... 17

   E. Defendants Should be Compelled to Produce the Transcripts from Mr. Weiner's
      Arbitration Proceedings in Their Entirety ............................................ 18

II.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR
     CLAIMS ............................................................................................................ 19

   A. Defendants' Attempt to Litigate the Merits of Plaintiffs' Claims Is Inappropriate
      on a Motion to Compel ........................................................................... 19

   B. Plaintiffs' Claims Are Meritorious ....................................................... 20

      1.  Plaintiffs Will Demonstrate that Defendants Breached Their Fiduciary
          Duties of Due Care and Loyalty and, Thus, Are Not Entitled to the Business
          Judgment Rule Presumption ........................................................ 20

      2.  Plaintiffs Have Properly Asserted Their Claims Directly on Behalf of New
          Frontier's Former Public Shareholders ....................................... 22

      3.  Appraisal Is Not the Exclusive Remedy ...................................... 26

      4.  Plaintiffs Have Standing to Assert Their Exchange Act Claims Because
          Defendants Concealed Numerous Material Facts from Plaintiffs and New
          Frontier's Other Public Shareholders .......................................... 28

CONCLUSION ............................................................................................................. 31

## TABLE OF AUTHORITIES

**Cases**

*Aguinaga v. John Morell and Company*,
   112 F.R.D. 671 (D. Kan. 1986) ....................................................................... 14

*Ajay Sports, Inc. v. Casazza*,
   1 P.3d 267 (Colo. App. 2000) ........................................................................... 20

*Ashton Properties, Ltd. v. A.L. Overton*,
   107 P.3d 1014 (Colo. App. 2004) ..................................................................... 25

*Bingham Consolidation Co. v. Groesbeck*,
   105 P.3d 365 (Utah Ct. App. 2004) .................................................................. 27

*Bithell v. W. Care Corp.*,
   762 P.2d 708 (Colo. App. 9188) ....................................................................... 25

*Buechner v. Rouse*,
   538 P.2d 117 (Colo. Ct. App. 1975) ................................................................. 25

*CDX Liquidating Trust v. Ve??rock Assocs.*,
   640 F.3d 209 (7th Cir. 2011) ........................................................................... 20

*Cinerama, Inc. v. Technicolor, Inc.*,
   663 A.2d 1134 (Del. Ch. 1994) .......................................................................... 9

*Colt v. Mt. Princeton Trout Club*, Inc.,
   78 P.3d 1115 (Colo. App. 2003) ....................................................................... 25

*Combs v. PriceWaterhouse Coopers LLP*,
   382 F.3d 1196 (10th Cir. 2002) ....................................................................... 25

*David P. Simonetti Rollover IRA v. Margolis*,
   2008 Del. Ch. LEXIS 78 (Del Ch. Jun. 27, 2008) ............................................ 29

*Delaware Open MRI Radiology Assocs. v. Kessler*,
   898 A.2d 290 (Del. Ch. 2006) .......................................................................... 26

*Earthinfo v. Hydrosphere Resource*,
   900 P. 2d 113 (Colo. 1995) ............................................................................... 27

*Fausek v. White*,
   965 F. 2d 126 (6th Cir. 1992) .......................................................................... 14

*First Horizon Merch. Servs., Inc. v. Wellspring Capital Mgmt., LLC*,
   166 P.3d 166 (Colo. Ct. App. 2007) ................................................................. 23

*Galena Street Fund, L. P. v. Wells Fargo Bank, N.A.*,
   No. 12-cv-00587-BNB-KMT, 2014 WL 943115 (D. Colo. Mar. 10, 2014) ................ 13

*Garner v. Wolfinbarger*,
430 F.2d 1093 (5th Cir. 1970) .................................................................. 13, 14

*Gerrits v. Brannen Banks of FL, Inc.*,
138 F.R.D. 574 (D. Colo. 1991) .................................................................. 11

*Gottlieb v. Wiles*,
143 F.R.D. 241 (D. Colo. 1992) .................................................................. 12

*Hampton v. Tri-State Fin. Corp.*,
30 Colo. App. 420, 495 P.2d 566 (1972) .................................................... 22

*Hawkins v. Dist. Court In & For Fourth Judicial Dist.*,
638 P.2d 1372 (Colo. 1982) ........................................................................ 16

*Herrmann v. Rain Link, Inc.*,
2012 WL 1207232 (D. Kan. Apr. 11, 2012) ............................................... 13

*Hollinger Int'l Inc. v. Hollinger Inc.*,
230 F.R.D. 508 (N.D. Ill. 2005) ................................................................. 10

*In re Art Tech. Group, Inc. S'holders Litig.*,
Consolidated C.A. No. 5955-VCL, 2010 Del. Ch. LEXIS 257 (Del. Ch. Dec.
21, 2010) ..................................................................................................... 7

*In re BCE West, L.P.*,
2000 WL 1239117 (S.D.N.Y. Aug. 31, 2000) ............................................ 11

*In re Best Lock Corp. S'holder Litig.*,
CIV.A. 16281, 2000 WL 1876460 (Del. Ch. Dec. 18, 2000) .................... 8, 12

*In re Cencom Cable Income Partners, L.P. Litig.*,
2000 WL 130629 (Del. Ch. 2000) .............................................................. 24

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
906 A.2d 766 (Del. 2006) ............................................................................ 24

*In Re John Q. Hammons Hotels Inc. S'holder Litig.*,
2009 WL 891805 (Del. Ch. Mar. 25, 2009) ................................. 8, 18, 19, 28

*In re LTV Sec.'s Litig.*,
89 F.R.D. 595 (N.D. Tex. 1981) ................................................................. 11

*In re Tri-Star Pictures*,
634 A.2d 319 (Del. 1993) ............................................................................ 20

*Ireland v. Wynkoop*,
539 P.2d 1349 (Colo. App. 1975) ............................................................... 25

*Kahn v. Lynden Inc.*,
705 F. Supp. 1458 (W.D. Wash. 1989) ....................................................... 30

iii

*Matter of Educators Grp. Health Trust,*
25 F.3d 1281 (5th Cir. 1994) ....................................................................... 24

*McMinn v. MBF Operating Acquisition Corp.,*
142 N.M. 160 (N.M. 2007) ........................................................................... 27

*Nagy v. Bistricer,*
770 A.2d 43 (Del. Ch. 2000) ....................................................................... 27

*Nicholson v. Ash,*
800 P.2d 1352 (Colo. Ct. App. 1990) .......................................................... 22

*O'Malley v. Casey,*
589 P.2d 1388 (1979)................................................................................... 25

*ONTI, Inc. v. Integra Bank,*
751 A.2d 904 (Del. Ch. 1999) ....................................................................... 9

*Panter v. Marshall Field & Co., et. al.,*
80 F.R.D. 718 (N.D. Ill. 1978)..................................................................... 14

*Patterson v. Avery Dennison Corp.,*
281 F.3d 676 (7th Cir. 2002) ....................................................................... 18

*Pattie Lea, Inc., et. al. v. Dist. Court of Denver,*
161 Colo. 493 (1967) .................................................................................. 14

*Pearson v. Miller,*
211 F.3d 57 (3d Cir.2000) ........................................................................... 16

*Pharmerica Long Term Care, Inc. v. New Castle RX, LLC,*
2010 WL 5130746 (Del. Ch. Dec. 8, 2010)................................................... 5

*Reis v. Hazelett Strip-Casting Corp.,*
28 A.3d 442 (Del. Ch. 2011) ......................................................................... 9

*Religious Tech. Ctr. v. Wollersheim,*
971 F.2d 364 (9th Cir. 1992) ....................................................................... 16

*Rice v. Hamilton Oil Corp.,*
658 F. Supp. 446 (D. Colo. 1987)........................................................... 28, 30

*River Mgmt. Corp v. Lodge Prop's Inc.,*
829 P.2d 398 (Colo. App. 1991).................................................................. 25

*Rivera v. Rivera,*
2007 WL 5210199 (Colo. Dist. Ct.) ............................................................ 22

*Rowlin v. Alabama,*
200 F.R.D. 459 (M.D. Ala. 2001)................................................................ 19

*Rubke v. Capitol Bancorp Ltd.,*
460 F. Supp.2d 1124 (N.D. Cal. 2006)........................................................ 30

*S. Muoio & Co. LLC v. Hallmark Entm't Investments Co.*,
   CIV.A. 4729-CC, 2011 WL 863007 (Del. Ch. Mar. 9, 2011) ........................................ 9

*S.E.C. v. Roberts*,
   254 F.R.D. 371 (N.D. Cal. 2008) ................................................................................ 10

*SICPA Holdings S.A. v. Optical Coating Lab., Inc.*,
   1996 WL 577143 (Del. Ch. Sept. 23, 1996) ................................................................ 12

*Smallwood v. Pearl Brewing Co.*,
   489 F.2d 579 (5th Cir. 1974) ...................................................................................... 30

*Spivak v. Petro-Lewis Corp.*,
   120 F.R.D. 693 (D. Colo. 1988) .................................................................................. 30

*Stat-Tech Liquidating Trust, et. al. v. Fenster, et. al.*,
   981 F. Supp. 1325 (D. Colo. 1997) .............................................................................. 25

*Szaloczi v. Jon R. Behrmann Revocable Trust*,
   90 P.3d 835 (2004) ............................................................................................... 26, 27

*Thornton v. Bernard Techs., Inc.*,
   C.A. No. 962-VCN, 2009 WL 426179 (Del. Ch. 2009) .............................................. 24

Tooley v. Donaldson, Lufkin & Jerette, Inc.,
   845 A.2d 1031 (Del. 2004) .......................................................................................... 24

*Town of Carbondale v. GSS Properties, LLC*,
   169 P.3d 675 (Colo. 2007) .......................................................................................... 21

*Union Illinois 1995 Inv. Ltd. P'ship v. Union Fin. Grp.*, Ltd.,
   847 A.2d 340 (Del. Ch. 2004) ...................................................................................... 9

*Weck v District Court of Second Judicial Dist.*,
   161 Colo 384 (1967) .................................................................................................... 17

*Weinberger v. UOP*,
   457 A.2d 701 (Del. 1983) ............................................................................................ 26

*Wellman v. Dickinson*,
   475 F. Supp. 783 (S.D.N.Y. 1979) .............................................................................. 30

*Westinghouse Electric Corporation v. Republic of the Philippines*,
   951 F.2d 1414 (3d Cir. 1991) ...................................................................................... 17

**Statutes**

15 U.S.C. § 78n(e) (1988) ................................................................................... 28, 30

C.R.S. § 7-108-402 ...................................................................................................... 21

C.R.S. § 7-113-102(4) .................................................................................................. 26

**Other Authorities**

Zachary D. Olson,
   *Direct or Derivative: Does it Matter After Gentile v. Rossette?* J. Corp. Law 33:2
   (2008) ................................................................................................................... 23

**Rules**

C.R.C.P. 8 ........................................................................................................................ 21

C.R.C.P. 9 ........................................................................................................................ 25

D.C.COLO.LCivR 37.1 ..................................................................................................... 1

Fed. R. Civ. P. 26 ............................................................................................... 1, 3, 10, 18

Fed. R. Civ. P. 33 .............................................................................................................. 3

Fed. R. Civ. P. 37 .............................................................................................................. 1

Pursuant to Federal Rule of Civil Procedure 37(a)(2) and Local Rule 37.1, plaintiffs Craig Telke and William Douglas Moreland ("Plaintiffs"), by their attorneys, respectfully submit this Reply in further support of their Motion to Compel ("Motion").[1]

## PRELIMINARY STATEMENT

Defendants' response to Plaintiffs' Motion rests largely on the premise that Plaintiffs are not entitled to anymore discovery because, in Defendants' opinion, it would not "likely benefit" Plaintiffs in proving their case.  In support, Defendants make numerous arguments as to why Plaintiffs will not prevail on the merits of their claims as pled in the Complaint, before the completion of fact and expert discovery.  This, of course, is not the standard for discovery, which requires that Defendants produce all discovery that is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Moreover, Defendants' merits-based arguments are not something new that arose halfway through the discovery process.  If Defendants wanted to assert such arguments as a basis to avoid complying with their discovery obligations, they should have made a motion to dismiss.  As discussed below, Defendants' merits-based arguments should be rejected at this stage of the litigation because they are premature as discovery is not yet complete and because they are otherwise without legal basis.

Plaintiffs respectfully submit that the Court should grant their Motion in its entirety because:  (1) Plaintiffs are entitled to know the search terms and methods

---

[1] All capitalized terms herein shall have the same meaning as set forth in Plaintiffs' Motion unless otherwise indicated.

Defendants used to collect documents responsive to Plaintiffs' discovery requests, which Defendants promised to provide to them seven months ago, but have now apparently reneged on that prior agreement; (2) Plaintiffs are entitled to relevant documents that were created before and after the Merger that directly relate to Defendants' conflicts and motives for entering into the Merger with LFP and Avondale's valuation of the Company that the Board relied upon in approving the Merger; (3) the attorney-client and accountant-client privileges do not apply because communications with New Frontier's Financial Advisors are not privileged and, even if they were, Defendants have waived any such privilege by asserting reliance on the advice of counsel and experts and/or Plaintiffs have shown good cause under the "fiduciary exception" for obtaining the discovery; and (4) the transcripts from Michael Weiner's arbitration proceedings are discoverable in their entirety because they are directly relevant to Plaintiffs' allegations that Defendants terminated Mr. Weiner to keep him out of the merger process so he would not derail their plan to sell New Frontier to Larry Flynt ("Flynt") or continue to criticize the Board for its self-dealing.

**ARGUMENT**

**I.   THE DISCOVERY PLAINTIFFS SEEK IS DIRECTLY RELATED TO THE CORE CLAIMS ASSERTED IN THEIR COMPLAINT AND SHOULD BE PRODUCED**

**A. Defendants' Discovery to Date**

To date, Defendants have produced just over 3,800 documents pursuant to Plaintiffs' discovery requests.[2]   None of the documents that Defendants have produced thus far resolve any of the issues raised in this Motion.   Defendants admit as much in their response brief.   According to Defendants' response, they have not produced an estimated 5,000 documents.   *See* Defendants' Response to Plaintiffs' Motion to Compel ("Defs.' Resp.") at 10.   Thus, Defendants are withholding more documents than they have produced by almost one-third.   Moreover, Defendants have not provided Plaintiffs with a privilege log supporting the basis for their privilege assertions.[3]

Defendants have also still failed to supplement their responses to Plaintiffs' First Set of Interrogatories based upon the parties' meet and confer discussions as required by Fed. R. Civ. P. 26 and 33.   Nor have Defendants provided Plaintiffs with the list of search terms and methods they used to cull documents responsive to Plaintiffs' discovery requests, despite several promises to do so starting in February 2014.

---

[2] Defendants produced approximately 3,800 documents purportedly responsive to Plaintiffs' discovery requests.   The also produced 511 irrelevant tax-related documents that Plaintiffs did not request and that have no bearing on Plaintiffs' claims.   Defendants applaud themselves from producing approximately 27,000 pages of documents.   However, this production is relatively small in comparison to typical cases of this nature.

[3] Defendants' counsel has informed Plaintiffs' counsel that they intend to produce a privilege log on August 22, 2014, the date of this Reply.

As discussed below, Plaintiffs are entitled to the discovery they seek in this Motion and respectfully request that the Court grant their Motion in its entirety.

### B. Plaintiffs are Entitled to Know the Search Terms and Methods That Defendants Used to Cull Responsive Documents

In order to streamline the discovery process and proceed as efficiently as possible, Plaintiffs' counsel contacted counsel for Defendants in early February 2014 to meet and confer about the scope and method that the parties would use to search for relevant documents. The parties met and conferred telephonically on February 7, 2014. During that meet and confer, Defendants' counsel orally agreed to provide to Plaintiffs' counsel during the week of February 10, 2014, the search terms used to conduct searches for responsive documents and to provide Plaintiffs with further information regarding the methods used to search for responsive documents. Despite several follow-up requests from Plaintiffs' counsel in which Defendants' counsel repeatedly promised to provide this information, Defendants have still not provided it. Thus, Plaintiffs are still unclear as to what and how the searches were performed in order to determine whether appropriate searches were conducted.

Now, nearly seven months later, Defendants take the position that they will not honor their prior promise to provide Plaintiffs with the search terms and methods used because Plaintiffs did not ask for that information in a formal, written discovery request. Defs.' Resp. at 3. Plaintiffs believed that Defendants were conferring in good faith to provide them with the requested information in order to streamline the discovery process. Had Plaintiffs known Defendants were never planning to honor their agreement,

4

Plaintiffs would have served formal written discovery requests at the outset of the discovery process.

As set forth in Plaintiffs' Motion and herein, Plaintiffs are entitled to know the search terms, scope and methods that Defendants used to satisfy their discovery obligations.  Motion at 10-11.  Information regarding the methods and scope of such searches are best resolved "as early as practicable" in the litigation.  *Id.*; *see also The Sedona Principles, Second Edition: Best Practices Recommendations and Principles for Addressing Electronic Document Production,* Cmt. 113.a ("Ideally, the parties should agree on the search methods, including search terms or concepts, to be used as early as practicable. . . ."); *Pharmerica Long Term Care, Inc. v. New Castle RX, LLC*, 2010 WL 5130746, at *2 (Del. Ch. Dec. 8, 2010) (Plaintiffs' motion to compel granted where dispute involved search protocol for electronically stored data).

Defendants do not dispute that Plaintiffs are entitled to know the search terms and methods they used.  Thus, Plaintiffs are puzzled by Defendants' unwillingness to cooperate.  This information is particularly important here where the Individual Defendants appear to have personally performed their own individual searches, unsupervised by counsel, causing Plaintiffs to have serious concerns about whether a fulsome search has been conducted.  *See* Motion, Hopkins Aff., Ex. 1 (February 12, 2014 letter at 2-3).  Moreover, Defendants informed Plaintiffs during the February 7, 2014 meet and confer that defendant Hiram Woo ("Woo") purportedly has a practice of printing emails upon receipt and then promptly deleting them from his e-mail account.

*Id.*  Thus, Plaintiffs have raised concerns about the potential destruction of evidence by defendant Woo.  *Id.*

Defendants' suggestion that Plaintiffs can question deposition witnesses about the specific list of search terms (Defs.' Resp. at 3-4) is not, as a practical matter, workable and it is unrealistic to think that any Individual Defendant was even aware of the specific search terms used, much less that he could recall the precise terms and parameters from memory months later.  It is also highly inefficient to require Plaintiffs to wait to depose the Individual Defendants about these basic issues concerning the scope of discovery, rather than address them at the outset of discovery.  Defendants cannot now complain about the cost and burden of additional discovery when they have refused to cooperate.

## C. Plaintiffs Are Entitled to Discovery On Their Requests Relating to Conflicts of Interest From 2007 through the Merger and for Relevant Discovery to the Present

In their Motion, Plaintiffs requested that Defendants produce documents relating to potential conflicts of interest from 2007 to the present.  Motion at 14.  These potential conflicts relate to:  (i) any relationships between New Frontier and/or the Individual Defendants and LFP and/or Larry Flynt (Request No. 13); (ii) any relationships between New Frontier and/or the Individual Defendants and any Financial Advisor (Request No. 15); (iii) services provided by defendant Isaacman's law firm to New Frontier and/or LFP and Larry Flynt (Request No. 39); and (iv) any benefits that New Frontier provided to the Individual Defendants (Request No. 44).  Motion, Hopkins Aff., Ex. 2.  Plaintiffs seek documents for the five-year period before the Merger process for only four specific

6

requests and, thus, Plaintiffs' request are not an "unbounded" request with "no temporal restriction," as Defendants suggest.  Defs.' Resp. at 14-15.

As set forth in Plaintiffs' Motion, these requests are directly relevant to the allegations and claims asserted in the Complaint, including the following:

- Discussions with LFP Broadcasting and Larry Flynt regarding a possible acquisition of New Frontier began as early as 2010 (¶ 103);

- Defendant Isaacman and Flynt have a long history and prior personal and business relationship dating back more than a decade (¶¶ 12, 61, 73, 77);

- The Individual Defendants engaged in years of self-dealing with New Frontier for their own personal benefit as far back as at least 2007 (¶¶ 6-8, 38-46, 51-52); and

- Isaacman, Kaufman & Painter has performed legal services for New Frontier for years (¶ 45).

Thus, documents relating to potential conflicts that existed prior to the Merger and may have influenced the decision-making process on the Merger must be produced.  *See, e.g., In re Art Tech. Group, Inc. S'holders Litig.*, Consolidated C.A. No. 5955-VCL, 2010 Del. Ch. LEXIS 257 (Del. Ch. Dec. 21, 2010); Motion at 13-14.

In their response, the only conflict Defendants even address is Isaacman's prior relationship with Flynt.  Defs.' Resp. at 15.[4]  Defendants do not refute and, thus, concede that Plaintiffs are entitled to discovery related to the other conflict issues pertaining to services Isaacman's law firm provided to New Frontier, Defendants' prior relationships

---

[4] In light of Mr. Isaacman's affidavit submitted with Defendants' response, Plaintiffs accept that Isaacman has had no discussions with Larry Flynt since 2001 and reserve their rights to question Isaacman about the contents of his affidavit at his deposition.  Neither Isaacman's affidavit, nor Defendants' response, however, address whether New Frontier or any of the other Individual Defendants have a prior relationship with Larry Flynt or LFP.  Thus, Defendants should still be compelled to respond to this request insofar as it relates to conflicts other than with respect to Isaacman.

with any Financial Advisor and fees paid to those advisors and benefits the Individual Defendants received from New Frontier from 2007 through the Merger.  To the extent Defendants are claiming that the Company's publicly-filed audited financial statements somehow satisfy their discovery obligations (Defs.' Resp. at 15-16), they are wrong. New Frontier's financial statements do not address the specific information Plaintiffs have requested, such as the terms of any engagements between Defendants and Isaacman's law firm or any Financial Advisor, the nature of the services provided, the terms of the engagements and any undisclosed benefits the Individual Defendants have received.[5]

Further, post-Merger discovery is appropriate here where the discovery Plaintiffs seek relates directly to their claims regarding the value of the Company at the time of the Merger.  In particular, Plaintiffs allege that New Frontier was sold at below market value (*e.g.*, ¶¶ 12-13, 87-99) and that Avondale's financial analyses supporting its fairness opinion did not properly consider the value of the "Over-the-Top" ("OTT") technology that New Frontier was implementing, its recent expansion into Latin America and synergies from the Merger (¶ 99).  Post-Merger information on the performance of the OTT technology, international expansion and synergies is directly relevant to the value of

---

[5] Defendants' contention that Plaintiffs' conflicts argument "makes no sense" (Defs.' Resp. at 4) is belied by the fact that the Board ignored overtures from other serious potential acquirers in favor of LFP. Moreover, it is disingenuous for Defendants to claim Plaintiffs have presented "no indicia" that the Board wanted to sell the Company to LFP (*Id.* at 15) when Plaintiffs have clearly alleged a longstanding business and personal relationship between Isaacman and Flynt and that the Board favored LFP over other bidders during the process leading up to the Merger.

New Frontier at the time of the Merger and whether Avondale properly attributed *no* value to those businesses and synergies in its fairness opinion.[6]

Defendants' argument that post-merger discovery is not relevant because "New Frontier fell under different management after the Merger" (Defs.' Resp. at 17) has no bearing on this analysis for the reasons stated above.  Moreover, Defendants incorrectly assert that Plaintiffs' damages calculation is based upon "the value of their shares without the proposed transaction with the Flynt organization."  *Id.* at 5, 17.  While Defendants are correct that the measure of damages in an ***appraisal*** action is the going concern value of the Company before the Merger,[7] the proper measure of damages in this change of control breach of fiduciary duty case where the directors have a duty to maximize shareholder value is the highest value at which the Company could be sold, which includes, among other things, the value of synergies that will be realized in the Merger. *See, e.g.*, *ONTI, Inc. v. Integra Bank*, 751 A.2d 904, 913 (Del. Ch. 1999) ("[C]ontrol

---

[6] Contrary to Defendants' incorrect characterization of the holding in *In Re John Q. Hammons Hotels Inc. S'holder Litig.*, 2009 WL 891805 (Del. Ch. Mar. 25, 2009) (Defs.' Resp. at ftne 16), this case is analogous to *John Q.*  In *John Q*, Lehman Brothers ("Lehman"), the financial advisor that provided an opinion on the fairness of the merger price, deeply discounted the value of the company as compared to its peers in its analysis based upon a prediction that *John Q* would underperform its peers post-merger. *Id.*, at *1.  In granting the plaintiffs' motion to compel, the court, rejecting arguments similar to those Defendants make here, found that post-merger information on *John Q's* financial performance was relevant to the validity of Lehman's assumptions in its fairness valuation.  *Id.*  As in *John Q.*, Plaintiffs here allege Avondale improperly excluded the value of the OTT and Latin America expansion, as well as synergies that would admittedly be realized in the Merger.  Thus, post-merger discovery on Avondale's assumptions and decision to exclude that from its fairness evaluation is relevant and, thus, discoverable. Moreover, as the court in *John Q* noted, "post-merger information may be relevant in a breach of fiduciary duty action 'which may, ultimately, justify a rescissory damages remedy.'" (citing *Best Lock*, 2000 WL 1876460).

[7] *Union Illinois 1995 Inv. Ltd. P'ship v. Union Fin. Grp.*, Ltd., 847 A.2d 340 (Del. Ch. 2004) ("The appraisal award excludes synergies in accordance with the mandate of Delaware jurisprudence that the subject company in an appraisal proceeding be valued as a going concern.").

premiums paid in merger transactions…reflect expected future profits after the merger (*i.e.,* synergy values).”); *Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 462 (Del. Ch. 2011) (“Market value, asset value, dividends, earning prospects, the nature of the enterprise and any other facts which were known or which could be ascertained as of the date of merger and which throw any light on future prospects of the merged corporation are not only pertinent to an inquiry as to the value of the dissenting stockholders’ interest, but must be considered by the agency fixing the value.”).[8]

As demonstrated above, the discovery Plaintiffs seek is “relevant” to Plaintiffs’ claims and is “reasonably calculated to lead to the discovery of admissible evidence.” Fed. R. Civ. P. 26(b)(1).  Construing the discovery standard broadly, as this Court is required to do, Plaintiffs have more than amply demonstrated that the discovery they are seeking is appropriate.

### D. Defendants Have Not Met Their Burden to Demonstrate That Either the Attorney-Client or Accountant-Client Privileges Apply

Plaintiffs’ Motion seeks two categories of documents for which Defendants have improperly asserted either the attorney-client or the accountant-client privilege:   (i) communications between New Frontier and the Company’s Financial Advisors regarding

---

[8] *See also, e.g.*, *S. Muoio & Co. LLC v. Hallmark Entm't Investments Co.*, CIV.A. 4729-CC, 2011 WL 863007 (Del. Ch. Mar. 9, 2011) *judgment entered,* CIV.A. 4729-CC, 2011 WL 841040 (Del. Ch. Mar. 9, 2011) and *aff'd,* 35 A.3d 419 (Del. 2011) (Fair price “relates to the economic and financial considerations of the proposed [transaction], including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company’s stock”); *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1134, 1143 (Del. Ch. 1994) *aff'd,* 663 A.2d 1156 (Del. 1995) (“The components of value in an acquisition might be considered to be two: the going concern value of the firm as currently organized and managed and the “synergistic value” to be created by the changes that the bidder contemplates (*e.g.,* new management, cost efficiencies, etc.). . . It is the expectation of such synergies that allows a rational bidder to pay a premium when he negotiates an acquisition.”).

the Merger; and (ii) communications between New Frontier and its accountants relating to the Merger.    As discussed below, Defendants have not met their burden for demonstrating the documents they are withholding are being properly withheld based upon privilege.  Thus, they should be compelled to provide them to Plaintiffs.

### 1.  The Attorney-Client Privilege Does Not Apply

Defendants' response addresses only the general proposition that communications between the Special Committee members (which also constituted the entire Board and, thus, are one in the same) and their attorneys are privileged.  Defs.' Resp. at 18.[9]  As such, Defendants seem to be claiming a blanket assertion that any communications with the Special Committee, regardless of when they occurred and in what context, are automatically privileged in their entirety.  *Id.*

As set forth in Plaintiffs' Motion, Plaintiffs are seeking communications between New Frontier and its Financial Advisors, which includes Avondale Partners, the Company's financial advisor in the Merger hired to value New Frontier's stock, and Grant Thornton, its external auditors.    Any direct communications between New

---

[9]  The non-Colorado cases Defendants cite in support of their blanket assertion that all communications with the Special Committee are privileged (Defs.' Resp. at 18) are easily distinguishable.  Each of those cases stands for the general proposition that communications between the Special Committee and its attorneys are privileged when the committee was formed *after* a regulatory investigation or other litigation threat, *in response to* potential litigation, *for the purposes of* evaluating potential legal claims and defenses.  None of them addresses the specific issue here concerning business communications with Financial Advisors.  *See Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508 (N.D. Ill. 2005) (communications with special committee formed for sole purpose of responding to litigation demand privileged); *S.E.C. v. Roberts*, 254 F.R.D. 371 (N.D. Cal. 2008) (attorney work product in connection with SEC action not discoverable); *In re LTV Sec.'s Litig.*, 89 F.R.D. 595 (N.D. Tex. 1981) (finding internal communications by Special Committee formed after S.E.C. investigation privileged where committee was formed in response to the threat of litigation to investigate the alleged wrongdoing); *In re BCE West, L.P.*, 2000 WL 1239117 (S.D.N.Y. Aug. 31, 2000) (special committee communications privileged where formed to address legal issues involving bankruptcy restructuring).

Frontier's attorneys and Avondale, Grant Thornton or other non-party advisors or communications in which the Company's attorneys happen to be present, does not constitute communications between attorney and client and, thus, are not privileged. *Gerrits v. Brannen Banks of FL, Inc.*, 138 F.R.D. 574, 577 (D. Colo. 1991) (Hon. J. Kane). Indeed, this Court has expressly held in an action substantially similar to this in which plaintiffs moved to compel discovery relating to communications with the investment banker that advised on the merger that "[t]he [attorney-client] privilege does not extend to information obtained by an attorney from third persons," such as those sought by Plaintiffs here. *Id.* In so holding, the Court recognized that the privilege only extends to communications made *in connection with obtaining legal advice*, which is not the case here:

> The communications must be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only professional service, or if the advice sought is the professional's rather than the lawyer's, no privilege exists.

*Id.* (citations omitted). Tellingly, Defendants do not even acknowledge this Court's ruling, much less attempt to distinguish it from the facts here.

Communications concerning Avondale's and Grant Thornton's business advice relating to the Merger are precisely the type of discovery Plaintiffs are seeking here. For example, Plaintiffs are seeking production of Avondale's various presentations concerning the Company's valuation, including its fairness presentation supporting its fairness opinion that the Special Committee and the Board relied upon in approving the

Merger.[10]  Aside from the fact the fairness presentation is not a legal communication and, thus, is not privileged, even if it was privileged (it is not), Defendants waived the privilege by publishing a summary of it in the Recommendation Statement filed with the SEC. *Gottlieb v. Wiles*, 143 F.R.D. 241 (D. Colo. 1992) (One may not release documents which pervasively cover a particular subject matter and then claim that the underlying supportive data is privileged).  Plaintiffs are also seeking production of Avondale's communications and presentations to the Board concerning the process leading up to the Merger,[11] Avondale's and Grant Thornton's engagement letters and communications from Grant Thornton concerning the Merger.  Plaintiffs are unable to obtain this information from any other source.[12]

Moreover, as discussed more fully in Plaintiffs' Motion, even if the attorney-client privilege applied to communications with New Frontier's Financial Advisors (it does not), Plaintiffs have demonstrated good cause for lifting the privilege under the "fiduciary

---

[10] Courts have repeatedly held that the banker's fairness and presentation materials are not privileged. *See, e.g.*, *In re Best Lock Corp. S'holder Litig.*, CIV.A. 16281, 2000 WL 1876460 (Del. Ch. Dec. 18, 2000) ("[B]oard minutes and notes, documents from and to financial advisors, SEC filings, stock ledgers, directors' and financial advisors' communications, and the articles of the corporation, are well within the normal scope of discovery and should be produced or, if they do not exist, confirmed as to this fact."); *SICPA Holdings S.A. v. Optical Coating Lab., Inc.*, 1996 WL 577143, at *2 (Del. Ch. Sept. 23, 1996) (same).

[11]  Communications with Avondale are particularly important here because Defendants have asserted that Avondale was primarily responsible for conducting the process leading up to the Merger with LFP.  Ex. 5 (May 5, 2014 letter).  Moreover, during the parties' meet and confer on April 18, 2014, Defendants were unable to tell Plaintiffs the identity of Party D, referenced in the Recommendation Statement as an active bidder who made an offer to acquire the Company, and referred Plaintiffs to Avondale to determine Party D's identity.  *Id.*  Plaintiffs are unable to reconcile Defendants' inconsistent positions in refusing to produce any communications with Avondale concerning the Merger, yet referring Plaintiffs to Avondale, a non-party, for such communications.  Plaintiffs submit that Defendants' referral to Avondale constitutes a waiver of any purported privilege.

[12] Plaintiffs are not seeking production of documents relating to prior audits.  Rather, they have limited their discovery requests to the Merger.  Thus, their requests are not overly broad or unduly burdensome.

exception" set forth in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970).  Motion at 18-23.  Defendants do not dispute that Plaintiffs have shown good cause for obtaining the discovery.  Defs.' Resp. at 19-20.  Rather, their sole argument is that the fiduciary exception does not apply because this action is a direct action, rather than a derivative action, on behalf of shareholders.  *Id.*

Defendants are wrong and Plaintiffs' claims are properly brought as direct claims. *See* Section II.B.2., *infra*.  Moreover, courts have expressly rejected Defendants' argument and held the fiduciary exception applies in direct actions where, as here, there is a "mutuality of interests" and shareholders of the corporation are alleged to be acting "inimically to stockholder interests."  *Galena Street Fund, L. P. v. Wells Fargo Bank, N.A.*, No. 12-cv-00587-BNB-KMT, 2014 WL 943115, at *3 (D. Colo. Mar. 10, 2014) (*citing Herrmann v. Rain Link, Inc.*, 2012 WL 1207232, at *6-7 (D. Kan. Apr. 11, 2012)). Accordingly, courts, including this Court, have applied the fiduciary exception outside the context of shareholder derivative actions, including class actions such as this.  *See, e.g., Galena*, 2014 WL 943115, at *2 (acknowledging that the fiduciary exception was not limited to the "corporation/shareholder context"); *Pattie Lea, Inc., et. al. v. Dist. Court of Denver*, 161 Colo. 493 (1967) (finding fiduciary exception applied in action brought on behalf of plaintiff stockholder "and all other stockholders similarly situated").[13]

---

[13] *See also, e.g., Fausek v. White*, 965 F. 2d 126, 130 (6th Cir. 1992), *cert. denied*, 506 U.S. 1034 (1992) ("Nothing in the language or the reasoning of Garner…limits its holding [to only derivative actions]."); *Panter v. Marshall Field & Co., et. al.*, 80 F.R.D. 718, 722-23 (N.D. Ill. 1978) (granting motion to compel in class action for violation of federal securities laws and breach of fiduciary duty, finding fiduciary exception under *Garner* applied); *Aguinaga v. John Morell and Company*, 112 F.R.D. 671 (D.

Finally, Defendants do not dispute that their reliance on advice of counsel as an affirmative defense implicitly waives any attorney-client privilege.  Defs.' Resp. at 19-21.  Defendants have repeatedly asserted their reliance on advice of counsel as a defense in their response to this Motion, as well as in their Answer (Dkt. No.19 at 12), document requests and interrogatories,[14] responses to Plaintiffs' Interrogatories (Ex. 4)[15] and the Recommendation Statement.[16]  Plaintiffs are particularly puzzled by the inconsistencies in Defendants' response to this Motion.  While they are withholding documents based upon privilege, they simultaneously rely on advice of counsel and experts in support of their legal arguments, including that the business judgment rule allows them to rely on the advice of counsel and experts (Defs.' Resp. at 7-8) and that Plaintiffs have failed to rebut the presumption.  *Id.* at 9.[17]  They even go so far as to invite Plaintiffs to inquire into these very issues at depositions.  *See, e.g.*, *Id.* at 10 ("If Plaintiffs truly want to

---

Kan. 1986) ("shortly after *Weil*, the Fifth Circuit, the creator of the *Garner* doctrine, made it clear that the *Garner* rationale was not limited to derivative suits by current shareholders.").

[14]  *See* Supplemental Affidavit of Shannon L. Hopkins in Support of Motion to Compel ("Hopkins Supp. Aff.") Ex. 1, Request Nos. 24, 25; Interrogatory Nos. 16, 17).

[15]  In responding to Plaintiffs' Interrogatory No. 4 regarding Defendants "basis for your conclusion that the $2.02 per share Merger price was 'fair'", Defendants responded that "the determination is based upon multiple factors in the exercise of the Board of Directors' individual business judgment *as fully informed and advised by the professional advisers retained by the Special Committee*." (Emphasis added).

[16]  Hopkins Supp. Aff., Ex. 2 at 11 ("At the meeting held on October 14, 2012, the Special Committee, acting with the advice and assistance of its legal and financial advisors, unanimously determined . . . (ii) to recommend to the Board that the Transaction Documents and the Contemplated Transactions be approved and adopted in all respects.").

[17]  In arguing why Plaintiffs have not rebutted the business judgment rule, asserting "[t]he directors engaged Avondale, a competent group of professions, to provide a fairness opinion.  Plaintiffs have not made any allegations that, even if proved to be true, the directors did not reasonably believe Avondale to be reliable and competent.  The directors engaged Alston & Bird, accomplished securities counsel to assist with New Frontier's public filings.  Plaintiffs do not allege that the directors did not reasonably believe its counsel was reliable and competent."

15

explore issues pertaining to the reasonableness of the Individual Defendants' reliance on Avondale and Alston & Bird, they can do so during depositions . . . .").  Defendants' inconsistent positions and repeated reliance on counsel and their accountants militate towards waiver of any purported privilege.

Defendants disingenuously argue that they are "in the dark" about Plaintiffs' damages theory and, thus, cannot decide whether they are going to rely on advice of counsel.  Defs.' Resp. at 20-21.  This excuse makes no sense.  Defendants do not need the specific details of Plaintiffs' damages theory to determine whether they are going to rely on advice of counsel in approving the Merger.  Moreover, Plaintiffs have articulated to Defendants at length the entirety of their damages theory as it stands today in Plaintiffs' discovery responses, in the Amended Scheduling Stipulation and on numerous other occasions.  Plaintiffs' theory is currently based upon publicly available information that they specifically cite in their damages explanation (in light of Defendants' continued refusal to produce any of Avondale's valuation analyses and communications with auditors).  Thus, it is disingenuous for Defendants to claim they are "unclear" about Plaintiffs' damages theory.  Further, Defendants have not told Plaintiffs what specific additional information they need that Plaintiffs have not provided or otherwise moved to compel such information.  Aside from Defendants' claim that they lack information regarding Plaintiffs' damages theory, they have failed to articulate any reason why their reliance on advice of counsel defense does not waive their privilege assertions with respect to Plaintiffs' other claims.

If forced to wait until trial to inquire about Defendants' reliance on counsel and accountants, Plaintiffs would be severely prejudiced. *Hawkins v. Dist. Court In & For Fourth Judicial Dist.*, 638 P.2d 1372 (Colo. 1982). As discussed above and in Plaintiffs' Motion, Defendants have not met their burden for demonstrating that New Frontier's communications with its Financial Advisors are privileged and, thus, those documents and communications must be produced.

### 2. The Accountant-Client Privilege Does Not Apply

Defendants do not dispute that there is no accountant-client privilege under federal law. Defs.' Resp. at 21. Their only argument for why Plaintiffs are not entitled to documents from the Company's auditors concerning the Merger appears to be that Plaintiffs' federal claims do not constitute a significant enough part of the case. Where, as here, Plaintiffs' federal and state law claims significantly overlap, courts have permitted discovery on the accountant-client privilege. *See, e.g.*, *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir.2000); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992).

Moreover, as set forth in Plaintiffs' Motion, the accountant-client privilege does not apply to Plaintiffs' state law claims because Plaintiffs have demonstrated "good cause" under the fiduciary exception for waiving the privilege and because Defendants have otherwise waived any purported privilege they have by relying on the advice of their experts as a defense. Motion at 26-27; *Westinghouse Electric Corporation v. Republic of the Philippines*, 951 F.2d 1414, 1426, n.12 (3d Cir. 1991) ("If partial waiver does disadvantage the disclosing party's adversary by, for example, allowing the disclosing

17

party to present a one-sided story to the court, the privilege will be waived as to all communications on the same subject."); *Weck v District Court of Second Judicial Dist.*, 161 Colo. 384, 422 (1967); Motion at 26-27. [18]

### E. Defendants Should be Compelled to Produce the Transcripts from Mr. Weiner's Arbitration Proceedings in Their Entirety

Defendants do not dispute that the deposition transcripts from Mr. Weiner's wrongful termination arbitration proceedings are relevant and that they are required to produce at least some portion of the transcripts. Defs.' Resp. at 22-23. The parties' only dispute arises from the issue of whether the transcripts should be produced in their entirety. Contrary to Defendants' contentions, Mr. Weiner's arbitration proceedings bear directly on the issues raised in this litigation including, *inter alia*, whether the Board: (i) failed to conduct an informed process by excluding the Company's founder and Chief Executive Officer ("CEO") with the most knowledge about New Frontier's business and prospects; (ii) intentionally removed Weiner from the process and his post as CEO in order to steer a sale of New Frontier to LFP; and (iii) removed Weiner from management and the Board because of his opposition to their excessive Board fees and self-dealing. Thus, the transcripts regarding Mr. Weiner's termination are directly relevant to numerous of Plaintiffs' claims and should be produced in their entirety.

---

[18] Defendants' reliance on *Roberts* (Defs.' Resp. at 22) is misplaced. In *Roberts*, unlike here, the discovery the defendant sought from the accountants was related to the Special Committee's internal investigation into allegations by the SEC of securities fraud. 254 F.R.D. 371. The court found that the attorneys' disclosure of certain mental impressions to the accountants (not the other way around as in this case) in connection with this investigations were privileged under the common interest doctrine where "any disclosures made to the auditors does not amount to a waiver as their assistance is necessary for [the law firm] to properly conduct its investigation. . . ." *Id.* at 382. Here, any communications between New Frontier's attorneys and auditors were in the context of business advice related to the Merger and unrelated to any potential legal action.

Defendant should not be permitted to, themselves, unilaterally decide what portions of the transcripts are responsive to Plaintiffs' "topics." Defs.' Resp. at 22. Plaintiffs have more than amply demonstrated that the transcripts are relevant to their claims and, thus, they are not going on a "fishing expedition" as Defendants erroneously suggest. *Id.* Moreover, the policy to err on the side of providing broad discovery favors production of the entire transcripts. Defendants can certainly challenge their admissibility at trial. *John Q. Hammons*, 2009 WL 891805, at *2 (granting motion to compel and declining to rule on the ultimate admissibility of evidence or its weight).

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

### A. Defendants' Attempt to Litigate the Merits of Plaintiffs' Claims Is Inappropriate on a Motion to Compel

It is well-settled that Plaintiffs are entitled to relevant discovery that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). At the discovery stage, Defendants are not permitted to assert merits-based arguments as a basis to shirk their discovery obligations. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (At the motion to compel stage, the parties are not litigating the merits of the underlying claim but rather, "the court should consider the totality of circumstances, weighing value of material sought against burden of providing it, and taking into account society's interest in furthering truth-seeking function in particular case before court.") (*quoting Rowlin v. Alabama*, 200 F.R.D. 459, 461 (M.D. Ala. 2001)). Rather, such arguments regarding the merits of Plaintiffs' claims and the admissibility of discovery are properly made at the summary judgment or trial phase of

the litigation, after discovery is complete and the parties have all of the facts before them. *Id*; *John Q. Hammons*, 2009 WL 891805, at *2.

In their response, Defendants make numerous arguments concerning the merits of Plaintiffs' claims as pled in their Complaint (Defs.' Resp. at 7-14), before the completion of fact and expert discovery, as a basis for not providing any further discovery.  But these merits-based arguments are not something new that all of a sudden arose halfway through the discovery process making them relevant now as opposed to before discovery began. Rather, such merits-based arguments would, if anything, have been a basis for not providing *any* discovery more properly asserted on a motion to dismiss and not halfway through the discovery process.

Defendants' arguments should be summarily rejected on this Motion as premature and, as discussed below, are without merit.

**B. Plaintiffs' Claims Are Meritorious**

**1. Plaintiffs Will Demonstrate that Defendants Breached Their Fiduciary Duties of Due Care and Loyalty and, Thus, Are Not Entitled to the Business Judgment Rule Presumption**

The business judgment rule "establishes a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *Ajay Sports, Inc. v. Casazza*, 1 P.3d 267, 275 (Colo. App. 2000).  To rebut the presumption, a plaintiff must demonstrate that the director defendant breached a fiduciary duty to the plaintiff.  *CDX Liquidating Trust v. Ve??rock Assocs.*, 640 F.3d 209, 215 (7th Cir. 2011). Breach of the duty of loyalty or due care will defeat the presumption afforded by the

business judgment rule.  *Id.* ("the presumption can be overcome by proof that the director breached his fiduciary duty to the corporation--his duty of loyalty and his duty to exercise due care in its performance"); *In re Tri-Star Pictures*, 634 A.2d 319, 333 (Del. 1993) ("A breach of either the duty of loyalty or the duty of care rebuts the presumption that the directors have acted in the best interests of the shareholders") (quotation omitted).

Plaintiffs will demonstrate that the Board breached its fiduciary duties in connection with this Merger, thereby rebutting the business judgment presumption. Specifically, Plaintiffs assert that the Board breached its duties by steering the sales process in a manner that would result in a sale to Larry Flynt, Defendant Isaacman's longtime personal friend and client.  The Individual Defendants accomplished this goal by excluding Weiner, the Company's CEO, and David Nicholas, the board member with the most industry experience, from the process and discussions with potential bidders. They then sued the Company's largest bidder and shareholder at the outset of the process (without full Board approval), which had chilling effect on the sales process by deterring other interested bidders from making an acquisition offer, at least until the lawsuit settled. The Individual Defendants also excluded other interested bidders who made offers to acquire the Company from the process.  Rather than engage with other bidders to try and obtain a higher price, the Board refused to provide any diligence materials and rushed into the Merger with LFP.  In order to avoid further shareholder attacks on the Board's excessive fees and self-dealing, which had caused the Board serious reputational concerns, the Board convinced a friendly buyer, LFP, to acquire New Frontier by agreeing to sell it for an inadequate price.

These facts demonstrate the Board breached its fiduciary duties sufficient to rebut the business judgment presumption, contrary to Defendants' unsupported, blanket assertion that Plaintiffs have provided "no factual support" that would rebut the business judgment presumption.  Defs.' Resp. at 9.[19]

### 2. Plaintiffs Have Properly Asserted Their Claims Directly on Behalf of New Frontier's Former Public Shareholders

Defendants do not dispute that Count I of Plaintiffs' Complaint is properly brought as a direct claim on behalf of Plaintiffs.  Rather, they claim that Counts Two, Three and Four are "owned by the company itself" and that, as a result, the claims should have been pled derivatively instead of directly.   Defs'. Resp. at 10.   Jurisprudence has long recognized, however, that interference with informed shareholder voting rights, particularly in the merger and acquisition context, is the quintessential basis for a *direct*, not derivative, action because the duty of truthful disclosure is owed directly to the shareholder, not the corporation.  *See, e.g., Rivera v. Rivera*, 2007 WL 5210199, at *3 (Colo. Dist. Ct.) (Plaintiffs "are seeking damages that they suffered when they failed to take advantage of a stock offering *because information was allegedly concealed from them*. . . Thus, the plaintiffs could not bring the claim in a derivative capacity and thus *they do have standing to bring the claim in their personal, individual capacities"*) (Emphasis added).  Voting rights are contractual in nature and it is the shareholder, not the corporation that possesses the voting rights which ultimately decide whether a transaction, such as the merger here, will be approved.  *See e.g., Nicholson v. Ash*, 800

---

[19] To the extent Defendants seek to later assert the affirmative defense of exculpation under C.R.S. § 7-108-402, they failed to raise it in their answer, in this Motion or anywhere else and, thus, waived that defense.  C.R.C.P. 8(c); *Town of Carbondale v. GSS Properties, LLC*, 169 P.3d 675 (Colo. 2007).

P.2d 1352, 1356 (Colo. Ct. App. 1990) ("Of course, if the stockholder is a party to a contract, whether express or implied, with the directors or some other third party, he may maintain a personal suit against that third party"); *Hampton v. Tri-State Fin. Corp.*, 30 Colo. App. 420, 426, 495 P.2d 566, 569 (1972) ("It is settled that the relationship of stockholders to the corporation is one of contract and that the rights and duties of both parties grow out of that contract").[20]  Moreover, because it is the public shareholder and not the corporation who will be tendering her shares on the basis of the inadequate Recommendation Statement, as a result of a flawed process and for inadequate consideration, the claims belong to her and not the corporation.  *Id.*

Indeed, as one legal commentator has explained, this is the "archetypal" example of a direct shareholder action:

> [A]n example of a direct claim is one brought by an individual shareholder against a corporation's board of directors for a breach of duty to disclose. For example, if the shareholders receive incomplete information before voting for a merger, the nondisclosure would directly injure the shareholders deprived of an opportunity to vote their shares meaningfully. The incomplete information does not injure the company in any way that a remedy can redress; therefore, the only redress available is for the individual stockholders.

---

[20] *See also, e.g., In re Tri–Star Pictures, Inc., Litig.,* 634 A.2d 319, 330 (Del. 1993) ("A special injury is established where there is a wrong suffered by plaintiff that was not suffered by all stockholders generally or where the wrong involves a contractual right of the stockholders, such as the right to vote."); *Avacus Partners, L.P. v. Brian,* C.A. No. 11001, 1990 WL 161909 (Del. Ch. Oct. 24, 1990) (where board issues stock so as to dilute the voting power of stockholders, stockholders suffer special injury for direct claim); *cf. Carmody v. Toll Bros., Inc.,* 723 A.2d 1180, 1189 (Del. Ch. 1998) (where shareholder rights plan prohibited the stockholders from electing a new board in the future with the authority to redeem the rights under the plan, the stockholders pled special injury for direct claim); *In re Gaylord Container Corp. Shareholders Litig.,* 747 A.2d 71, 79 (Del. Ch. 1999)("[A] wrongful impairment by fiduciaries of the stockholders' voting power or freedom works a personal injury to the stockholders, not to the corporate entity.").

Zachary D. Olson, *Direct or Derivative: Does it Matter After Gentile v. Rossette?* J. Corp. Law 33:2, 597, 599 (2008) (Appendix C).

Defendants' position that the corporation possesses any legal claims involving shareholder disclosure rights leading up to a shareholder decision to tender or vote on a merger is absurd because corporations do not possess the voting rights to ultimately approve a merger, shareholders do. As such, Defendants' provision of misleading or inadequate information in a Recommendation Statement concerning such a vote violates the fiduciary duty of disclosure **owed directly to shareholders** --- not a duty owed to the corporation.  Shareholders may sue and assert their informed voting rights in a direct capacity when those rights are impaired through inadequate or misleading disclosures. *See, e.g.*, *First Horizon Merch. Servs., Inc. v. Wellspring Capital Mgmt., LLC*, 166 P.3d 166, 182 (Colo. Ct. App. 2007) (Director's misrepresentations in press releases, letters and telephone conferences "alleged harm and injury that [was] suffered directly."); *Matter of Educators Grp. Health Trust*, 25 F.3d 1281, 1286 (5th Cir. 1994) (claims based on alleged false misrepresentations to plaintiff are direct injury).[21]

Here, the Complaint sets forth at length the material omissions from the Recommendation Statement that form the basis for much of the fiduciary breaches alleged and Defendants' failure to disclose material information that would have enabled

---

[21] *See also, e.g.*, *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 772 (Del. 2006) ("This Court has recognized, as did the Court of Chancery, that where it is claimed that a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct."); *Thornton v. Bernard Techs., Inc.*, C.A. No. 962-VCN, 2009 WL 426179, at *3 (Del. Ch. 2009) ("Where the allegations implicate the right to cast an informed vote, such a claim would be direct in nature."); *In re Cencom Cable Income Partners, L.P. Litig.*, 2000 WL 130629, at *4 (Del. Ch. 2000) ("Inadequate disclosures bearing on individual investors' right to cast a fully informed vote constitute direct claims.").

shareholders to make an informed decision about whether to tender their shares.  *See, e.g.*, ¶¶ 109-114.

Furthermore, Delaware courts (and other states following Delaware's lead) have explicitly and repeatedly recognized that shareholder claims challenging a merger due to a tainted process and because of inadequate consideration are direct and not derivative. The Delaware Supreme Court in *Tooley v. Donaldson, Lufkin & Jerette, Inc.*, explained that in making a determination as to what is a direct or derivative claim, the Court should consider with respect to either the individual shareholder or the corporation (1) who suffered the alleged harm, and (2) who would receive the benefit of any recovery or other remedy.  845 A.2d 1031, 1039 (Del. 2004).  There is no policy reason why Colorado law should diverge from Delaware law, the nation's corporate law fount, on this bedrock issue.

Based on the facts set forth in the Complaint and the law set forth herein, Plaintiffs properly brought their fiduciary duty claims as a direct claims.[22]   In any event,

_____

[22] The cases Defendants cite in support of their incorrect assertion that Plaintiffs' claims may only be brought derivatively (Defs' Resp. at 10-11) address factual scenarios where the alleged harm was to the *corporation itself*, rather than directly to the shareholder and, thus, are inapplicable here.  Moreover, none of those actions involve impairment of disclosure and voting rights held directly by shareholders or a tainted sales process that resulted in shareholders directly receiving inadequate consideration for their shares in the merger.  *See River Mgmt. Corp v. Lodge Prop's Inc.*, 829 P.2d 398, 403-404 (Colo. App. 1991) (alleging corporate waste and mismanagement); *O'Malley v. Casey*, 589 P.2d 1388 (1979) (alleging excessive compensation); *Ireland v. Wynkoop*, 539 P.2d 1349, 1257 (Colo. App. 1975) (alleging waste and mismanagement); *Colt v. Mt. Princeton Trout Club*, Inc., 78 P.3d 1115, 1120 (Colo. App. 2003) (alleging corporate waste and dissolution); and *Buechner v. Rouse*, 538 P.2d 117 (Colo. Ct. App. 1975) (Determining the right to sue for corporate mismanagement belonged to the corporation, but "with respect to actions for breach of contract and inducing breach, existence of material issues of fact precluded summary judgment."); *Combs v. PriceWaterhouse Coopers LLP*, 382 F.3d 1196 (10th Cir. 2002) (alleging corporate waste,  mismanagement and self-dealing); *Bithell v. W. Care Corp.*, 762 P.2d 708 (Colo. App. 9188) (corporation does not owe *independent contractor* fiduciary duties); *Stat-Tech Liquidating Trust, et. al. v. Fenster, et. al.*, 981 F. Supp. 1325 (D. Colo. 1997) (Hon. J. Kane) (finding [a]s a general rule, a stockholder cannot maintain a personal action against a director whose action causes harm **to the**

Defendants have waived this argument by not raising it in their Answer. C.R.C.P. 9(a)(1) ("[w]hen a party desires to raise an issue as to the . . . capacity of any party to sue . . . or the authority of a party to sue . . . in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge . . ."); *Ashton Properties, Ltd. v. A.L. Overton*, 107 P.3d 1014, 1018 (Colo. App. 2004).

### 3. Appraisal Is Not the Exclusive Remedy

Colorado, like most jurisdictions, recognizes an exception to the appraisal remedy (the "Exclusivity Exception") where, as here the plaintiff alleges fraudulent and/or unlawful conduct and is not merely attacking the stock price:

> A shareholder entitled to dissent and obtain payment for the shareholder's shares under this article may not challenge the corporate action creating such entitlement *unless the action is unlawful or fraudulent with respect to the shareholder or the corporation.*

C.R.S. § 7-113-102(4) (emphasis added). The Colorado Supreme Court squarely addressed the Exclusivity Exception in *Szaloci v. Jon R. Behrmann Revocable Trust*, 90 P.3d 835 (2004). In *Szaloci*, the plaintiff challenged a corporate merger alleging the defendants breached their fiduciary duties by structuring a sale of the company for their own personal benefit, seeking compensatory damages. *Id.* at 837-38. In holding that appraisal was the plaintiff's sole remedy, the court explained that, "having elected the statutory appraisal remedy and not having sought *equitable* relief from the corporate

---

*corporation*" and declining to rule on standing issue) (emphasis added). Claims challenging the fairness of a merger to the minority shareholders, such as those brought here, are not, and could never be, an injury to the corporation. Thus, Plaintiffs' claims can only be brought as direct shareholders claims to address the harm to them from the Board agreeing to sell their stock for an inadequate price and other violations.

action, the [plaintiff] has trigg[er]ed the exclusivity provision." *Id.* at 842 (emphasis added). The court further noted that the plaintiff's complaint "does not seek to rescind the sale" or any other form of equitable relief (*Id.*) and that in order to invoke the Exclusivity Exception, "it is not enough to plead a cause of action over which equity has jurisdiction; the dissenting shareholder *must request equitable relief.*" *Id.* at 842 n.9 (emphasis added).

Moreover, it is well settled in the Tenth Circuit and under Delaware law, which Colorado courts often look to in deciding matters of Colorado corporate law,[23] that a plaintiff may pursue claims post-merger under an exclusivity exception where, as here, the plaintiff has alleged claims for breach of fiduciary duty and unfair dealing in connection with a merger. *See, e.g.*, *Weinberger v. UOP*, 457 A.2d 701, 714 (Del. 1983) ("the appraisal remedy . . . may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved."); *McMinn v. MBF Operating Acquisition Corp.*, 142 N.M. 160, 164-74 (N.M. 2007) (finding the Delaware approach instructive and holding that "the New Mexico appraisal remedy was not intended to replace common law actions for breach of fiduciary duty."); *Bingham Consolidation Co. v. Groesbeck*, 105 P.3d 365, 373 (Utah Ct. App. 2004) (noting "courts generally agree that 'the appraisal remedy . . . may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are

---

[23]  While Delaware law does not expressly have an exclusivity provision, Delaware courts have read such an exception into the statute. *Delaware Open MRI Radiology Assocs. v. Kessler*, 898 A.2d 290 (Del. Ch. 2006) (pursuant to *Weinberger* and its progeny, "[i]t is not unusual [in Delaware] for the same merger to be challenged in a statutory appraisal action and in a separate breach of fiduciary duty damage action).

involved.'…Thus, a claim of breach of fiduciary duty should be considered outside of the appraisal proceeding.") (internal citations omitted).

Plaintiffs' seek equitable relief in the form of rescission or rescissory damages[24] and additional disclosures for Defendants' alleged breaches of fiduciary duty and unlawful self-dealing and, thus, the Exclusivity Exception applies here.  Nevertheless, Defendants contend that Plaintiffs' sole remedy is appraisal (Defs.' Resp. at 3), without providing any support whatsoever.  As discussed above, Appraisal is not the exclusive remedy under Colorado law and Plaintiffs have properly asserted their fiduciary duty claims.

### 4. Plaintiffs Have Standing to Assert Their Exchange Act Claims Because Defendants Concealed Numerous Material Facts from Plaintiffs and New Frontier's Other Public Shareholders

Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act") require full and complete disclosure in connection with tender offers.  Specifically, Section 14(e) provides that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

---

[24] It is well-settled that rescissory damages are a form of equitable relief.  *See, e.g.*, *Szaloczi*, 90 P. 3d at 841-42 ("Only in an equitable action can [the plaintiff] possibly obtain rescission or rescissory damages.") (quoting *Nagy v. Bistricer*, 770 A.2d 43, 56 (Del. Ch. 2000)).  *See also Earthinfo v. Hydrosphere Resource*, 900 P. 2d 113, 119 (Colo. 1995) (in discussing the determination of rescission damages, "[s]ince rescission is an equitable remedy, it is within the trial court's sound discretion to determine the method for accomplishing a return to the *status quo ante* based upon the facts as determined by the trier of fact.").

15 U.S.C. § 78n(e) (1988); *Rice v. Hamilton Oil Corp.*, 658 F. Supp. 446, 448 (D. Colo. 1987) (To find a violation of Section 14(e), plaintiff must show a "material nondisclosure in connection with the tender offer."). These regulations aim to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure pursuant to a tender offer.

Plaintiffs allege that Defendants have violated Sections 14(d)(4) and 14(e) of the Exchange Act by omitting material facts in New Frontier's Recommendation Statement pursuant to the tender offer and, thus, have standing to assert their Exchange Act claims. Among these material omissions are: (i) the reason(s) the Board terminated Company founder and CEO Michael Weiner (¶ 113(p)); (ii) Avondale's potential conflicts of interest (¶ 113(r));[25] (iii) New Frontier's free cash flows for fiscal years 2013 through 2017 for Management I Forecast and Management II Forecast (¶ 109(e));[26] (iv) the methods by which Avondale selected the ranges of terminal value multiples and discount rates used in its *Discounted Cash Flow Analysis* (¶ 111(a));[27] and (v) the respective

---

[25] *In re John Q. Hammons Hotels Inc. S'holder Litig.*, 2009 Del. Ch. LEXIS 174, at *55-56 (Del Ch. Oct. 2, 2009) ("This Court . . . has stressed the importance of disclosure of potential conflicts of interest of financial advisors. . . It is imperative that stockholders be able to decide for themselves what weight to place on a conflict faced by the financial advisor.") (internal citation omitted); *David P. Simonetti Rollover IRA v. Margolis*, 2008 Del. Ch. LEXIS 78, at *25-*36 (Del Ch. Jun. 27, 2008) (same and granting preliminary injunction).

[26] *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc., et. al.*, C.A. No. 5402-VCS, 2010 WL 1931084, at *2 (May 13, 2010) (noting that "management's best estimate of the future cash flow of a corporation that is proposed to be sold in a cash merger is clearly material information" that shareholders ought to have when deciding whether it is in their best interest to accept the proposed merger price).

[27] *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175 (Del. Ch. 2010) (proxy materially misleading as to, among other things, how advisor came with discount rate); *Buston v. Zoll Med. Corp.*, CIV.A. 12-1190, 2013 WL 5612566 (Mass. Super. Mar. 15, 2013) ("the critical information includes: Zoll's financial forecasts; the comparable companies BBH selected, and the multiples or discount rates used to arrive at enterprise value under the different valuation approaches that BBH

multiples observed by Avondale for the purported comparable companies and comparable transactions that it relied upon in its *Comparable Company Analysis* and *Precedent Transactions Analysis* (¶ 111(b-c)).[28] These facts have never been disclosed to New Frontier's stockholders.  Thus, contrary to Defendants' representations, "the issues about which Plaintiffs complain" (Defs.' Resp. at 13-14) were <u>never</u> disclosed.

Defendants erroneously assert as a basis to avoid providing further discovery that Plaintiffs do not have standing to assert their Exchange Act claims because they did not tender their shares in reliance on the alleged materially misleading Recommendation Statement.  Defs.' Resp. at 12-13.  As an initial matter, reliance is not an element of a Section 14(e) claim.  15 U.S.C. § 78n(e); *Kahn v. Lynden Inc.*, 705 F. Supp. 1458, 1463-64 (W.D. Wash. 1989); *Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp.2d 1124, 1131 (N.D. Cal. 2006).  Moreover, it is well-settled that Plaintiffs who were also mislead by the proxy statement, may assert Exchange Act claims, regardless of whether they tendered.  15 U.S.C. § 78n(e) (Nonofferees have standing to sue for violations of Section 14(e) as well as offeree shareholders); *Wellman v. Dickinson*, 475 F. Supp. 783, 817 (S.D.N.Y. 1979); *Smallwood v. Pearl Brewing Co*., 489 F.2d 579 (5th Cir. 1974), *cert. denied*, 419 U.S. 873, (1974).

---

employed"); *In re Topps Co. S'holders Litig.*, 926 A.2d 58, 74-77 (Del. CH. 2007) ("raising discount rates and lowering terminal multiples drives down the resulting value range. . . highly-paid valuation advisors should be able to rationally explain them"); *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 202-04 (Del. Ch. 2007) ("projections of this sort are probably among the most highly-prized disclosures by investors").

[28] *Id.*

Contrary to Defendants' mischaracterization of the facts here, Plaintiffs assert that the Recommendation Statement was materially incomplete because it did not disclose a number of material facts necessary for them to have made an informed decision about whether to tender their shares (¶¶ 109-114) and, thus, they did not tender.  Accordingly, Defendants' misstatement of the record that Plaintiffs did not tender because they "knew" the Recommendation Statement was false (Defs.' Resp. at 12) has no merit.[29]

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion.


Dated: August 22, 2014                    DYER & BERENS LLP
                                          ROBERT J. DYER III
                                          JEFFREY A. BERENS
                                          DARBY K. KENNEDY

                                           /s/ JEFFREY A. BERENS
                                          303 East 17th Avenue, Suite 810
                                          Denver, CO 80203
                                          Tel: (303) 861-1764
                                          Fax: (303) 395-0393
                                          bob@dyerberens.com
                                          jeff@dyerberens.com

                                          *Liaison Counsel for Plaintiffs*

---

[29] The cases Defendants rely upon for the erroneous proposition that Plaintiffs have no standing because they did not tender are inapposite.  Defs.' Resp. at 12-13.  *Spivak v. Petro-Lewis Corp.*, involved a motion for class certification where the plaintiffs admitted they were not mislead by any misrepresentations.  120 F.R.D. 693, 694 (D. Colo. 1988).  The *Spivak* court ultimately did not decide the issue of whether the plaintiffs had standing.  In *Rice v. Hamilton Oil Corp.*, in ruling on summary judgment, the court found the plaintiff failed to allege a "material" misstatement in connection with the tender offer and otherwise had knowledge and, thus, was not deceived by the defendants.  658 F. Supp. 446, 448 (D. Colo. 1987).

31

LEVI & KORSINSKY, LLP
SHANNON L. HOPKINS
STEPHANIE A. BARTONE
30 Broad Street, 24th Floor
New York, NY  10004
Tel: 212-363-7500
Fax: 212-363-7171
shopkins@zlk.com
sbartone@zlk.com

*Counsel for Plaintiff Telke*

CRANE DUNHAM PLLC
STEPHEN J. CRANE
JASON T. LEEHAN
2121 Fifth Avenue
Seattle, WA 98121
Tel: 206-292-9090
Fax: 206-292-9736
scrane@cranedunham.com
jleehan@cranedunham.com

*Counsel for Plaintiff Moreland*

4844-9405-5709, v.  1

32

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

<u>s/ Jeffrey A. Berens</u>
Jeffrey A. Berens
Attorney for Plaintiffs
DYER & BERENS LLP
303 East 17th Avenue, Suite 810
Denver, CO 80203
Telephone: (303) 861-1764
FAX: (303) 395-0393
Email: jeff@dyerberens.com