Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-02941-JLK

CRAIG TELKE, and
WILLIAM DOUGLAS MORELAND,
Individually and on Behalf of All Others Similarly Situated,

       Plaintiffs,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO, and
WALTER TIMOSHENKO,

       Defendants.

_____

**SECOND AMENDED STIPULATED SCHEDULING AND DISCOVERY ORDER**
_____

## 1.  DATE OF CONFERENCE

On January 31, 2014, the Court held its first scheduling and discovery conference

pursuant to Fed. R. Civ. P. 16 and D.C.COLO.LCivR 16.1.

## 2.  STATEMENT OF CLAIMS AND DEFENSES

**a.  <u>Plaintiffs' Statement</u>**:

Plaintiffs assert claims on behalf of themselves and a putative class of former New

Frontier Media, Inc.'s ("New Frontier" or "Company") shareholders against four of New

Frontier's former members of the board of directors (the "Individual Defendants") who

are believed to have committed the alleged wrongdoing for breach of fiduciary duty arising out of the Individual Defendants' sale of New Frontier to LFP Broadcasting, LLC ("LFP Broadcasting") by means of an unfair process for an unfair price and pursuant to a materially misleading 14D-9 Recommendation Statement, filed with the U.S. Securities and Exchange Commission on October 29, 2012.  Plaintiffs also claim that New Frontier aided and abetted the Individual Defendants' breaches of fiduciary duties.

Plaintiffs further assert individual claims against the Individual Defendants for violation of Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with their failure to disclose material information to New Frontier's public shareholders prior to the expiration of the tender offer, forcing shareholders to make an uninformed decision about whether to tender their shares.

Plaintiffs allege that the Individual Defendants breached their fiduciary duties to further their desire to control the Company in order to preserve their lucrative seats on its Board as long as possible and to shepherd a sale of the Company to their preferred bidder, LFP Broadcasting, headed by defendant Alan Isaacman's close personal friend and former legal client, Larry Flynt.  As a result of Defendants' gross misconduct, Plaintiffs and New Frontier's other public stockholders were actively misled into tendering their shares for an inadequate price and seek rescission of the merger or, in the alternative, recessionary damages, as well as the Individual Defendants' disgorgement of wrongfully obtained director and other fees.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as this action alleges violations of Section 14(d) and 14(e) of the Exchange Act.

This Court also has pendent jurisdiction over state law breach of fiduciary duty claims pursuant to 28 U.S.C. §1367.

**b.  <u>Defendants' Statement</u>**:

This case was originally brought by Plaintiff Craig Telke before the closing of a tender offer by LFP for New Frontier Media's shares whereby shareholders owning more than 16.2 million shares of the Company's stock were to receive a 82% premium over the pre-bid market value of their shares ("Tender Offer"). The value of the Tender Offer to the Company's shareholders was in excess of $33.3 million, at the ultimate price of $2.06 per share received by the shareholders.  The value of Mr. Telke's shares at the Tender Offer price was $618.  Mr. Telke's motion for a preliminary injunction that would have prevented the Tender Offer from closing was summarily denied by this Court when Mr. Telke was unable to offer any evidence in support of his motion.

By the Amended Complaint, Mr. Telke has joined forces with William Douglas Moreland.  Moreland himself was the subject of a FINRA inquiry into pre-announcement trading in the Company's stock.  The allegations of the amended complaint add little to the original complaint.  In sum, Plaintiffs claim that the Tender Offer and subsequent merger was the product of a "flawed process" and for a "grossly inadequate price."  Such

allegations are all too common in the class action litigation frequently brought in the aftermath of corporate mergers and acquisitions.  Moreover, such allegations in this case totally lack merit.  The Tender Offer was the result of an extensive and highly publicized public bidding process where 20 companies were solicited to bid and four active bidders chose to participate.  The successful bidder, LFP Broadcasting, raised its offer three times and presented the highest and best offer.  No other bidder was waiting in the wings to match or exceed LFP Broadcasting's offer.  Contrary to Plaintiffs' assertion, the Board did not attempt to shepherd the sale to LFP Broadcasting based upon the alleged close personal friendship between Mr. Isaacman and LFP Broadcasting's head, Larry Flynt.  In fact there was, at the time, no close personal relationship between Mr. Isaacman and Mr. Flynt and any such relationship that had at one time existed ended more than 11 years earlier.  The Company's independent investment adviser opined after extensive analysis that the offer was fair to the Company's shareholders.  There is simply no basis for the claim that the price was too low, let alone that it was "grossly inadequate." As a matter of Colorado law, the Board was entitled to and did rely upon its adviser's advice.  The Board's actions are therefore completely immune from challenge under the Colorado statutory business judgment rule as interpreted by the Colorado courts.

The Plaintiffs also allege flaws in the Company's public disclosures of the events leading up to the termination of the Company's CEO and its other disclosures in the Company's Tender Offer Solicitation/Recommendation Statement filed on Schedule

14D-9 with the SEC (14D-9). The fact of Mr. Weiner's termination is disclosed in the 14D-9, and the Company made extensive disclosures of the dispute that led to his termination in filings with the SEC on Forms 8-K and 8-K/A as well as in public press releases. Indeed, the vast majority of the amended complaint's 125 paragraph allegations are taken directly from the 14D-9, Forms 8-K and 8-K/A and the attachments thereto. The balance of Plaintiffs' allegations of misleading disclosures amount to nothing more than nitpicking the disclosures on the basis of the Company's investment banker's fairness opinion. Plaintiffs' nitpicking aside, all material information concerning the banker's fairness opinion is laid out in detail in the Company's 14D-9. Once again the Board retained competent and experienced securities counsel, investment bankers and corporate counsel to advise it as to the appropriate disclosures. Under Colorado law, the Board is entitled to and did rely upon the information, opinions, reports and statements of its professional advisers and is not liable to the corporation or its shareholders for any acts or omissions in the course of discharging their duties in this transaction. C.R.S. §§ 7-108-401(2)-(4).

Aside from maintaining that Plaintiffs' claims are wholly without substantive merit, Defendants raise several affirmative defenses thereto. These include failure to state a claim and lack of standing. These defenses are based upon, among other things, Plaintiffs' failure to allege that they actually tendered their shares in the Tender Offer and therefore either relied to their detriment upon the alleged misrepresentations or non-

disclosures or were caused some harm thereby.  Defendants raise law of the case as a defense to Plaintiff's seeking equitable relief because the Court has already decided that equitable relief is not available and therefore Plaintiffs are relegated to whatever damages they can muster.  Defendants raise the doctrines of estoppel, waiver, ratification, and/or laches due to Plaintiffs', and in particular Moreland's, failure to object to the merger in a timely fashion.  Furthermore, Plaintiffs failed to exercise their dissenters' rights and appraisal remedy under Colorado Revised Statutes §§ 7-113-101, *et seq.* which were Plaintiffs' sole and exclusive remedy with respect to the Merger.  This amounts to the affirmative defensives of waiver and failure to mitigate Plaintiffs' damages.  Plaintiffs' federal securities law claims fail to comply with the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1) and (2).  Finally, Plaintiff Moreland's individual equitable claims are barred by his unclean hands relating to his pre-merger trading activities that apparently gave rise to an inquiry by FINRA.

### 3.  UNDISPUTED FACTS

The undisputed facts are set forth in Exhibit 1, as attached to this Second Amended Stipulated Scheduling and Discovery Order.

### 4.  COMPUTATION OF DAMAGES

**<u>Plaintiffs' Statement</u>**:

Plaintiffs seek to rescind the merger or, in the alternative, recessionary damages, including interest thereon, for all losses sustained as a result of Defendants' wrongdoing,

including, but not limited to, the difference between the fair value of the Company and the merger consideration of $2.02 per share and interest thereon, costs and expenses, attorneys' fees, expert fees and any other relief as deemed appropriate by the Court. Plaintiffs also seek statutory damages pursuant to Section 14(d) and 14(e) of the Exchange Act.

Plaintiffs are unable to determine the full extent of damages as a result of Defendants' alleged wrongful conduct at this time because they have not had the benefit of any discovery.  Plaintiffs submit that in order to determine the precise amount of damages sought, Plaintiffs first need access to documents concerning, at a minimum, the preparation and determination of New Frontier's financial projections used by Avondale Partners LLC ("Avondale"), the Company's financial advisor in the merger, to opine that the merger price was fair, Avondale's analyses supporting its fairness opinion and New Frontier's financial projections during the relevant period leading up to the merger. Plaintiffs also need deposition testimony from a representative from Avondale, which advised the Individual Defendants in connection with the merger, the person(s) most knowledgeable about the Company's financial projections and a Board representative most knowledgeable about the process employed to sell the Company.  In addition, Plaintiffs anticipate that the calculation of damages in this action will also be the subject of expert analysis and discovery.

Plaintiffs submit that the appropriate calculation of damages in this case for both of Plaintiffs' Exchange Act claims[1] and breach of fiduciary duty claims is the difference between the merger price of $2.02 per share and the fair value of New Frontier at the time New Frontier and LFP entered into the Merger Agreement, reflecting an adequate change-of-control premium and further adjusted upward for synergies realized in the merger.  Plaintiffs' preliminary damages analysis, based solely upon publicly available information, yields a value for New Frontier of $5.80 to $9.00 per share per share.  Thus, the Merger consideration of $2.02 per share undervalues the Company by $3.78 to $6.98 per share.

Plaintiffs' higher value for the Company is based upon the following: (1) applying EBITDA[2] and Revenue multiples in the Comparable Companies Analysis, Precedent Transactions Analysis and Discounted Cash Flow ("DCF") Analysis, rather than the unconventional and distortive EBIT[3] multiples that Avondale used in its analyses supporting its fairness opinion (Compl. ¶¶ 88-95)[4]; (2) using only *comparable* companies and transactions in the respective analyses (Compl. ¶¶ 93, 96-99); (3) applying an appropriate discount rate (Compl. ¶ 98, n.3); (4) accounting for the value of synergies received in the merger (Compl. ¶¶ 82-85, 99); and (5) accounting for a reasonable control

---

[1] Damages pursuant to Section 14(d) and 14(e) of the Exchange Act, are generally determined as the difference between the merger consideration and the fair value of the shares.
[2] Earnings Before Interest, Taxes, Depreciation and Amortization ("EBITDA").
[3] Enterprise Value ("EV")/Earnings Before Interest and Taxes ("EBIT").
[4] References to "Compl. ¶ __" are to Plaintiffs' Amended Class Action Complaint for Breach of Fiduciary Duty and Violations of the Federal Securities Laws.

premium to which New Frontier shareholders were entitled in this change of control transaction.

First, in order to properly value New Frontier, EBITDA and Revenue multiples from *comparable* companies and precedent transaction should be used. From there, a reasonable multiple range within the observed comparables is then applied to New Frontier's earnings to value the Company. Avondale improperly used the unconventional EBIT multiples in its analyses, which artificially decreased the valuation of New Frontier. In addition to being unconventional, EBIT multiples are also inappropriate because they distort New Frontier's value downward as a result of an inherent negative bias that results from excluding the Company's unsustainably high depreciation and amortization expense. (Compl. ¶¶ 88-95). Further demonstrating the inappropriateness of using EBIT multiples is the fact many companies do not even report EBIT -- five of the companies that Avondale used in its Comparable Companies Analysis only reported EBITDA, but not EBIT. (*Id.*, ¶ 92). Moreover, using EBIT multiples in the Precedent Transactions Analysis yielded no meaningful result because New Frontier's EBIT multiple was negative. (*Id.*, ¶ 92).

Second, in order to correctly value New Frontier, only comparable companies and transactions should be used. Avondale relied upon companies in its Comparable Companies Analysis, which were not comparable to New Frontier because of, among other reasons, they were not in compliance with debt covenants and/or financial reporting

requirements where New Frontier had no debt and was in compliance. (Compl. ¶¶ 93, 96-99). Those non-comparable companies artificially reduced the value of New Frontier and should have been excluded.

Third, in conducting a DCF Analysis, an appropriate discount rate must be applied. In the case of New Frontier, an appropriate discount rate based upon its peers, as reported by Bloomberg, is 11.8%, rather than the extraordinarily high discount rate range of 20%-30% used by Avondale in its DCF Analysis. (Compl. ¶ 98, n.3). Avondale's use of an insupportably high discount rate artificially reduced the value of New Frontier.

Finally, New Frontier shareholders were not compensated for an estimated $34 million in synergies (based on a 5.5x multiple) that LFP received from its acquisition of New Frontier, or as much as $2.09 per share.

Plaintiffs will be able to provide the precise amount of damages sought upon submitting their opening expert report, currently proposed for October 10, 2014, subject to this Court's approval.

**Defendants' Statement**:

The Amended Complaint seeks "rescission of the Merger Agreement and/or money damages." Complaint at ¶ 16; *see also id.* at page 56 (seeking "recessionary [sic] damages"). The undoing of a complex and now 13-month old merger of two companies cannot feasibly be accomplished. Rescission of the Merger Transaction would not only hopelessly complicate current business affairs of the merged entities and their business

partners, but would involve clawing back the consideration paid to New Frontier's shareholders.  The federal securities laws do not require "the court to unscramble a corporate transaction merely because a violation occurred."  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 386 (1970) (citation and internal quotation marks omitted).  This is especially true here, where no violation occurred as described above.

Where, as here, rescission is impracticable, the appropriate measure of damages is "the fair value of [the owned] interest as of the time of the [allegedly improper] merger." *Andrews v. Blue*, 489 F.2d 367, 376 (10th Cir. 1973) (citation omitted); *see also Mills*, 396 U.S. at 389 ("If commingling of the assets and operations of the merged companies makes it impossible to establish direct injury from the merger, relief might be predicated on a determination of the fairness of the terms of the merger at the time it was approved.").  Realistically, the Amended Complaint simply seeks money damages due to some hypothetical price that Plaintiffs allege could have been obtained.  Defendants submit they are entitled to a particularized statement of the basis of Plaintiffs' claim that the merger price was "grossly inadequate" or "grossly unfair". (Complaint ¶¶ 10, 12, 77, 79 and 82).  It is not sufficient for Plaintiffs to state that details concerning calculation of their damages will await the submission of expert reports months from now, and Defendant's written discovery requests seek information concerning Plaintiffs' claims concerning the merger price. To date, Plaintiffs have produced no evidence to show that New Frontier's shares were truly worth $5.80 to $9.00 a share, as they allege.  These

numbers are fanciful.  New Frontier's shares traded in the mid to low $1 per share amounts for over a year before the merger announcement.  New Frontier is in an increasingly competitive marketplace due to the advent of cheap digital production techniques and internet video distribution channels.  The very same group—Longkloof— that initially wanted to force its $1.35 per share offer on New Frontier ultimately accepted a price of $2.06 per share when it tendered its stock in the merger.  The assertion that New Frontier was worth $5.80 to $9.00 a share is a fantasy.  There are no facts supporting Plaintiffs' outlandish share price claim.

Even if Plaintiffs cobble some theoretical basis for plausibly arguing that New Frontier's shares were worth $5.80 to $9.00 a share, they have an additional significant hurdle to clear because there was no one willing and ready to pay that amount.  The principles of loss and transaction causation demand that Plaintiffs show that a buyer would have actually paid those inflated prices.  *City Partnership Co. v. Lehman Bros., Inc.,* 344 F. Supp. 2d 1241, 1252 (D. Colo. 2004) (dismissing securities and breach of fiduciary duty claims where there was "no indication that there was a potential purchaser in the wings ready to offer a better price").

### 5.  REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER Fed. R. Civ. P. 26(f)

**a.  Date of Rule 26(f) meeting**:  October 10, 2013, supplemented by continuing discussions thereafter.

**b.  Name of each participant and each party represented**:

- Shannon L. Hopkins and Stephanie Bartone of Levi & Korsinsky, LLP, attorneys for Craig Telke;

- Stephen J. Crane and Jason T. Leehan of Crane Dunham PLLC, attorneys for Plaintiff William Douglas Moreland;

- Darby K. Kennedy of Dyer & Berens LLP, liaison counsel for Plaintiffs Craig Telke and William Douglas Moreland; and

- Stuart N. Bennett and Aaron D. Goldhamer of Jones and Keller, P.C. for Defendants New Frontier Media, Inc., Alan Isaacman, Melissa Hubbard, Hiram J. Woo, and Walter Timoshenko.

c. **Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1)**:   The parties stipulated to extend the deadline for exchanging initial disclosures to October 30 and 31, 2013.

d. **Statement as to when Rule 26(a)(1) disclosures were made or will be made**: Pursuant to Fed. R. Civ. P. 26(a)(1) and the individual rules of practice set forth in this Court's Pretrial and Trial Procedures Memorandum, Plaintiffs served their initial disclosures on Defendants on October 30, 2013 and Defendants served their initial disclosures on Plaintiffs on October 31, 2013.

e. **Statement concerning any agreements to conduct informal discovery**: None.

**f. Statement concerning any agreements or proposals regarding electronic discovery**:  The parties agree that electronic discovery will be necessary in this case and have agreed in principle to the use of computer-assisted review in order to identify responsive electronic source information ("ESI") rapidly and efficiently.

Defendants have searched for and collected ESI.  Defendants did not seek the input of Plaintiffs or their counsel in connection with their efforts to search for and collect ESI.  Counsel for the parties met and conferred on February 7, 2014 regarding Defendants' efforts to collect relevant documents. The parties have continued to correspond concerning issues pertaining to ESI, have discussed general terms of an agreement regarding same, and will advise the Court concerning the result of those ongoing discussions.

Plaintiffs have requested that Defendants produce the documents with a dat.file, opt file and OCR in order for Plaintiffs' counsel to load and search such documents onto their Eclipse document management system.  Plaintiffs submit that this is the standard format that large document productions, such as this are produced in similar cases and will aid in the much more efficient review of ESI.  Defendants have agreed to produce each document with an OCR file if possible and have otherwise agreed to produce each document in pdf format.  Upon Plaintiffs' request as to specific document, Defendants have

agreed to produce the requested documents in native format if the document existed in native format at the time of collection.

On May 20, 2014, Plaintiffs moved for an order compelling the discovery of certain categories of documents that Plaintiffs believe Defendants are inappropriately withholding based upon purported attorney-client and accountant-client privileges and relevancy grounds ("Motion to Compel").

Defendants filed their response in opposition to the Plaintiffs' Motion to Compel on August 1, 2014, the due date for filing such a response having been extended by agreement of the parties and approved by the Court.

Plaintiffs filed their reply to Defendants' response on August 22, 2014, an extended date by agreement of the parties and approved by the Court.

**g. Statement concerning any other agreements or procedures to reduce discovery and other litigation costs**:  The parties agree to share, coordinate, and phase discovery wherever practicable to reduce costs. The parties also agree to avoid duplicative discovery. Additional cost-reduction measures should include, wherever practicable: (1) relevant witnesses should be deposed only once; (2) discovery requests will be joint, including combined sets of requests for production, interrogatories and requests for admission; and (3) the parties will cooperate regarding non-party discovery. The parties agree to discuss opportunities where depositions may be conducted by video or

telephonic conference when practicable and agreed upon by the parties. The parties also agree to certain phasing of discovery, as reflected in the Case Plan and Schedule below.

**h.  Statement regarding use of unified exhibit numbering system**:  The parties agree to use the unified exhibit numbering system.  Each exhibit will be given only one Arabic number throughout the litigation and that number will be used for that exhibit for all purposes.

**i.  Statement regarding anticipated costs of litigation**:  Litigation costs will depend largely upon the amount of merits and expert discovery conducted by the parties.

<u>**Plaintiffs' Statement**</u>:

Plaintiffs believe that it is simply too early in this litigation to accurately anticipate costs or fees.  Plaintiffs' counsel have and will continue to share efforts and costs whenever possible, however, to ensure cost efficiency and non-duplication.

<u>**Defendants' Statement**</u>:

Defendants estimate that the case plan and schedule outlined by Plaintiffs, below, will involve hundreds of thousands of dollars to accomplish and should not be permitted unless Plaintiffs fully comply with their disclosure obligations as to the basis of their claimed damages.  Further, Defendants are of the view

that Plaintiffs' claims are barred by their failure to exercise their statutory appraisal remedies and any merits discovery should be held in abeyance pending the Court's resolution of this issue.

## 6.  CASE PLAN AND SCHEDULE

**a.  Deadline for Joinder of Parties**:  November 10, 2014.

**b.  Deadline to Amend Pleadings**:  November 10, 2014.

**c.  Discovery Cutoff**:

### Merits Document Discovery

1.    Electronic Discovery:  The parties have agreed to meet and confer no later than February 7, 2014 regarding the scope of electronic discovery, the preservation of electronic documents, the method for production of electronic documents, search terms and the format for production of electronic document.  Defendants have collected and preserved all applicable electronic documents and do not believe there is anything further to gather.

2.    Merits document discovery, including production of documents and responses to interrogatories, shall be completed within14 days after the court's order on Plaintiffs' Motion to Compel or such additional time as the court may allow.

3.    Merits discovery, unless otherwise provided herein, shall be completed by December 12, 2014.

**d.  Dispositive Motion Deadline**:

    1.     Any motions for summary judgment shall be filed and served no later than May 18, 2015.

    2.     Briefs in opposition to any motions for summary judgment shall be filed and served no later than June 17, 2015.

    3.     Briefs in reply to any motions for summary judgment shall be filed and served no later than June 30, 2015.

**e.  Expert Witness Disclosure**:

(1) Each party shall identify anticipated fields of expert testimony, if any, by December 18, 2014.

(2) Statement regarding any limitations proposed on the use or number of expert witnesses: Plaintiffs will endeavor to utilize experts only to the limited extent necessary to prove their case.  Defendants will utilize experts to the extent necessary to oppose Plaintiffs' experts.

(3) The parties shall designate all experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before January 9, 2015.  Each party shall serve all opening expert reports no later than January 9, 2015.

(4) The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ.

P. 26(a)(2) on or before February 5, 2015.  Each party shall serve all sur-rebuttal reports, limited to responding to the rebuttal reports, by February 19, 2015.

(5) The parties agree that all designations of experts shall include a statement describing the methodology to be used by the particular expert.  The parties understand and agree that *Daubert/Kumho Tire* motions challenging any proposed methodology may be considered by the Court before any expert is deposed, without prejudice to the opportunity to file subsequent motions. The parties understand and agree with the goal of avoiding extensive discovery based on faulty expert methodologies and therefore these motions may result in amended designation with either a new expert, a revised methodology or both.

(6) Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2), no exception to the requirements of the rule will be allowed by stipulation of the parties unless the stipulation is approved by the Court.

**f.   Deposition Schedule**:

1.     Depositions of merits witnesses, excluding experts, shall be completed by December 12, 2014.

2.     Defendants shall depose the Plaintiffs during this period.

3.     Depositions of experts shall be completed by March 20, 2015.

| | Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|---|
| 1 | Alan Isaacman | | 9:30 a.m. | 7 Hours |
| 2 | Melissa Hubbard | | 9:30 a.m. | 7 Hours |
| 3 | Hiram J. Woo | | 9:30 a.m. | 7 Hours |
| 4 | Walter Timoshenko | | 9:30 a.m. | 7 Hours |
| 5 | Michael Weiner | | 9:30 a.m. | 7 Hours |
| 6 | David Nicholas | | 9:30 a.m. | 7 Hours |
| 7 | Grant Williams | | 9:30 a.m. | 7 Hours |
| 8 | Marc Callipari | | 9:30 a.m. | 7 Hours |
| 9 | Scott Berdan, Corporate Counsel, Holland & Hart | | 9:30 a.m. | 7 Hours |
| 10 | Scott Piper, a former Chief Technology Officer of New Frontier | | 9:30 a.m. | 7 Hours |
| 11 | Karsten Lampka, of Avondale Partners | | 9:30 a.m. | 7 Hours |
| 12 | Adam Rothstein, Longkloof Limited's financial advisor | | 9:30 a.m. | 7 Hours |
| 13 | Michael H. Klein, LFP Broadcasting President | | 9:30 a.m. | 7 Hours |
| 14 | Damien J. Park, of Hedge Fund Solutions, LLC, an advisor to the Company | | 9:30 a.m. | 7 Hours |
| 15 | A representative from Manwin Holdings S.A.R.L. | | 9:30 a.m. | 7 Hours |
| 16 | A representative from Bidder C or Bidder D | | 9:30 a.m. | 7 Hours |
| 17 | A representative of Longkloof, Limited, or its related entity Hoskin Holdings | | 9:30 a.m. | 7 Hours |
| 18 | Stuart Duncan, a potential acquirer of New Frontier | | 9:30 a.m. | 7 Hours |
| 19 | Plaintiff Craig Telke | | 9:30 a.m. | 7 Hours |
| 20 | Plaintiff Douglas William Moreland | | 9:30 a.m. | 7 Hours |
| 21 | Larry Flynt | | 9:30 a.m. | 7 Hours |
| 22 | A representative of Grant Thornton | | 9:30 a.m. | 7 Hours |
| 23 | Bob Miller, Perkins Coie | | 9:30 a.m. | 7 Hours |

**g. Interrogatory Schedule**:

No contention interrogatories or requests for admission shall be served before December 11, 2014, but may be served at any time after that date but no later than April 1, 2015.

**h. Schedule for Request for Production of Documents**:

Subject to ruling on any objections, including the pending Plaintiffs' Motion to Compel, good faith production of all documents shall be completed no later than 14 days after the court's order on Plaintiffs' Motion to Compel or such additional time as the court may allow..

**i. Discovery Limitations**:

**1. Any limits any party proposes on the length of any deposition:** The parties agree that the presumptive 7-hour limit in Fed. R. Civ. P. 30(d)(1) applies except as otherwise provided by the rule, agreed by the parties or ordered by the Court. Depositions shall be taken in accordance with D.C.COLO.LCivR 30.1.

**2. Any modifications any party proposes on the presumptive numbers of depositions or interrogatories contained in the Federal Rules**: The ten (10) deposition limit set forth in the Fed. R. Civ. P. 30 is amended to permit twenty-three (23) depositions, including depositions of both parties and non-parties, for each side.

Additional depositions may be scheduled or extended in time as the parties shall agree or pursuant to Court order.  The parties agree that no modifications should be applied to the presumptive number of interrogatories allowed for by the Federal Rules of Civil Procedure. The parties reserve the right to ask the Court to modify such limit if the need arises.

3.     **Any limitations any party proposes on the number of requests for production of documents and/or requests for admissions**: The parties agree that no limitations should be applied to the number of document requests or requests for admissions allowed for by the Federal Rules of Civil Procedure.  The parties reserve the right to ask the Court to set such limits if the need arises.

**j.  Other Planning or Discovery Orders**:

1.     **Confidentiality/Protective Order**:  Pursuant to Fed. R. Civ. P. 26(c), the parties agree to enter into a Stipulated Protective Order concerning the treatment of Confidential Information, attached hereto as Exhibit 2. Such agreement ensures that any document containing information that may injure the parties' business or privacy interests will not be disclosed to the public.

### 7.  SETTLEMENT

Pursuant to Fed. R. Civ. P. 26(f)(2), the parties certify that they held a mediation on July 1, 2014, in New York City regarding possible settlement or resolution of this action.  While unsuccessful, both sides remain  open to the possibility of a resolution of the action, and the mediator is in frequent contact with counsel for both sides to that end.  While the parties believe a settlement conference before a magistrate judge would be premature at this juncture, in the event that any party believes that assistance from the Court or a magistrate judge would advance settlement prospects, they will promptly inform the Court.

### 8.  OTHER SCHEDULING ISSUES

**a.  Statement of those discovery or scheduling issues, if any, on which counsel, after a good faith effort, were unable to reach an agreement**:

Plaintiffs' Motion to Compel is pending.  The items in dispute are set forth in Plaintiffs' Motion.

**b.  Statement of anticipated motions to be filed, by whom, estimated time of filing, and any proposed briefing schedule**:

With respect to class certification, the parties propose the following schedule:

(1) Plaintiffs shall file and serve their motion for class certification by no later than March 9, 2015.

(2) Defendants shall file and serve any opposition brief to the motion for class certification by no later than April 9, 2015.

      (3) Plaintiffs shall file and serve any reply brief in support of their motion for class certification by no later than April 23 2015.

**c.**  **Statement whether trial is to the court or jury.  If a mixed trial, e.g., declaratory judgment and damages, specify which claims are to be tried to a jury and which to the court**:

Trial is to the Court.

### 9.  AMENDMENTS TO DISCOVERY AND SCHEDULING ORDER

This Stipulated Scheduling and Discovery Order may be altered or amended only upon motion showing good cause and order entered thereon.

DATED this _____ day of September 2014.

BY THE COURT:

_____
JOHN L. KANE, Jr. Senior Judge
United States District Judge

**STIPULATED SCHEDULING AND DISCOVERY ORDER APPROVED:**

/s/ Shannon L. Hopkins
Shannon L. Hopkins
Stephanie Bartone
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, NY 10004
(212) 363-7500

*Attorneys for Plaintiff Craig Telke*

/s/ Stuart N. Bennett
Stuart N. Bennett
Aaron D. Goldhamer
JONES AND KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
(303) 573-1600

*Attorneys for Defendants New Frontier Media, Inc., Alan Isaacman, Melissa Hubbard, Hiram J. Woo, and Walter Timoshenko*

/s/ Stephen J. Crane
Stephen J. Crane
Jason T. Leehan
CRANE DUNHAM PLLC
2121 Fifth Avenue
Seattle, WA 98121
(206) 292-9090

*Attorneys for Plaintiff William Douglas Moreland*

/s/ Jeffrey A. Berens
Jeffrey A. Berens
Darby K. Kennedy
DYER & BERENS LLP
303 East 17th Avenue, Suite 810
Denver, CO  80203
(303) 861-1764

*Liaison Counsel for Plaintiffs Craig Telke and William Douglas Moreland*

4822-2287-9518, v.  1

# EXHIBIT 1

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

**The following facts are undisputed:**

1.   New Frontier Media, Inc. ("NOOF" or the "Company") was a leader in transactional television as well as general motion picture entertainment.

2.   NOOF delivered transactional adult-themed pay-per-view networks to cable and satellite operators across the United States.

3.   NOOF provided content to video-on-demand (VOD) platforms on cable and satellite.

4.   NOOF was co-founded by Michael Weiner ("Weiner").

5.   In 2003, Weiner was appointed President of NOOF.

6.   Weiner served as Chief Executive Officer and Chairman of the NOOF board of directors ("Board") from 2004 until his termination on September 15, 2012. Weiner remained a member of the Board until he resigned on October 10, 2012.

7.   On October 15, 2012, NOOF announced in a press release that it had signed a definitive agreement to be acquired by LFP Broadcasting LLC, an affiliate of L.F.P., Inc. ("LFP Broadcasting") pursuant to which LFP Broadcasting would commence a tender offer to acquire all of the outstanding shares of New Frontier for $2.02 per common share in cash up front, or approximately $33 million, plus a contingent cash payment right per share to receive up to an additional $0.06 per common share, tied to the extent to which New Frontier's available cash balance

1

**STIPULATED SCHEDULING AND DISCOVERY ORDER**
**EXHIBIT 1**

at the closing of the tender offer, less unpaid transaction expenses exceeded $11,514,000 (the "Tender Offer").

8.     Under the terms of the agreement as announced in NOOF's October 15, 2012, press release, an affiliate of LFP Broadcasting would commence a cash tender offer for all the issued and outstanding shares of NOOF, which if successful, would be followed by a second-step merger in which any shares of NOOF not tendered would be converted into the right to receive the same per share consideration paid to NOOF shareholders in the tender offer, subject to shareholders' dissenters rights under Colorado law (the "Merger").

9.     In 2012, the NOOF Board consisted of six members – Weiner, David Nicholas ("Nicholas"), Alan Isaacman ("Isaacman"), Melissa Hubbard ("Hubbard"), Walter Timoshenko ("Timoshenko") and Hiram Woo ("Woo"), until Nicholas' resignation on September 29, 2012 and Weiner's resignation on October 10, 2012.

10.    At the time that the Tender Offer was announced on October 15, 2012, the Board consisted of four members – Messrs. Isaacman, Timoshenko and Woo and Ms. Hubbard.

11.    The Tender Offer expired on November 27, 2012.

12.    LFP Broadcasting gave notice of its intent to exercise its Top-Up Option on November 28, 2012.

2

### STIPULATED SCHEDULING AND DISCOVERY ORDER
### EXHIBIT 1

13.     The NOOF Board received compensation for their service as directors, for services on committees of the Board and as chairs of board committees.

14.     Isaacman has served as a senior member of the law firm of Isaacman, Kaufman & Painter ("IK&P") from 1993 to the present.

15.     IK&P has received compensation for services provided to NOOF.

16.     IK&P received approximately $39,000 for legal services rendered during the fiscal year ended March 31, 2012.

17.     According to its Schedule 13(D) filed with the Securities and Exchange Commission ("SEC") on January 17, 2012, Longkloof Limited ("Longkloof") was the beneficial holder of 15.7% of NOOF's outstanding shares.

18.     Larry Flynt founded and  controls L.F.P., Inc.

19.     On October 29, 2012, NOOF filed a Solicitation/Recommendation Statement on Schedule 14d-9 with the U.S. Securities and Exchange Commission (the "Recommendation Statement").

20.     New Frontier was a corporation organized and existing under the laws of the State of Colorado.

21.     Prior to the Merger, the Company maintained its principal executive offices at 6000 Spine Road, Suite 100, Boulder, CO 80301.

**STIPULATED SCHEDULING AND DISCOVERY ORDER**
**EXHIBIT 1**

22.     Mr. Isaacman was Chairman of the NOOF Board from September 2012 and a director of the Company from 1999 until the Merger closed on November 28, 2012.

23.     Mr. Isaacman was also the Chairman of the Special Committee from February 7, 2012 through November 28, 2012.

24.     Ms. Hubbard was a director of the Company from 2002 until the Merger closed on November 28, 2012.

25.     Ms. Hubbard was also a member of the Special Committee from February 7, 2012 through November 28, 2012.

26.     Defendant Hiram J. Woo was a director of the Company from 2000 until November 28, 2012.

27.     Defendant Walter Timoshenko was a director of the Company from 2007 until November 28, 2012.

28.     Mr. Timoshenko was also a member of the Special Committee from February 7, 2012 through November 28, 2012.

29.     LFP Broadcasting has offices at 8484 Wilshire Boulevard, Suite 900, Beverly Hills, CA 90211.

30.     LFP Broadcasting or its affiliated companies markets the HUSTLER brand through media properties and licensing agreements, including HUSTLER TV.

4

Case 1:12-cv-02941-JLK   Document 41-1   Filed 03/03/14   USDC Colorado   Page 8 of 11

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

31.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Section 14(d) and 14(e) of the Exchange Act.

32.      Venue is proper in this district.

33.      The Individual Defendants were subject to certain legal obligations imposed by applicable law as directors of New Frontier.

34.      Founded in 1997 and headquartered in Boulder, Colorado, New Frontier is a leader in transactional television and adult-themed adult entertainment in North America, Europe and Latin America.

35.      The majority of New Frontier's revenue is derived from three operating segments: Transactional TV, Film Production, and Direct-to-Consumer.

36.      The Transactional TV segment distributes branded adult entertainment PPV networks and VOD content through electronic distribution platforms including cable television and DBS operators.

37.      The Film Production segment produces and distributes mainstream and adult-themed films that are distributed through U.S. and international premium channels, PPV channels and VOD platforms.

38.      The Direct-to-Consumer segment aggregates and resells adult-themed content via the internet, selling content to subscribers through the Company's consumer websites.

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

39. NOOF was governed by rules governing publicly traded companies.

40. For fiscal year 2012, each Board member who was not a Company employee received an annual fee of $80,000 payable in equal quarterly installments for performance of general board of director services, including attendance at regular and special board meetings and an additional annual fee of $7,500 for each then constituted board committee on which they served.

41. For fiscal year 2012, the chairman of each then constituted board committee received an additional annual fee of $2,500.

42. During calendar year 2012, NOOF's committees of its board were a Compensation Committee, an Audit Committee, a Nominations Committee, a Special Committee, an Executive Committee and a Compliance Committee.

43. Mr. Isaacman was appointed Chairman of the Special Committee.

44. For serving on the Special Committee, each Board member received a monthly fee of $5,000.

45. As the chairman of the Special Committee, Mr. Isaacman, was paid an additional $5,000 per month.

46. In July 2012, a Compliance Committee was formed by the Board consisting of Ms. Hubbard and Mr. Woo.

47. Mr. Damien Park ("Park"), of Hedge Fund Solutions, LLC, provided services to NOOF.

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

48.     On March 9, 2012, Longkloof issued a press release publicly announcing its
proposal which also indicated that Longkloof was considering a proxy contest at
the Company's next annual meeting of shareholders to replace all of the members
of the Board other than Messrs. Weiner and Nicholas.

49.     On March 9, 2012, the Company issued a press release confirming the receipt of
Longkloof's March 9, 2012, proposal and announcing that the Special Committee
would, with the assistance of its legal and financial advisers, evaluate the proposal
and determine the appropriate response thereto.

50.     On April 23, 2012, the Board reconstituted the Special Committee to reduce its
size from five members to three, with the continuing members being Mr.
Isaacman, Ms. Hubbard and Mr. Timoshenko.

51.     On May 31, 2012, NOOF filed a lawsuit against Longkloof and certain affiliates
and/or associated persons, including Messrs Golding and Rothstein which (i)
alleged, among other things, (A) violations of Section 13(d) of the Exchange Act
for their failure to disclose the nature, extent and purpose of their "group" as
required under such statute and (B) their failure to comply with the advance notice
provisions of the Company's Bylaws for the nomination of candidates for election
to the Board at the 2012 annual meeting of shareholders, and which (ii) sought,
among other things, a declaratory judgment that the purported nominations to the
Board by Longkloof were invalid and an injunction prohibiting Longkloof from

7

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

further actions with regard to their shares or the acquisition of additional shares until they complied with the requirements of Section 13(d) of the Exchange Act.

52.   On June 11, 2012, Longkloof filed counterclaims in the lawsuit, alleging among other things, that the Board breached its fiduciary duties in denying Longkloof's nomination of a slate of four directors and with respect to the Board's actions in response to Longkloof's unsolicited offer to acquire the Company.

53.   On July 6, 2012, the Board reconstituted the Special Committee to add Mr. Woo as a member of the Special Committee.

54.   On July 11, 2012, the Company entered into a settlement agreement with Longkloof and other associated parties relating to the lawsuit filed by the Company on May 31, 2012.

55.   Weiner resigned from the Board on October 10, 2012 and Nicholas resigned from the Board on September 28, 2012.

56.   Mr. Nicholas sent a letter to the Board on September 28, 2012, to which the Company responded on October 4, 2012.   The full text of both Nicholas' September 28, 2012 letter and the Company's October 4, 2012 response were made public in the Company's 8-K filing with the SEC on October 4, 2012.

57.    On October 8, 2012 Mr. Nicholas sent another letter to the Company, to which the Board responded on October 10, 2012.   The full text of both Mr. Nicholas' October 8, 2012 letter and the Board's October 10, 2012 response were made

## STIPULATED SCHEDULING AND DISCOVERY ORDER
## EXHIBIT 1

public in the Company's Form 8-K/A filing with the SEC on October 10, 2012. The Company's 8-K/A filing also included additional copies of Nicholas' September 28, 2012 letter and the Company's October 4, 2012 response.

58.   Weiner sent a letter to the Board on October 10, 2012 to which the Board responded on October 16, 2012.  The full text of both Weiner's October 10, 2012 letter and the Board's October 16, 2012 response were made public in the Company's 8-K filing with the SEC on October 16, 2012.

59.   On October 15, 2012, the Denver Post published an article about the Merger.

60.   On November 1, 2012, *Seeking Alpha* published an article about the Merger.

61.   On November 1, 2012, *Business Insider* published an article about the Merger.

62.   Avondale concluded the $2.02 per share price was "fair."

63.   As disclosed in the Recommendation Statement, Avondale used EBIT multiples in its financial analyses in support of Avondale's fairness opinion on the Merger.

64.   Depreciation and amortization are *non-cash* expenses resulting from the purchases of fixed and intangible assets, which are excluded from EBITDA but included in EBIT.

65.   As disclosed in the Recommendation Statement, Avondale selected EBIT multiples of 5x and 7x in the *Discounted Cash Flow Analysis*.

66.   As disclosed in the Recommendation Statement, in its *Precedent Transactions Analysis*, Avondale examined LTM EBIT multiples in 35 comparable transactions.

**STIPULATED SCHEDULING AND DISCOVERY ORDER**
**EXHIBIT 1**

67.   As disclosed in the Recommendation Statement, Avondale "was unable to calculate an implied value for the Company using LM EBIT multiples because the Company's LTM EBIT was negative."

68.   As disclosed in the Recommendation Statement, Avondale performed a *Comparable Companies Analysis* which examined New Frontier's LTM 2012 and 2013 EBIT multiples and certain information for selected comparable companies was not entirely available.

69.   By November 27, 2012, approximately 83.1% of the Company's outstanding shares had been tendered to LFP Broadcasting in the tender offer.

70.   Plaintiffs William Douglas Moreland and Craig Telke did not tender to LFP Broadcasting in the tender offer any of the shares held or beneficially owned by them.

71.   On November 28, 2012, LFP exercised the Top-Up Option to acquire the rest of the shares necessary to effect a short form merger under Colorado law.

72.   According to Recommendation Statement, as of October 26, 2012, the Company had 16,264,213 shares of common stock outstanding and 1,370,152 shares subject to issuance pursuant to the exercise of outstanding stock options.

73.   The Merger Agreement has resulted in a change in control of NOOF.

10

Case 1:12-cv-02941-JLK Document 41-2 Filed 03/03/14 USDC Colorado Page 1 of 10

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02941-JLK

CRAIG TELKE, and
WILLIAM DOUGLAS MORELAND,
Individually and on Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO, and
WALTER TIMOSHENKO,

      Defendants.

_____

## STIPULATION AND PROTECTIVE ORDER
_____

**Kane, J.**

      Each Party and each Counsel of Record stipulate and move the Court for a Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure concerning the treatment of Confidential Information (as hereinafter defined), and, as grounds therefor, state as follows:

      1.    In this action, at least one of the Parties has sought and/or is seeking Confidential Information (as defined in paragraph 2 below). The Parties also anticipate seeking additional Confidential Information during discovery and that there will be

questioning concerning Confidential Information in the course of depositions. The Parties assert the disclosure of such information outside the scope of this litigation could result in significant injury to one or more of the Parties' business or privacy interests. The Parties have entered into this Stipulation and request the Court enter the within Protective Order for the purpose of preventing the disclosure and use of Confidential Information except as set forth herein.

2.    "Confidential Information" means any document, file, portions of files, transcribed testimony, or response to a discovery request, including any extract, abstract, chart, summary, note, or copy made therefrom - not made available to the public - and designated by one of the Parties in the manner provided in paragraph 3 below as containing: (i) individuals' family, financial, medical, tax or personnel information; (ii) current or prospective financial or business plans, market analysis, internal strategy, strategic transactions, or proprietary planning processes; and (iii) material or information constituting a trade secret.  The disclosure of such material would harm the commercial, financial, or business interests of such party, or would otherwise create an undue risk of injury to such party that would not exist in the absence of such disclosure.

3.    Where Confidential Information is produced, provided or otherwise disclosed by a Party in response to any discovery request, it will be designated in the following manner:

    a.  By imprinting the word "Confidential" on the first page or cover of any

2

document produced;

    b. By imprinting the word "Confidential" next to or above any response to a discovery request; and

    c. With respect to transcribed testimony, by giving written notice to opposing counsel designating such portions as "Confidential" no later than ten calendar days after receipt of the transcribed testimony.

    4. All Confidential Information provided by a Party in response to a discovery request or transcribed testimony shall be subject to the following restrictions:

    a. It shall be used only for the purpose of this litigation and not for any business or other purpose whatsoever;

    b. It shall not be communicated or disclosed by any Party's counsel or a Party in any manner, either directly or indirectly, to anyone except for purposes of this case and unless an affidavit in the form of Exhibit A has been signed.

    5. Individuals authorized to review Confidential Information pursuant to this Protective Order shall hold Confidential Information in confidence and shall not divulge the Confidential Information, either verbally or in writing, to any other person, entity or government agency unless authorized to do so by court order.

    6. The Party's counsel who discloses Confidential Information shall be responsible for assuring compliance with the terms of this Protective Order with respect

to persons to whom such Confidential Information is disclosed and shall obtain and retain the original affidavits signed by qualified recipients of Confidential Information, and shall maintain a list of all persons to whom any Confidential Information is disclosed.

7. During the pendency of this action, opposing counsel may upon court order or agreement of the parties inspect the list maintained by counsel pursuant to paragraph 6 above upon a showing of substantial need in order to establish the source of an unauthorized disclosure of Confidential Information and that opposing counsel are unable otherwise to identify the source of the disclosure. If counsel disagrees with opposing counsel's showing of substantial need, then counsel may seek a court order requiring inspection under terms and conditions deemed appropriate by the Court.

8. No copies of Confidential Information shall be made except by or on behalf of counsel in this litigation and such copies shall be made and used solely for purposes of this litigation.

9. During the pendency of this litigation, counsel shall retain custody of Confidential Information, and copies made therefrom pursuant to paragraph 8 above.

10. If opposing counsel objects to the designation of certain information as Confidential Information, he or she shall promptly inform the other parties' counsel in writing of the specific grounds of objection to the designation. All counsel shall then, in good faith and on an informal basis, attempt to resolve such dispute. If after such good faith attempt, all counsel are unable to resolve their dispute, opposing counsel may move

4

for a disclosure order consistent with this order. Any motion for disclosure shall be filed within 14 days of receipt by counsel of notice of opposing counsel's objection, and the information shall continue to have Confidential Information status from the time it is produced until the ruling by the Court on the motion.

11. Use of Confidential Information in Court Proceedings: In the event Confidential Information is used in any court filing or proceeding in this action, including but not limited to its use at trial, it shall not lose its confidential status as between the parties through such use. Confidential Information and pleadings or briefs quoting or discussing Confidential Information will not be accepted for filing "under seal" or otherwise kept out of the public record in this action, however, except by court order issued upon motion of the party seeking to file the documents under seal. Any motion requesting leave to file documents under seal shall comply with the requirements of D.C.COLO.LCivR 7.2 and demonstrate that the Confidential Information at issue is entitled to protection under the standards articulated in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598-602 (1978) (applied in *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985) and *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980)).

12. The termination of this action shall not relieve counsel or other persons obligated hereunder from their responsibility to maintain the confidentiality of

Case No. 1:12-cv-02941-JLK Document 53-1 filed 08/12/14 USDC Colorado pg 44 of 47

Confidential Information pursuant to this Protective Order, and the Court shall retain continuing jurisdiction to enforce the terms of this Protective Order.

13.     By agreeing to the entry of this Protective Order, the Parties adopt no position as to the authenticity or admissibility of documents produced subject to it.

14.     Upon termination of this litigation, including any appeals, each Party's counsel shall immediately return to the producing party all Confidential Information provided subject to this Protective Order, and all extracts, abstracts, charts, summaries, notes or copies made therefrom. At that time, counsel shall also file under seal with this Court the list of individuals who have received Confidential Information which counsel shall have maintained pursuant to paragraph 6 herein, and counsel shall provide the Court with verification that any of counsel's work product referencing Confidential Information has been destroyed.

15.     Nothing in this Protective Order shall preclude any Party from filing a motion seeking further or different protection from the Court under Rule 26(c) of the Federal Rules of Civil Procedure, or from filing a motion with respect to the manner in which Confidential Information shall be treated at trial.

Dated at Denver, Colorado, this __ day of _____, 2014.

BY THE COURT:

_____
JOHN L. KANE, JR. SENIOR JUDGE
UNITED STATES DISTRICT COURT

**STIPULATED AND AGREED TO:**

/s/ Shannon L. Hopkins

Shannon L. Hopkins
Stephanie Bartone
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, NY 10004
(212) 363-7500

*Attorneys for Plaintiff Craig Telke*

/s/ Stuart N. Bennett

Stuart N. Bennett
Aaron D. Goldhamer
JONES AND KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
(303) 573-1600

*Attorneys for Defendants New Frontier Media, Inc., Alan Isaacman, Melissa Hubbard, Hiram J. Woo, and Walter Timoshenko*

/s/ Stephen J. Crane

Stephen J. Crane
Jason T. Leehan
CRANE DUNHAM PLLC
2121 Fifth Avenue
Seattle, WA 98121
(206) 292-9090

*Attorneys for Plaintiff William Douglas Moreland*

/s/ Jeffrey A. Berens

Jeffrey A. Berens
Darby K. Kennedy
DYER & BERENS LLP
303 East 17th Avenue, Suite 810
Denver, CO 80203
(303) 861-1764

*Liaison Counsel for Plaintiffs Craig Telke and William Douglas Moreland*

**EXHIBIT A**

**<u>AFFIDAVIT</u>**

STATE OF _____          )
                                                   ) ss.
COUNTY OF _____          )

_____, swears or affirms and states under penalty of perjury:

1.      I have read the Protective Order in _____, a copy of which is attached to this Affidavit.

2.      I have been informed by _____, Esq., counsel for _____, that the materials described in the list attached to this Affidavit are Confidential Information as defined in the Protective Order.

3.      I promise that I have not and will not divulge, or undertake to divulge to any person or recording device any Confidential Information shown or told to me except as authorized in the Protective Order.  I will not use the Confidential Information for any purpose other than this litigation.

4.      For the purposes of enforcing the terms of the Protective Order, I hereby submit myself to the jurisdiction of the court in the civil action referenced above.

5.      I will abide by the terms of the Protective Order.

_____
(Signature)

_____
(Print or Type Name)

Address:

_____

_____

Telephone No.: (____ ) _____

8

Case 1:12-cv-02941-JLK   Document 41-2   Filed 03/03/14   USDC Colorado   Page 10 of 10

SUBSCRIBED AND SWORN to before me this __ day of _____, 20__, by
_____.

WITNESS my hand and official seal.

_____
Notary Public

[S E A L]

My Commission Expires: _____