# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02941-JLK

CRAIG TELKE, and
WILLIAM DOUGLAS MORELAND,
Individually and on Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO, and
WALTER TIMOSHENKO,

      Defendants.

---

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

---

<u>Certificate of Conferral</u>

    The undersigned hereby certify that they have conferred with counsel for Defendants and have been authorized to represent to the Court that Defendants do not oppose the relief sought herein, but that Defendants do so only for the purposes of obtaining the Court's approval of the Settlement negotiated by the parties. Defendants reserve all defenses to the Plaintiffs' claims herein, if the Court does not preliminarily or finally approve this Settlement.

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................... 1

II.   HISTORY OF LITIGATION .................................................................................. 2

III.   THE PROPOSED SETTLEMENT ......................................................................... 6

ARGUMENT .................................................................................................................... 8

I.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
     APPROVED ............................................................................................................ 8

   A. The Settlement Was Reached Through Serious and Informed Arm's Length
      Negotiations between Experienced Counsel and the Recommendation of an
      Experienced Mediator ....................................................................................... 9

   B. Serious Questions of Law and Fact Exist that Put the Ultimate Outcome of a Trial
      in Doubt ............................................................................................................ 11

   C. The Value of the Proposed Settlement Far Outweighs the Mere Possibility of
      Future Relief After Protracted and Expensive Litigation ................................ 11

   D. The Parties Believe that the Settlement is Fair, Reasonable, and Adequate and the
      Settlement has no Obvious Deficiencies .......................................................... 12

II.   THE ACTION SHOULD BE CERTIFIED AS A CLASS ACTION FOR
      SETTLEMENT PURPOSES .............................................................................. 14

   A. Rule 23(a)(1): Numerosity ................................................................................ 15

   B. Rule 23(a)(2): Commonality ............................................................................. 16

   C. Rule 23(a)(3): Typicality .................................................................................. 17

   D. Rule 23(a)(4): Adequacy of Representation ..................................................... 18

   E. Certification Is Maintainable Under Federal Rule of Civil Procedure 23(b)(3) .... 19

   F. Co-Lead Counsel Should Be Appointed Class Counsel ................................... 21

III.   THE PROPOSED METHOD AND FORM OF NOTICE TO THE SETTLEMENT
       CLASS SATISFY THE REQUIREMENTS OF DUE PROCESS AND RULE 23
       OF THE FEDERAL RULES OF CIVIL PROCEDURE ..................................... 22

   IV.   PROPOSED SCHEDULE FOR CLASS ACTION SETTLEMENT ..................... 23

   V.   CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods v. Windsor*,
  521 U.S. 591 (1997) .................................................................................. 15, 20, 21

*DeJulius v. New Eng. Health Care Emps. Pension Fund*,
  429 F.3d 935 (10th Cir. 2005) ............................................................................ 22, 23

*DG v. Devaughn*,
  594 F.3d 1188 (10th Cir. 2010) ................................................................................. 18

*Hersey v. ExxonMobil Oil Corp.*,
  No. 07-1300-JTM, 2012 U.S. Dist. LEXIS 15803 (D. Kan. Oct. 26, 2012).................. 18

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ...................................................................................... 19

*In re Crocs, Inc. Sec. Litig.*,
  No. 07-cv-02351-PAB-KLM, 2013 U.S. Dist. LEXIS 122593
  (D. Colo. Aug. 28, 2013).............................................................................*passim*

*In re Initial Pub. Offering Sec. Litig.*,
  227 F.R.D. 65 (S.D.N.Y. 2004)................................................................................. 17

*In re Intelcom Grp. Sec. Litig.*,
  169 F.R.D. 142 (D. Colo. 1996) ................................................................................ 21

*In re Motor Fuel Temperature Sales Practices Litig.*,
  286 F.R.D. 488 (D. Kan. 2012) ................................................................................... 8

*In re S. Ohio Corr. Facility*,
  173 F.R.D. 205 (S.D. Ohio 1997) ............................................................................... 9

*In re Thornburg Mortg., Inc.*,
  912 F. Supp. 2d 1178 (D.N.M. 2012)....................................................15, 16, 17, 19, 21

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) .............................................................................. 13

*Jones v. Nuclear Pharmacy,*
  741 F.2d 322 (10th Cir. 1984) .......................................................................... 9

*Lopez v. City of Santa Fe,*
  206 F.R.D. 285 (D.N.M. 2002) ...................................................................... 16

*Lucas v. Kmart Corp.,*
  234 F.R.D. 688 (D. Colo. 2006) ........................................................... 8, 9, 11, 12

*Marisol A. by Forbes v. Giuliani,*
  126 F.3d 372 (2d Cir. 1997) ......................................................................... 17

*McEwen v. Digitran Sys.,*
  160 F.R.D. 631 (D. Utah 1994) ..................................................................... 15

*Mullane v. Cent. Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) .................................................................................... 22

*Neiberger v. Hawkins,*
  208 F.R.D. 301 (D. Colo. 2002) ..................................................................... 15

*Peters v. Nat'l R.R. Passenger Corp.,*
  966 F.2d 1483 (D.C. Cir. 1992) .................................................................... 23

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,*
  237 F.R.D. 26 (E.D.N.Y. 2006) .................................................................... 14

*Rutter & Wilbanks Corp. v. Shell Oil & Co.,*
  314 F.3d 1180 (10th Cir. 2002) ............................................................... 9, 18

*Torrisi v. Tucson Elec. Power Co.,*
  8 F.3d 1370 (9th Cir. 1993) .......................................................................... 22

*Wilkerson v. Martin Marietta Corp.,*
  171 F.R.D. 273 (D. Colo. 1997) ...................................................................... 8

Court-appointed Lead Plaintiffs Craig Telke and William Douglas Moreland ("Lead Plaintiffs"), through their counsel, Levi and Korsinsky, LLP and Crane Dunham, PLLC ("Co-Lead Counsel"), respectfully submit this unopposed motion for preliminary approval of the proposed settlement of this Action (the "Motion") on terms agreed to by the parties on October 8, 2014.

## I.    INTRODUCTION

For the reasons set forth herein, Lead Plaintiffs respectfully request that the Court enter the [Proposed] Order Preliminarily Approving the Settlement and Providing for Notice to the Class ("Preliminary Approval Order"), attached as Exhibit A to the Stipulation of Settlement (the "Stipulation"), dated April 27, 2015.[1]  The Preliminary Approval Order will:   (i) preliminarily approve the settlement as set forth in the Stipulation (the "Settlement"); (ii) preliminarily certify the above-captioned action ("Action") as a class action for settlement purposes pursuant to Federal Rule of Civil Procedure 23; (iii) approve the form, substance and means of disseminating the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), Summary Notice and Proof of Claim and Release form ("Proof of Claim");[2] and (iv) schedule a hearing to

---

[1] The Stipulation is attached as Exhibit 1 to the Affidavit of Shannon L. Hopkins in Support of Plaintiffs' Motion (the "Hopkins Aff.").  All capitalized terms herein shall have the meaning set forth in the Stipulation unless otherwise stated.

[2] The Notice, Summary Notice and Proof of Claim are attached as Exhibits C, D and E, respectively, to the Stipulation.

consider the fairness of the Settlement and Lead Plaintiffs' application for an incentive award and for an award of attorneys' fees and expenses.

The Settlement provides for the payment of $2,250,000 in cash to be paid into a settlement fund as an "all-in" amount from which all fees and expenses are to be paid except as set forth below and is the product of arm's length negotiations between the parties. The Settlement resolves Lead Plaintiffs' and the Class' claims against all Defendants.

The Settlement was the product of arm's-length negotiations between the parties. Pursuant to Federal Rule of Civil Procedure 23, Lead Plaintiffs and the Defendants respectfully and jointly request certification of a Settlement Class of all persons who owned stock in New Frontier Media, Inc. ("New Frontier" or the "Company") as of October 15, 2012 through November 27, 2012, inclusive (the "Class Period"), and who were allegedly damaged thereby (the "Settlement Class"), and appointment of Lead Plaintiffs as class representatives and Co-Lead Counsel as class counsel.

## II.    HISTORY OF LITIGATION[3]

On October 15, 2012, New Frontier announced that it had entered into an agreement (the "Merger Agreement") to be acquired by LFP Broadcasting, LLC ("LFP") pursuant to which an affiliate of LFP would commence a cash tender offer ("Tender Offer") to acquire all of New Frontier's outstanding shares of common stock for $2.02

---

[3] The facts set forth herein are those to which the Parties have agreed to in the Stipulation.

per share, plus additional contingent cash payments not to exceed $0.06 per common share tied to the extent which New Frontier's available cash balance at the close of the Tender Offer exceeded $11,514,000.  The tender offer, if successful, was to be followed by a second-step merger in which non-tendered shares would be converted into the right to receive the same per share consideration paid to the tendering shareholders, subject to dissenters' rights under Colorado law (the "Merger").

On October 29, 2012, New Frontier filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "14D-9") with the U.S. Securities and Exchange Commission ("SEC") in connection with the Tender Offer and Merger.  That same day, an affiliate of LFP commenced the Tender Offer to acquire all of New Frontier's outstanding shares.

Plaintiff Craig Telke ("Telke") commenced an action on November 8, 2012 asserting class action claims for breach of fiduciary duty against the New Frontier Board of Directors (the "Board") arising out of the Merger and the Tender Offer, as aided and abetted by LFP.  Telke also asserted individual claims under Sections 14(d)(4) and 14(e) of the Securities Exchange Act (the "Exchange Act") in connection with the allegedly material misrepresentations contained in the 14D-9 (the "Complaint").

On November 19, 2012, Telke filed a Motion for Preliminary Injunction and Request for Expedited Proceedings, seeking to enjoin the Merger, which the Court denied on November 27, 2012.

The Tender Offer was completed on November 27, 2012 at $2.06 per share and thereafter, New Frontier merged into an affiliate of LFP with New Frontier as the surviving entity and a wholly-owned subsidiary of LFP.  As a result of the Merger, New Frontier shares ceased trading on the NASDAQ.

On December 13, 2012, Plaintiff Telke voluntarily dismissed all claims against LFP and its affiliate with which New Frontier had merged.  On December 3, 2012, Defendants filed their Answer to the Complaint.

Plaintiff Telke filed a Motion for Leave to File First Amended Complaint on May 15, 2013, which the Court granted on August 19, 2013.  Plaintiffs filed their Amended Class Action Complaint ("Amended Complaint") that same day.  The Amended Complaint added Plaintiff William Douglas Moreland as a named plaintiff in the Action and asserted new facts that Lead Plaintiffs allege were learned after the filing of Telke's Complaint.  Defendants filed their Answer to Plaintiffs' Amended Complaint on September 19, 2013.

Thereafter, the Parties negotiated and filed on January 24, 2014, a Stipulated Scheduling and Discovery Order ("Scheduling Order") and a Stipulated Protective Order governing the disclosure of confidential information which was entered by the court on or about May 20, 2014.  The Scheduling Order was amended by the parties on March 3, 2014 and entered by the Court on or about May 20, 2014 ("Amended Scheduling Order").  Pursuant to the Amended Scheduling Order, the parties have propounded and

responded to written discovery. Defendants have produced to Plaintiffs documents comprising over 27,104 pages and Plaintiffs have produced documents to Defendants. Plaintiffs have also propounded written *Subpoenas Duces Tecum* to approximately 15 non-parties and had several meetings with Michael Weiner, New Frontier's former Chief Executive Officer ("CEO") and Board member and David Nicolaus, former New Frontier Board Member.

On May 20, 2014, Plaintiffs moved to compel the production of certain documents and other discovery-related items to which Defendants objected on various grounds, including privileged matters, relating to communications with New Frontier's investment banker and its attorneys. Defendants responded to the motion on August 1, 2014.

On July 2, 2014, counsel for the parties participated in a mediation session regarding a possible global resolution of the Action before mediator Jed Melnick of JAMS. Negotiations through the offices of JAMS continued through early October 2014, when on October 2, 2014, the mediator made a double-blind mediator's proposal which both parties accepted on October 8, 2014.

As contemplated by the mediator's proposal, the parties met and conferred on or about October 22, 2014 concerning the scope of additional documents to be produced in confirmatory discovery and the depositions of Alan Isaacman and a representative from Avondale Partners, LLC ("Avondale"), New Frontier's investment banker in the Merger. Defendants produced more than 2,000 pages of additional documents to Co-Lead

Counsel on December 8, 2014 and produced non-final transcripts from the Defendants' testimony in the arbitration proceedings of Michael Weiner on January 28, 2015. This production brought the total of Defendants' production to more than 29,000 pages.

On January 3, 2015, Plaintiffs' counsel served a *subpoena duces tecum* on Karsten Lampka, a former employee at Avondale who played a major role on the Merger. Avondale thereafter produced over 4,000 pages of documents relating to the Merger to Co-Lead Counsel.

Plaintiffs' Co-Lead Counsel took the depositions of Alan Isaacman on February 5, 2015 and of Karsten Lampka on February 19, 2015.

Counsel for the parties have engaged in fully informed arm's-length and substantial negotiations concerning the terms and conditions of the Settlement of this action over a period of approximately four months which resulted in the Settlement agreement memorialized in the Stipulation.

## III.   THE PROPOSED SETTLEMENT

Pursuant to the Settlement, Defendants shall deposit $2,250,000 in cash into the Escrow Account no later than 14 days following the later of the date by which the Court enters the Preliminary Approval Order and Defendants' insurers have been provided with the appropriate information to make the payment.  Stipulation, ¶ 3.1.  In exchange for this payment, upon the Effective Date of the Settlement, Lead Plaintiffs and the Settlement Class will release all Released Claims against the Released Parties. The Settlement Fund,

less attorneys' fees and any expenses awarded by the Court and any Taxes or Tax Expenses payable from the Settlement Fund will be distributed to Authorized Claimants (*i.e.*, Settlement Class Members who file timely and valid Proofs of Claim) in accordance with the Plan of Allocation of the Settlement Fund as described in the Notice.

As discussed herein, there were numerous issues about which the parties disagreed, including: (i) whether Lead Plaintiffs could plead and prove that Defendants' alleged breaches of fiduciary duty were not the product of a valid business judgment; (ii) whether the statements made or facts allegedly omitted in the 14D-9 were material, false, misleading, or actionable; (iii) whether Lead Plaintiffs were barred from asserting their claims by failing to exercise their statutory appraisal rights; (iv) whether Lead Plaintiffs' claims were required to be brought derivatively, rather than directly; and (v) the amount that New Frontier stock was worth at the time of the Merger.

Additionally, many uncertainties remained regarding Lead Plaintiffs' ability to proceed through class certification and ultimately prove their case at trial and continued prosecution through potential appeals.  While Defendants have vigorously denied any liability, they faced the risk of expensive and protracted litigation and the potential for a verdict in excess of the Settlement amount.  Accordingly, it was on the utmost informed basis that the parties arrived at the Settlement.  As set forth below, the Settlement meets the standards for preliminary approval, as it was the product of arm's-length negotiations between experienced, knowledgeable counsel, has no obvious deficiencies, and provides

for notice that is reasonably calculated to apprise potential Settlement Class members of the pendency of the Action.

**ARGUMENT**

## I.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The law favors and encourages settlement of controversies. *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 284 (D. Colo. 1997). This is especially true in complex class actions such as this, "where substantial judicial resources can be conserved by avoiding formal litigation." *Hersey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 U.S. Dist. LEXIS 15803, at *4-5 (D. Kan. Oct. 26, 2012).

Although approval of a class action settlement is a two-stage process, at the preliminary approval stage the Court need only determine "'that there is . . . "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 U.S. Dist. LEXIS 122593, at *10 (D. Colo. Aug. 28, 2013); *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006) ("The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing."). Thus, preliminary approval is merited where:

> The proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."

*In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan.

8

2012).

In the Court's preliminary evaluation of whether the proposed Settlement appears to be within the range of reasonableness, four factors should be considered: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Lucas*, 234 F.R.D. at 693; *Rutter & Wilbanks Corp. v. Shell Oil & Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Jones v. Nuclear Pharmacy*, 741 F.2d 322, 324 (10th Cir. 1984).

For the reasons set forth below, these factors weigh in favor of preliminary approval of the proposed Settlement.

### A.     The Settlement Was Reached Through Serious and Informed Arm's-Length Negotiations between Experienced Counsel and the Recommendation of an Experienced Mediator

The primary factor relevant to the determination of the presumptive fairness of a proposed class settlement is whether the settlement was reached through arm's-length negotiations among the parties.  *See In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 211 (S.D. Ohio 1997).  This Settlement follows a lawsuit that was filed more than two and one-half years ago, in November 2012, then amended to add a *major* shareholder.  As noted above, there was extensive discovery undertaken by the parties involving, *inter*

*alia*:  (i) the exchange of written discovery; (ii) the review of thousands of pages of documents produced by Defendants and non-party Avondale; (iii) the review of hundreds of pages of testimony from the arbitration proceedings of Michael Weiner, New Frontier's former CEO and Board member; (iv) taking the deposition of Alan Isaacman, Chairman of New Frontier's Board and Karsten Lampka of Avondale; and (v) multiple interviews with former Board members Michael Weiner and David Nicholas.  After a thorough and careful evaluation of the questions of law and fact in the case, Defendants' defenses, and the risks, expense and uncertainties inherent in further expansive discovery and continued prosecution, Lead Plaintiffs and Co-Lead Counsel determined that the $2,250,000 cash Settlement was a fair resolution of this Litigation.  The Settlement represents a mutually beneficial agreement, carefully considered by all parties and their counsel.

The Settlement was fairly and honestly negotiated by qualified, experienced counsel, who at all times considered the best interests of the parties and the Settlement Class.  Co-Lead Counsel have significant experience in securities and other complex class actions and have successfully achieved a number other settlements throughout the country.  Hopkins Aff., Exs. 2-4.  Weight should be afforded to the fact that the Settlement was only reached after knowledgeable and experienced counsel for all parties determined that such a compromise promoted considerable immediate benefits to the Settlement Class while at the same time resolving claims as against all Defendants.

*Lucas,* 234 F.R.D at 693 (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel . . . ").

### B. Serious Questions of Law and Fact Exist that Put the Ultimate Outcome of a Trial in Doubt

Given the legal and factual burdens Plaintiffs would bear in bringing the matter to trial, the defenses Defendants would assert, the complexities of class action practice, and the risks that inevitably attend litigation, including the risk that Plaintiffs may not ultimately prevail and, thus, may not secure any post trial relief, the outcome of this Action is far from certain.  In addition, the Defendants have denied and continue to deny the merits of Plaintiffs' claims.

Accordingly, serious questions of law and fact exist that put the ultimate outcome of a trial in doubt.

### C. The Value of the Proposed Settlement Far Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation

Lead Plaintiffs and Co-Lead Counsel believe that the value of Settlement at this time, as provided in the Stipulation, far outweighs the mere possibility of future relief after protracted and expensive litigation.  As described above, given the litigation risks inherent in large-scale litigation, particularly in class actions, including the risk that Plaintiffs may not ultimately prevail and, thus, may not secure any post trial relief, the

outcome of this Action is far from certain.  By contrast, the proposed Settlement provides Lead Plaintiffs and the Settlement Class with a guaranteed cash Settlement.

Thus, the value of Settlement now far outweighs the mere possibility of a more favorable recovery if this Action was further litigated.

**D.     The     Parties     Believe     that     the     Settlement     is     Fair, Reasonable, and Adequate and the Settlement has no Obvious Deficiencies**

The Parties and their counsel believe that the Settlement is fair, reasonable, and adequate and recommend that this Court grant preliminary approval.  Counsel's judgment as to the fairness of the settlement agreement is entitled to considerable weight.  *See Lucas*, 234 F.R.D. at 695.  Nothing in the course of the settlement negotiations or the terms of the Settlement raises any obvious doubt as to its fairness.  To the contrary, the substantial recovery to the Settlement Class and the arm's-length negotiations between informed, experienced counsel compel a finding that the Settlement is sufficiently fair, adequate and reasonable.  The $2,250,000 case Settlement constitutes a significant and certain benefit for members of the Settlement Class, particularly in light of the protracted and expensive litigation the Settlement Class would inevitably face had the Settlement not been achieved in light of the substantial questions of law and fact that remain.  After weighing the costs, risks, and delay associated with continuing litigation against the benefits of settlement as reflected in the Stipulation, Plaintiffs' Co-Lead Counsel believe that Settlement as provided in the Stipulation is fair, reasonable, and adequate resolution

of the Action, and in the best interests of Lead Plaintiffs and the Settlement Class members.

Defendants were, in Lead Plaintiffs' view, wrongfully withholding likely thousands of pages of relevant documents, which were the subject of Lead Plaintiffs' motion to compel. Lead Plaintiffs also faced what would likely be hotly contested motions on class certification and summary judgment. Even if Lead Plaintiffs survived class certification and Defendants' anticipated summary judgment motions, they still faced significant time and expense preparing the case for trial, where there would be a substantial risk that Lead Plaintiffs would not be able to establish Defendants' liability, or that damages would be less than the amount currently guaranteed by the Settlement.[4] Thereafter, there would be the risk that the ultimate size of any recovery for Lead Plaintiffs would be reduced by the additional costs incurred in order to continue to prosecute through trial and any subsequent appeals. In short, the ultimate outcome in the Action would be subject to doubt, and all potential risks were adequately considered in determining that the Settlement was in the best interest of the Settlement Class. The Settlement provides a means of immediate recovery for members of the Settlement Class,

---

[4] The determination of damages in any securities class action is highly complex. It cannot be said with certainty that Co-Lead Plaintiffs would succeed in proving that the Settlement Class was damaged. *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

which will receive a *pro rata* distribution from the Settlement Fund in accordance with the Plan of Allocation. The Settlement therefore leaves "no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys)." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006).

Accordingly, Lead Plaintiffs respectfully ask the Court to preliminarily approve the Settlement and dissemination of the Notice to the Settlement Class and the schedule for the Settlement Hearing.

## II. THE ACTION SHOULD BE CERTIFIED AS A CLASS ACTION FOR SETTLEMENT PURPOSES

As part of the Settlement, the parties request that the Court certify the following Settlement Class:

> [A]ll persons and/or entities who held shares of New Frontier common stock at any time from and including October 15, 2012 through and including November 27, 2012, whether beneficially or of record, including the legal representatives, heirs, successors-in-interest, transferees, and assignees of all such foregoing holders, but excluding Defendants, New Frontier, LFP, the directors and executive officers of New Frontier who served in those capacities during the Class Period, and their legal representatives, heirs, successors-in-interest, transferees, and assignees.

Under Federal Rule of Civil Procedure 23(a), a class may be certified if:  (1) it is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law and fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interest of the

class (adequacy).  *Amchem Prods v. Windsor*, 521 U.S. 591, 614 (1997).  The proposed class additionally must fall within one of the three categories of class actions defined in Federal Rule of Civil Procedure 23(b).  *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *12-*13.

Under these standards, certification of the proposed Settlement Class is appropriate.

### A.    Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable.  Joinder need not be impossible; instead, the rule only requires that the hardship or inconvenience of joining all members makes use of the class action device appropriate.  *In re Thornburg Mortg., Inc.*, 912 F. Supp. 2d 1178, 1221-22 (D.N.M. 2012).  Though the Tenth Circuit has not adopted a minimum presumption for numerosity, the Court may make "'common sense assumptions'" to support a finding that joinder is impracticable.  *Id.* (quoting *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002)).  It is commonplace that in securities actions such as the one here, numerosity is easily presumed.  *See, e.g.*, *Thornburg*, 912 F. Supp. 2d at 1233-34 (collecting cases); *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *19 (finding numerosity

requirement satisfied "in light of the Settling Parties' representation that the Settlement Class consists of thousands of individuals").[5]

There can be no dispute that the Settlement Class here satisfies the numerosity requirement.  New Frontier's common stock is traded on the NASDAQ.  At the time of the Merger, New Frontier had more than 16 million shares outstanding owned by hundreds if not thousands of persons.

Accordingly, there exists a common sense assumption that the numerosity requirement is met here.

### B.      Rule 23(a)(2): Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  In other words, "plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class." *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *20.  Commonality does not require that class members share ***all*** issues in the suit, but rather "'only a single issue common to the class'" must exist. *Thornburg*, 912 F. Supp. 2d at 1222 (quoting *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 289 (D.N.M. 2002)).  The commonality requirement is permissively applied in securities fraud actions. *Thornburg*, 912 F. Supp. 2d at 1222 ("'Securities cases often involve allegations of common courses of fraudulent conduct, which can be sufficient to satisfy the commonality requirement.'"); *Crocs*, 2013 U.S. Dist. LEXIS

---

[5]  *See also McEwen v. Digitran Sys.*, 160 F.R.D. 631, 636 (D. Utah 1994) ("The numerosity requirement of Rule 23 is satisfied in a securities fraud case if the stock at issue is nationally traded.").

122593, at *21 ("whether these material omissions and misrepresentations occurred is a factual and legal question that is common to the entire class and is capable of class wide resolution").[6]

This action necessarily encompasses questions of law and fact common to all class members. Here, Lead Plaintiffs allege that Defendants breached their fiduciary duties by conducting a flawed sales process, entering into the Merger Agreement for inadequate consideration and soliciting stockholders to tender their shares pursuant to a materially misleading 14D-9. Common questions such as: whether Defendants breached their fiduciary duties, whether Defendants' statements and omitted facts were material, false or misleading and whether New Frontier stockholders received adequate value for their shares of New Frontier stock.

Thus, the commonality requirement is met.

## C.      Rule 23(a)(3): Typicality

The typicality requirement of Rule 23(a)(3) is satisfied "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *22 (quoting *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). The inquiry focuses on whether the named plaintiffs' interests are sufficiently aligned with the class' interest as a whole. *Thornburg*, 912 F. Supp. 2d at

---

[6] *See also In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 87 (S.D.N.Y. 2004) ("In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied.").

1222-23. Rule 23(a)(3) does not require, however, that plaintiffs' interests and claims be identical to those of the class. Instead, "provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *22 (citing *DG v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010)).

Here, Lead Plaintiffs' claims for breach of fiduciary duty are identical to those of the other members of the Settlement Class. Lead Plaintiffs, like all Members of the Settlement Class are alleged to have been damaged by the Board's decision to sell New Frontier for the same allegedly inadequate price.

Thus, the typicality requirement of Rule 23(a)(3) is met.

### D.     Rule 23(a)(4): Adequacy of Representation

The adequacy prong of Rule 23 requires two showings: (i) there must be no antagonism or disabling conflict between the interests of the named class representatives (and their counsel) and the members of the class; and (ii) class counsel must be qualified, experienced, and generally able to vigorously prosecute the action on behalf of the class. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002). Neither Lead Plaintiffs nor their counsel have any interests antagonistic to those of the absent Settlement Class members. Throughout the duration of the litigation, Lead Plaintiffs regularly communicated with Co-Lead Counsel and were actively involved in the prosecution of the Action.   Further, Lead Plaintiffs and each member of the

Settlement Class have strong and identical interests in establishing liability based on Defendants' alleged breaches of fiduciary duty and material misrepresentations and omissions. In short, Lead Plaintiffs are united in achieving the best recovery possible for the Settlement Class. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("'[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.'").

Moreover, Co-Lead Counsel have devoted substantial time and resources to investigating, initiating, and prosecuting this action. Co-Lead Counsel representing the Settlement Class in this case include qualified lawyers with thorough experience in successful prosecution of class actions. *See* Hopkins Aff., Exhibits 2-4 (firm resumes).

### E. Certification Is Maintainable Under Federal Rule of Civil Procedure 23(b)(3)

Rule 23(b)(3) sets forth two requirements, the first being that the questions of law or fact common to the members of the class must "predominate" over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Crocs*, 2013 U.S. Dist. LEXIS 122593, at *35. This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance requirement is readily met here. *Id.* at 625; *Thornburg*, 912 F. Supp. 2d at 1237. Questions regarding Defendants' alleged misconduct and the harm caused by that misconduct are common to all Settlement Class members. Lead Plaintiffs allege that

Defendants breached their fiduciary duties by selling New Frontier to LFP for an inadequate price and soliciting stockholders to tender their shares pursuant to materially false and misleading disclosures.  Thus, common questions of law and fact concerning Defendants' liability turn upon issues common to the Settlement Class, *i.e.*, whether  the price  LFP  paid  for  New  Frontier  adequately  valued  the  Company  and  whether Defendants made material misrepresentations and/or omissions concerning the Merger and the Tender Offer.

Secondly, Rule 23(b)(3) also requires that the Court determine whether a class action is the superior method of adjudication. The class certification device is appropriate where it would "'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or brining about other undesirable results.'" *Amchem*, 521 U.S. at 615.

Certification of the Settlement Class will allow the Settlement to be administered in an organized and efficient manner.  Further, without the class certification device, thousands of Settlement Class members would potentially be able to pursue individual claims against Defendants, which would potentially result in inconsistent adjudications. Prosecution of individualized actions would likely be cost prohibitive for many of the Settlement Class members who would otherwise be able to recover under the class action device.  As many courts have noted:

> First, relitigation of the same issues and presentation of the same evidence
> in hundreds of individual actions . . . would be grossly inefficient and

> wasteful of judicial resources.  Second, maintenance of individual actions would be prohibitively expensive.  Many of the crucial issues in this case will require substantial discovery, expert testimony, and trial time, all of which would render uneconomical individual actions.

*Thornburg*, 912 F. Supp. 2d at 1239 (quoting *In re Intelcom Grp. Sec. Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996)). Here, the class action device is superior to any other means available to the Court and for settlement purposes only, the requirements of Rule 23(b)(3) are met.[7]

### F.  Co-Lead Counsel Should Be Appointed Class Counsel

Pursuant to the Federal Rules of Civil Procedure, "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1).  As discussed above, Co-Lead Counsel have and will continue to fairly and adequately represent the Settlement Class. Co-Lead Counsel are intimately familiar with the facts of this case, knowledgeable of the applicable law, and extremely experienced in handling securities class actions.  To date, Co-Lead Counsel have performed substantial work identifying and investigating the claims here, and have committed the necessary resources to vigorously prosecute this action on behalf of the Settlement Class.  Co-Lead Counsel have extensive experience prosecuting securities class actions and have been responsible for achieving outstanding recoveries on behalf of investors.

---

[7] The Court need not determine whether a settlement class would be manageable for litigation purposes because Lead Plaintiffs ask only that the action be certified for settlement purposes.  *Amchem*, 521 U.S. at 620; *Thornburg*, 912 F. Supp. 2d at 1225 ("When certifying a class for settlement purposes, however, the court need not consider the difficulties that will be encountered in managing the class at trial, as the class action will not go to trial if the court  approves the settlement.").

Accordingly, Lead Plaintiffs respectfully request that Co-Lead Counsel be appointed as class counsel for the Settlement Class.

### III.   THE PROPOSED METHOD AND FORM OF NOTICE TO THE SETTLEMENT CLASS SATISFY THE REQUIREMENTS OF DUE PROCESS AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Under Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound" by the proposed Settlement.  Fed. R. Civ. P. 23(e)(1).  Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005). The question is not whether actual notice was provided to *all* interested parties, but rather whether the notice is the "'best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.'" *Dejulius*, 429 F.3d at 944; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (noting the issue is "whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement").

Lead Plaintiffs respectfully submit that the proposed Notice set forth in the Stipulation meets the requirements of due process and Rule 23.  The Notice fairly, accurately, and reasonably informs proposed Settlement Class members of: (i) the nature and history of the Action, Plaintiffs' claims; (ii) the terms of the proposed Settlement;

(iii) how to obtain additional information regarding the Action and the Stipulation; and (iv) how to object to the Settlement or appear and be heard at the Settlement Hearing. The Notice also fairly and adequately informs proposed Settlement Class members that if they do not comply with the procedures and deadlines for filing objections, they will lose any opportunity to have their objection considered at the Settlement Hearing or otherwise contest approval of the Settlement.   A copy of the proposed Notice is attached the Stipulation as Exhibit C.

Lead Plaintiffs, through an experienced settlement claims administrator, propose to give interested parties notice in three ways:  (i) by First-Class Mail, addressed to all Settlement Class Members who can reasonably be identified and located; (ii) by publication in the *Denver Post* and *Investor's Business Daily,* a nationally-circulated newspaper; and (iii) by posting a copy on the Claims Administrator's website. Stipulation, Ex. A, ¶ 11.  The proposed method of giving notice provides Settlement Class Members with the best notice practicable under the circumstances.  *DeJulius,* 429 F.3d at 943-45; *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'"). This proposed notice program is sufficient and should be approved by the Court.

## IV.   PROPOSED SCHEDULE FOR CLASS ACTION SETTLEMENT

The Preliminary Approval Order leaves blank the date for the Settlement Hearing

in this matter, which is to be determined by the Court. To provide sufficient time to prepare and distribute the Notice, the Parties propose the following schedule, subject to the Court's convenience:

| | |
|---|---|
| Mailing individual Notices and Proofs of Claim | Fourteen (14) calendar days after entry of the Preliminary Approval Order |
| Publication of Summary Notice | Ten (10) calendar Days after the entry of the Preliminary Approval Order |
| Motions in Support of Settlement, Plan of Allocation, Plaintiffs' application for an incentive award and Co-Lead Counsel's application for an award of attorneys' fees and expenses | Thirty-five (35) calendar days prior to the Settlement Hearing |
| Submission of requests for exclusion from Settlement Class or objections to the Settlement, Plan of Allocation, Plaintiffs' application for an incentive award and Co-Lead Counsel's application for an award of attorneys' fees and expenses | Twenty-one (21) calendar days prior to the Settlement Hearing |
| Reply papers in response to objections | Ten (10) calendar days prior to the Settlement Hearing |
| Settlement Hearing | Approximately ninety (90) days after entry of the Preliminary Approval Order, subject to Court availability |
| Proof of Claim forms | One hundred (100) calendar days after entry of the Preliminary Approval Order. |

## V.        CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court issue an order substantially in the form of the proposed Preliminary Approval Order: (a)

24

certifying the proposed Settlement Class; (b) preliminarily approving the Settlement; (c)

holding that the manner and form of Notice set forth in the Preliminary Approval Order

satisfies due process and is the best notice practicable under the circumstances; (d) setting

a date for the Settlement Hearing and establishing the deadlines set forth in  Preliminary

Approval Order; and (e) appointing Lead Plaintiffs as class representatives and Co-Lead

Counsel as class counsel.

Dated:  May 8, 2015                          Respectfully submitted,

                                             DYER & BERENS LLP

                                             By: /s/ Jeffrey A. Berens
                                             Jeffrey A. Berens
                                             DYER & BERENS LLP
                                             303 East 17th Avenue, Suite 810
                                             Denver, CO  80203
                                             Telephone: (303) 861-1764
                                             FAX: (303) 395-0393
                                             Email: jeff@dyerberens.com

**CO-LEAD COUNSEL**

Shannon L. Hopkins
Stephanie Bartone
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, NY 10004
(212) 363-7500

Stephen J. Crane
CRANE DUNHAM PLLC
2121 Fifth Avenue
Seattle, WA 98121
(206) 292-9090

*Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2015, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to

the e-mail addresses denoted on the Court's Electronic Mail Notice List.

By: /s/ Jeffrey A. Berens
Jeffrey A. Berens
Attorney for Plaintiffs
DYER & BERENS LLP
303 East 17th Avenue, Suite 810
Denver, CO 80203
Telephone: (303) 861-1764
FAX: (303) 395-0393
Email: jeff@dyerberens.com

4821-0724-7907, v. 2

26