# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02941-JLK

CRAIG TELKE, and
WILLIAM DOUGLAS MORELAND,
Individually and on Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO, and
WALTER TIMOSHENKO,

      Defendants.

---

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF:  (i) CLASS ACTION SETTLEMENT; (ii) PLAN OF ALLOCATION; (iii) CERTIFICATION OF SETTLEMENT CLASS; (iv) APPLICATION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; AND (v) APPLICATION FOR INCENTIVE AWARD TO PLAINTIFFS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

---

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 2

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................... 5

  A.  Brief Summary of Plaintiffs' Claims Procedural History ........................................... 5

  B.  Plaintiffs' Motion for Leave to Amend Complaint .................................................. 8

  C.  The Extensive Fact Discovery Conducted in this Litigation ..................................... 9

  D.  Plaintiffs' Motion to Compel ................................................................................. 11

  E.  The Settlement Negotiations and Terms ................................................................. 12

  F.  Compliance with the Court's Preliminary Approval Order ..................................... 13

III.    ARGUMENT ...................................................................................................... 14

  A.  Standard of Review ............................................................................................... 14

  B.  The Settlement Should be Approved as Fair, Reasonable and Adequate ............... 14

    1.  The Settlement Was Reached Through Fair and Honest Negotiations between
        Experienced Counsel Before an Experienced Mediator ........................................ 15

    2.  Serious Questions of Law and Fact Exist that Put the Ultimate Outcome of a Trial
        in Doubt ............................................................................................................... 16

       a.    Proving Defendants Breached Their Fiduciary Duties ..................................... 17

       b.    Proving Damages .............................................................................................. 20

       c.    Defendants' Affirmative Defenses ................................................................... 22

    3.  The Value of Immediate Recovery Outweighs the Mere Possibility of Future
        Relief After Protracted and Expensive Litigation ................................................. 23

    4.  Plaintiffs and Plaintiffs' Counsel Believe that the Settlement is Fair, Reasonable, and Adequate and has no Obvious Deficiencies ...................................................... 24

  C.  The Court Should Affirm Its Certification of the Class ........................................... 25

  D.  The Method and Form of Notice to the Settlement Class Satisfies the Requirements of Due Process and Rule 23 of the Federal Rules of Civil Procedure..................... 26

IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ................. 27

V.    THE COURT SHOULD APPROVE COUNSEL'S APPLICATION FOR AN  AWARD OF FEES AND EXPENSES............................................................. 28

  A.  The Requested Fee Should be Awarded Based on a Percentage of the Recovery Obtained.................................................................................................................. 29

    1.  Plaintiffs' Counsel are Entitled to a Fee From the Common Fund They Created . 29

    2.  Fees in Common Fund Cases Should be Based on a Percentage of the Recovery 30

    3.  A Reasonable Percentage of the Fun Created is the Preferred Method of Awarding Attorneys' Fees in Common Fund Cases ................................................................ 31

  B.  The Reasonableness of the Percentage Fee Requested is Confirmed by an Analysis of the Johnson Factors ............................................................................................. 33

    1.  The Amount Involved and the Results Obtained ................................................... 34

    2.  The Time and Labor Involved................................................................................. 36

    3.  The Novelty and Difficulty of Questions Raised by the Litigation ....................... 38

    4.  The Requisite Skill to Perform the Legal Services Properly ................................. 40

    5.  The Preclusion of Other Employment by Attorneys Due to  ...................................
Acceptance of the Case ......................................................................................... 41

    6.  The Customary Fee for Similar Work.................................................................... 41

    7.  Whether the Fee is Fixed or Contingent................................................................ 42

8.  Time Limitation Imposed by the Client or Circumstances ....................................45

9.  The Experience, Reputation and Ability of the Attorneys ....................................45

11.The Nature and Length of the professional Relationship with the Client..............46

12.Awards in Similar Cases .....................................................................................46

13.The Support of Plaintiffs and Reaction of the Class ...............................................47

C.  Plaintiff's Counsel's Expenses are Reasonable and Were Necessarily Incurred in the Prosecution of the action....................................................................................48

VI.   REPRESENTATIVE PLAINTIFFS ARE ENTITLED TO INCENTIVE AWARDS 49

VII.  CONCLUSION......................................................................................................50

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. Lightolier Inc.*,
  50 F.3d 1204 (3d Cir. 1995) ...................................................................................... 48

*Alvarado Partners, L.P. v. Mehta*,
  723 F. Supp. 540 (D. Colo. 1989) ............................................................................ 24

*Angres v. Smallworldwide PLC*,
  No. 99-K1254, slip op. (D.Colo. June 7, 2003) ......................................................... 46

*Ashley v. Reg'l Transp. Dist.*,
  2008 U.S. Dist. LEXIS 13069 (D. Colo. Feb. 11, 2008) ............................................ 23

*Associated Builders & Contractors, Inc. v. Orleans Parish Sch. Bd.*,
  919 F.2d 374 (5th Cir. 1990) ..................................................................................... 48

*Blum v. Stenson*,
  465 U.S. 886 (1984) ..................................................................................... 30, 31, 42

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................ 30, 31

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
  8 F.3d 722 (10th Cir. 1993) ...................................................................................... 48

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) ...................................................................... 31, 32, 34, 37

*Camden I Condo., Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ................................................................................... 33

*Cent. R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885) .................................................................................................. 30

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................... 27

*Consumers Gas & Oil v. Farmland Indus.*,
  863 F. Supp. 1357 (D. Colo. 1993) .............................................................. 39

*Consumers Gas & Oil v. Farmlands Indus.*,
  863 F. Supp. 1357 (D. Colo. 1993) ................................................................ 5

*Cosgrove v. Sullivan*,
  759 F.Supp. 166 (S.D.N.Y 1991) ................................................................. 38

*DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 943 (10th Cir.
  2005)........................................................................................................... 26

*Dolgow v. Anderson*,
  43 F.R.D. 472 (E.D.N.Y. 1968) .................................................................. 30

*Edmonds v. United States*,
  658 F. Supp. 1126 (D.S.C. 1987) ............................................................... 41

*Florin v. Nationsbank, N.A.*
  34 F.3d 560 (7th Cir. 1994)......................................................................... 33

*Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) ................................................................. 31, 35

*Gottlieb v. Wiles*,
  11 F.3d 1004 (10th Cir. 1993)......................................................... 14, 15, 23

*Gottlieb v. Wiles*,
  150 F.R.D. 174 (D.Colo. 1993) ................................................................... 35

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ...................................................................... 45

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994)........................................................................... 48

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .................................................................................... 35

*Hirsch v. Jones Intercable, Inc.*,
   984 P.2d 629 (Colo. 1999) ........................................................................................ 17

*In BMC Software, Inc. S'holder Litig.*,
   C.A. No. 8544-VCG (Del. Ch. April 28, 2014) ............................................................ 36

*In re Am. Bank Note Holographics*,
   127 F. Supp.2d 418 (S.D.N.Y. 2001) .......................................................................... 32

*In re Catfish Antitrust Litig.*,
   939 F. Supp. 493 (N.D. Miss. 1996) ........................................................................... 50

*In re CNX Gas Corp. S'holder Litig.*,
   C.A. No. 5377-VCL (Del. Ch. Aug. 23, 2013) ............................................................ 35

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ...................................................................................... 42

*In Re Core Bond Fund*,
   No. 09-cv-1186-JLK-KMT, slip op. (D. Colo. Sept. 30, 2011) ..................................... 49

*In re El Paso Corp. S'holder Litig.*,
   C.A. No. 6949-CS (Del. Ch. Dec. 3, 2013) .................................................................. 36

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................. 24

*In re GMC Pick-Up TruckFuel Tank Prods. Liab. Litig.*,
   55 F.3d 821 (3d Cir. 1995) ......................................................................................... 33

*In re Gulf Oil/Cities Sev. Tender Offer Litig.*,
   142 F.R.D. 588 (S.D.N.Y. May 21, 1992 ..................................................................... 27

*In re Harrah's Entm't*,
   1998 U.S. Dist. LEXIS 18774 (E.D. La. Nov. 24, 1998) .............................................. 38

*In re Intelcom Grp., Inc. Sec. Litig.*,
   No. 95-D-1166, slip. Op. (D. Colo. Mar. 21, 1997) ...................................................... 46

*In re King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. 1976) ........................................................... 25, 35

*In re King Resources Co. Sec. Litigation,*
420 F. Supp. 620 (D. Colo. 1976) ................................................................ 39

*In re Oppenheimer Champion Income Fund Sec. Fraud Class Action*,
No. 0cv-386-JLK-KMT, slip op. (D. Colo. September 2011) ....................... 49

*In re Playboy Enterprises, Inc. S'holders Litig.,*
C.A. 5632-VCN (Del. Ch. Mar. 19, 2013) ................................................... 36

*In re Prudential Ins. Co. Am. Sales practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir.
1998) .............................................................................................................. 24

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
985 F. Supp. 410, 416 (S.D.N.Y. 1997) ....................................................... 47

*In re Prudential-Bache Energy Income Partnerships Sec. Litig.*,
1994 U.S. Dist. LEXIS 6621 (E.D.La. May 18, 1994) .................................. 43

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
2006 U.S. Dist. LEXIS 71039 (D. Colo. Sept. 28, 2006) ............................. 16

*In Re Rhythms Sec. Litig.*,
No. 02-35 (D.Col. April 3, 2009) .................................................................. 49

*In re Rite Aid Corp. Sec. Litig.*,
146 F.Supp.2d 706 (E.D. Pa. 2001) ............................................................. 38

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ........................................................................ 42

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3rd 295 (1st Cir. 1995) ......................................................................... 32

*In re Wararin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002) ..................................................................... 41

*In re Warner Commc'ns Sec. Litig.*
  618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................... 40, 43

*In Re Warner Communications Sec Litig.,*
  618 F.Supp. 735 (S.D.N. Y. 1985) ................................................................ 21

*In re Wash. Pub Power Supply Sys. Sec. Litig.,*
  19 F.3d 1291 (9th Cir. 1994) ......................................................................... 33

*In re Winn-Dixie Stores, Inc. S'holder Litig.,*
  Case No. 16-2011-CA-010616 (Cir. Ct. 4th Jud. Cir. For Duval Cty FL Dec. 5, 2014)35

*Johnson v. Ga. Highway Express, Inc.,*
  488 F.2d 714 (5th Cir. 1974) ............................................................... 34, 35, 36

*Johnston v. Comerica Mortg. Corp.,*
  83 F.3d 241 (8th Cir. 1996) ........................................................................... 33

*Jones v. Cent. Soya Co.,*
  748 F.2d 586 (11th Cir. 1984) ....................................................................... 43

*Jones v. Nuclear Pharmacy, Inc.,*
  741 F.2d 322 (10th Cir. 1984) ................................................................. 14, 15

*Kirchoff v. Flynn,*
  786 F.2d 320 (7th Cir. 1986) ................................................................... 33, 42

*Larsen v. Consolidated Pet Foods, Inc.,*
  144 B.R. 121 (Bankr. D. Colo. 1992) ............................................................. 17

*Lindy Bros. Builders v. Am.Radiator & Standard Sanitary Corp.,*
  540 P.2d 102 (3d Circ. 1976) ......................................................................... 31

*Maley v. Del Global Techs. Corp.,*
  186 F.Supp.2d 358 (S.D.N.Y.  2002) ............................................................. 32

*Mills v. Elec. Auto-Lite Co.,*
  396 U.S. 375 (1970) ....................................................................................... 30

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306, 314 (1950) ................................................................. 26

*Myers v. Alliance for Affordable Servs.*,
   371 Fed. Appx. 950 (10th Cir. Colo. 2010) .................................. 17

*Oppenlander v. Standard Oil Co.*,
   64 F.R.d. 597 (D. Colo. 1974)......................................................... 39

*Piambino v. Bailey*,
   610 F.2d 1306 (5th Cir. 1980)......................................................... 43

*Rasner v. FirstWorld Commc'ns, Inc.*,
   No. 00-K-1376, slip op. (D.Colo Jan 19, 2005) ........................... 46

*Rawlings v. Prudential-Bache Properties.*,
   9 F.3d 513 (6th Cir. 1993)............................................................... 33

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) .................................................... 43

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F3.d 1180 (10th Cir. 2002)....................................................... 16

*Schwartz v. Celestial Seasonings, Inc.*,
   No. 95-K1050, slip op. (D.Colo. Apr. 25, 2000)........................... 46

*Sonnenfeld v. City of Denver, Colorado*,
   C.A. No. 95-Z-468 (D. Colo. Dec. 8, 1997)................................... 46

*Sprague v. Ticonic Nat'l Bank*,
   307 U.S. 161 (1939) ......................................................................... 30

*Swedish Hosp. Corp. v. Shalaha*,
   1 F.3d 1261 (D.C. Circ. 1993).......................................................... 33

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993).............................................................. 26

x

*Trustees v. Greenough*,
 105 U.S. 527 (1882) ................................................................................... 29, 30

*Uselton v. Commercial Lovelace Motor Freight*,
 9 F.3d 849 (10th Cir. 1993) ....................................................................... 32, 34

*Walters v. Atlanta*,
 652 F. Supp. 755 (N.D. Ga. 1985) .................................................................. 43

*Weiss v. Mercedes-Benz of N.Am.*,
 899 F.Supp.1297 1304 (D.N.J. 1995) ............................................................. 38

*Williams, Inc. v. Kaiser Sand & Gravel Co.*,
 No. C91 4028 MHP, 1995 U.S. Dist. LEXIS 14262 (N.D.Cal. Sept. 19, 1995) ........... 50

**Statutes**
15 U.S.C Section 78u-4(a)(6) ........................................................................... 39
15 U.S.C. Section 77z-1(a)(4) .......................................................................... 56

**Other Authorities**
Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237,
 242 (3d Cir. 1985) ..................................................................................... 37, 38

Pursuant to Rules 23(a), (b)(3) and (e) of the Federal Rules of Civil Procedure, Plaintiffs Craig Telke and William Douglas Moreland (collectively "Plaintiffs"), through their counsel, Levi and Korsinsky, LLP ("Levi & Korsinsky") and Crane Dunham, PLLC ("Crane Dunham") (collectively "Plaintiffs' Counsel"), respectfully submit this motion for final approval of:  (1) class action settlement (on the terms set forth in the Stipulation of Settlement dated as of April 27, 2015 ("Stipulation"),[1] filed with the Court on April 27, 2015 (*see* Dkt. No. 62); (2) the Plan of Allocation of Settlement Proceeds; (3) certification of the Settlement Class;[2] (4) Plaintiffs' application for an award of attorneys' fees and expenses; and (5) Plaintiffs' application for an incentive award (the "Motion").[3]

---

[1] The Stipulation is attached as <u>Exhibit 1</u> to the Declaration of Stephen J. Crane in Support of Plaintiffs' Motion for Final Approval of:  (1) Class Action Settlement; (2) Certification of Settlement Class; (iii) Plan of Allocation; (iv) Application for Award of Attorneys' Fees and Reimbursement of Expenses; and (v) Application for Incentive Award to Plaintiffs ("Crane Decl." or "Crane Declaration") subjoined hereto.  All capitalized terms herein shall have the meaning set forth in the Stipulation unless otherwise stated.

[2] The Settlement Class is defined as all persons who owned stock in New Frontier as of October 15, 2012 through November 27, 2012, inclusive (the "Settlement Class"). Stipulation at 9.

[3] Pursuant to D.C.COLO.LCivR 7.1(a), Plaintiffs' Counsel have conferred with Defendants' counsel prior to filing this Motion.  Defendants have denied and continue to deny each and every claim and charge of wrongdoing or liability in this case, they have denied and continue to deny that Plaintiffs or the Settlement Class have suffered damages, and they deny that class certification would be proper if this case did not settle. Nonetheless, Defendants have concluded that further defense of the case would be protracted and expensive and agree that the case should settle upon the terms set forth in the Stipulation.  Defendants take no position on the application for attorneys' fees and expenses and the Plan of Allocation, nor the incentive award to be paid to the Plaintiffs.

## I.     INTRODUCTION

For the reasons set forth herein, Plaintiffs respectfully request that the Court approve the Settlement as fair, reasonable and adequate.  The Settlement provides the Settlement Class with a cash benefit of $2,250,000 to be paid into a settlement fund as an "all-in" amount from which all fees and expenses are to be paid except as set forth below, and is the product of arm's length negotiations between the parties.

As discussed in greater detail in the accompanying Crane Declaration, Plaintiffs faced substantial risks in the continued prosecution of this action through trial but, have nonetheless, obtained an excellent result for the Settlement Class.  The Settlement is the culmination of two years of hard-fought litigation and settlement negotiations and was achieved only after Plaintiffs' Counsel, *inter alia*:  (1) conducted a detailed investigation of the claims asserted in this Action; (2) filed detailed pleadings; (3) engaged in motion practice involving several motions filed by the parties; (4) served discovery requests on Defendants and responded to Defendants' discovery requests; (5) served approximately 15 non-party subpoenas; (6) reviewed more than 30,000 pages of documents and testimony that New Frontier Media, Inc. ("New Frontier" or the "Company") and Avondale Partners, LLC ("Avondale"), the Company's investment advisor in the merger, produced; (7) conducted several interviews of Michael Weiner, New Frontier's former Chief Executive Officer ("CEO") and member of the Board of Directors ("the "Board") and of David Nicholas, former Board member; (8) took the depositions of former Board

Chairman, Alan Isaacman, and Karsten Lampka of Avondale; (9) consulted with a financial and valuation expert on issues of damages; (10) prepared a detailed mediation statement and participated in a mediation before Jed Melnick of JAMS; and (11) negotiated the terms of the Settlement, as reflected in the Stipulation.

The $2,250,000 Settlement, obtained as a result of arm's-length negotiations with Defendants' counsel, is an excellent recovery. As discussed below, the Settlement, as a percentage of the total acquisition value of New Frontier, is well above recoveries achieved in other similar cases. Plaintiffs' assessment that the Settlement is fair, reasonable and adequate is further illustrated when evaluating the many factual and legal challenges that Plaintiffs faced, including establishing that the business judgment rule did not apply; the existence of damages in light of the fact that LFP Broadcasting ("LFP") provided the highest offer for the Company and New Frontier's declining financial performance; and the existence of materially false statements. In addition, Plaintiffs Telke and Moreland approved the Settlement. *See* Declaration of William Douglas Moreland ("Moreland Decl."), ¶ 8; and Declaration of Craig Telke ("Telke Decl."), ¶ 7 submitted herewith as Exs. 2 and 3, respectively.

Plaintiffs also ask the Court to affirm its certification of the Settlement Class consisting of all persons who owned stock in New Frontier as of October 15, 2012 through November 27, 2012, inclusive, appointment of Plaintiffs as class representatives and appointment of Levi & Korsinsky and Crane & Dunham as class counsel. Nothing

has changed since the Court's May 18, 2015 preliminary approval of the Settlement that would warrant a different result.

Plaintiffs further request that the Court approve the Plan of Allocation of Settlement Proceeds that will govern how Settlement Class members' claims will be calculated and the funds distributed to valid claimants. The proposed plan is based on similar plans used in other merger case settlements and allocates the Net Settlement Fund[4] pro rata among valid claimants.

Plaintiffs and their counsel also request that the Court approve their application for attorneys' fees and expenses. Plaintiffs' Counsel, with the support of their clients, seek an award of attorneys' fees of $750,000, or 33-1/3% of the Settlement Fund and reimbursement of expenses in the amount of $98,059.51 for expenses reasonably and necessarily incurred in connection with the prosecution of the Litigation. Plaintiffs have approved the request for a 33-1/3% fee and expenses of $98,059.51. *See* Telke Decl., ¶ 8; Moreland Decl., ¶ 9. The request is, therefore, presumptively reasonable. It is also within the normal range of percentage awards frequently made in contingent fee matters of this type in this Circuit and others, and is the appropriate method for awarding fees (*i.e.*, a percentage award of the common fund*). See Consumers Gas & Oil v. Farmlands*

---

[4] The Net Settlement Fund is defined in the Stipulation as the Settlement Fund of $2,250,000 less attorneys' fees and expenses. Stipulation, ¶ 1(m). The parties have agreed that all Notice and Administration Costs shall be split equally between Defendants and the Settlement Fund.

*Indus.*, 863 F. Supp. 1357, 1361 (D. Colo. 1993) (observing that when attorneys' fees are premised on a contingent recovery, a "percentage fee is customary if not universal").

Finally, Plaintiffs seek approval of a modest incentive award for their time, effort and active participation in the litigation of $10,000 based upon the subjoined Telke and Moreland Declarations.

As of the date of this Motion, Plaintiffs' Counsel is not aware of a single objection to any of the terms of the proposed Settlement or the applications for attorneys' fees or incentive awards.   The lack of objections demonstrates the Settlement Class' overwhelming support for the Settlement and further supports its fairness.

For these reasons, as discussed further below, Plaintiffs and their counsel respectfully submit that the Settlement, application for an award of attorneys' fees and expenses and application for incentive awards should be approved in full.

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.      Brief Summary of Plaintiffs' Claims Procedural History[5]

On October 15, 2012, New Frontier announced that it had entered into an agreement (the "Merger Agreement") to be acquired by LFP pursuant to which an affiliate of LFP would commence a cash tender offer ("Tender Offer") to acquire all of New Frontier's outstanding shares of common stock for $2.02 per share, plus additional contingent cash payments not to exceed $0.06 per common share tied to the extent which

---

[5] The facts set forth herein are those to which the Parties have agreed in the Stipulation.

New Frontier's available cash balance at the close of the Tender Offer exceeded $11,514,000. The Tender Offer, if successful, was to be followed by a second-step merger in which non-tendered shares would be converted into the right to receive the same per share consideration paid to the tendering shareholders, subject to dissenters' rights under Colorado law (the "Merger").

On October 29, 2012, New Frontier filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "14D-9") with the U.S. Securities and Exchange Commission ("SEC") in connection with the Tender Offer and Merger. That same day, an affiliate of LFP commenced the Tender Offer to acquire all of New Frontier's outstanding shares.

Plaintiff Telke commenced an action on November 8, 2012 asserting class action claims for breach of fiduciary duty against the New Frontier Board arising out of the Merger and the Tender Offer, as aided and abetted by LFP. Telke also asserted individual claims under Sections 14(d)(4) and 14(e) of the Securities Exchange Act (the "Exchange Act") in connection with the allegedly material misrepresentations contained in the 14D-9 (the "Complaint").

The Tender Offer was completed on November 27, 2012 at $2.06 per share and thereafter, New Frontier merged into an affiliate of LFP with New Frontier as the surviving entity and a wholly owned subsidiary of LFP. In December, 2012, Plaintiff

Telke voluntarily dismissed all claims against LFP and its affiliate with which New Frontier had merged and thereafter asserted no claims against either LFP or its affiliate.

Plaintiff Telke filed a Motion for Leave to File First Amended Complaint on May 15, 2013, which the Court granted on August 19, 2013.  Plaintiffs filed their Amended Class Action Complaint ("Amended Complaint") that same day.   The Amended Complaint added Plaintiff William Douglas Moreland, owner directly and indirectly of over 1 million shares of stock in New Frontier, as a named plaintiff in the Action and asserted new facts that Lead Plaintiffs allege were learned after the filing of Telke's Complaint.   Defendants filed their Answer to Plaintiffs' Amended Complaint on September 19, 2013.

The Parties, pursuant to a Stipulated Scheduling and Discovery Order and a Stipulated Protective Order, propounded and responded to written discovery.  Defendants produced over 27,104 pages and Plaintiffs have produced documents to Defendants. Plaintiffs have also propounded written *Subpoenas Duces Tecum* to approximately 15 non-parties and had several meetings with Michael Weiner and David Nicholas.

On May 20, 2014, Plaintiffs moved to compel the production of certain documents and other discovery-related items to which Defendants objected on various grounds, including privileged matters, relating to communications with New Frontier's investment banker and its attorneys.

The Parties' counsel participated in a mediation regarding a possible resolution of the Action before mediator Jed Melnick of JAMS on July 2, 2014.  Although the mediation was unsuccessful, negotiations continued until both Parties agreed to settle on October 8, 2014.

Pursuant to the Parties settlement agreement, they agreed that additional documents were to be produced in confirmatory discovery and the Plaintiffs' counsel were to take the depositions of Alan Isaacman and a representative from Avondale.  The total of Defendants' production amounted to more than 29,000 pages, not counting the over 4,000 pages of documents provided by Avondale.

Counsel for the parties have engaged in fully informed arm's length and substantial negotiations concerning the terms and conditions of the Settlement of this action, which resulted in the Settlement agreement memorialized in the Stipulation.

### B.      Plaintiffs' Motion for Leave to Amend Complaint

As noted above, Plaintiff Craig Telke brought the original Complaint. Subsequently, Telke moved to amend the Complaint pursuant to FRCP 15(a) to allow William Douglas Moreland to join the lawsuit.  As the owner, directly and indirectly, of more than 1 million shares of New Frontier stock and the largest individual stockholder, it was believed important by counsel for Telke and Moreland that Moreland be allowed to participate in and add his voice to the Litigation.  Crane Decl., ¶ 3.  Telke also sought to supplement the allegations in his Complaint with new information that Telke learned

after filing his initial Complaint, including the Individual Defendants' alleged actions to further their own personal interests in the Merger and attempts to conceal the alleged wrongdoing by terminating Weiner and Nicholas, the inadequacy of the Merger consideration and the Individual Defendants' solicitation of shareholders to tender their shares pursuant to an alleged misleading proxy statement. *See* Dkt. No. 24.

Plaintiff Telke had not previously sought to amend the Complaint, there was no pending motion to dismiss by the Defendants, and the Motion to Amend was made in good faith. Defendants opposed the Motion on grounds that: 1) the court should decline to exercise pendent jurisdiction over state law class action claims and 2) the exclusive means to challenge the stock price in a merger context under Colorado law was through the dissent and appraisal process. The Court, after extensive briefing by the parties, granted Plaintiff Telke's Motion to for Leave to Amend on August 19, 2013 (Dkt. No. 27).

### C.     The Extensive Fact Discovery Conducted in this Litigation

Plaintiffs' primary claims in this Action arose out of Defendants' alleged breaches of fiduciary duty in connection with the Merger. There was a significant amount of fact discovery taken during this Litigation. Crane Decl., ¶ 4. Among other things, Plaintiffs' Counsel: (i) served and responded to written discovery; (ii) reviewed more than 29,000 pages of documents that New Frontier produced; (iii) reviewed more than 4,000 pages of documents that Avondale produced; (iv) fully briefed a motion to compel; (v) served

fifteen (15) non-party subpoenas; (vi) reviewed un-redacted transcripts from the Weiner Arbitration; and (vii) took the depositions of defendant Isaacman and an Avondale representative. *Id.*

In addition, Plaintiffs' counsel conducted numerous and extensive interviews of the key players most knowledgeable about the process leading up to the Merger -- founder and former CEO of the Company, Michael Weiner, and his fellow Board Member, David Nicholas – about the operation of the Board and its various committees, including but not limited to the Special Committee responsible for the overseeing of the bidding and acquisition process and New Frontier's business operations.

At the same time as this Litigation was proceeding, a separate but related matter was in arbitration:  the alleged wrongful termination by the Board of Weiner as CEO of New Frontier ("Weiner Arbitration").   Crane Decl., ¶ 6.   Since all of the Individual Defendants in this Action also testified in the Weiner Arbitration, which spanned several days, Plaintiffs sought to obtain the transcripts of that private and confidential arbitration. *Id.*   As noted below, these efforts were vigorously resisted by Defendants until, at first, very heavily redacted transcripts were produced and later un-redacted versions of the same transcripts during the confirmatory discovery process. *Id.*

Plaintiffs also consulted with a financial and valuation expert on issues of damages and engaged the expert to assist in the review of relevant financial information produced by New Frontier and Avondale.  Crane Decl., ¶ 7.

10

Accordingly, a substantial amount of time that Plaintiffs' counsel spent in this Litigation was in fact discovery.

### D.     Plaintiffs' Motion to Compel

As noted elsewhere in this Motion, the parties engaged in very extensive discovery, particularly the Plaintiffs of the Defendants as is typical in securities class action cases. Unfortunately, it was necessary for Plaintiffs to seek Court intervention in the discovery process. On May 20, 2014, Plaintiffs moved the Court to compel Defendants to produce: (1) documents before and after their arbitrarily chosen dates of January 1, 2012 and November 28, 2012; (2) the key words Defendants used in searching for relevant documents in the eDiscovery process that were purported to be responsive to the Plaintiffs' requests for production; (3) certain documents withheld on the basis of an asserted attorney-client privilege and attorney-accountant/financial advisor privilege; and (4) the transcripts of the testimony given by the Individual Defendants in the Weiner Arbitration. (Dkt. No. 42). Defendants resisted Plaintiffs' Motion to Compel on grounds of privilege, relevancy, burden and other bases. Before the Court ruled on the motion, the parties engaged in settlement negotiations, which ultimately resulted in this Settlement. In connection with confirmatory discovery, Defendants agreed to produce to Plaintiffs the majority of documents that were the subject of their Motion to Compel, including communications with Avondale and unredacted transcripts from the Weiner Arbitration.

### E.      The Settlement Negotiations and Terms

Efforts were made after the exchange of discovery to try to settle the Action through direct negotiation between the Parties' counsel, but those efforts were unsuccessful.  Crane Decl., ¶ 8.  Counsel for the parties subsequently agreed to mediate the Action before Jed Melnick of JAMs, an experienced class action securities dispute mediator.  *Id.*  In connection with the mediation, the Parties prepared comprehensive and detailed mediation statements that were provided to the mediator and each other prior to the mediation.  *Id.*

Through their representatives (legal and insurance company representative), the Parties convened in person in New York City on July 2, 2014, for an all-day mediation at JAM's office during which the Parties each presented their views on the strengths and weaknesses of the Action before breaking out into separate rooms.  Crane Decl., ¶ 9.  At the end of the day, following a joint and breakout session, the parties were far apart in their positions and ended the mediation session.  *Id.*  The parties, through the mediator, continued discussions concerning a possible resolution of the Action, while simultaneously continuing to litigate the Action.  *Id.*

After four months of effort, the mediator presented the parties with a double-blind mediator's recommended settlement proposal.  Crane Decl., ¶ 10.  The parties both agreed to the mediator's proposal and agreed to resolve the Action for a $2,250,000 benefit to the Class (subject to confirmatory discovery in terms of yet to be produced

documents from the Defendants and depositions of one of the Board members and a representative of Avondale).  Crane Decl., ¶ 11.

In complete settlement of this Litigation, Defendants' insurers have agreed to pay $2,250,000 in cash.  The Settlement funds were deposited in an escrow account until distribution.  The Settlement proceeds will be distributed to the Settlement Class according to the Plan of Allocation, as set forth in the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), after payment of settlement administration costs and reasonable attorneys' fees and expenses.

### F.    Compliance with the Court's Preliminary Approval Order

On May 18, 2015, the Court entered its Order Preliminarily Approving Settlement and Providing for Notice to the Class ("Preliminary Order").  *See* Dkt. No. 66.  The Preliminary Order preliminarily approved the Settlement pursuant to the Stipulation, found that the requirements for class certification were met, approved the form and method of disseminating the Notice and appointed Telke and Moreland as class representatives, and the law firms of Levi & Korsinsky and Crane Dunham as Class counsel.  *Id.*

The Preliminary Order directed the claims administrator for the settlement to mail and distribute the approved form of Notice to the Class.  Subsequently, the Claims Administrator mailed 1,775 notices to potential Settlement Class members or their representatives and published a Summary Notice in the *Denver Post*, *Investor's Business*

*Daily* and *PR Newswire*.   *See* Declaration of Melissa E. Baldwin Regarding Dissemination of Notice to the Class (the "Baldwin Decl."), ¶¶ 7, 9, attached to the Crane Declaration as Exhibit 7.

To date, no Settlement Class member has objected to the Settlement, the fee and expense application or the request for incentive awards.  *See* Crane Decl., ¶ 33.

## III.   ARGUMENT

### A.   Standard of Review

A class action settlement is entitled to final approval under Rule 23(e) if it is "fair, reasonable and adequate."  *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) ("the trial court must approve a settlement if it is fair, reasonable and adequate").  In *Wiles* and *Nuclear*, the Tenth Circuit identified four factors that this Court should consider in assessing whether a proposed class action settlement is fair, reasonable and adequate:  (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.  *Wiles*, 11 F.3d at 1014; *Nuclear Pharmacy*, 741 F.2d at 324.

For the reasons set forth below, each of these factors demonstrate that the Settlement is fair, reasonable and adequate and warrants final approval.

### B.   The Settlement Should be Approved as Fair, Reasonable and Adequate

14

**1.    The Settlement Was Reached Through Fair and Honest Negotiations between Experienced Counsel Before an Experienced Mediator**

This Settlement follows a lawsuit that was filed more than two and one-half years ago and is the result of an adversarial, fulsome process.  After a thorough and careful evaluation of the merits of Plaintiffs' claims, Defendants' defenses, and the risks, expense and uncertainties inherent in further expansive discovery and continued prosecution, Plaintiffs and their counsel determined that the $2,250,000 cash Settlement was a fair resolution of this Litigation.  The Settlement represents an excellent result for the Class, the terms of which were carefully considered by all Parties and their counsel.

The Settlement was fairly and honestly negotiated by qualified, experienced counsel, who at all times considered the best interests of the Parties and the Settlement Class.  Plaintiffs' Counsel have significant experience in securities and other complex class actions and have successfully achieved a number other settlements throughout the country.  *See* Crane Decl., Exs. 4, 5 and 6 (firm resumes).  Defendants' counsel are members of Jones & Keller, P.C., a premier defense firm, which is likewise highly skilled and experienced in securities litigation of this nature.

Great weight should be afforded to the fact that the Settlement was only reached after knowledgeable and experienced counsel for all Parties determined that such a compromise promoted considerable immediate benefits to the Settlement Class while at the same time resolving claims as against all Defendants.  *In re Qwest Commc'ns Int'l,*

*Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71039, at *15-16 (D. Colo. Sept. 28, 2006); *Lucas v. Kmart Corp.,* 234 F.R.D 688, 693 (D. Colo. 2006) (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel . . . ").

### 2.    Serious Questions of Law and Fact Exist that Put the Ultimate Outcome of a Trial in Doubt

Plaintiffs in this case faced major legal and factual hurdles with respect to both liability and damages, which created great uncertainty and risk had the case not settled and proceeded to either summary judgment or trial.  The fact that questions of law and fact exist also supports approval of the Settlement.  *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F3.d 1180, 1188 (10th Cir. 2002).

Plaintiffs' main claim was that Defendants breached their fiduciary duties to New Frontier stockholders in connection with the Merger by conducting an unfair process, selling the Company for too little and failing to disclose material information concerning the Merger to stockholders.  In order to prove their fiduciary duty claims, Plaintiffs must demonstrate: (i) existence of a fiduciary relationship; (ii) a breach of that duty; and (iii) damages.  *Larsen v. Consolidated Pet Foods, Inc.,* 144 B.R. 121, 162 (Bankr. D. Colo. 1992); *Myers v. Alliance for Affordable Servs.,* 371 Fed. Appx. 950, 957 (10th Cir. Colo. 2010).   The failure to prove any one of those elements would prevent any recovery.

While Defendants did not dispute that the New Frontier Board and the Company's stockholders were in a fiduciary relationship, they asserted several factual and legal challenges to Plaintiffs liability and damages theories.

### a.      Proving Defendants Breached Their Fiduciary Duties

In proving their fiduciary duty claims, Plaintiffs would have faced difficulties demonstrating that the Individual Defendants were not protected by the business judgment rule.  The business judgment rule is a legal presumption that provides that so long as a director or officer of a company is disinterested, has acted on an informed basis and in good faith that the action taken was in the best interests of the company and its stockholders, those decisions are not subject to challenge.  *Hirsch v. Jones Intercable, Inc.*, 984 P.2d 629, 638 (Colo. 1999).

Plaintiffs argued that defendant Isaacman was an interested director in the Merger because of his desire to sell the Company to Larry Flynt, his long-time personal friend and client, and that Isaacman controlled and manipulated the Board into selling New Frontier to LFP for below market value.  Crane Decl., ¶ 13.  Defendants, on the other hand, contended that despite the fact that Isaacman had once been Flynt's personal attorney, the two had not spoken in more than ten years and had not discussed the Merger.  *Id.*, ¶ 14.  Isaacman confirmed this during his deposition in which he testified under oath that he had not spoken to Flynt since their falling out many years ago.  *Id.* Moreover, while Messrs. Weiner and Nicholas informed Plaintiffs that they believed the

Board was acting under Isaacman's control and Isaacman favored a sale to Flynt, Plaintiffs did not uncover any documentary or other evidence to support their theory. Crane Decl., ¶ 15.

Plaintiffs also argued that the entire Board was interested because it entrenched itself in order to continue receiving substantial Board fees and then rushed into a sale of New Frontier to Larry Flynt in order to stave off challenges to the alleged excessive Board fees and reputational harm that would result from proxy contests by the Company's stockholders.  Crane Decl., ¶ 16.  Defendants countered that the Board's fees were consistent with those paid by other, similar companies and that the Board fees were earned for services rendered.  Crane Decl., ¶ 17.  Moreover, discovery did not uncover facts that demonstrated the Board favored LFP.  Crane Decl., ¶ 18.  Rather, the evidence showed that New Frontier engaged in discussions about a potential acquisition with at least four other potentially interested bidders and, thus, did not appear to favor LFP.  *Id.*

Plaintiffs further contended that the Board acted in bad faith and on an uninformed basis by conducting a flawed sales process that favored LFP and ignored overtures to acquire the Company from its largest stockholder, Longkloof Limited ("Longkloof"), and by suing Longkloof at a time when it was the highest bidder.  Crane Decl., ¶ 19. Plaintiffs further argued that the Board's decision to sue Longkloof deterred other interested bidders from making a play for the Company as evidenced by the fact that no other bidders subsequently made a higher offer to acquire the Company than LFP. Crane

Decl., ¶ 20.  Defendants countered that the Board had a valid business reason to bring suit against Longkloof in order to prevent a hostile takeover that it did not believe was in stockholders' best interests and that Longkloof's offer of $1.35 per share was inadequate. Crane Decl., ¶ 21.  While documentary evidence that New Frontier produced in discovery showed that other bidders were troubled by the Board's decision to sue Longkloof and that no other bidders made an offer for the Company higher than LFP's, such bidders subsequently did make offers to acquire the Company after the Longkloof lawsuit was filed and, thus, arguably were not deterred from continuing on in the sales process.  Crane Decl., ¶ 22.

Moreover, Plaintiffs' contention that the Board ignored requests from Bidder C for additional due diligence needed to make a potentially higher offer just ten days before the Merger Agreement was signed, was undercut by the deposition testimony of Karsten Lampka, who testified that the Board did respond to Bidder C's due diligence requests but that Bidder C refused to provide more definitive information about how it would finance such a transaction.  Crane Decl., ¶ 23.  Thus, the Board believed that Bidder C's interest was not sincere and it was not worth the risks of losing LFP's offer.  *Id.*

Finally, Defendants asserted early on that they intended to rely on the advice of counsel and their investment bankers to support their decision-making process and to demonstrate that the Board was fully informed at all times.  Crane Decl., ¶ 24.

As demonstrated above, Plaintiffs faced an uphill battle in demonstrating that Defendants were not acting within their business judgment in their decision to sell New Frontier to LFP.  Even if Plaintiffs were able to convince the Court that the business judgment rule did not apply because the Board, under Isaacman's control, did not act on a fully informed basis by suing Longkloof and ignoring interest from other viable bidders (thus warranting heightened scrutiny), Plaintiffs still faced significant hurdles in proving damages (discussed below).

### b.    Proving Damages

In order to prove damages, Plaintiffs would have to demonstrate that the market value of New Frontier was higher than the Merger price.  Plaintiffs argued that the value of New Frontier was much higher than the Merger price based upon analyst estimates for New Frontier as high as $4.00 per share; Avondale's analyses; discussions with Nicholas and Weiner; Plaintiffs' expert's analyses; and documentary evidence obtained during discovery that Plaintiffs argue, showed that the Company's auditors and other bidders believed the Company was worth more than the $2.06 per share Merger price. Crane Decl., ¶ 25.

Defendants, on the other hand, contended that the Merger price was a fair price that adequately valued the Company, as demonstrated by the:  (i) fact that New Frontier's financial performance had been steadily declining, as reflected in the Company's stock price, which had been trading for a long time for a price far less than the $2.06 per share paid by LFP; (ii) advent and proliferation of "free adult entertainment" on the internet, which had cannibalized New Frontier's business and caused declining sales; (iii) fact that New Frontier did not receive any offers from other bidders higher than what LFP offered; and (iv) deposition testimony from Isaacman that he made unilateral efforts outside of the formal bidding process to reach out to lower competing bidders to get them to increase their bids to substantially more than that of LFP, without success.  Crane Decl., ¶ 26.

Defendants also indicated early on that they intended to assert their reliance on the advice of their investment banker, Avondale, to support the fairness of the Merger price. Crane Decl., ¶ 24.

Whether Plaintiffs would have been able to prove their damages would inevitably hinge on a battle of the experts. *See In Re Warner Communications Sec Litig.*, 618 F.Supp. 735, 744-745 (S.D.N. Y. 1985) ("in this 'battle of experts', it is virtually impossible to predict with any certainty which testimony would be credited. . . .").  Even if Plaintiffs could convince the Court or a jury that the Board did not get the best price it could for New Frontier on behalf of stockholders, as discussed below, Plaintiffs would still have had to overcome several affirmative defenses that Defendants asserted.

### c.      Defendants' Affirmative Defenses

Defendants also put forth legal arguments concerning:   whether Plaintiffs were barred from asserting their claims by failing to exercise their statutory appraisal rights; whether Plaintiffs' claims were required to be brought derivatively, rather than directly; and whether Defendants could rely on the advice of counsel and Avondale, their investment banker in the Merger.  *See* Answer, Dkt. No. 31.

Defendants intended to pursue and might have prevailed, by summary judgment or other dispositive motion, on their legal theory that the only legal remedy available to the Plaintiffs and other stockholders (which they purportedly waived) was to have filed a notice of dissent and sought an appraisal.  Crane Decl., ¶ 27.  Defendants believed that there was some legal support for that theory under Colorado statutory and case law interpreting such law.  *Id.*   Plaintiffs contended that there was an exception to the appraisal remedy where Plaintiffs had sufficiently alleged a breach of fiduciary claim. Crane Decl., ¶ 28.  Thus, even if Plaintiffs had sufficiently proven liability, the Court could have found that the exclusivity exception did not apply and that Plaintiffs and New Frontier's stockholders' only remedy was appraisal. *Id.*

Defendants also asserted that Plaintiffs were required to bring their claims derivatively on behalf of the Company and not direct, as in the Amended Complaint. Crane Decl., ¶ 29.  Plaintiffs contended that their claims were properly brought as direct

clams and that, in any event, Defendants had waived that argument by failing to file a motion to dismiss. *Id.*

Finally, Plaintiffs contended that Defendants' reliance on advice of counsel and advisors defense was belied by facts known to them at the time of the Merger demonstrating their reliance was unreasonable because the Board failed to properly inform itself, Avondale's analyses were openly flawed and the Board employed improper defensive measures to steer a deal to LFP.  Crane Decl., ¶ 30.

As demonstrated above, serious questions of law and fact exist that put the ultimate outcome of a trial in doubt.

> ### 3.  The Value of Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation

The Settlement guarantees immediate recovery, which outweighs the mere possibility of greater success at trial.  *See Ashley v. Reg'l Transp. Dist.*, 2008 U.S. Dist. LEXIS 13069, at *20-21 (D. Colo. Feb. 11, 2008).  As described above, given the risks inherent in large-scale litigation, particularly in class actions such as this, including the risk that Plaintiffs may not ultimately prevail and, thus, may not secure any post trial relief, the outcome of this Action was far from certain.  By contrast, the proposed Settlement provides Plaintiffs and the Settlement Class with a guaranteed cash Settlement.  Thus, the value of Settlement now far outweighs the mere possibility of a more favorable recovery if this Action was further litigated.  *See Gottlieb v. Wiles*, 11 F3d 1004, 1015 (10th Cir. 1993) (the value of the settlement is weighed "against the

possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation").

Further, the costs and duration of conducting additional depositions, class and expert discovery, trial preparation, the trial itself, pre- and post-trial motions and any appeals in a complex class action of this type would vastly exceed the substantial time and money already spent. *See In re Prudential Ins. Co. Am. Sales practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement favored where "trial . . . would be a long, arduous process requiring great expenditure of time and money" by the parties and the court). Thus, the Settlement is highly beneficial because it will provide tangible and immediate relief without "complexity, duration, and expense of continuing litigation." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456-57 (S.D.N.Y. 2004).

### 4.  Plaintiffs and Plaintiffs' Counsel Believe that the Settlement is Fair, Reasonable, and Adequate and has no Obvious Deficiencies

Further supporting the reasonableness and fairness of the Settlement is the informed judgment of Plaintiffs and their counsel that the Settlement is fair, reasonable, and adequate in light of the risks Plaintiffs face in proving their claims were they to proceed. *See, e.g., Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) (the "views and experience of counsel are legitimate factors to consider"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) ("[c]ourts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or overreaching.").

Nothing in the course of the settlement negotiations or the terms of the Settlement raises any obvious doubt as to its fairness.  To the contrary, the substantial recovery to the Settlement Class and the arm's-length negotiations between informed, experienced counsel compel a finding that the Settlement is sufficiently fair, adequate and reasonable. The $2,250,000 cash Settlement constitutes a significant and certain benefit for members of the Settlement Class, particularly in light of the protracted and expensive litigation the Settlement Class would inevitably face had the Settlement not been achieved in light of the substantial questions of law and fact that remain.

After weighing the costs, risks, and delay associated with continuing litigation against the benefits of settlement, Plaintiffs' Counsel believe that is a fair, reasonable, and adequate resolution of the Action, and in the best interests of Plaintiffs and Settlement Class members.

### C.    The Court Should Affirm Its Certification of the Class

In connection with the Court's consideration of Plaintiffs' Motion for Preliminary Approval, Plaintiffs requested that the Court certify a Settlement Class so that notice of the proposed settlement, the final approval hearing and the rights of the Settlement Class members to request exclusion, object or submit proofs of claim could be issued.  In its Preliminary Approval Order, entered on May 18, 2015, the Court preliminary certified a Settlement Class. Dkt. No. 66, ¶ 3. Nothing has changed to alter the propriety of the Court's certification and, for all the reasons stated in Plaintiffs' Preliminary Approval Motion incorporated herein by reference, Plaintiffs now request that the Court affirm its

prior certification of the Settlement for purposes of: (i) approving the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (ii) appointing Plaintiffs as class representatives; and (iii) appointing Levi & Korsinsky and Crane Dunham as Settlement Class Counsel.

### D. The Method and Form of Notice to the Settlement Class Satisfies the Requirements of Due Process and Rule 23 of the Federal Rules of Civil Procedure

Under Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005). The question is not whether actual notice was provided to *all* interested parties, but rather whether the notice is the "'best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.'" *Dejulius*, 429 F.3d at 944; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (noting the issue is "whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement").

The Court found in its Preliminary Approval Order that the proposed Notice, including the form thereof, set forth in the Stipulation meets the requirements of due process and Rule 23. Pursuant to the Preliminary Approval Order, the parties' Claims

Administrator sent out 1,775 notices to potential class members.  Baldwin Decl., ¶ 7. The Notice was also published in the *Denver Post*, *Investor's Business Daily* and *PR Newswire*. *Id.*, ¶ 9.  Accordingly, the Notice meets the requirements of due process and was the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.

Moreover, it is worth noting that no New Frontier stockholder has objected to any term of the proposed Settlement.

## IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

Plaintiffs also ask the Court to grant final approval of the Plan of Allocation of the Net Settlement Proceeds.  The Plan of Allocation was described in detail in the Notice that was sent to Settlement Class members.  The evaluation of a plan of allocation among class members, like the settlement itself, is based upon whether the plan of allocation is fair, reasonable, and adequate. *See, Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1284-85 (9th Cir. 1992); *see also, In re Gulf Oil/Cities Sev. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. May 21, 1992).

The final Plan of Allocation should be approved because it provides a fair basis upon which to distribute the Net Settlement Fund among Settlement Class members who submit valid proofs of claim form.  Specifically, monies will be distributed from the Net Settlement Fund (*i.e.*, $2,250,000 less allowed legal fees and expenses, and incentive awards as same are approved by the Court) to every Settlement Class member who

submits an acceptable Claim Form when their distribution will be $10.00 or more.  Any remaining funds after the first distribution will be redistributed to those Class Members who cashed their first distribution check, after deduction of any unpaid costs or fees in administering the Net Settlement Fund for such redistribution, if the second distribution would be more than $10.00 for each such Class Member.  Any remaining funds after the second distribution will be contributed to a non-sectarian not for profit organization designated by Plaintiffs' Counsel and approved by the Court.

## V.   THE COURT SHOULD APPROVE COUNSEL'S APPLICATION FOR AN AWARD OF FEES AND EXPENSES

As set forth herein and in the accompanying attorney declarations (Crane Decl., Exs. 4, 5 and 6), Plaintiffs' Counsel negotiated a very good settlement with the Defendants.  A Settlement Fund of $2,250,000 was secured for the Settlement Class only after Plaintiffs' Counsel:  (1) conducted a detailed investigation of the claims asserted in this Action; (2) filed detailed pleadings; (3) engaged in motion practice involving several motions filed by the parties; (4) served discovery requests on Defendants and responded to Defendants' discovery requests; (5) served more than 15 non-party subpoenas; (6) reviewed more than 30,000 pages of documents and testimony that New Frontier and Avondale produced; (7) conducted several interviews of Michael Weiner and David Nicholas; (8) took the depositions of Alan Isaacman and Karsten Lampka; (9) consulted with a financial and valuation expert on issues of damages; (10) prepared a detailed mediation statement and participated in a mediation before Jed Melnick of JAMS; and

(11) negotiated the terms of the Settlement, as reflected in the Stipulation.  *See* Crane Decl., ¶¶ 11 and 12.  For their efforts in achieving a recovery in light of the significant obstacles present, Plaintiffs' Counsel seek a fee of no more than $750,000, or one-third the recovery, which, given the result, is within the range of reasonable fees.  Plaintiffs' Counsel also seek reimbursement of expenses of $98,059.51.

As explained below, the fee requested is fair and reasonable under applicable standards, particularly in view of the outstanding result obtained for the Settlement Class.  Plaintiffs' Counsel respectfully submit that the requested attorneys' fees and expenses should be awarded.

## A.    The Requested Fee Should be Awarded Based on a Percentage of the Recovery Obtained.

### 1.    Plaintiffs' Counsel are Entitled to a Fee From the Common Fund They Created

Courts have long recognized that attorneys who represent a class and achieve a benefit for class members are entitled to be compensated for their services, and that where a class plaintiff successfully recovers a fund, the costs of litigation should be spread among the fund's beneficiaries.  Under this "common fund" doctrine, established more than a century ago in *Trustees v. Greenough*, 105 U.S. 527 (1882), attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund as compensation for their work.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970); *Sprague*

29

*v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939).  Courts have also recognized that in addition to providing just compensation, awards of attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.  *See*, *e.g. Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968).

### 2. Fees in Common Fund Cases Should be Based on a Percentage of the Recovery

The Supreme Court has consistently held that where a common fund has been created for the benefit of a class a result of counsel's efforts, the award of counsel's fee should be determined on a percentage of the fund basis.  *See, e.g. Greenough, 105 U.S. 527 at 532; Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-125 (1885); *Sprague*, 307 U.S. at 166-67; *Boeing*, 444 U.S. at 478-79.  Indeed, by 1984 this notion was so well established that the Supreme Court needed no more than a footnote to make this point in *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984)("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fun bestowed on class. . ..").  *See also* Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 242 (3rd Cir. 1985)(hereinafter the "Task Force Report")(fee awards in common fund cases have historically been computed based upon a percentage of the fund); 1 Alba Conte, *Attorney Fee Awards* Section 2.02, at 31-32 (2d ed. 1993)(same).

Moreover, in the wake of the Supreme Court's decision in *Boeing*, 444 U.S. 472, and *Blum*, 465 U.S. 886, which reaffirmed the appropriateness of the percentage method

in common fund cases, in 1984, Judge Aldisert of the Third Circuit convened a task force of prominent judges and practitioners to reconsider *Lindy Bros. Builders v. Am.Radiator & Standard Sanitary Corp.*, 540 P.2d 102, 116-18 (3d Circ. 1976) (en banc) because "a number of difficulties [had] been encountered in applying the [lodestar method]."  Task Force Report, 108 F.R.D. at 238.  The Third Circuit Task force, headed by Professor Arthur Miller of Harvard Law School, identified at least nine perceived deficiencies of the *Lindy* "lodestar' approach, and found that there was a 'widespread belief" that these deficiencies "either offset or exceed [the] benefits" of the lodestar method.  Task Force Report, 108 F.R.D. at 246.

Accordingly, the Third Circuit Task Force concluded that although *Lindy* continued to have merit in statutory fee-shifting cases, and should be followed in such cases, fee awards in common fund cases should be based on a percentage of recovery. Task Force Report, 108 F.R.D. at 254-59.

### 3.    A Reasonable Percentage of the Fun Created is the Preferred Method of Awarding Attorneys' Fees in Common Fund Cases

In *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir. 1988), the Tenth Circuit affirmed the propriety of awarding attorneys' fees on a percentage basis in a common fund case.  Cases following Brown confirm a "preference" in the Tenth Circuit for the percentage method.  In *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) the court stated: In our circuit, following *Brown* and *Uselton*, either [the percentage or

lodestar] method is permissible in common fund cases; however, *Uselton* implies a preference for the percentage of the fund method. *Id.* at 483.[6]

Moreover, the PSLRA has made the percentage method the standard for determining whether attorneys' fees are reasonable. *See* 15 U.S.C Section 78u-4(a)(6). The PSLRA states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. Section 78u-4(a)(6). Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities actions. *See Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics*, 127 F. Supp.2d 418, 430 (S.D.N.Y. 2001).

In addition, supporting authority for the percentage method in other circuits and by commentators is overwhelming.  Since the issuance of the Task Force Report in 1985, virtually every circuit court has joined the United State Supreme Court in approving use of the percent of the fun method in common fund cases. *See, e.g.*, *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *In re GMC Pick-Up TruckFuel Tank Prods. Liab. Litig.*, 55 F.3d 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Properties.*, 9 F.3d 513, 517 (6th Cir. 1993); *Florin v. Nationsbank, N.A.* 34 F.3d 560, 564-65 (7th Cir. 1994); *Johnston v. Comerica Mortg.*

_____

[6] See also *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 853 (10th Cir. 1993).

*Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *In re Wash. Pub Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Camden I Condo., Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)("After reviewing Blum, the [Third Circuit] Task Force Report, and . . . cases from other circuits, we believe that the percentage of the fund approach is the better reasoned in t a common fund case.:); *Swedish Hosp. Corp. v. Shalaha*, 1 F.3d 1261, 1271 (D.C. Circ. 1993)(percentage of the fun recovered is the only permissible measure of awarding fees in common fund cases).

As these and many other courts have noted, the percentage method directly aligns the interests of the class and its counsel and provides a powerful incentive for efficient prosecution, thereby benefiting both litigants and the judicial system.  For example, in *Kirchoff v. Flynn*, 786 F.2d 320, 3257th Cir. 1986), the Seventh Circuit succinctly summarized some of the benefits of the percentage method:

> The contingent fee uses private incentives rather than carefully monitoring to align the interests of lawyer and client.  The lawyer gains only to the extent his client gains . . . The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours.  Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees to defendants.

### B.   The Reasonableness of the Percentage Fee Requested is Confirmed by an Analysis of the Johnson Factors

The Tenth Circuit has recognized that in determining the appropriate percentage of attorneys' fees in common fund cases, the court should be informed by an analysis of the factors articulated by the Fifth Circuit in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d

714 (5th Cir. 1974).  *See Brown*, 838 F.2d at 454-55, *Uselton*, 9 F.3d at 8536.  These factors are commonly referred to as the Johnson factors.  As shown below, application of the Johnson factors as a crosscheck amply supports the fairness and reasonableness of the percentage fee requested.

> The twelve *Johnson* factors are:
>
> (1) The time and labor required . . . (2) The novelty and difficulty of the questions . . . (3) The skill requisite to perform the legal service properly . . (4) The preclusion of other employment by the attorney due to acceptance of the case. . . (5) The customary fee [for similar work in the community] . . . (6) Whether the fees is fixed or contingent . .  (7) Time limitations imposed by the client or the circumstances. . . (8) The amount involved and the results obtained. . . .(9) The experience, reputation and ability of the attorneys . . . (10) The "undesirability" of the case. . . (11) The nature and length of the professional relationship with the client . . .[and] (12) Awards in similar cases.

488 F.2d at 717-19.  The relevance of each of the *Johnson* factors will vary in any particular case and rather than requiring a rigid application of each factor, the Tenth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case.  *Brown*, 838 F.2d at 456; see also *Uselton*, 9 F.3d at 853 ("applicability and weight" of the *Johnson* factors will "undoubtedly be different" in common fund and statutory fee determinations).  As discussed below, consideration of the applicable *Johnson* factors confirms the reasonableness of the fee requested here.

### 1.    The Amount Involved and the Results Obtained

While listed as the eighth *Johnson* factor, Plaintiffs' Counsel discuss this factor first because, as many courts recognize, the result achieved for the class is the most

important factor in determining an appropriate fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)("most critical factor is the degree of success obtained"); *Brown*, 838 F. 2d at 456 (in a common fund case, the results obtained may be given greater weight); *Gottlieb v. Wiles,* 150 F.R.D. 174, 181 (D.Colo. 1993)("*Gottlieb II*")(proper focus in awarding fees is amount of restitution made to class), *rev'd* on other grounds sub nom. *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, at 630 ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client").

A Settlement Fund of $2,250,000 has been obtained through the diligent efforts of Plaintiffs' Counsel without the necessity and risk of prolonged litigation, trial and appeals.  The Settlement represents approximately 7% of the total value of the Merger of approximately $33 million.  As a percentage of total deal value, this Settlement is above the average of most monetary settlements in similar merger litigation.  *See, e.g., In re Winn-Dixie Stores, Inc. S'holder Litig.,* Case No. 16-2011-CA-010616 (Cir. Ct. 4th Jud. Cir. For Duval Cty FL Dec. 5, 2014) (approving $12 million settlement on behalf of class in transaction valued at $537.7 million, or a 2.23% increase in the merger consideration); *In re CNX Gas Corp. S'holder Litig.,* C.A. No. 5377-VCL (Del. Ch. Aug. 23, 2013) (approving $42.7 million settlement on behalf of the class in a merger valued at $960 million, or a 4.45% increase in the merger consideration); *In BMC Software, Inc. S'holder Litig.*, C.A. No. 8544-VCG (Del. Ch. April 28, 2014) (approving $12.4 million

settlement on behalf of class in transaction valued at $6.9 billion, or a 0.18% increase in the merger consideration); *In re El Paso Corp. S'holder Litig.,* C.A. No. 6949-CS (Del. Ch. Dec. 3, 2013) (approving $110 million settlement on behalf of class in transaction valued at $21 billion, or a 0.52% increase in the merger consideration); *In re Playboy Enterprises, Inc. S'holders Litig.,* C.A. 5632-VCN (Del. Ch. Mar. 19, 2013) (approving $5.25 million settlement on behalf of class in transaction valued at $206 million, or a 2.57increase in the merger consideration).   Moreover, setting aside the fact that that provable damages could end up to be a fraction of Plaintiffs' expert's preliminary damages analysis had the case moved forward through discovery and trial, when measured against the results in comparable cases (discussed above), Plaintiffs' Counsel achieved a remarkable recovery for Settlement Class members, a result that fully supports the one-third (1/3) fee award requested.

**2.     The Time and Labor Involved**

While the time and labor required to successfully prosecute this action and obtain the outstanding settlement for the benefit of the Settlement Class fully justifies the requested fee, the Tenth Circuit has found this *Johnson* factor to be of less importance in a common fund case, such as this case.

> Although the *Johnson* factors are relevant in determining a reasonable fee in a common fund case, the inherent differences between statutory fee and common fund cases could justify a trial judge's decision to assign different relative weights to those factors in the two types of cases.   For example, the first factor – time and labor required – is an essential touchstone for recovery in a statutory fee case where

36

> reasonableness is measured in party reference to the lodestar analysis.  In a common fund case, however, although time and labor required are appropriate consideration, the ninth *Johnson* factor – the amount involved and the results obtained – may be given greater weight when, as in this case, the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class.

*Brown*, 838 F.2d at 456.

Plaintiffs' Counsel vigorously prosecuted this case on behalf of the Settlement Class. Plaintiffs' Counsel performed an extensive factual investigation, interviewed numerous witnesses (including two former Board Members of New Frontier, one of whom was the CEO and co-founder of the Company), deposed a former Board member and individual defendant, as well as the lead investment banker in charge of opining on the fairness of the Merger price and evaluating competing offers for New Frontier, and negotiated a mediated settlement that results in an excellent recovery.

In total, Plaintiffs' Counsel and their paraprofessionals devoted 2,480.7 hours to this action with the resulting lodestar of $1,287,713.  *See* Crane Decl., Exs. 4, 5 and 6 (attorney fee affidavits).  The requested fee represents a negative multiple of approximately -58.2% of Plaintiffs' Counsels' lodestar.  The negative multiplier reflected here falls below the range of multiplies found reasonable for cross-check purposes by courts in common fund cases and is fully justified here given the effort required, the risks faced and overcome, and the results achieved.[7]

---

[7] *See, e.g. In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 735-36 (E.D. Pa. 2001)(fee representing 10.73 multiplier); *Weiss v. Mercedes-Benz of N.Am.*, 899 F.Supp.1297 1304

Moreover, reliance on the amount of attorney time in determining the fee award has been substantially abandoned in common fund cases because it encourages delay, inefficiency and recalcitrance toward early settlement.  Thus, if class counsel can obtain an excellent result for the settlement class early in a case, the fact that the time involved is less than if the case had unnecessarily dragged on for several more years should not diminish the percentage to be awarded.   To the contrary, such efficiency and effectiveness should be rewarded and the percentage method accomplishes this result. *See In re Harrah's Entm't*, 1998 U.S. Dist. LEXIS 18774, at *15 (E.D. La. Nov. 24, 1998) ("Because counsel prosecuted this action on a contingent fee basis, the Court would rather focus on results obtained.  To overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of attorneys' services.").

### 3.    The Novelty and Difficulty of Questions Raised by the Litigation

The novelty and difficulty of the issues in a case is a significant factor to be considered in making a fee award.  Courts have long recognized that class actions involving complex issues of corporate fiduciary duty law present inherently complex and novel issues.  *See Consumers Gas & Oil v. Farmland Indus.,* 863 F. Supp. 1357, at *18-19 (D. Colo. 1993) (recognizing the complex issues involved in litigation regarding breach of fiduciary duties claims against defendants for failing to redeem Capital Credits

---

(D.N.J. 1995) (awarding fee resulting in 9.3 multiplier; *Cosgrove v. Sullivan*, 759 F.Supp. 166, 167, n. 1 (S.D.N.Y 1991)(multiplier of 8.74).

to consumers); *In re King Resources Co. Sec. Litigation,* 420 F. Supp. 620, 632-33 (D. Colo. 1976) (noting the many novel and extremely complex issues involved in a class action 10b-5 securities litigation); *Oppenlander v. Standard Oil Co.,* 64 F.R.d. 597, 606 (D. Colo. 1974) ("Many unique and complex issues were presented in this [direct and derivative shareholder class action] litigation.").

The essence of the Plaintiffs' case is that the Defendants breached their fiduciary duties by conducting an unfair process that favored a sale of the Company to defendant Isaacman's long-time personal friend and client for below market value.  In deciding to settle the Action, Plaintiffs took into consideration the difficulties they would have had overcoming the protections afforded the Board under the business judgment rule.  *See* Section III.B.2, *supra.*  Even if Plaintiffs were able to prove liability, they also would have faced risks establishing damages where no other bidder made a higher offer to acquire the Company.  While Plaintiffs would have argued that the reason New Frontier did not receive a higher offer was because the Board sued its highest bidder, Longkloof, thereby sending a message to other bidders that the Company was only for sale to Larry Flynt, Defendants would have countered that other bidders engaged in the process after the Longkloof lawsuit and simply did not beat LFP's offer.  In light of these issues of fact, Plaintiffs' ability to prove damages would have likely come down to an unpredictable a battle of qualified experts. *See, In Re Warner Communications*, *supra.* To the extent Defendants could prevail on issues relating to liability or show that

assumptions made by Plaintiffs' experts were incorrect or unreliable, Plaintiffs' damages claims could still have been significantly reduced.

Further, in complex and substantial cases such as this, it must be recognized that even a victory at the trial stage does not guarantee ultimate success.  Both trial and judicial review are unpredictable and could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.  Indeed, even as the court observed in *In re Warner Commc'ns Sec. Litig*.:

> Even a victory at trial is not a guarantee of ultimate success.  If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recover itself.

618 F. Supp. 735, 747-48 (S.D.N.Y. 1985) (citing examples), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

Despite the difficulty of the issues raised, Plaintiffs' Counsel secured a good recovery for the Settlement Class.  As a result, this factor supports the requested award.

### 4.    The Requisite Skill to Perform the Legal Services Properly

Plaintiffs' Counsel effectively prosecuted this action, culminating in a favorable recovery for the Settlement Class.  *See In re Wararin Sodium Antitrust Litig*., 212 F.R.D. 231, 261 (D. Del. 2002)(class counsel showed their effectiveness through favorable cash recovery obtained), *aff'd* 391 F.3d 515 (3d Cir. 2004).  As the court recognized in

*Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987), "prosecution and management of a complex national class action requires unique legal skills and abilities."

Those unique skills were called upon here. The quality of Plaintiffs' Counsels' work on this case was excellent and is ultimately reflected in the result. The notable recovery obtained for the Settlement Class is the direct result of the efforts of highly skilled and specialized attorneys who possess substantial experience in the prosecution of complex securities and other class actions. This Settlement represents an excellent result for the Settlement Class, one that is attributable to the diligence, determination and hard work of Plaintiffs' Counsel.

### 5.    The Preclusion of Other Employment by Attorneys Due to Acceptance of the Case

When Plaintiffs' Counsel undertook to represent Plaintiffs in this Action, it was with the expectation that they would have to devote a significant amount of time and effort, and advance large sums in expenses, to its prosecution. The dedication of time needed to successfully prosecute this action monopolized the resources of Plaintiffs' Counsel on many occasions and precluded them from working on other matters. The time spent by Plaintiffs' Counsel on this case was at the expense of the time that counsel could have devoted to other matters.

### 6.    The Customary Fee for Similar Work

In local, regional and national markets, complex commercial cases require a contingent fee of between 30 and 40 percent of the gross recovery (even more when the

attorney must bear the litigation expenses).  As Justices Berman and Marshall observed in their concurring opinion in Blum: "'in tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.'"  *Blum*, 465 U.S. at 903; *see also Kirchoff*, 786 F.2d at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial).

Circuit courts and scholars have encouraged the "mimic the market" approach in setting fees in common fund class actions.  The Seventh Circuit has consistently taken this approach.  *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992)("[I] is not the function of judges in fee litigation to determine the equivalent of the medieval just price.  It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order."); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.").

Thus, the customary contingent fee in the market place supports a fee award of one-third (1/3) of the Settlement Class recovery.

### 7.    Whether the Fee is Fixed or Contingent

Plaintiffs' Counsel undertook this matter on a contingent fee basis, assuming a substantial risk that they would have to devote a significant amount of time and incur

substantial expenses in prosecuting this action without any assurance of being compensated for their efforts.  The contingent nature of Plaintiffs' Counsel's fee should be given substantial weight in assessing the requested fee award.[8]  Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in awarding attorneys' fees. *See, e.g., In re Prudential-Bache Energy Income Partnerships Sec. Litig.*, 1994 U.S. Dist. LEXIS 6621, at * 16 (E.D.La. May 18, 1994).  *See In Re Warner, supra*, at 747-748 (citing numerous examples)("Even a victory at trial is not a guarantee of ultimate success.  If Plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment.  An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.")

Indeed, the risk of no recovery in complex cases of this type is very real.  There are numerous class actions in which lead counsel have expended thousands of hours and received no remuneration whatsoever despite their diligence and expertise.  The risks of contingent litigation are also highlighted by the fact that a dramatic change in the law can result in the dismissal of a claim after a great deal of time and effort have been expended on the case.

Because the fee in this matter was entirely contingent, the only certainty was that

---

[8] *See Jones v. Cent. Soya Co.*, 748 F.2d 586, 591 (11th Cir. 1984); *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980); *Walters v. Atlanta*, 652 F. Supp. 755 759 (N.D. Ga. 1985); *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992).

there would be no fee without a successful result and that such a result would be realized only after considerable and difficult effort.   Plaintiffs' Counsel have received no compensation during the course of this action and have committed substantial resources of both time and money to the vigorous and successful prosecution of this action for the benefit of the Settlement Class.   The contingent nature of Plaintiffs' Counsel's representation strongly favors the requested percentage fee award.

### 8.      Time Limitation Imposed by the Client or Circumstances

This factor does not pertain to this case.

### 9.      The Experience, Reputation and Ability of the Attorneys

Plaintiffs' Counsels' fee should reflect the degree of experience, competence and effort necessary to prosecute the action to a successful conclusion.  Plaintiffs' Counsel, Levy & Korsinsky is a nationally known leader in the fields of securities class actions and complex litigation.  *See* Crane Decl, Ex. 5 (firm resume).  Crane Dunham is known throughout the Pacific Northwest for having achieved significant recoveries in class action cases on behalf of employees and customers, and for a landmark decision before the Washington Supreme Court invalidating bars on class action participation in "form consumer contracts".  *Id.*, Ex. 4 (firm resume).  Plaintiffs' Counsels' efforts in diligently protecting the Settlement Class' interest and bringing this action to a successful conclusion are the best indicator of the ability of the attorneys involved.

### 10.      The Undesirability of the Case

The issues presented in this case rendered the case inherently risky, if not "undesirable" from the start.  In addition, this case's panoply of difficult issues of fact and law presented significant risks to Plaintiffs' Counsel.  The risks assumed by Plaintiffs' Counsel in prosecuting this case on a contingent fee basis were therefore substantial.  When counsel undertook representation of Plaintiffs and the Settlement Class in this Action, it was with knowledge that they could have to spend substantial time

and money and face significant risks without any assurance of being compensated for their efforts.   There is no question that this case was risky when Plaintiffs' Counsel accepted this retention, and the risks Plaintiffs' Counsel faced must be assessed as they existed at the time they undertook the Action and not in light of the recovery ultimately achieved.  *See, e.g., Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991).

Moreover, beyond the normal or usual issues of fact and law, this particular case could well be viewed as "undesirable" due to the nature of the subject matter of the businesses that were undertaken by both New Frontier and the acquiring company, LFP: *i.e.* internet "adult entertainment."   Not many "blue chip" litigators of complex and securities focused cases, especially in federal court, are likely to be attracted to a case where they are representing investors in such companies.

The "undesirability" factor supports the requested fee percentage.

### 11.    The Nature and Length of the professional Relationship with the Client

This factor does not pertain to this case.

### 12.    Awards in Similar Cases

The requested fee percentage also falls within the range of awards in other similar cases from within this district.  *Rasner v. FirstWorld Commc'ns, Inc.*, No. 00-K-1376, slip op. (D.Colo Jan 19, 2005) (fee equal to 33% of recovery plus expenses), Crane Decl,. Ex. 8; *Angres v. Smallworldwide PLC*, No. 99-K1254, slip op. (D.Colo. June 7, 2003)(awarding fees of 33-1/3% of the recovery fund), *Id.*, Ex. 9; *Schwartz v. Celestial*

*Seasonings, Inc.*, No. 95-K1050, slip op. (D.Colo. Apr. 25, 2000)(awarding fees of 33-1/3% of the settlement fund), *Id.*, Ex. 10; *In re Intelcom Grp., Inc. Sec. Litig.*, No. 95-D-1166, slip. Op. (D. Colo. Mar. 21, 1997) (awarding fees of 33-1/3% of the recovery), *Id.*, Ex. 11; *Sonnenfeld v. City of Denver, Colorado*, C.A. No. 95-Z-468 (D. Colo. Dec. 8, 1997) (same), *Id.*, Ex. 12.  Moreover, as noted above, the amount of requested attorneys' fees is far *less* than Plaintiffs' Counsel's lodestar.

In summary, Plaintiffs' Counsel's fee request is in alignment with awards in similar complex actions.

### 13.    The Support of Plaintiffs and Reaction of the Class

Although not a specific Johnson factor, the support of the Plaintiffs and the lack of any objections by Settlement Class members, also constitute evidence the level of fees requested is reasonable.  Plaintiffs actively monitored the Litigation and consulted with counsel during the course of settlement negotiations.  Plaintiffs' support of proposed attorneys' fees, as described in the accompanying declarations, is additional evidence of the fairness of the requested fees.  *See* Telke Decl., ¶ 7; Moreland Decl., ¶ 8, attached as Exhibits 3 and 2 to Crane Decl., respectively.

Additionally, the Notice mailed to Class members advised them that Plaintiffs' Counsel would apply for a fee award of up to $750,000 (or one-third) of the Settlement Fund), plus expenses not to exceed $100,000.  To date, not a single objection or opposition to the attorneys' fees (or expenses) has been submitted or otherwise

communicated to Plaintiffs' Counsel. Crane Decl., ¶ 33. In determining the reasonableness of a requested attorneys; fee, numerous courts have recognized that the "lack of objection from members of the class is one of the most important reasons." *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 985 F. Supp. 410, 416 (S.D.N.Y. 1997) (citations omitted).

### C. Plaintiff's Counsel's Expenses are Reasonable and Were Necessarily Incurred in the Prosecution of the action.

Plaintiffs' Counsel request for an award for reimbursement of expenses incurred in connection with the prosecution of the Action. Expenses are compensable in a common fund case if the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if such charges would normally be billed to client). Decisions in other circuits confirm this practice. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (expenses normally charged to a fee-paying client approved); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)(same); *Associated Builders & Contractors, Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374 380 (5th Cir. 1990) (same). The categories of expenses for which counsel seek reimbursement are the type routinely charged to paying clients and, thus, should be awarded from the common fund.

Plaintiffs' Counsel have incurred costs and expenses in an aggregate amount of $98,059.51 in prosecuting this action on behalf of the Settlement Class. These expenses

are itemized in Plaintiffs Counsel's declarations submitted herewith.  *See* Exs. 4, 5 and 6 to Crane Decl..

Significant components of the expenses incurred in this case include, but are not limited to:  1) fees paid to Plaintiffs' expert to assess potential damages, 2) fees paid to the professional mediation service which was successfully utilized to settle the case, and 3) travel expenses arising from travel to hearings, depositions and the mediation.

## VI.    REPRESENTATIVE PLAINTIFFS ARE ENTITLED TO INCENTIVE AWARDS

Under the PSLRA, the Court may also award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  *See* 15 U.S.C. Section 77z-1(a)(4). Plaintiffs William Douglas Moreland and Craig Telke request reimbursements of $10,000 each.  *See* Crane Decl, Ex. 2, ¶ 2; *Id.*, Ex. 3, ¶ 2.   Each of these class representatives devoted substantial time to the oversight of, and participation in, the Litigation, including reviewing pleadings, complying with Defendant' discovery requests, and consulting with Plaintiffs' Counsel throughout the case and the settlement.  *Id.* The amounts requested will reimburse them for their foregone wages and expenses directly relating to their representation of the Class.   Many cases before this Court have approved reasonable payments to compensate class representative for the time and effort devoted by them on behalf of a class.  Recently in *In Re Core Bond Fund*, No. 09-cv-1186-JLK-KMT, slip op. (D. Colo. Sept. 30, 2011), this Court awarded the lead plaintiff $54,900 in lost wages

and expenses.  Crane Decl., Ex. 13.  Similarly, in *In Re Rhythms Sec. Litig.*, No. 02-35 (D.Colo. Apr. 3, 2009), this Court granted the lead plaintiff's request for reimbursement and awarded $135,084.  *See also In re Oppenheimer Champion Income Fund Sec. Fraud Class Action*, No. 0cv-386-JLK-KMT, slip op. (D. Colo. Sept. 2011)(awarding $16,500 collectively to two lead plaintiffs), *Id.*, Ex. 15.  Approval of these awards is warranted as a matter of public policy and appropriate under applicable precedents. *Williams, Inc. v. Kaiser Sand & Gravel Co.,* No. C91 4028 MHP, 1995 U.S. Dist. LEXIS 14262, at *6-7 (N.D.Cal. Sept. 19, 1995) (granting $10,000 incentive award to single plaintiff); *In re Catfish Antitrust Litig.,* 939 F. Supp. 493, 504 (N.D. Miss. 1996) (four named plaintiffs each received $10,000 award).

## VII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order substantially in the form of the proposed Order and Final Approval (a) certifying the proposed Settlement Class; (b) approving the Settlement; (c) approving the Plan of Allocation; (d) appointing Plaintiffs as class representatives and their Counsel as class counsel; (e) approving Plaintiffs' Counsel's requested award of attorneys' fees and expenses; and (f) approving the incentive awards to the Plaintiffs.

Dated:  August 4, 2015.                                    Respectfully submitted,

DYER & BERENS LLP

By: /s/ Jeffrey A. Berens
Jeffrey A. Berens

Darby K. Kennedy
DYER & BERENS LLP
303 East 17th Avenue, Suite 810
Denver, CO  80203
(303) 861-1764

**PLAINTIFFS' COUNSEL**

Shannon L. Hopkins
Stephanie Bartone
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, NY 10004
(212) 363-7500

Stephen J. Crane
CRANE DUNHAM PLLC
2121 Fifth Avenue
Seattle, WA 98121
(206) 292-9090
*Co-Lead Counsel*

51

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

<u>s/ Jeffrey A. Berens</u>
Jeffrey A. Berens
Attorney for Plaintiffs
DYER & BERENS LLP
303 East 17th Avenue, Suite 810
Denver, CO 80203
Telephone: (303) 861-1764
FAX: (303) 395-0393
Email: jeff@dyerberens.com