# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02941-JLK

CRAIG TELKE, and
WILLIAM DOUGLAS MORELAND,
Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

NEW FRONTIER MEDIA, INC.,
ALAN ISAACMAN,
MELISSA HUBBARD,
HIRAM J. WOO, and
WALTER TIMOSHENKO,

    Defendants.

---

**DECLARATION OF STEPHEN J. CRANE IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF: (1) CLASS ACTION SETTLEMENT; (2) CERTIFICATION OF SETTLEMENT CLASS; (III) PLAN OF ALLOCATION; (IV) APPLICATION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; AND (V) APPLICATION FOR INCENTIVE AWARD TO PLAINTIFFS**

---

I, STEPHEN J. CRANE, declare as follows:

1.     I am the founding partner with the Seattle law firm of CRANE DUNHAM PLLC ("Crane Dunham"). I am submitting this declaration in support of the motion by Plaintiffs for approval of the Settlement in the above captioned matter.

2. I represent Plaintiff William Douglas Moreland ("Moreland") in the above-captioned Action. At the time, Moreland, directly and through related entities, owned or controlled over 1 million shares of common stock in New Frontier Media, Inc. ("New Frontier" or the "Company") out of a total of approximately 16 million shares outstanding.

3. On May 15, 2015, plaintiff Telke moved to amend his Complaint to allow William Douglas Moreland to join the lawsuit. As the owner, directly and indirectly, of more than 1 million shares of New Frontier stock and the largest individual stockholder, it was believed important by counsel for Telke and Moreland that Moreland be allowed to participate in and add his voice to the Litigation.

4. There was a significant amount of fact discovery taken during this Litigation. Among other things, Plaintiffs' Counsel: (i) served discovery requests on Defendants and responded to Defendants' discovery requests; (ii) reviewed more than 30,000 pages of documents and testimony that New Frontier produced; (iii) reviewed more than 4,000 pages of documents that Avondale Partners, LLC ("Avondale"), the Company's investment advisor in the merger, produced; (iv) fully briefed a motion to compel; (v) served fifteen (15) non-party subpoenas; (vi) reviewed un-redacted transcripts from the Weiner Arbitration; and (vii) took the depositions of defendant Isaacman and an Avondale representative.

5. Plaintiffs' Counsel also conducted numerous and extensive interviews of the key players most knowledgeable about the process leading up to the Merger -- founder and former Chief Executive Officer of the Company and member of the New Frontier Board of Directors (the "Board"), Michael Weiner ("Weiner"), and his fellow Board Member, David Nicholas ("Nicholas") – about the operation of the Board and its various committees, including but not limited to the Special Committee responsible for the overseeing of the bidding and acquisition process and New Frontier's business operations.

6. At the same time as this Litigation was proceeding, a separate but related matter was in arbitration: the alleged wrongful termination by the Board of Weiner as CEO of New Frontier ("Weiner Arbitration"). Since all of the Individual Defendants in this Action also testified in the Weiner Arbitration, which spanned several days, Plaintiffs sought to obtain the transcripts of that private and confidential arbitration. These efforts were vigorously resisted by Defendants until, at first, very heavily redacted transcripts were produced and later un-redacted versions of the same transcripts during the confirmatory discovery process.

7. Plaintiffs also consulted with a financial and valuation expert on issues of damages and engaged the expert to assist in the review of relevant financial information produced by New Frontier and Avondale.

8.      After the exchange of discovery, the Parties preliminary discussed the possibility of a resolution of the Action, which discussions were unsuccessful. Counsel for the parties subsequently agreed to mediate the Action before Jed Melnick of JAMs, an experienced class action securities dispute mediator. In connection with the mediation, the Parties prepared comprehensive and detailed mediation statements that were provided to the mediator and each other prior to the mediation.

9.      Through their representatives (legal and insurance company representative), the Parties convened in person in New York City on July 2, 2014, for an all-day mediation at JAM's office during which the Parties each presented their views on the strengths and weaknesses of the Action before breaking out into separate rooms. At the end of the day, following a joint and breakout session, the Parties were far apart in their positions and ended the mediation session. The Parties, through the mediator, continued discussions concerning a possible resolution of the Action, while simultaneously continuing to litigate the Action.

10.     After four months of effort, the mediator presented the parties with a double-blind mediator's recommended settlement proposal.

11.     The parties both agreed to the mediator's proposal and agreed to resolve the Action for a $2,250,000 benefit to the Class (subject to confirmatory discovery in terms of yet to be produced documents from the Defendants and depositions of one of the Board members and a representative of Avondale).

4

12. The Settlement is the culmination of two years of hard-fought litigation and settlement negotiations and was achieved only after Plaintiffs' Counsel, *inter alia*: (1) conducted a detailed investigation of the claims asserted in this Action; (2) filed detailed pleadings; (3) engaged in motion practice involving several motions filed by the parties; (4) engaged in extensive fact and expert discovery, as summarized in paragraphs 4-7 above; (5) prepared a detailed mediation statement and participated in a mediation before Jed Melnick of JAMS; and (6) negotiated the terms of the Settlement, as reflected in the Stipulation of Settlement, dated April 27, 2015 (the "Stipulation"), attached hereto as Exhibit 1.

13. In proving their fiduciary duty claims, Plaintiffs would have faced difficulties demonstrating that the Individual Defendants were not protected by the business judgment rule. Plaintiffs argued that defendant Isaacman was an interested director in the Merger because of his desire to sell the Company to Larry Flynt ("Flynt"), his long-time personal friend and client, and that Isaacman controlled and manipulated the Board into selling New Frontier to LFP Broadcasting ("LFP") for below market value.

14. Defendants, on the other hand, contended that despite the fact that Isaacman had once been Flynt's personal attorney, the two had not spoken in more than ten years and had not discussed the Merger. Isaacman confirmed this during his deposition in which he testified under oath that he had not spoken to Flynt since their falling out many years ago.

15. Moreover, while Messrs. Weiner and Nicholas informed Plaintiffs that they believed the Board was acting under Isaacman's control and Isaacman favored a sale to Flynt, Plaintiffs did not uncover any documentary or other evidence to support their theory.

16. Plaintiffs also argued that the entire Board was interested because it entrenched itself in order to continue receiving substantial Board fees and then rushed into a sale of New Frontier to LFP in order to stave off challenges to the alleged excessive Board fees and reputational harm that would result from proxy contests by the Company's stockholders.

17. Defendants countered that the Board's fees were consistent with those paid by other, similar companies and that the Board fees were earned for services rendered.

18. Moreover, discovery did not uncover facts that demonstrated the Board favored LFP. Rather, the evidence showed that New Frontier engaged in discussions about a potential acquisition with at least four other potentially interested bidders and, thus, did not appear to favor LFP.

19. Plaintiffs further contended that the Board acted in bad faith and on an uninformed basis by conducting a flawed sales process that favored LFP and ignored overtures to acquire the Company from its largest stockholder, Longkloof Limited ("Longkloof"), and by suing Longkloof at a time when it was the highest bidder.

20. Plaintiffs also argued that the Board's decision to sue Longkloof deterred other interested bidders from making a play for the Company as evidenced by the fact that no other bidders subsequently made a higher offer to acquire the Company than LFP.

21. Defendants countered that the Board had a valid business reason to bring suit against Longkloof in order to prevent a hostile takeover that it did not believe was in stockholders' best interests and that Longkloof's offer of $1.35 per share was inadequate.

22. While documentary evidence that New Frontier produced in discovery showed that other bidders were troubled by the Board's decision to sue Longkloof and that no other bidders made an offer for the Company higher than LFP's, such bidders subsequently did make offers to acquire the Company after the Longkloof lawsuit was filed and, thus, arguably were not deterred from continuing on in the sales process.

23. Plaintiffs' contention that the Board ignored requests from Bidder C for additional due diligence needed to make a potentially higher offer just ten days before the Merger Agreement was signed, was undercut by the deposition testimony of Karsten Lampka, who testified that the Board did respond to Bidder C's due diligence requests but that Bidder C refused to provide more definitive information about how it would finance such a transaction. Thus, the Board believed that Bidder C's interest was not sincere and it was not worth the risks of losing LFP's offer.

7

24. Defendants asserted early on that they intended to rely on the advice of counsel and their investment bankers to support their decision-making process, to demonstrate that the Board was fully informed at all times and to support the fairness of the Merger price.

25. In connection with their damages claims, Plaintiffs argued that the value of New Frontier was much higher than the Merger price based upon analyst estimates for New Frontier as high as $4.00 per share; Avondale's analyses; discussions with Nicholas and Weiner; Plaintiffs' expert's analyses; and documentary evidence obtained during discovery that Plaintiffs argue, showed that the Company's auditors and other bidders believed the Company was worth more than the $2.06 per share Merger price.

26. Defendants contended that the Merger price was a fair price that adequately valued the Company, as demonstrated by the: (i) fact that New Frontier's financial performance had been steadily declining, as reflected in the Company's stock price, which had been trading for a long time for a price far less than the $2.06 per share paid by LFP; (ii) advent and proliferation of "free adult entertainment" on the internet, which had cannibalized New Frontier's business and caused declining sales; (iii) fact that New Frontier did not receive any offers from other bidders higher than what LFP offered; and (iv) deposition testimony from Isaacman that he made unilateral efforts outside of the formal bidding process to reach out to lower competing bidders to get them to increase their bids to substantially more than that of LFP, without success.

27. With respect to their affirmative defenses, Defendants intended to pursue and might have prevailed on their legal theory that the only legal remedy available to the Plaintiffs and other stockholders (which they purportedly waived) was to have filed a notice of dissent and sought an appraisal.

28. Plaintiffs contended that there was an exception to the appraisal remedy where Plaintiffs had sufficiently alleged a breach of fiduciary claim. Thus, even if Plaintiffs had sufficiently proven liability, the Court could have found that the exclusivity exception did not apply and that Plaintiffs and New Frontier's stockholders' only remedy was appraisal.

29. Defendants asserted that Plaintiffs were required to bring their claims derivatively on behalf of the Company and not direct, as in the Amended Complaint. Plaintiffs contended that their claims were properly brought as direct clams and that, in any event, Defendants had waived that argument by failing to file a motion to dismiss.

30. Plaintiffs contended that Defendants' reliance on advice of counsel and advisors defense was belied by facts known to them at the time of the Merger demonstrating their reliance was unreasonable because the Board failed to properly inform itself, Avondale's analyses were openly flawed and the Board employed improper defensive measures to steer a deal to LFP.

31. In summary, Plaintiffs' Counsel believe that the Settlement reached here, only after vigorous litigation, and through use of a very experienced mediator of securities litigation and protracted post-mediation negotiation and confirmatory discovery, all of which counsel for Plaintiffs actively participated in, is fair, reasonable and adequate.

32. In total, Plaintiffs' Counsel and their paraprofessionals devoted 2,480.7 hours to this action with the resulting lodestar of $1,287,713 and expended $98,059.51 in prosecuting this action on behalf of the Settlement Class, all of which were necessary to the successful prosecution of this Action.

33. As of the date of this Declaration, no Settlement Class member has objected to any of the terms of the Settlement, Plaintiffs' Counsel's application for an award of attorneys' fees and the expense, or Plaintiffs' application for an incentive award.

34. Attached hereto as **Exhibit 1** is a true and accurate copy of the Stipulation of Settlement, dated April 27, 2015, memorializing the Settlement reached by the parties in the Litigation, and exhibits thereto.

35. Attached hereto as **Exhibit 2** is a true and accurate copy of the Declaration of William Douglas Moreland.

36. Attached hereto as **Exhibit 3** is a true and accurate copy of the Declaration of Craig Telke.

37. Attached as **Exhibit 4** is a true and accurate copy of the Declaration of Stephen J. Crane filed on Behalf of Crane Dunham PLLC in Support of Application of Award of Attorney's Fees and Expenses.

38. Attached as **Exhibit 5** is a true and accurate copy of the Declaration of Shannon L. Hopkins filed on Behalf of Levi & Korsinsky, LLP in Support of Application for an Award of Attorneys' Fees and Expenses.

39. Attached as **Exhibit 6** is a true and accurate copy of the Declaration of Jeffrey A. Berens filed on Behalf of Dyer & Berens LLP in Support of Application for Award of Attorneys' Fees and Expenses.

40. Attached as **Exhibit 7** is a true and accurate copy of the Declaration of Melissa E. Baldwin Regarding Dissemination of Notice to the Class.

41. Attached as **Exhibit 8** is a true and accurate copy of the Final Order in *Rasner v. FirstWorld Commc'ns, Inc.*, No. 00-K-1376, slip op. (D.Colo Jan 19, 2005).

42. Attached as **Exhibit 9** is a true and accurate copy of the Final Order in *Angres v. Smallworldwide PLC*, No. 99-K1254, slip op. (D.Colo. June 7, 2003).

43. Attached as **Exhibit 10** is a true and accurate copy of the Final Order in *Schwartz v. Celestial Seasonings, Inc.*, No. 95-K1050, slip op. (D.Colo. Apr. 25, 2000).

44. Attached as **Exhibit 11** is a true and accurate copy of the Final Order in *In re Intelcom Grp., Inc. Sec. Litig.*, No. 95-D-1166, slip. Op. (D. Colo. Mar. 21, 1997).

45. Attached as **Exhibit 12** is a true and accurate copy of the Final Order in *Sonnenfeld v. City of Denver, Colorado*, C.A. No. 95-Z-468 (D. Colo. Dec. 8, 1997).

46. Attached as **Exhibit 13** is a true and accurate copy of the Final Order in *In Re Core Bond Fund*, No. 09-cv-1186-JLK-KMT, slip op. (D. Col. Sept. 30, 2011).

47. Attached as **Exhibit 14** is a true and accurate copy of the Final Order in *In Re Rhythms Sec. Litig.*, No. 02-35 (D.Colo. April 3, 2009).

48. Attached as **Exhibit 15** is a true and accurate copy of the Final Order in *In re Oppenheimer Champion Income Fund Sec. Fraud Class Action*, No. 0cv-386-JLK-KMT, slip op. (D. Col. September 2011).

I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of August, 2015, at Seattle, Washington.

                                              Stephen J. Crane

4849-1064-8870, v. 1

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

s/ Jeffrey A. Berens
Jeffrey A. Berens
Attorney for Plaintiffs
DYER & BERENS LLP
303 East 17th Avenue, Suite 810
Denver, CO 80203
Telephone: (303) 861-1764
FAX: (303) 395-0393
Email: jeff@dyerberens.com
